

FILED KG
6/21/2022
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MEGAN MASON,<br>Plaintiff; | Case Number: 1:22-CV-2315 |
| A.D.M., by his mother, Megan Mason,<br>Plaintiff; | |
| T.M.M., by his mother, Megan Mason,<br>Plaintiff; | |
| **Vs.** | |
| THE CIRCUIT COURT OF COOK<br>COUNTY ILLINOIS, Defendant; | |
| IRIS MARTINEZ, personally and as Clerk for<br>the Circuit court of Cook County, December<br>1, 2020 to the present,<br>Defendant; | |
| DOROTHY A. BROWN, as Clerk for the<br>Circuit court of Cook County December 1,<br>2000–December 1, 2020<br>Defendant; | |
| TIMOTHY EVANS, as Chief Judge for the<br>Circuit Court of Cook County,<br>Defendant: | |
| GRACE DICKLER, personally and as<br>Presiding Judge for the Domestic Relations<br>Division of the Circuit Court of Cook County,<br>Defendant; | |
| ROBERT JOHNSON, personally and as<br>Associate Judge for the Domestic Relations<br>Division of the Circuit Court of Cook County,<br>Defendant; | |
| MICHAEL BENDER, personally and as | |

Guardian Ad Litem for the Domestic relations
Division of the Circuit Court of Cook County,
Defendant;

DR. JOHN PALEN, personally and as
Parenting Coordinator for the Domestic
Relations Division of the Circuit Court of
Cook County,
Defendant;

DR. GERALD BLECHMAN, personally and
as Custody Evaluator for the Circuit Court of
Cook County,
Defendant;

BRADLEY TROWBRIDGE, personally,
Defendant;

CHRISTOPHER WEHRMAN, personally,
Defendant;

KAYE MASON, personally and as an
employee of the Circuit Court of Cook
County, Defendant;

LAURIE GARNER, employee of the Clerk of
the Circuit Court of Cook County,
Defendant;

STEVEN KLEIN, personally, Defendant;

MATTHEW LINK, personally and as a judge
for the Circuit Court of Cook County.

**TRIAL BY JURY IS REQUESTED**

**EXPEDITED HEARNING IS REQUESTED**

2

## AMENDED COMPLAINT AND REQUEST FOR INJUNCTION

I am the pro se plaintiff in this matter and mother to A.D.M. and T.M.M., minor children who are plaintiffs in this suit by me. I present this amended complaint and pray for expedited trial due to the serious impact on the health and safety of minor crime and the disclosure of criminal acts made by me herein.

*Note about amendment: Some amendments have been made to the Complaint filed in this court on May 3rd, 2022 and which I delivered to all defendants on or around May 19th, 2022 along with a postage paid self addressed envelope and a waiver of service form. As of this filing, June 20th, 2022, no Defendant named has returned a waiver of service form. It is my understanding that, for the purpose of calculating time under the Federal Rules of Civil Procedure, the parties will then be served on the date they receive the summons, complaint and other necessary documents, which I believe will have occurred between June 21 and 23 and therefore my amendment is allowable as a matter of course, falling within 21 days of service as defined by law. Two parties, Steven Klein and Matthew Link and so the amendment will fall within 21 days of service.*

*If I were asked by this Court to provide a basis for amendment, as required in other instances, I would enumerate many ways in which I have learned new information, often simply learning the law or application of the law, which makes an amendment appropriate. In this instance, I also quite simply wished to correct typographical and other petty errors to make the complaint more coherent out of respect for the time and resources of all parties, including the Court itself. I believe however that this can be amended as a matter of course.*

## I.    OVERVIEW

1. All claims in this case relate to abusive practices in the Domestic Relations Division and offices of the Clerk of the Domestic Relations Division of the Circuit Court of Cook County, Illinois, toward myself, Plaintiff Megan Mason acting Pro Se, and my minor children, A.D.M. and T.M.M. Although I and my ex husband Peter Matt were legally divorced and entered into a mutually agreed upon Allocation Judgment Parenting Plan on September 27th, 2017, I have since that time been enmeshed in abusive litigation by Peter Matt and Defendants through the unique exploitative customs of the Domestic Relations Division of the Circuit Court of Cook County under the direction and leadership of Presiding Judge Grace Dickler.

2. What is at issue to raise federal questions is not, however the divorce case , or the "game" being played in the arena, but rather violations of civil rights by and within a State of Illinois Circuit Court and the offices of a Circuit Court Clerk, which is to say individuals setting fire to the arena where the game is being played. I am an honest, measured, decent woman. I am not trying to inappropriately retry a divorce case. I do not believe in retaliation but I do believe in justice and protection for the vulnerable. I am seeking to be made whole and for my children to be made whole under federal law and judicial authority for profound cruelty inflicted and damages caused by the defendants in this case.

## II.    BASIS FOR JURISDICTION

4

3.  This  court has jurisdiction under **28 U.S.C. § 133**1, a case arising under the United States

Constitution or federal laws or treaties is a federal question case. All events described here

took place in Cook County Illinois so the Northern District is the appropriate venue.

4.  Under **28 U.S. Code § 1367**  this court also has authority to consider state laws and rules where

such rules are intertwined with the federal question raised as is the case with the issues raised

here.

## III.    LAWS

3.    This Complaint and request for injunctive relief is based on violations of the following

federal statutes, federal treaties, and/or provisions of the United States Constitution that

are at issue in this case:

**The 1st and 14th Amendments of the United States Constitution**

**Americans With Disabilities Act of 1990, Pub. L. No. 101-336, 104 Stat. 328 (1990).**

**42 U.S. Code § 1983**

**28 U.S. Code § 1331**

**18 U.S. Code § 1001**

**18 U.S. Code § 1512**

**18 U.S. Code § 1513**

**18 U.S. Code § 1956**

**18 U.S. Code § 1028A**

**18 U.S. Code § 1343**

**18 U.S. Code Chapter 96: § 1961,  § 1962,  § 1964, § 1965, § 1966, § 1967, § 1968**

4.  Under **28 U.S. Code § 1367**  the following state and local rules are intertwined with the matters

of this case:

5

**750 ILCS**

**ILLINOIS CODE OF JUDICIAL CONDUCT, ILL. S. CT. R. 61-68, ILL. REV. STAT. ch 1 10A, paras. 61-68 (1989)**

**(720 ILCS 5/31-3) (from Ch. 38, par. 31-3)**

## IV.    PARTIES

5.  I, Megan Mason, am the pro se Plaintiff in this Complaint and mother to A.D.M., age thirteen, and T.M.M., age ten, both also Plaintiffs. I reside in the village of Wilmette in Cook County, Illinois. I am a dual licensed registered investment advisor/FINRA registered broker employed as a Vice President of Wealth Management by Jefferies Financial Group based in New York, New York.

6.  A.D.M. is a minor child, aged thirteen, who resides in the village of Wilmette in Cook County, Illinois. A.D.M. has various intellectual, motor and developmental disabilities and is several years behind grade level in terms of academic ability, spending the majority of his school day in intensive, specialized education classes. A.D.M.'s doctors, parents, therapists, family and friends anticipate that A.D.M. will remain dependent on the direct care and support of a guardian after the age of eighteen.

7.  T.M.M. is a minor child, aged ten, who resides in Wilmette, Illinois in Cook County, Illinois.

8.  The Circuit Court of Cook County is a metropolitan court system with multiple facilities and divisions. The claims here relate to the specific unique customs and practices of the Domestic Relations Division of the Circuit Court of Cook County under the

6

administrative leadership and executive decision making of Presiding Judge Grace Dickler and Timothy Evans, also named.

9. Upon information and belief, Defendant Iris Martinez is a citizen of the United States and a resident of Cook County, Illinois. She is sued in her individual capacity. From December 1, 2020, Ms. Martinez has been Clerk for the Circuit Court of Cook County.

10. Upon information and belief, Defendant Dorothy A. Brown is a citizen of the United States and a resident of Cook County, Illinois. She is sued in her individual capacity. From December 1, 2000 to December 1, 2020, Ms. Brown was Clerk for the Circuit Court of Cook County.

11. Upon information and belief, Defendant Timothy Evans is a citizen of the United States and a resident of Cook County, Illinois. He is sued in his individual capacity. At all times mentioned in this case Mr. Evans was Chief Judge for the Circuit Court of Cook County with ultimate authority over the Domestic Relations Division of the Circuit Court of Cook County.

12. Upon information and belief, Defendant Grace Dickler is a citizen of The United States and resident of Cook County, Illinois. She is sued in her individual capacity and as chief administrator and executive supervisor to Guardian Ad Litems, Parenting Coordinators, Custody Evaluators, Judges, judicial clerks and other appointees and all other employees of the Domestic Relations Division of the Circuit Court of Cook County not explicitly under the authority of Clerk Iris Martinez.

13. Upon information and belief Defendant Robert Johson is a citizen of the United States and a resident of Cook County, Illinois under the authority of Presiding Judge Grace Dickler. He is sued in his individual capacity. Judge Johnson has been the presiding

trial judge in the matters raised in this complaint from August 13, 2018 to present.

14. Upon information and belief Defendant Michael Bender is a citizen of the United States and a resident of Cook County, Illinois. He is sued personally and as Guardian Ad Litem for the Domestic Relations Division of the Circuit Court of Chicago under the authority of Presiding Judge Grace Dickler. Mr. Bender is a former Circuit Court Judge who has been appointed in the capacity of Guardian Ad Litem to A.D.M. and T.M.M. from June 6, 2019 to present.

15. Upon information and belief, Defendant Dr. John Palen is a citizen of the United States and a resident of Cook County, Illinois. He is sued personally and as Parenting Coordinator for the Domestic Relations Division of the Circuit Court of Chicago under the authority of Presiding Judge Grace Dickler. Dr. Palen is a psychiatrist who was appointed in the capacity of Parenting Coordinator between August 28, 2020 and May 25, 2021.

16. Upon information and belief, Defendant Dr. Gerald Blechman is a citizen of the United States and a resident of DuPage County, Illinois. He is sued personally and as Custody Evaluator for the Domestic Relations Division of the Circuit Court of Cook County, under the authority of Presiding Judge Grace Dickler. Dr. Blechman is a psychologist who has been appointed in the capacity of Custody Evaluator to A.D.M. and T.M.M. from May 25, 2021 to present.

17. Upon information and belief, Defendant Bradley Trowbridge is a citizen of the United States and a resident of Cook County, Illinois. He is sued personally. Mr. Trowbridge is a member of the Illinois bar as well as a court appointed child advocate, under the authority of presiding Judge Grace Dickler, through his business Safe Travels LLC. I

issued payment to Mr. Trowbridge and signed a retainer agreement on June 11, 2019. Mr. Trowbridge filed an appearance as my attorney on July 5, 2019 and withdrew as my attorney on October 2, 2020.

18. Upon information and belief, Defendant Christopher Wherman is a citizen of the United States and a resident of Cook County, Illinois. He is sued personally. Mr. Wehrman is a member of the Illinois bar and has served as the attorney for my ex husband, Peter Matt, from the fall of 2016 to present.

19. Upon information and belief Defendant Kaye Mason is a citizen of the United States and a resident of Cook County, Illinois. She is sued personally and as a clerk employed by the Circuit Court of Cook County, Illinois.

20. Upon information and belief  Defendant Laurie Garner is a citizen of The United States and  a resident of Cook County, Illinois. She is sued personally and as a supervisor in the office of the Clerk of the Circuit Court of Cook County.

21. Upon information and belief Defendant Steven Klein is a citizen of the United States and a resident of Cook County, Illinois. Mr. Klein is a member of the Illinois Bar and has acted as Mr. Matt's attorney from the fall of 2016 to the present. Mr. Klein is also an approved Cook County Circuit Court Child Rep, reporting to Presiding Judge Grace Dickler in this capacity. He is sued personally.

22. Upon information and belief Defendant Matthew Link  is a citizen of the United States and a resident of Cook County, Illinois. He is sued in his individual capacity and as an employee of the Circuit Court of Cook County under the authority of Presiding Judge Grace Dickler.

V.    FACTS

**Background**

23. The events and facts related to the RICO and Section 1983 claims raised in this complaint all relate to the divorce and parentage case 2016 D 9534 in the Domestic Relations Division of the Circuit Court of Cook County between Peter Matt, Petitioner and Megan Matt (nka Megan Mason) Respondent.

24. I am providing the basic facts related to some of the divorce matters that are six years old and seemingly resolved, only because they provide necessary context or are part of ongoing activity or relate to fraud, particularly financial misrepresentations, that continue to this date.

23. I  initiated the divorce process in August, 2016 by removing myself and the children from the family home and starting  a collaborative divorce process with Mr. Matt under the guidance of  a social worker named Rosalind Sedaka. In October, 2016 Mr. Matt, via his attorneys Mr. Steven Klein and Mr. Christopher Wehrman, started the litigation of the divorce by filing a fraudulent emergency motion for a restraining order alleging that I had embezzled $100,000 from the family businesses. This was shown to be untrue but  all the family assets were nevertheless put into Receivership under Robert Handler, Receiver. At this first Court appearance I informed the Court in front of Mr. Matt's counsel, Steve Klein, partner at Mr .Wehrman's firm at the time, that I knew Mr. Matt to have at least $1 million in accounts in Europe that he does not choose to report to the IRS. Mr. Matt has significant family wealth as

10

well as ownership of some business and real estate assets acquired during our marriage.

Through Mr. Matt's own Circuit Court filings, submitted by the law firm Swanson Martin

Bell, he has attested to owning three companies abroad: Goedecke Germany, Goedecke

Poland and Goedecke India. Since I stopped involvement in his businesses in 2012 Mr. Matt

has not reported any of the assets to the IRS because of his unique interpretation of federal

tax laws. This has created a unique situation where one party in a divorce, and now five year

parentage dispute is actually poor and the other presents himself as poor while having

virtually unlimited support for his litigation. This situation has created an inherent bias

toward me due to my inability to pay for attorneys.

25. Between October, 2016 and the parties' divorce in September, 2017, the parties' personal and

business assets were ordered into Receivership under Robert Handler.

26. During this time and for the subsequent six years, Mr. Klein and Mr. Wehrman received

payments from Wintrust bank account ending 8496 hich Mr. Matt used to transfer funds from his

untaxed, unreported assets abroad to himself.

    a. Mr. Matt is a signer on this account and used it to knowingly launder
moneys paid to Mr. Klein and Mr. Wehrman.

    b. Mr.s Klein and Wehrman knowingly  participated in tax evasion and
money laundering by receiving laundered funds and falsely stating to the
court that the funds were from Mr. Matt's father.

    c. During this same period, I was forced to sell all my jewelry and my car in
order to feed myself and my children while all marital assets were
knowingly hidden by Mr. Matt with the assistance of Christopher
Wehrmand and Steven Klein.

11

27. Mr. Matt initiated this case in Chicago, an hour from our homes instead of the Skokie Courthouse, ten minutes from our homes, in order to access a court known to be friendly to men like himself.

28. Mr. Matt was  financially abusive during our marriage, namely by insisting that assets be titled in my name so that he would not have to report an income and pay taxes and so that his business could have women owned business status. But Mr. Matt did not allow me to have money reported as earnings for our business, an S Corporation. Since he had to report all earnings as distributions and salary he paid taxes on earnings in my name but did not allow me the salary, so we called the funds retained earnings, then we called them shareholder loans. At the time of my separation there was $300,000 in unpaid salary that had been reported as paid to me, taxed and and titled as shareholder loans on the balance sheet.

29. Mr. Matt moved all actual assets and cash to his and his father's control in Europe years before our divorce. This is a primary reason I did not and could not seek child support, though I had been the primary caregiver to the children. On paper I had received a good income and it was reported as paid. I was also sole guarantor on $600,000 in Mr. Matt's business loans for assets he had moved to businesses in Europe in his and his father's name by the time of our separation.

30. My goal in divorcing Mr. Matt was to escape contact with him, to be financially solvent and to be indemnified and protected from his crimes.  However I have been enmeshed with Mr. Matt and the Domestic Relations Division of the Circuit Court of Cook County for five years since our divorce due to Mr. Matt's harassment, vexatious

litigation, and now increasingly due to predatory actions by officers of the court described extensively and repeatedly herein.

31. A main form of abuse by Mr. Matt is continued financial abuse in the form of punitive expenses, which has contributed in part to my current bankruptcy and financial distress - direct financial sanctions, my own legal fees, and court ordered legal fees have also contributed. This has included tens of thousands of dollars in unnecessary expenses, primarily during the first years of my separation when I earned an average of $49,000 per year and received no maintenance or support. Mr. Matt has, for example, purposely acquired an expensive private health insurance plan in order to incur an extra $16,000 in costs to sue me, rather than using my significantly cheaper employer group insurance for the children. He has done this particular scheme twice.

29. Although no doctor has ever prescribed Applied Behavioral Analysis (ABA) therapy for our son who has developmental disabilities, Mr Matt has litigated extensively on this topic and it remains a basis of ongoing misconduct, including claims related to current violations of civil rights and acts of fraud. On one occasion two years after our divorce I did not have a car because I had sold it to pay rent and Mr. Matt drove me to an intake appointment with an ABA provider. They told us that the therapy would cost $14,000. I could not pay this and stated this. Mr. Matt agreed to pay it in full and attested to as much in writing three times. He wrote specifically, "I will pay for all ABA costs". Then he sued me for half of the costs. Because I have been fearful of further such financial abuse I have at times had to inform providers I could not pay them, which has been depicted as me refusing medical care. I could not pay them. This has contributed to my bankruptcy.

**Facts related to the Bender Syndicate**

31. On February 19th, 2019, with no wish to modify the parenting plan or related motions pending, with a duly enacted divorce and parenting plan already in place, Mr. Matt moved to have a Guardian Ad Litem assigned to our case in order to further his wish for prolonged contact, and to inflict financial harm on me.

32. The Illinois statute on Guardian Ad Litems ((750 ILCS 5/506) (from Ch. 40, par. 506), states that GALs: *In deciding whether to make an appointment of an attorney for the minor child, a guardian ad litem, or a child representative, the court shall consider* **the nature and adequacy of the evidence to be presented by the parties and the availability of other methods of obtaining information**, *including social service organizations and evaluations by mental health professions, as well as resources for payment..* Since there were no proceedings, no pleadings, it would have been impossible for the Court to determine the adequacy of the evidence. There was no evidence and no motion or petition to prove.

33. On June 6, 2019 Judge Johnson appointed his mentor and friend Michael Bender as Guardian Ad Litem to my children A.D.M. and T.M.M. against my opposition.

34. At the time of Mr. Bender's appointment I had been introduced to a family law attorney named Bradley Trowbridge through a referral from a Domestic Violence Advocacy group called Lifespan after my Mr. Matt had made threatening phone calls and emails to my church, Lake Street Church of Evanston. Because of the threats and erratic behavior by Mr. Matt, Lake Street's Head of Youth Programming, Jillian Westerfield, was concerned about my well being so she referred me to congregant Kathe Morris Hoffer, Executive Director of the Chicago Alliance Against Sexual Exploitation. Ms. Hoffer and I had a call and she was concerned about my history of domestic violence and lack of

legal representation so she referred me to Lifespan, a nonprofit providing legal services to impoverished survivors of physical and sexual abuse . Because I did not qualify for their services, they in turn referred me to Mr. Trowbridge as a private attorney specializing in domestic violence.

35. During our first call Mr. Trowbridge informed me he was a former social worker and this added a deeper level of trust and disclosure than a normal attorney relationship. He said he specialized in victims like me. He knew that during this time I was also in treatment for PTSD with Farah Baig, addressing issues related to childhood and adult trauma. I have an ACE score of six. A specific focus of my treatment and issue for recovery was a tendency to become involved in exploitative relationships.

36. Although I had been pro se because of finances, when Mr. Bender was appointed I contacted Mr. Trowbridge and borrowed money to retain him to have Mr. Bender removed. However Mr. Trowbridge told me at our first meeting that he knew Mr. Bender and he was a good guy, that the best strategy for me would be to tell Mr. Bender I originally opposed his appointment but now I was happy to have him.

37. Mr. Trowbridge did not disclose any other business interests or conflicts though I now understand he is also a custody supervisor through his business Safe Travels LLC and wishes to become a judge. Mr. Bender can get him appointments as a child rep and help him to obtain a democratic primary nomination as judge and Mr. Trowbridge therefore followed Mr. Bender's instructions in all matters and was always working for Mr. Bender.

38. On June 11th, 2019, five days after the ruling ordering Mr. Bender's appointment, I signed a retainer agreement and issued payment to Mr. Trowbridge and I believed him to

be my attorney. I now understand he did not file an appearance until after speaking

privately to Mr. Bender and three weeks after I signed my retainer agreement.

39. On at least one occasion between June 11th, 2019 and June 24th, 2019 Mr.

Trowbridge spoke privately to Mr. Bender about my case before I had personally met Mr.

Bender. Mr. Bender instructed Mr. Trowbridge from their first meeting until Mr.

Trowbridge stepped down in October, 2020. This was openly stated to me as Mr. Bender,

according to Division custom, has been in charge of all decisions about my case since his

appointment. Under Grace Dickler, attorneys and judges know that GALs in the

Domestic Relations Division are in charge of cases and judges defer to GALs and follow

their instructions.

40. On June 25th, 2019 I met Mr. Bender for the first time. (Exhibit EE).

41. On July 5th, 2019, 31 days after the order appointing a GAL and 1 day after the time

had passed for an attentive attorney to have filed an appeal or petition to set aside the

illegal GAL appointment ruling, Mr. Trowbridge filed his appearance.

42. Mr. Trowbridge also told me early on it would be good for me to not go to court so

often, that strategically it would be better for the judge to see him fighting the battles and

for me to stay away so that the judge could think of me as a likable woman.

43. Between March, 2020 and August, 2020 Mr. Bender and Mr. Trowbridge conspired

with Mr. Wehrman, Mr. Matt's attorney, Presiding Judge Robert Johnson and Kaye

Mason to have me tried and found in contempt of court without my awareness.

      a. Prior to March 8, 2020 someone I believe to be Mr. Trowbridge, at Mr.

          Bender's instruction, created a fake email address and, purporting to be

          me, logged into the Circuit Court's e filing system Odyssey File and Serve

from Tyler Technologies based in Texas. Because there are no security features in the Circuit Court's version of Odyssey File to verify the identity of pro se litigants anyone can log into Odyssey file and click a box attesting to be "me" and then, receiving a "confirmation" email at the fake email address, the individual can "confirm" they are "me".

b.  Once he had created the fraudulent login details the individual I believe to be Mr. Trowbridge was able to change my service contact address. Since October, 2016, when my case began, I had been living at 423 Lind**en** Avenue in **Wilmette** in the **60091** zip code. Someone I believe to be Mr. Trowbridge changed my mailing address to 423 Lind**a** Avenue in **Chicago** with a **6089**1 zip code. After this change two announcements from the court were returned "Addressee Not Found". Notably I would not receive any notice about the postponement of a court date that I was not informed was scheduled due to subsequent fraud. **(Exhibit A)**

c.  I would not learn about this and the other acts of fraud until much later but throughout this time Mr. Trowbridge mentioned "problems with the court software". I have never heard anyone else mention problems with the court computer system though it is a claim Mr. Trowbridge still repeats.

d.  When I eventually had occasion to learn what a docket is and that I could look at it, in the summer of 2021, I began to discover some of these irregularities. In June, 2021 I visited the clerk's office and spoke to the woman who handles requests for printouts from the Docket. She told me that the change to my address was made by "me". I said, "No, *I* didn't

make the change". She said, it was your email. I said it was not *my* email, would she please tell me what email was used purporting to be mine. She would not.

e.  I happen to have already had a login for Odyssey file at this time associated with the only personal email I have used for court filings. The Circuit Court version of Odyssey file allows for seemingly any number of individuals to identify themselves as a party named in the case without flagging the existing user. This is to say, unlike most secure software, when someone created a new log in with my name, there was no "flag" in the form of an email saying, "Someone wants to change your address and email, is that you?", for example.

f.  In June, 2021 I called Tyler Technologies to ask for the IP address and email used to make these changes. These changes were made by someone attesting to be me so I believe I own this information. The software company would give me this information.

g.  On March 8, 2020 Mr. Trowbridge was served with a Petition for Rule to Show Cause against me, or contempt allegation, filed by Mr. Matt through Mr. Wherman. He aggressively hid this petition and associated court appearances over the next four months, making efforts on two occasions to actively dissuade me from being suspicious, confirming "nothing was happening" .

h.  Mr. Trowbridge billed me for reading the PRTSC on March 8, 2020 but I would not see the four word line item on the March bill until a year later.

Neither party informed me of the allegation voluntarily over the next four months. This was his first overt act of fraud by hiding the petition.

i.   On April 6th, 2020 a continuance was allowed due to Covid.

j.   On April 10th a post card was mailed to the fraudulent address for me in Odyssey File ("Linda" Avenue). On that same date an email was sent to Brad Trowbridge at his verified email. The notice was to inform me of the continuance of a court date I did not know about. Mr Trowbridge still did not inform me of a PRTSC or a scheduled court date (Exhibit A). This was his second act of fraud in not disclosing the court date.

k.   Mr. Matt is a vexatious litigant and I mistakenly believed that during the early Covid lockdowns there was no court activity so on April 22, 2020 I wrote to Mr. Trowbridge to express relief that "no motions were being filed". At this point in time I would have referred to any written court pleading as a "motion", including a petition. On April 22, 2020, I wrote to Mr. Trowbridge: *"I hope you're well and your clients are not suffering too badly from quarantine. I'm personally quite pleased that no motions are being filed right now, a nice break =)."* (Exhibit B)

l.   On April 22, 2020, Mr. Trowbridge wrote back: *"Megan. Yes, unfortunately it took a pandemic to stop Peter's abuse of you!"*. (Exhibit C). This was his third act of fraud in actively assuaging any fear and deceiving me as to avoid discovering the truth.

m.   On May 26th, 2020 a continuance was allowed due to Covid.

n.   On May 27th, 2020 a post card was mailed to the fraudulent address for me in Odyssey File. On that same date an email was sent to Brad Trowbridge at his verified email. The notice was to inform me of the continuance of a court date I did not know about. Mr Trowbridge still did not inform me of a PRTSC or a

scheduled court dat. This was his fourth act of fraud by not disclosing this information.

o.  On July 6, 2020 a status call was held. I have no idea who was there or what was said.

p.  On July 12, 2020 I noticed a reference to court on Michael Bender's bill for the  court appearance on July 6, 202.  I emailed Mr Trowbridge, "Zoom Court What?" (Exhibit D)

q.  Mr. Trowbridge wrote back, not mentioning a contempt allegation, so I assumed it was a status call for Mr. Bender's removal. He wrote, *"We had a zoom court date of July 6 that I had on my calendar as July 7. That could have only have been for a short time. I also don't know how much preparation there could have been. It looks like a lot of activities have been lumped into one line item. The next zoom date is July 20 at 9 AM. Anything I need to know?"* (Exhibit E). This was his fifth act of fraud.

r.  On July 20, 2020 there was a status call which Mr. Trowbridge attended. At that time I believed it was simply a call for Mr. Bender to step down from the GAL appointment. My understanding was that Mr. Bender had agreed to step down the fall before. At this point I did not know there was a PRTSC.

s.  Following Mr. Trowbridge's instructions I did not attend this status call. I do not know if parties expressed surprise at Mr. Trowbridge's absence from the prior status call. I don't know if he had in fact been absent, as this is based on Mr. Trowbridge's statement and he has lied to me many times.

I don't know if Mr. Trowbridge lied about me. I do not know if Mr. Trowbridge was asked why he did not file a response or indicate he had received the contempt allegation four months before.

t.   It is not normal for a litigant to decline to answer a petition, to decline to appear at court, and for her attorney to do likewise for four months. I have attended many status calls during my entanglement with the Domestic Relations Division of the Circuit Court. In my experience when any division judge, including Judge Johnson, sees one party missing he will ask the attorney in attendance if he has spoken to the party and he will ask any other court official such as a GAL if he has spoken to the party. Usually they will call the person immediately, particularly now that one can call into a Zoom hearing, to avoid having to schedule another date.

u.   Judge Johnson, Mr. Bender and Mr. Wehrman have all refused to acknowledge my requests for explanation.

v.   The most obvious lack of action is any inquiry by Mr. Bender during this time. The Court's appointment of Mr. Bender is based on the Domestic Relations Division custom of placing a GAL as the adjudicator of all matters relating to the minor children. No matter what the law says, all Domestic Relations Division attorneys I've spoken to have told me that Mr.Bender  has the final decision making authority for the children on all matters and acts as their advocate. The fact that Mr. Bender can document no efforts to contact me through my attorney or directly during this period

is because he was aware of Mr. Trowbridge's fraud and in fact directed
him to commit the acts.

w.  Mr. Bender has had every opportunity to provide to me dates of calls,
emails or other proof that he was in contact with Mr. Trowbridge
regarding the allegation of failure to comply with parenting orders. Which
is to say, that he was doing his job. He has provided no explanation or
evidence.

x.  Mr. Trowbridge refuses to tender to me his emails with Mr. Bender and
Mr. Wehrman from this time.

y.  On July 20, 2020  I again asked if anything was filed against me and if Mr.
Bender had stepped down. On that date Mr. Trowbridge finally informed
me of the PRTSC. (Exhibit F)

z.  Mr. Trowbridge removed the proof of service before emailing me the
PRTSC. Mr. Trowbridge still refuses to provide to me the original proof of
service and the email with which it was sent. This was his sixth act of
fraud.

aa. Mr. Wehrman refuses to provide the email showing the date and delivery
of the PRTSC to Mr. Trowbridge or any response, such  as an email stating
"received". Mr. Wehrman is conspiring in Mr. Trowbridge's voluminous
acts of fraud out of self interest and in conspiracy in their shared criminal
acts.

bb. On July 20, 2020 when I finally learned about the contempt allegation,
after the fourth scheduled court appearance. I stated, "I don't see any

22

evidence. I don't understand what he wants", noting that there were no exhibits included with the PRTSC or appended to the PRTSC itself provided to me by Mr. Trowbridge.

cc. I know from experience that Mr. Wehrman sends his proof of service as a page at the end of his pleadings and often the exhibits at the end of the pleading. In the proof of service Mr. Wehrman filed for this PRTSC on March 8, 2020 he attested to the Court under threat of perjury that he emailed this PRTSC to Mr. Trowbridge at the email address I know to be Mr. Trowbridge's on March 8, 2020.

dd. On July 21, 2020 at 3:20 pm I wrote to Mr. Trowbridge to explain that I'd filed an ethics complaint about Mr. Bender to the ARDC. (Exhibit G)

ee. On July 21, 2020 someone I believe to have been Mr. Trowbridge acting under the instructions of Michael Bender used the fake email to again log in to Odyssey File and file a "pro se" appearance on my behalf, though Mr. Trowbridge had not told me he quit or filed a motion to withdraw. This was also told to me by a clerk at the Division Clerk's office in June of 2021.

ff. I believe that Mr. Trowbridge then informed Mr. Bender that I had complained about him to the ARDC because the next day Mr. Bender, who had not spoken to me in almost a year, had his assistant contact me to schedule a meeting to check in.

gg. The main allegation in the PRTSC, which Judge Johnson ruled I had done, was that I violated an order by Judge Johnson that "ABA shall continue".

23

The motion was filed on March 8, 2020 a time when all therapy was stopped in the state by law. Since there was no evidence of contempt and contempt wasn't happening, I did not think a ruling of contempt was possible. However, at the hearing, which went very fast and during which time Mr. Trowbridge said virtually nothing, I was found in contempt.

hh. Mr. Wehrman also did display some documents at trial which I had never before seen. I still see no exhibits ever filed by Mr. Wehrman on the docket with regard to this PRTSC allegation and I've never received stamped copies of any exhibits related to the spurious contempt ruling.

ii. However I recall at trial Mr. Wehrman screenshared an email from me to A.D.M.'s ABA therapist provider. I wrote this email because A.D.M. had reported to me that when his father supervised ABA therapy over Zoom he was holding down A.D.M. in the chair and kicking and dragging him back when he tried to escape. His brother T.M.M., who is neurotypical, confirmed this.

jj. I reported the violence surrounding Zoom therapy to DCFS, to Mr. Bender and to A.D.M.'s school in the summer of 2020.

kk. I also purchased a home license for the ABA software, Teach Town, designed to be more appropriate for virtual ABA for children like ADM who struggle to attend over video conferencing tools. At this time I was delivering the program to him. Motivated primarily by a desire to stop A.D.M.'s mistreatment, I told the therapy provider I did not need Zoom therapy because the school provided another online ABA alternative.

Nobody, including Mr. Matt, Mr. Bender, or Mr. Trowbridge informed me there was a concern about me administering Teach Town as an accommodation to COVID lockdowns.

ll. I was found in contempt of court in a ruling not supported by fact on August 21, 2020. Because the contempt ruling was so shocking to me, Mr. Trowbridge said he would file a motion to reconsider. He did not.

mm. The period for filing an appeal or motion to reconsider in Illinois is thirty days after ruling. I know this now, but I did not know this then. Mr. Trowbridge quit forty days after ruling with no appeal filed. When he quit he again referred to ongoing issues with Odyssey File and health issues.

nn. Because of what appeared to me to be profound incompetence and a reference to health issues during a stressful time geopolitically, I assumed Mr. Trowbridge had an addiction of some kind and so I did not look into his malfeasance in 2020.

oo. I was ordered extremely high attorneys fees as part of my sanction for the baseless contempt ruling. This contempt ruling continues to be raised as a primary basis to attack my character before the Court, and "evidence" of parental unfitness.

pp. This contempt ruling, clearly based on multiple acts of fraud, is now being used in a motion to revoke my parenting rights completely from half decision making authority and half parenting time in the Parenting Plan entered in 2017 to an immediate revocation of all parenting rights and no parenting time.

qq. Mr. Trowbridge still vehemently persists in the fraud scheme and persists in ongoing acts of deceit and obfuscation intended to curb my efforts to access justice and to hide his crimes and the crimes of others. On April 13, 2022, Mr. Trowbridge responded to a document subpoena with a continued refusal to provide: the notification of filing received with the PRTSC filed on March 8, 2020 or the email from opposing counsel delivering the PRTSC to Mr. Trowbridge at that time. Mr. Trowbridge wrote, knowing full well that he had received filings and correspondence from the court on a continued basis between March and August of 2020: "I did not fail to disclose communications and notifications to you. Courts shut down on March 17, 2020 for several months due to the pandemic." and continues, deceitfully, "Clearly, you were aware of the existence of that PRTSC. To say you were not aware of it is ot only inaccurate, but also bizarre". (Exhibit NN). Obviously the Courts were impacted, live hearing curbed, but they did not "shut down" in that notifications, pleadings and correspondence were made. Mr. Trowbridge's denial of this is in furtherance of his racketeering activity and fraud.

44. On August 28, 2020 Mr. Bender had his friend Dr. John Palen, a psychologist, appointed as parenting coordinator by Judge Robert Johnson in order to facilitate communication and decision making between me and Mr. Matt. Dr. Palen served in this capacity until May 25, 2021. A few months after his appointment I became aware of further misconduct by Dr. Palen and the other parties in my case.

a. On December 5, 2020 I learned that Mr. Bender, Mr. Wehrman, Dr. Palen and Judge Johnson, via his clerk Kaye Mason, maintain a secret email thread with the heading, "IRMO Matt; 2016 D 9534; COURT ORDER", my divorce case number and married name. Although all parties and Judge Johnson refuse to share the emails with me I believe it is an ongoing conversation about my court case intentionally excluding me or anyone representing my interest.

b. I learned about this email conspiracy because Dr. Palen accidentally copied me, then pro se, on an email intended for Judge Johnson's clerk, Kaye Mason, who shares my last name. He wrote, "I want to be paid. It is as simple as that." (Exhibit H)

c. At this time Dr. Palen had a positive retainer balance, no unpaid invoices and, legally, was already "paid".

d. I was copied accidentally. Dr. Palen thought I was Ms. Kaye Mason, Judge Johnson's clerk. Dr. Palen then wrote, "Sorry- this was meant for another case. I had not noticed Ms. Mason on the list of recipients." (Exhibit I)

e. Dr. Palen lied. The subject line was my case number and married name and all parties, including Kaye Mason, are involved in my family's case.

f. There are more ex parte emails but all parties including Judge Johnson refuse to tender to me the other emails in this ongoing thread. I have subpoenaed the emails from both Brianna Steger, attorney for the Court, and from all parties in the email thread but have not received a response or a motion to quash.

g.  I have not received any of the emails though at one point in March, 2022 Judge Johnson affirmed the email thread exists because he said he'd "looked at them and they are fine".

h.   Illinois law demands all ex parte communications be swiftly shared with the party who was excluded. There are no exceptions. The Illinois Code of Judicial Conduct, Rule 61, Canon 3 explicitly states:

> A judge shall not initiate, permit, or consider *ex parte* communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding except that: (a) Where circumstances require, *ex parte* communications for scheduling, administrative purposes or emergencies that do not deal with substantive matters or issues on the merits are authorized; provided the judge reasonably believes that no party will gain a procedural or tactical advantage as a result of the *ex parte* communication, <u>and the judge makes provision promptly to notify all other parties of the substance of the *ex parte* communication and allows an opportunity to respond.</u>

45. With Dr. Palen as parenting coordinator my already unbearable expenses skyrocketed. Mr. Matt wishes to have daily contact and weekly meetings with him. With Dr. Palen in place I then had to pay for the harassment. Often Mr. Matt would email many times a day and specifically requested meetings more than once a week. Dr. Palen eagerly agreed to every meeting and neither party respected my wish to limit meetings to monthly. Every month I had to try to find a way to meet bills while going further into crippling debt.

46. As with Mr. Bender, Mr. Matt has used the appointment of a Parenting Coordinator to abuse me and the children. Mr. Matt has used the Court ordered parenting coordinator to exploit A.D.M. and to force me into complicity with financial crimes, in violation of my financial service licenses and employment agreement. Judge Robert Johnson, Christopher

Wehrman, Michael Bender and Kaye Mason have all been aware of this scheme for at least a year and complicit in blocking attention or ruling that might raise this along with other issues of fraud to the awareness of others outside the Bender Syndicate.

a. In early May, 2021 Dr. Palen facilitated a meeting with Mr. Matt and me at Mr. Matt's request. The goal of the meeting, according to Mr. Matt was to, "Get Megan not to interfere with my new business plan". Mr. Matt knew that I have a tendency to insist on a traditional interpretation of tax and finance laws and a disinclination to commit fraud.

b. Mr. Matt explained that his new business plan is to name A.D.M., who does not consistently count to ten, as CEO of his business in order to defraud his primary business clients out of contracts set aside for businesses owned by disabled people. This would also be in furtherance of Mr. Matt's wish to avoid reporting salary or paying employment taxes and reporting and earnings as 1099 contractor fees as he could avoid naming himself as an employee.

c. I said I was opposed because A.D.M. is not the CEO and I know that would be fraud.

d. I then said I was concerned that if A.D.M. is a business owner he might lose his disability benefits when he turns eighteen.

e. Mr. Matt said this would not be a problem because A.D.M.'s shares would "revert" to him when he turns eighteen. Because there is no legal way to "revert" gifts given to the young and vulnerable, this would be in fact theft.

f. Dr. Palen said he thought that sounds like a nice activity for A.D.M. and encouraged Mr. Matt to send me a business plan. Mr. Matt sent a businessplan to all parties by email, outlining the plan described here. By encouraging Mr. Matt and encouraging the creation of a business plan, Dr. Palen demonstrated a wanton disregard for A.D.M. who he was assigned by the Court to protect and (Exhibit J)

g. In addition to the cruelty and shamelessness of exploiting a disabled child and stealing contracts from legitimate business owners with disabilities, such schemes cannot be tolerated or even witnessed by someone in my profession.

h. In addition to my training to obtain my securities licenses, I receive ongoing training to identify and intervene where I observe acts of money laundering, financial exploitation of the elderly and disabled, corruption and bribery, or abusive practices by fiduciaries. I am also required to report quarterly on my my children's financial activities and any judgments, bankruptcies or liens on my property

i. As a FINRA licensed advisor I will lose my license for even a misdemeanor if the crime is financial in nature or for any felony. In addition to all the obvious legal issues, the Court cannot be allowed to force me to witness, conspire in and commit fraud on my children.

j. I fear for A.D.M.'s safety and well being while under Mr. Matt's care and under the direct control of parties named in this suit. Although Mr. Matt has never to my knowledge drafted a sentence toward a will or estate plan

for his own interests, he writes in the one page business plan, "Megan should have no claim to any of the money or shares even in case of the deat of A.D.M.".

k. This scheme is also very dangerous because I know it to be a method for Mr. Matt to launder money. I have seen him use the method of business formation in the past as way to "gift" or "loan" assets through his father from his unreported assets abroad. In this way A.D.M. may not only be victimized by a crime but may be forced to commit money laundering crimes himself as part of the exploitation.

l. I fear for A.D.M.'s safety and well being, though

m. I remain concerned that A.D.M. and T.M.M.have been or will be used by Mr. Matt to facilitate money laundering, kickbacks or bribes through the creation of trusts and other vehicles into which Mr. Matt's father may deposit "gifts" and the proceeds can be paid directly to individuals in the role of guardian, executor or trustee. This seems especially true with regard to Mr. Bender, Mr. Wehrman and Judge Johnson who are all members of the Bar.

47. When Dr. Palen was appointed I had hoped that Mr. Bender would finally be removed because the costs were crippling to me. So I moved to have Mr. Bender removed. The motion was denied.

48. Since leaving Mr. Matt in the summer of 2016 my goal had always been to get on my feet financially. Having experienced unrelenting abuse and crippling expenses related to court, I never raised any issues because I thought doing so would delay Mr. Bender's

removal. I also was hoping to someday have enough money to hire an attorney to advocate for me. When I realized Mr. Bender's appointment is permanent, I tried to force him to consider the facts of the case, which show Mr. Matt has very disturbing tendencies and little capacity for sound parenting decisions.

49. With Judge Johnson in firm opposition to Mr. Bender's leaving, I tried to find a way to move the process toward a better outcome for my children. At that time my main concerns were obtaining sole medical and educational decision making authority. I had documented extensively with the Court actions Mr. Matt had taken in such decision making capacity to the harm of the children, most notably Mr. Matt's adamant opposition to the use of psychiatric medications. Although I consider myself quite conservative about the administration of medication myself, all A.D.M.'s doctors, teachers and myself are in agreement that A.D.M. needs medication at the present time to meet important life goals. Most notably, A.D.M. has displayed aggression and impulsivity while untreated for his severe ADHD, requiring him to be relocated from two different schools. Further, I had been warned by friends with older children with developmental disabilities that some adult living homes and facilities do not accept adults with a history of behavior problems. I don't know what kind of living arrangement A.D.M. will need or want in the years to come but I don't want him to lose any opportunities for a good quality of life due to medical neglect. At this point medication is the only tool we've found to consistently reduce physical violence such as hitting and biting, loud and profane outbursts and property destruction. It keeps him able to be in his school and his home.

50. I was told by some attorneys I consulted with that the only way to stop some of Mr. Matt's misconduct was to ask for a Custody Evaluation or Section 604.10 b. Unable to

afford one, I moved for a hearing on financial allocation as well as the appointment of a Section 604.10 b evaluator of my choosing. I had checked availability and credentials and was going to ask the court to hire Dr. Holly Sobel a well regarded forensic psychologist working in Chicago and the Northshore where our family lives and attends Court. I particularly hoped to have one woman assigned in our case.

51. I then learned how to draft a PRTSC and created three to try to raise the issues impacting the children. The main concerns were robustly documented and the facts uncontested. Some of the issues were repeated persistent child neglect, unsafe living conditions, harassment of me, persistent and intentional violations of parenting time, refusing to get background checks on boarders or to tell me their name as required by plan. I included exhaustive evidence. (Exhibits L, M, N)

52. I filed a motion to allocate medical and educational decision making to me through a post-decree custody evaluation or 604.10 b evaluation. Judge Johnson ruled on my motion and denied it completely, stating at that time that there were no issues with the parenting plan.

53. I had anticipated, having very clearly laid out for the court some of the concerns about Mr. Matt's behaviors and parenting choices, there would be a change in the case and some actions might be taken for the children's well being. I thought Mr. Bender in particular would be embarrassed to be associated with a parent with so many distasteful tendencies as Mr. Matt, as exhibited repeatedly in my pleadings, as all the children's doctors, therapists, teachers would agree.

54. However it was clear that my pleadings were unwelcome by Judge Johnson and Mr. Bender.

a.  In March, 2021 I first attempted to schedule a hearing on my petitions.

b.  First Judge Johnson delegated the pleadings to Mr. Bender to rule on them

    informally, which is to say if Mr. Bender liked them they could be heard

    and if he did  not like them they would be buried forever.

c.  Outsourcing litigation to GALs is a longstanding custom in the Domestic

    Relations Division of the Circuit Court of Cook County under the

    leadership of Grace Dickler. Though explicitly prohibited under Illinois

    law, Judge Johnson and others reduce their workload by assigning

    pleadings to GALs to review and rule upon. The GALs are then

    handsomely compensated by parents. Judges like Judge Johnson receive

    the further benefit of assurances of a future appointment as a GAL or child

    rep and are therefore motivated by future kickbacks to provide more cases

    and compensation to their friends in the role of GAL.

d.  Shortly after Mr. Bender was assigned to rule on whether my PRTSCs

    could be heard, Mr. Bendeer ordered Dr. Palen to call me. Dr. Palen said,

    "I spoke to Mr. Bender who obviously knows the case a lot better than I

    do. He wanted me to tell you no harassment happened."

e.  Mr. Bender likes to "flex" by having other parties call to relay his

    messages, showing that he's in charge.

f.  I persisted with Judge Johnson. I was particularly concerned with Mr.

    Matt's tenement scheme wherein he built three illegal apartments in his

    home, each with an unpermitted bathroom, kitchen, washer and dryer. No

    fire escapes or widened halls were added. Also all tenants had access to

the children's unlocked living quarters. Mr. Matt stated this was not an issue because the tenants had locks on their doors. The children do not. Mr. Matt also refused to get background checks on the tenants or to tell me their names, as required by parenting plan.

g.  I also persisted with Judge Johnson to rule on my motion for financial allocation and my response to Mr. Wehrman's motion to quash a subpoena to his firm for Mr. Matt's payments. I requested these because Mr. Matt had claimed to the court in his financial affidavit to earn $27,000 per year and have $1,000 in a single account. (Exhibit O)

h.  My motion for allocation of fees presented a thorough description of Mr. Matt's assets which he had not disclosed in his financial affidavit. I provided bank statements with Mr. Matt's name at his father's address in Germany and Mr. Matt's businesses named on some accounts. I presented proof of at least five other accounts and proof of three businesses not included in the affidavit.

i.  I also subpoenaed Mr. Wehrman for the source of payments he had received from Mr. Matt. Because the motion for allocation of fees in support of which I was seeking Mr. Wehrman's payment records, was about allocation of fees to an attorney, Mr. Bender. Mr. Wherman is an attorney so the source of funds available to pay attorneys is relevant in a motion to allocate fees to attorneys. (Exhibit P, Q, R).

j.  I also happen to know that throughout our divorce, when our assets were meant to be in Receivership, Mr. Matt maintained a joint account with his

father, Leo Matt, at Wintrust Bank. Leo Matt would deposit funds from Peter Matt's unreported businesses in Germany and then Peter Matt would withdraw the money to spend as he wished, calling the funds loans or gifts. Mr. Wehrman and Mr. Peter Matt simply state that the account is not Mr. Peter Matt's, just his father's account.

k. I have presented checks signed by Mr. Peter Matt from the account to me. I have presented checks paid by me to Mr. Peter Matt and accepted into the account. Mr. Peter Matt's name is on the account.

l. Because even then I knew Mr. Bender's fees would bankrupt me, I felt it was fair to show that Mr. Matt has resources to pay these bills. I did not and was unable to acquire more debt.

m. When I repeated my request for Judge Johnson to rule on my response to Mr. Wehrman's motion to quash the subpoena, Mr. Wehrman said, "Your honor, she just wants to show I'm laundering money for my client". No hearing was allowed nor has been since.

n. When I again pushed to have a hearing scheduled on my petitions, Judge Johnson addressed Mr. Wehrman and said, "You're going to have to agree to a 604.10 B or she's just going to keep doing this."

o. Mr. Wehrman and Mr. Bender discussed the matter outside of court and decided between them to initiate a 604.10b evaluation with Dr. Gerald Blechman, Mr. Bender's choice, a friend of his whose office is more than an hour from my home, in DuPage County, Illinois. Mr. Bender said he recommended him in part because he would be efficient, estimating four

months to complete his evaluation. He has now been in place for more
than a year and will not even provide an estimate to the end of his
engagement.

p. On May 25, 2021 Judge Johnson ordered Dr.Blechman's appointment.
Because there was no new 604.10 b motion seeking an appointment I
asked Mr. Wehrman to draft the order with the verbage from my denied
motion, which limited the scope to parental decision making rights, not
parenting time. Mr. Wherman insisted on drafting it without scope and it
was so entered. (Exhibit K).

58. Parties consistently block my right to file any pleading out of a wish to avoid
disclosure of information damaging to themselves or to Mr. Matt.  On May 27, 2021 I
emailed Ms. Kaye Mason, Judge Johnson's clerk, to schedule my hearing on my petitions
to stop harassment of me  and the Motion for Allocation of Fees.

df. Mr. Matt did not want these pleadings brought to court because they contain
voluminous evidence of his ongoing violations of the parenting plan and other
misconduct.

g. Mr. Matt had been given the opportunity to provide a written response to the
pleadings and did so.

h. Mr. Matt, via Mr. Wehrman, responded to the pleadings and provided no
evidence that the claims made therein were in any way false. Mr. Matt provided
no explanation for the serious misconduct disclosed therein nor did Mr. Matt
indicate he intended to stop any of the misconduct.

i. On May 27, 2021 Mr. Wehrman requested Ms. Mason ask Judge Johnson to deny me a hearing on these matters . Mr. Wehrman emailed Ms. Mason, "Kaye: When we were before the Judge on Monday, he appointed a 604 evaluator and set everything for status on July 13, 2021. I do not believe Judge Johnson is having any hearings on this case at this time." Ms. Mason relayed a message from Mr. Wehrman to Judge Johnson asking him to personally cancel the hearing. Judge Johnson verbally told Ms. Mason to cancel the hearing and she relayed that she had done so to Mr. Wehrman and me.

j. Petitioner is given the ongoing opportunity to discuss any number of matters with Judge Johnson via his clerk on an ex parte basis. Mr. Wehrman is a member of the secret email thread and is able to send messages to Judge Johnson through Ms. Kaye Mason. I have been strictly rebuked for any communication to Ms. Kaye Mason that is not routine scheduling, which is to say legally allowable, there is an inherent imbalance. (Exhibit EE). As is protocol, I copied Mr. Wehrman, Petitioner's attorney, and Mr. Bender, GAL.

e. Ms. Mason followed Cook County Domestic Relations Division protocols and scheduled my court appearance.

t. Particular scrutiny should be given to the fact that I was at this time pro se and, Judge Johnson did not utilize the leniency afforded to judges to Ill. Sup. Ct. R. 63, (4) to "make reasonable efforts, consistent with the law and court rules, to facilitate the ability of self-represented litigants to be fairly heard".

u. In fact, contrary to the above statute, Judge Johnson has consistently held me to a higher standard in order to access judicial process than the standard an attorney must meet. This is simply an impossible situation for a litigant.

v. This imbalance is evidence of overwhelming bias, which I assert to be in furtherance of criminal conspiracy, against me.

w. In fact Mr. Wehrman is allowed to have PRTSCs heard during this time and has. No custody evaluation end is in sight.

59. It was finally at this time, around Memorial Day, 2021, that I became certain that I am the victim of corruption. I also became aware of the phenomenon of guardian abuse being raised in the media. One reason I had previously talked myself out of believing I was the victim of corruption was that I am not rich and Mr.Matt's assets are hard to access. I didn't understand why venal men would want to target us. Though I understand that guardians and GALs are quite different, I came to realize that A.D.M., not me, might be the target of corruption due to the ability of others in authority to exploit him until the end of his life. I remain extremely concerned that efforts to undermine me might be intended to ultimately take guardianship of my disabled son.

60. That summer of 2021 I hired a therapist, Lina Costelloe, and hoped she'd tell me I was paranoid but she said she believed me. She still does. She also said that I was in danger and that I needed to start getting more paranoid.

61. That summer and fall I also disclosed these matters to Michael Sharp, head counsel for Jefferies and Michael Wolf, head pastor for Lake Street Church of Evanston.

62. Two fellow Lake Street congregants referred me to two domestic relations attorneys and two legal clinics. All refused me. Neither family law attorney wanted to be involved in a case with Michael Bender. One referred me to an attorney named Alexandra Brinkmeier. My mom, who is retired and not wealthy,  loaned me the money to retain her. I hired her to help protect me during the Custody Evaluation process which I knew to be dangerous for me and the children.

63. Since his appointment Dr. Blechman, the Custody Evaluator, has administered three psychological evaluations of me:

    a.   On September 24, 2021 Dr. Blechman administered the MMPI-2 or Minnesota Multiphasic Personality Inventory -2 (MMPI-2) on me as part of his Custody Evaluation, using test form number 348278 in his office in Wheaton, Illinois.

    b.   On Sept 24, 2021 Dr. Blechman administered the Millon Clinical Multiaxial Inventory - III (MCM I-III) using test form number 1130499 in his office in Wheaton, Illinois.

    c.   On this date Dr. Blechman told me he had administered the same psychological evaluations to Mr. Matt. It is my belief that Mr. Matt was given these tests and demonstrated very limited empathy, a pattern of deceitfulness and other clusters of traits often associated with sociopathy and/or narcissistic personality disorder. These are not ideal caregiver qualities and so Mr. Bender instructed Dr. Blechman to obstruct justice and hide all tests. Dr. Blechman has.

    d.  Around October 17th, 2021 I received a test form in the mail for the SCL-90-R Symptom Checklist-90-R with the product number 51417. I completed and returned this form to Dr. Blechman via US mail on October 17th, 2021.

    e.  He has never released the results and refused to provide me with the test results or raw data for myself or for Mr.Matt when I subpoenaed them in March, 2022.

64. It was during the custody evaluation process that T.M.M. began to report physical and emotional abuse by Mr. Matt to Dr. Blechman and others. Mr. Bender and Dr. Blechman have aggressively hidden reports of child abuse from the court and intentionally detroyed any possibility of an appropriate investigation into allegations of child abuse.

    a.Mr. Bender in his role as Guardian Ad Litem has sought to hide reports of Mr. Matt's abusive behaviors or parental unfitness on repeated occasions. (Exhibit GG)

    b. In the PRTSC Regarding Failure to Supervise Children, Mr. Bender was presented with extensive documentary evidence of Mr. Matt's refusal or inability to provide appropriate supervision for our children, among other concerning behaviors. In the PRTSC Regarding Strange Adults in the Children's Home, Mr. Bender was made aware of Mr. Matt's plan to convert his zoned single family home into a tenement building for single men.In the PRTSC Regarding Harassment,Mr. Bender read two threats Mr. Matt emailed to members of my church and a police report stating that Mr. Matt's persistent parenting time violations need to be heard by a judge.

c. In addition to specific acts committed by Mr. Matt, the documents contain disturbing examples of Mr. Matt's emotionally abusive method of interacting with me and his ease in lying and gaslighting in order to manipulate others.

d. Mr. Bender agreed not to allow any of the disturbing matters presented in the above Petitions to be heard as part of the deal with Mr. Wehrman to initiate a Custody Evaluation.

e. Subsequent to these filings, reports of domestic violence have been raised by myself and credible third parties but Mr. Bender has sought to mischaracterize or hide these reports in order to protect his own and Mr. Matt's reputation.

f. On Monday, July 26, 2021 I attended a meeting with my younger son T.M.M., then aged nine, and Dr. Gerald Blechman, Custody Evaluator. At this time T.M.M. expressed suicidal ideation to Dr. Blechman and myself, stating multiple times that he wished to kill himself.

g. At the time neither Dr. Blechman nor myself believed T.M.M. actually intended self harm, but I was concerned about his mental well being. Dr. Blechman also stated that he felt T.M.M. seemed distressed.

h. That evening T.M.M. became further distressed and said the reason that he wants to kill himself is because his dad makes him go to Northwestern. He also said his dad told him he needs to have perfect MAP [standardized test] scores. He cried and said that he doesn't want to go to his dad's any more. I had known Mr. Matt to be extremely controlling but until this time I had not realized how intensely he has targeted T.M.M. for his abuse.

i. Since before he was born, Mr. Matt has planned for T.M.M. to be a professional athlete because his family believe's athletic achievement matters. So Mr. Matt likes to have T.M.M. in at least four hours of soccer training on every school day (he is in fourth grade) and at least six hours on weekends during the school year. During the summer he likes to have him in six hours of soccer camp, then a league or private training after camp, then another league and private training on weekends. On top of this he is fixated on T.M.M. doing a "gifted" program, which is to say an academic enrichment program, which T.M.M. hates. Northwestern refers to The Northwestern Center for Talent Development, an enrichment program Mr. Matt makes T.M.M. attend despite his opposition. Because of my own experience with Mr. Matt I know he can become very fixated on controlling the thoughts, feelings and behaviors of his targets and I see the damage it is causing T.M.M.. It isn't enough that he has to train all day and do extra homework but T.M.M. is under extreme pressure by Mr. Matt to "like it".

j. On Tuesday, July 28th, 2021 I wrote to my attorney at the time, Alexandra Brinkmeier, concerned that T.M.M.'s distress might be used to disparage or discredit me. (Exhibit Y)

k. Ms. Brinkmeier was concerned about T.M.M.'s behavior and called Michael Bender that day to report the incident and express an interest in removing T.M.M. from his father's home while this matter could be investigated.

l. After picking T.M.M. up from soccer camp on Tuesday, July 28th, 2021, I was driving T.M.M. and his brother A.M.M. to the community pool to swim when he escalated his talk of self harm to action. I recounted the events to my attorney:

"*I was in the car around 5 today, driving T.M.M. and A.M.M. home from camp. T.M.M. picked up a plastic wrapper in the backseat and covered his mouth. He said he was going to kill himself. A.M.M. and I both told him not to do it. I asked why he wanted to kill himself. He said he wasn't good at anything. I said I thought he was good at a lot of things, why does he think that. He said I'm not good at anything. A.M.M. yelled, is it because of Dad's lies. T.M.M. didn't say anything. I said, what do you mean about Dad's lies. A.M.M. said, dad's lies! I asked T.M.M. if he still wanted to go to the pool, where we were headed, he said I'm going to drown myself. I said I would be really sad if that happened. Because he goes to his dad's tomorrow, I asked him if he was sad about going to his dad's. He said he was and started to cry.*" (Exhibit Y)

m. I was concerned because T.M.M. had escalated his self harming behaviors to a physical act, not just words, so I called his pediatrician, Dr. Patricia Brunner, the next morning, Wednesday, July 29th, 2021.

n. Dr. Brunner instructed me not to send T.M.M. to camp, that she wanted to see him first.

o. While waiting for the appointment, at around 4pm, I received a phone call from Ms. Brinkmeier who had just spoken to Mr. Bender. She said, "Bender spoke to Blechman and said it never happened." I asked, "What never happened?", She said, "Bender said Blechman said T.M.M. was upset but he never said he wanted to kill himself." I told her Mr. Bender was trying to flex with her, that I don't believe Blechman said that. I said T.M.M. made statements like this at least three times. I didn't believe T.M.M. was in physical danger but both Dr. Blechman and I were concerned.

p. At 5:00pm Mr. Matt met me at Dr. Brunner's office with T.M.M., who was now in his care per court ordered parenting time. T.M.M., Mr. Matt and I entered Dr. Brunner's office and she interviewed T.M.M. in our presence. After exchanging greetings, neither Mr.Matt nor I spoke. Dr. Brunner asked T.M.M. a number of

questions. He stated to her that he knew he was there because he had said he wanted to kill himself. He said he first said it on Monday, the day of his appointment with Dr. Blechman. T.M.M. also stated to Dr. Brunner that he didn't want to go to his dad's house and he didn't want to do Northwestern. (Exhibit Z)

q. After this appointment Mr. Matt informed his attorney, Mr. Wehrman, who informed Mr. Bender not to talk to Dr. Brunner.

r. That day Dr. Brunner called Mr. Bender who could not be reached and did not return her calls. Although Mr. Bender had obviously been on calls that very day in order to try to obstruct justice and intimidate Ms. Brinkmeier he would not return Dr. Brunner's call for almost a month in order to make sure he did not hear reports of child abuse prior to his next court appointment and in order to make sure any investigation was ruined.

s. On Saturday, August 7th, 2021 T.M.M. and his brother A.M.M. returned to my residence per Parenting Plan. After dinner on that date I asked T.M.M. if he had ever seen his dad hit or drag his brother, A.M.M.. A.M.M. had reported to me that during the Covid lockdowns in the spring and summer of 2020 Mr. Matt had hit him, kicked him and physically restrained him in order to force him to do Zoom ABA therapy. I asked T.M.M. if that was true. T.M.M. said, "Yes it was really bad during COVID."

t. I asked T.M.M. if his father ever hit him (T.M.M.). He nodded his head. I asked him where his dad hit him, he put his hand on his right cheek.

u. I asked why his dad had hit him. T.M.M. said, "Northwestern".

v. T.M.M. then started crying and hid his face with his hands. He said he didn't want to talk about it.

w. At this same time T.M.M. had been congested, feverish and had a sore throat.

x. On Wednesday, August 11th, T.M.M. was ordered to have a COVID test and a telehealth appointment at his pediatrician's office with Dr. Shoshana Woskow. I told Dr. Woskow during this appointment that I am a trauma survivor and I have learned that ongoing illness of the type that T.M.M. was experiencing is sometimes the result of trauma which weakens a person's immune response. I told Dr. Woskow that T.M.M. had recently reported physical violence in the home at his father's residence.

y. Dr. Woskow questioned T.M.M. and he reported to Dr. Woskow that his father had hit him with the back of the hand. At first he said "He hit my face". Mr. Matt is right handed and, were he to backhand T.M.M. on the face, his hand would hit the right side where T.M.M. first indicated to me he had been hit. T.M.M. then became upset and said, "never mind, he hit my arm" then he said, "never mind, he didn't hit me". T.M.M. then wanted to hide his face and not be on screen. T.M.M. also reported that his dad had locked him in his room "to do math worksheets". He also stated that when he told his dad he didn't want to do "Northwestern" his dad told him he would force him to stay up all night if he refused to do the work.

z. On August 11th, 2021 Dr. Woskow recorded these events in a sealed record which I was not allowed to access in order to protect T.M.M. during an investigative process. I still do not have this record though I believe every effort was made to bring it to the Court's attention through Mr. Bender.

aa. Dr. Woskow indicated that Dr. Brunner would call Mr. Bender. Dr. Brunner did again attempt to call Mr. Bender that same day but could not reach him. He did not return her calls. He had not returned her call from the week before regarding the suicidal ideation reports.

bb. Mr Bender intentionally avoided talking to Dr. Brunner, aware of what T.M.M. had stated in Mr. Matt's presence, until after the next status date about a week later, at which time he played down T.M.M.'s distress and said suicide was never mentioned.

cc. Due to Mr. Bender's intentional failure to intervene, a proper investigation was made virtually impossible.

dd. Mr.Bender's inactions,whether induced to hide  abuse by Mr.Matt or out of a personal interest in protecting his reputation, have been profoundly damaging to to T.M.M. who has disclosed to me and this therapist that he is fearful of punishment by his father if he speaks the truth or voices disagreement.

65. I am unable to retain counsel due to my status as a target of corruption. This was made evident when I emailed my most recent attorney, Alexandra Brinkmeier an email with the subject line, "Crimes I've reported to you" on November 8, 2021, and asked for help in stopping ongoing crimes against me and bringing these facts to Court.

a. At the order of senior leadership at her firm, Ms. Brinkmeier abruptly resigned three days later on November 11, 2021, the reason being "philosophical differences".

b. At the status hearing on November 15, 2021 I asked Judge Johnson to please deny Ms. Brinnkmeier's motion until counsel could be found to replace her and stated

that her abrupt departure would cause me material harm and imperil me and my children. Judge Johnson ignored my request and allowed Ms. Brinkmeier to resign with no attorney to replace her. I submitted an affidavit stating my concern because I didn't know what motion or action to file to try to stop her. (Exhibit AA)

c. At this same appearance Michael Bender asked Judge Johnson to order me to pay his fees for a second time. Ms. Brinkmeier pointed out that I cannot afford the fees, that I have an allocation of fees motion pending for years. Judge Johnson refused to hear the allocation of fees motion and ordered the fees. Even as he was ordering it I knew that it was impossible to make the payments being ordered, but I knew if I said anything else he might take the children or put me in jail immediately.

d. On November 16, 2021 Judge Johnson fraudulently entered an order saying Michael Bender's fees are necessary and reasonable. Because Judge Johnson has refused to hear my arguments for three years against Michael Bender's fees bankrupting me he could not form an opinion if they are reasonable. As Michael Bender is only appointed in order to get kickbacks and performs no duties, he also knows Mr. Bender's fees to be unnecessary, particularly in his third year of "writing a report" per statute. Because Judge Johnson knows Mr. Bender to be engaged in racketeering activities, he further knows his fees cannot be just.

66. Since this time I have desperately sought to have my case transferred from Judge Johnson's calendar, first through a Petition for Substitution of Judge in which I raised the issue of Judge Johnson's continued actions to hide the crimes of his colleagues and friends and the multitude of criminal acts that had been committed in the conduct of this case. At the time of filing I also sent a public letter to Judge Dickler, copying members of

the press and civil rights bodies, asking Judge Dickler as an administrator to help protect me as a whistleblower in her division and to ensure that she was aware of the crimes and misconduct, in particular, by Michael Bender, who reports to her. In an effort to maintain an appearance of plausible deniability about the racketeering activities disclosed in my motion to Substitute Judge and open letter, Judge Dickler asked Brianna Steger to send me a threatening note to curb such disclosures to her. In this letter I was reprimanded for engaging in "ex parte" communication with Judge Dickler though I maintain I was not asking her to intervene through ruling but as an administrator to individuals she knows to be engaged in crimes of which I'm the victim. However it is my belief Judge Dickler wanted to assure that this motion would be unsuccessful and that these crimes and misdeeds not be made public so, rather than randomly assigning the hearing on my motion to substitute judge, she asked that it be assigned to Judge Matthew Link who she knows to be skilled at hiding evidence and obstruction of justice through his many years of conspiring to hide Ed Burke's crimes in his role as an attorney for the city of Chicago. Judge Link heard my motion to substitute judge on January 11, 2022. My main basis was that Judge Johnson is biased against me as shown by past, current and ongoing ex parte communications intended to strategically benefit another party over me. My Petition was denied.

67. On February 7,2022 the court appointed Custody Evaluator, Dr. Gerald Blechman, selected by Michael Bender, submitted a document he called a preliminary report of his investigation.

      a. Dr. Blechman has been serving in the capacity of custody evaluator for a year, though he was originally appointed on Mr. Bender's assurance that he could do

a swift report, within four years. Dr. Blechman has interviewed me and my children for more than four hours.

b. Dr. Blechman has been given consent to speak to the children's doctors, therapists and teachers.

c. Dr. Blechman has reviewed all the pleadings that present evidence of Mr. Matt's concerning behavior, the PRTSCS RE Harassment, Failure to provide childcare and strange adults in the children's home. I have personally given him the documents twice. First I gave him a large colored binder with tabs dividing the pleadings and exhibits. Dr.Blechman reported to me that he did not recall receiving it. I then mailed the documents via tracked parcel using Fedex and Dr. Blechman confirmed receipt.

f. However Dr. Blechman's preliminary report contained no visit notes, no evaluation findings, no test results, no documentary evidence and no input from credible third parties, such as doctors, teachers and police, which had been presented repeatedly to Dr. Blechman by myself.

g. Dr. Blechman's preliminary "report" consists exclusively of pasting an incoherent screed from Mr. Matt received via email, according to Dr. Blechman's letter.

h. Among Mr. Matt's grievances listed - and apparently also Dr. Blechman's professional opinion as Dr. Blechman submitted this letter as official finding - were inferences about my own mental well being, Mr. Matt wrote of me and Dr. Blechman entered into the record:

*"During the hearing I was a little frightened to hear how her mind works these days. She was saying things like: "...you know, first of all, I love democracy. And January 6, 2020 (sic), I saw people storming the Capital (sic). So, I feel spiritually and emotionally called to protect democracy, And my understanding of a judge's role in an American courtroom is that it is a sacred duty to uphold the judicial process in that court **And so, Mr. Trowbridge's (her former lawyer) malfeasance only matters here because Judge Johnson, Mr. Wehrman, and Mr. Bender observed it over the course of four months, and did nothing to intervene."***

h. First, I would like to state the obvious. Dr. Blechman, after 8 months of "evaluating" me, presented a two page letter addressed to Mr. Bender in which he just happened to find it necessary to make Judge Johnson aware that I have complained about my civil rights abuses by Judge Johnson himself. It seems curious to me that of all the factors that influence my children's well being, it stood out as Dr. Blechman as critical to highlight my whistleblower activity.

j. As it happens I do believe that a judge's role is sacred. I am a woman of faith and I do believe that God wishes for me, and all others, to act in the furtherance of truth and justice. I believe as Cornel West has stated, "Justice is what love looks like in public". My faith and my political beliefs ought never to be entered into the record as "proof" of my mental unfitness, particularly where an actual investigation was conducted as to my mental fitness and set aside to be replaced by deranged hearsay.

68. Mr. Wehrman, Mr. Bender and Dr. Blechman conspired to retaliate toward me for testifying to Judge Link that the parties had conspired with Mr. Trowbridge in his efforts to obstruct justice, deny service and commit identity theft by looking on as officers of the Court and not intervening to stop crimes in progress. It is quite literally stated in the only "evidence" as the basis for an illegal revocation of parenting rights.

69. Since being named as a defendant in this suit, Dr. Blechman, in conspiracy with Michael Bender, Steven Klein, Christopher Wehrman and Robert Johnson, has engaged in a specific scheme to impose illegal fees upon me for his own service and to extort me for payments not allowed under Illinois law.

a. Under Illinois law 550 ILCS 604.10 b, "**The court shall order all costs and fees of the professional to be paid by one or more of the parties, subject to reallocation** in accordance with subsection (a) of Section 508."

b. At the time of his request to hire Gerald Blechman Mr. Bender said he was desirable because he is cheap, charging only $4,000. Parties were ordered to pay 50% of this retainer by court order. No other order was entered regarding fees. No motion for fees has been made.

c. At my first meeting with Dr. Blechman he presented me an invoice and I paid him $2,000.

d. On April 8, 2022, Dr. Blechman asked me to give him $2,000. I wrote that I was confused and had already paid him. I asked him to please mail any invoice to my current address, which I provided in this email. Dr. Blechman wrote back "never mind".

e. Dr. Blechman has not sent me an invoice. No order for fees beyond the retainer, split 50% has been entered.

f. In the document called Petition for Prospective Attorney's Fees and For Allocation of Expert and GAL Fees, Mr. Wehrman in conspiracy with Mr. Klein write, "Through April 11, 2022, Peter Matt has paid $8,900 to Dr. Blechman for Dr. Blechman's appearance in this matter."

g. To my knowledge no invoice has been presented to Mr. Matt or to me, no order entered as frees so I can only interperet this transaction to be a personal payment by Mr. Matt through Mr. Wehrman and Mr. Klein, to influence an expert in testimony that is beneficial to Mr. Matt, which is to say a bribe.

h. Curiously, Dr. Blechman also copied an email address, bender@caesarbenderlawcomcast.com, which is not Mr. Bender's email address of record. I suspect, as with the private thread through Kaye Mason, this is used in furtherance of actscriminal conspiracy.

**Customs Unique to the Domestic Relations Division of the Circuit Court of Chicago**

70. The Domestic Relations Division of the Circuit Court of Chicago has a number of unique customs, some of which are contrary to Illinois law. Illinois statute, 750 ILCS 5/506) (from Ch. 40, par. 506）regarding GALs reads:

*a) Duties. **In any proceedings i**nvolving the support, custody, visitation, allocation of parental responsibilities, education, parentage, property interest, or general welfare of a minor or dependent child, the court may, on its own motion or that of any party, appoint an attorney to serve in one of the following capacities to address the issues the court delineates:*

*(1) Attorney. ……*

*(2) **Guardian ad litem.** The guardian ad litem shall **testify or submit a written report to the court regarding his or her recommendations in accordance with the best interest of the child**. The report shall be made available to all parties. The guardian ad litem may be called as a witness for purposes of cross-examination regarding the guardian ad litem's report or recommendations. **The guardian ad litem shall investigate the facts of the case and interview the child and the parties.***

*(3) Child representative. …*

*(a-3) Additional appointments. During the proceedings the court may appoint an additional attorney to serve in the capacity described in subdivision (a)(1) or an additional attorney to serve in another of the capacities described in subdivision (a)(2) or (a)(3) on the court's own motion or that of a party only for good cause shown and when the reasons for the additional appointment are set forth in specific findings.*

*(a-5) Appointment considerations. **In deciding whether to make an appointment of an attorney for the minor child, a guardian ad litem, or a child representative, the court shall consider the nature and adequacy of the evidence to be presented by the parties***

*and the availability of other methods of obtaining information, including social service organizations and evaluations by mental health professions, as well as resources for payment.*

*In no event is this Section intended to or designed to abrogate the decision making power of the trier of fact. Any appointment made under this Section is not intended to nor should it serve to place any appointed individual in the role of a surrogate judge.*

*(b) Fees and costs. The court shall enter an order as appropriate for costs, fees, and disbursements, including a retainer, when the attorney, guardian ad litem, or child's representative is appointed. Any person appointed under this Section shall file with the court within 90 days of his or her appointment, and every subsequent 90-day period thereafter during the course of his or her representation, a detailed invoice for services rendered with a copy being sent to each party. The court shall review the invoice submitted and approve the fees, if they are reasonable and necessary. Any order approving the fees shall require payment by either or both parents, by any other party or source, or from the marital estate or the child's separate estate. The court may not order payment by the Department of Healthcare and Family Services in cases in which the Department is providing child support enforcement services under Article X of the Illinois Public Aid Code. **Unless otherwise ordered by the court at the time fees and costs are approved, all fees and costs payable to an attorney, guardian ad litem, or child representative under this Section are by implication deemed to be in the nature of support of the child and are within the exceptions to discharge in bankruptcy under 11 U.S.C.A. 523.** The provisions of Sections 501 and 508 of this Act shall apply to fees and costs for attorneys appointed under this Section.*

71. In 2017 a Cook County mother reported Cook County Domestic Relations Division Guardian Ad Litem (GAL) David Pasulka to the disciplinary committee of the Illinois Bar (ARDC) because he told her that if she did not have sex with him he would make sure she never saw her children again. She denied him sex and he took away her children.

   a. Illinois law does not bestow the authority to "take away children" on GALs.. In fact the people and legislators of Illinois have anticipated abuses of authority and clearly mandated that GALs not act as surrogate judges or triers of fact. They are authorized to write  a report, but Mr. Pasulka did not threaten to write a bad report, he threatened to take her children and was able to do so.

b. When the mother first reported the abuse Mr. Pasulka was not sanctioned by the ARDC or by his boss in the Domestic Relations Division, Presiding Judge Grace Dickler. No actions were taken for the next three years.

c. David Pasulka was not just a GAL but for twenty years he headed a secretive committee that selects GALs, child reps and other lucrative appointees for the Domestic Relations Division and worked closely with Presiding Judge Grace Dickler. David Pasulka helped get the GAL Michael Bender, defendant and GAL to my children, his appointment.

d. The GAL system in The Domestic Relations Division is a patronage system, with many attorneys and judges vying for a lucrative appointment as a GAL or child rep in the future. Domestic Relations judges and attorneys are economically incentivized to agree with GALs regardless of facts or of their client needs because of the potential for future appointments. Many judges, including Mr. Bender, become GALs after retiring from the Circuit Court.

e. GALs in the Domestic Relations Division are given incredible power, not given by Illinois law. On January 12, 2021 I moved to have Michael Bender, a former Division judge, removed as Guardian Ad Litem because after a year of appointment, with my divorce final and no motions pending, he had never spoken to the children's doctors, teachers or therapists and I could not afford his bills. Judge Johnson, in denying my motion, rebuked me and said Mr. Bender was not just a great judge but a mentor and someone he had often had cause to seek out for advice. Judge

Johnson said Mr. Bender would stay on. I asked how long. He replied, "As long as Mr. Bender sees a need for his appointment".

f. A GAl is not authorized by Illinois law to appoint himself or to determine if his own appointment should last. The GAL statute in fact explicitly prohibits GAL from acting as surrogate judges and issuing rulings. It is a power given to GALs by the Domestic Relations Division under the authority of Grace Dickler and unquestioned by the attorneys and judges who work there.

72. In August, 2020 Mr. Pasulka was finally fired by Judge Dickler around the time he was indicted. On August 14, 2020 twenty eight female attorneys working as Domestic Relations Division attorneys wrote to Presiding Judge Grace Dickler to complain of endemic sexual harassment by male judges, attorneys and appointees toward female attorneys and staff. The abuses they listed included verbal abuse as well as sexual assault and rape. In the open letter Judge Dickler was asked by these attorneys to take action to fix the culture of sexual violence in her Division She has taken no actions. She has never reviewed the GALs appointed by a known sex offender to consider whether they are fit for their roles.

73. As a litigant who has spent years in her division I am aware of no safeguard or reporting systems for ongoing abuses by court appointees and judges. But I did try to make Presiding Judge Dickler aware of the abuses in my case, specifically ongoing crimes by officers of the court and a direct and explicit appeal to protect me as a whistleblower for reporting federal crimes, as is my right. So, as I had seen other parents and the 28 female attorneys do in the press, On November 21, 2021, I drafted an open letter to Judge Dickler copying Injustice Watch, my pastor and civil rights offices of the federal and state governments. After writing this I received a

rebuke from Division Attorney Brianna Steger for initiating ex parte communication. She did not inform me of an alternate way to report crime and exploitation by GALs and judges to Presiding Judge Dickler. When litigants make a sincere effort to report abuse we are not just ignored we are  chastised.

74. The judge assigned to my case from August 13, 2018 was Raul Vega, who was known within the division to be prone to rages and extremely misogynistic.

      a.  When he was first assigned my attorney said, "Oh he's going to love you." I was advised by two attorneys to wear short skirts and high heels and to show cleavage because Judge Vega liked to see women's bodies. I was told by one attorney that their firm always sent their youngest, prettiest associates before Judge Vega because he likes to flirt with young female attorneys.

      b.  At my first appearance before Judge Vega, represented by Mary Katherine Avery, I observed that Judge Vega did not follow any sequence of events or seeming order when attorneys spoke. Rather they had to interrupt and cross over each other. I observed that Judge Vega did not like to see female attorneys interrupt, but he did not give female attorneys time to speak. I observed that he would listen to men who raised their voice and interrupted but he chastised and  female attorneys for being rude when interrupting.

      c.  On multiple occasions Judge Vega winked at me. On one occasion he initiated a conversation with me from the bench when I was the first

person in the courtroom after a morning recess. He smiled at me  and asked me if I had spent my morning shopping.

d.  Shortly after my divorce was finalized on September 27, 2017,  my ex husband filed a contempt allegation. As part of our divorce agreement I was required to sign a quit claim deed on our former marital home, which we had purchased with cash for $450,000. As part of the same agreement Mr. Matt was required to remove me as the sole guarantor on $600,000 in unsecured business loans for the business he now owned. Mr. Matt had not removed me as personal guarantor for his loans so I told him I would sign the quitclaim if he would keep it in escrow pending my removal from the loans. Mr. Matt sued instead. Initially, at hearing,  Judge Vega heard my argument and was in agreement, preparing to deny the contempt allegation and draft an order to keep the quitclaim in escrow. Then I spoke out of turn and Judge Vega exploded, screaming at me that I needed to learn to keep my mouth shut. He found me in contempt of court and said if I did not sign the quitclaim before midnight that day he would imprison me. He also imposed crippling financial sanctions.

e.  Illinois law does not give Domestic Relations Division judges the authority to find women in contempt of court because they need to learn to keep their mouths shut. It is conferred upon them by the Domestic Relations Division policy of absolute judicial power.

f.  On November 30, 2021 I reported my experiences with Judge Vega to the editors at Injustice Watch. Jonah Newman wrote back to me and he

informed me that other women had come to them and that his colleague Kelly Garcia was writing a story about Vega that was about to be published. When I read the piece a few months later many of the complaints were similar to mine.

g. Judge Dickler was well aware of Judge Vega's tendencies and the risk of embarrassment they posed to her reputation so she removed him as a division judge while he was assigned to my case. Chief Judge Evans and Presiding Judge Dickler did not, however, report Judge Vega to the Illinois Judicial Board, and one would imagine that a report from two such prominent judges could have swiftly resolved the ethical issues. Instead they promoted Judge Vega to a leadership role as the Presiding Judge of the Domestic Violence Division of the Circuit Court of Cook County on August 13, 2018.

h. There was no basis to promote Vega to a leadership role and hearing he, of all people, was selected to set policies that impact the most vulnerable women shocked me to my core and made me truly terrified of this Division.

i. I believe it was Judge Evans' and Judge Dickler' hope that by not having as much contact with individual litigants like me Judge Vega would not bring bad publicity to the court. But Not long after his promotion Judge Evans ordered Judge Vega to take an early retirement after he was heard by another judge making offensive comments on a phone call.

75. It is also my belief that Judge Dickler abuses her power to assign cases and violates the requirement that Circuit Court cases be assigned randomly. For example, I do not believe that my petition for substitution of judge was randomly assigned to Judge Matthew Link. Relatively new to the bench, Judge Link previously spent eight years working as legal counsel for the City of Chicago under the direction of Alderman Ed Burke. It is my belief that Judge Dickler assured that my petition would be heard by someone with a demonstrated history of keeping the city's ugly secrets from the public. Judge Dickler also has the power to assign "lucrative" cases to preferred judges. For example, the average annual income in Chicago is around $31,000. The average annual income in my family's zip code, 60091, is $161,000. I do not believe that Micahel Bender, by way of Judge Johnson, randomly gets assigned to the "good cases", which is to say a case where one or both parties have money, like mine.

76. The most effective and consistent policy in the Division to empower Judicial Abuse is the absence of any way for a party who is not in favor with a judge to schedule a hearing on urgent matters. In this way a judge may maintain a bizarrely biased position without being troubled with a paper trail showing contrary facts. This is known to Legal Aide who, through staff at CARPLS, which is their service to support pro se and indigent litigants. When I asked a staff member how to schedule a hearing, she said, "Well that is a problem." The only way is through the Court's scheduler. In my case I am forced to schedule through Kaye Mason whom I have quite publicly and loudly accused of corruption since at least six months ago. (Exhibit V).

**Continued Denial of Constitutional Rights by Iris Martinez**

77. The office of Clerk Iris Martinez has a number of unique customs that foster seemingly inevitable civil rights violations and the opportunity to defraud members of the public

     a. Clerk employees are allowed to email litigants anonymously, using shared email addresses and on a multitude of occasions they have refused to provide contact information when requested.

     b. Clerk employees in the Domestic Relations Division of the Circuit Court are also permitted to remove their names from the logs of online events on Odyssey File. For example, if a clerk in the Appellate Court accepts and stamps a motion in Odyssey File (they use the same software), the name of the Appellate Court employee appears on the confirmation email. Circuit Court Clerk employees' names are not visible to users and we receive their stamped copies anonymously.

78. Clerk employees tell members of the public they have escalated their problem to a supervisor when they have not. (Exhibit W).

79. Although I believe defendants in this case conspired to interfere with my service contact in 2020, since that time my service contact remains bizarrely corrupted and exhaustive efforts to fix my contact information have been unsuccessful. As of this writing, my service contact in Odyssey File is Megan Matt, represented by Alexandra Brinkmeier and three unknown parties at 423 Linda Avenue in Chicago, Zip code 68091. In fact my name is Megan Mason. To be fair my married name, Matt, is often used in the division documents and it is customary in court filings, but for mailing service it is not accurate. My address is no longer on Linden and never was on Linda, that is not my zip code, Ms. Brinkmeier is no longer my attorney and never represented me with other counsel so I have no idea who the other names are indicated by +3 more.

     a. On the afternoon of February 10th I visited the Record Division of the Circuit Court of Cook County. I spoke to Ms. Chevon Edmondson and who brought over her supervisor, Ms. Laurie Garner. I asked Ms. Garner for contact information for

the person who handles internet security for the court because I had reason to fear my identity had been stolen and fraudulent actions made. I told Ms. Garner that someone had changed my mailing address from 423 Linden Ave. in Wilmette to 423 Linda Ave. in Chicago. I told Ms. Garner that my prior attorney changed my mailing address. She said "How do you know it was your former attorney?", and smirked and raised her eyebrow.

b.  Ms. Garner told me I could not have a phone number for someone to speak to about data security and Ms.Garner took my name and telephone number and indicated "her Chief" would call me. Nobody has called me as of this filing.

c.  On the evening of February 10th, 2022 I logged into Odyssey File again and noticed the corrupted primary service contact by expanding the field with Ms. Brinkmeier's name. The full service address and other details were not visible from the home screen so I do not know when, between November 11, 2021 when Ms. Brinkmeier withdrew, and that day someone had changed the details as described above or how.

d.  Ms. Brinkmeier had previously listed a phone number in her contact information and her firm's address: 180 N Stetson Ave Ste 1300, Chicago, IL 60601 and she had no other attorneys listed when working for me.

e.  On this same date I wrote to Ms. Brinkmeier to ask if she could please remove the contact.

f.  On this same date Ms. Brinkmeier wrote back and affirmed that her contact was indeed altered in the Odyssey File  profile but informed me that they had to be made by an employee of the clerk's office and that she knew no way to remove herself as a service contact.

g. On March 23, 2022 I wrote to Iris Martinez personally using certified mail, asking her to intervene to correct my service contact and to allow me access to the services of the Clerk's office. I have received no response.

h. Through an online search, for the first time I learned there existed an Office of the Inspector General for the Clerk, now headed by James Murphy-Aguilu. I wrote to Mr. Murphy-Agilu on March 29th, 2022. Shaun Hallinan, Deputy Chief of the Inspector General wrote back that case number 2022-3-145 had been opened. I have heard no response since.

i. My primary service contact still shows the fake address entered by Brad Trowbridge in March of 2022 under Ms.Brinkmeier's name. I believe the changes were made by someone in the clerk's office in an attempt to support Brad Trowbridge's ridiculous claim that there was some kind of computer bug or software failure . Or, perhaps, simply as a nasty joke on me. I can state with certainty that the change was not made by a well meaning civil servant legally performing his or her duty.

80. Iris Martinez has demonstrated profound negligence in failing to provide data and identity security for online users of Odyssey File and a wanton disregard for the well being of pro se litigants in general and toward me personally.

81. Iris Martinez must have authorized the settings within the software provided by Odyssey File to allow her employees to act with what they believe to be anonymity. This is to say, it's obvious that the Odyssey File software can show the clerk's name when correspondence or confirmations are generated because the Appellate Court does this using the same software. Furthermore it is obvious that the software was designed to show the name of a person taking an action within the audit trail because there is a field to display the user's name, blank for Domestic Relations Division Circuit Court employees. I would imagine that there is in fact an audit trail that shows

which events in the system were performed by which employee user, assuming employees are required to use unique logins as would be required by any other employer. But by not showing the employee name in the confirmation, I as a member of the public cannot see who is sending me messages within the software, such as an explanation for rejecting my pleadings.

82. On ten to fifteen occasions I have had pleadings rejected by clerk employees in an effort to block my access to justice. These acts were all performed by employees whose names were not visible to me. The file name of each pleading included an accurate pleading type (eg "motion"), the pleadings were often made on Legal Aide templates and forms approved by the court and with the name of the type of pleading prominently displayed at the top. In other instances the name of the pleading was typed by me in all caps at the top of the document (eg "PETITION"). In all cases the type of pleading selected from the drop down menu for filing type in Odyssey file corresponded to the name of the pleading and title displayed on the form or document. In all cases they were rejected with a note from an anonymous user, "file type does not match file submitted".This occurred seven times on March 21, 2022. I then email Briana Steger, who tells me to stop emailing her, and somehow the filings get through.

83. The identity theft described as part of the Bender Syndicate scheme to have me fraudulently found in contempt without my awareness was enabled by Iris Martinez's failure to protect my identity.

84. Iris Martinez's failure to protect my identity singles out a specific cast of litigants, pro se litigants. This is because attorneys regularly use Odyssey File, know what a docket is and look at it, so it would be difficult to change or present to be an attorney without their awareness.

85. By extension of discrimination against pro se litigants, this policy also unfairly discriminates against several protected classes of litigants who are disproportionately unable to afford representation and against the poor and indigent in general.

64

86. A significant and impactful policy of Iris Martinez's office is systematic denial of access to the appeals process whereby her employees aggressively seek to intimidate litigants from appealing circuit court rulings. In this way the reputation of the Division is protected and abusers remain in power confident that their rulings will not be held to scrutiny by another judge with different motivations than his or her colleagues in the Division.

    a. In order to submit a Bystander Report for entry into the official record, a litigant must file a motion and have that Bystander Report reviewed by the judge who issued the ruling under appeal. In this case, notice of appeal has been filed and served on Judge Matthew Link

    b. On Friday, January 21, 2022 I wrote to the email address from which I had previously received scheduling communications, asking to schedule a trial.

    c. An anonymous individual, presumably the individual named Roxanne named as scheduler on Judge Link's zoom hearings, wrote back to me that there are no hearings, that all matters are before Judge Johnson. I pointed out to her that she ought not to give legal advice and I repeatedly asked her to give her name and contact information. She did not give her name or contact information.

    d. Further, the clerks refused to certify my Bystander Report, Motion for hearing on Bystander Report and notification of service for Bystander Report three times. Each time they provided the erroneous instruction, "This is for appellate court".

    f. On January 25th, 2022 I apprised Ms. Brianna Steger, attorney for the court, of this situation.

    g. Ms. Steger wrote back that she could not provide legal advice.

    h. I again wrote to Ms. Steger and clarified that I was not seeking legal advice but rather, in her role as an attorney for the Court, apprising her of ongoing acts that may be the basis of future litigation against the court.

i. Shortly thereafter my previously rejected pleadings were accepted without comment.

j. I would eventually attend a status call with Judge Link at which time he verbally instructed me to ask Judge Johnson to transfer the case back to his calendar.

k. I was forced to file my documents three times, to write no less than ten emails, to verbally speak to a judge and to specifically state to counsel for the court my basis for legal action in order to get part of one tiny part of the appeals process accomplished.

l. The week of February 28th, 2022 I received a call from Ms. Janice Thompson who works for The Clerk of the Circuit Court of Chicago, preparing the record on appeal for the Appellate Division. Ms. Thompson informed me that she had received the request to prepare the record on appeal on Monday, February 28th, 2022. She confirmed that I had filed the request on January 24th, 2022 and committed no errors. She said that due to mistakes by Clerk employees she did not get the request to prepare the record on Appeal until February 28th, 19 days after the deadline to have it transferred to the Appellate Court. (Exhibit JJ).

m. It is impossible for the average pro se litigant to file an appeal using the standard processes in Iris Martinez's clerk's office.

### Urgent concerns

87. I fear that ongoing crimes and civil rights abuses endanger me and my family. Specifically, on July 5th, having been activ personal in this matter for two months without recusing themselves, parties are seeking to seize my property, to estrange me completely and permanently from my children and, I believe, to imprison me.   Mr. Wehrman and Mr. Bender are seeking to take my children away in retaliation for my whistleblowing activity and in an effort to "resolve" my case before it is assigned to another judge who may not be corrupt, before Mr. Bender and Dr. Blechman can be made to submit written reports and testify under oath and cross

66

examination, before I may have an opportunity to call in my own witnesses and submit my own evidence. All actions are being taken without a single pieced of supportive evidence, a similar witness who is not a defendant in a racketeering conspiracy lawsuit with mel. No notice was given, it was originally served instanter. This is utterly contrary to Illinois Law and yet I am almost certain Judge Johnson will take my children away as directed to do by Mr. Bender unless swift intervention is made to protect us.

    a. In very rare situations there might be reason to temporarily remove children but in this case there is no DCFS or doctor report, no genuine allegation of abuse and no admissible evidence to support an emergency motion to take my children away.

    b. Such an action would be profoundly cruel to both my children, particularly A.D.M. who is highly dependant on me for his emotional support and who has few close relationships due to his behavioral and developmental challenges. Furthermore he has a difficult time understanding time and would not understand that the loss of his mom is temporary.

    c. The only evidence provided by parties is the Blechman Letter which does not contain any facts demonstrating contempt and which pointedly seeks to highlight my whistleblowing activity. As of this filing I do not know if or when an order may be entered taking away my children without a hearing or notice. I do not have any faith in the protection of my family in the Circuit Court of Cook County.

    d. Specific reference is made to this case, to my status as a federal witness as a basis for the retaliatory actions requested.

    e. Because of, in particular, Judge Johnson's refusal to recuse himself from this case as a litigant I have been put in an impossible position. I have most forcefully,

truthfully and, I believe, reasonably, stated a claim that Judge Johnson and others

have engaged in abusive and retaliatory behaviors that violate federal law. As a

citizen I have a right to forcefully ask another citizen to cease the violation of

federal law. But it is utterly inappropriate for me to have to address a judge at all,

much less to ask him to cease criminal activity.

88. This abusive litigation has been happening for six years. When I left my ex husband my younger son

was four years old and my older son, as is the case now, required constant care due to his disabilities.

Now I find myself insolvent, in $80,000 in high interest debt and facing judgments against me that I fear,

because they are classified as child support obligations, might literally force me into incarceration.

89. From the time the children and I first left Mr. Matt in August, 206 I have had to find a way to support

my children and myself with no family support and while under constant, expensive vexatious litigation

by Mr. Matt. For the first five years of my separation and divorce my average income was under $50,000.

But I earned a Series 7 license and built a career for myself, a good job with flexibility and good health

care for the children. My income grew to over $120,000 annually. And now my career is jeopardized and

my income potential seriously impacted by these abuses.

90. I am devastated and humiliated by the loss of my most basic civil rights and in fear for my family's

and my own safety and well being. I fear for the women and children of Illinois if someone does not help

us.


## VI.    CLAIMS

### 42 U.S. CODE  § 1983 CLAIMS

91. Color of Law violation under 42 U.S. Code § 1983 occurs when, "*Whoever, under color of*

*any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State,*

*Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States".*

## Claim 1 The Clerk of the Circuit Court of Cook County et al violated my civil rights under the color of state law.

92. I incorporate the preceding paragraphs by reference as if fully rewritten herein.

93. Defendants at all times relevant to this action were acting under color of state law.

94. Defendants Iris Martinez and Dorothy Brown, personally and as consecutive Clerks for the Circuit Court of Cook County during my lengthy involvement with the Division of Domestic Relations, Bradley Trowbridge, Michael Bender and Laurie Garner, unlawfully deprived me of my right to a unique digital identity as protected by The First Amendment of the Constitution of the United States of America.

95. Defendants Iris Martinez and Dorothy Brown, personally and as consecutive Clerks for the Circuit Court of Cook County , Bradley Trowbridge, Michael Bender, Laurie Garner, and Christopher Wehrman unlawfully deprived me of my right to due process in the form of notification of service as protected by The Fourteenth Amendment of the Constitution of the United States of America and as specifically prohibited by Illinois Law(720 ILCS 5/31-3) (from Ch. 38, par. 31-3) which prohibits obstruction of service. Their action also led to the illegal seizure of my personal assets, my money, due to sanctions based on fraud enabled by The Clerk of the Circuit Court of Cook County.

96. At all times relevant hereto, Defendants acted pursuant to a policy of The Clerk of the Circuit Court of Cook County of failing to verify and protect the digital identities of pro se litigants and failure to protect the privacy and accuracy of digital records.

97. The Clerk of the Circuit Court of Cook County failed to adopt clear policies and failed to properly train its clerks to provide support to all litigants, to maintain the integrity of digital records and to act with transparency and professionalism

98. Defendant County's policy or custom, and its failure to adopt clear policies and failure to properly train its clerks and to protect digital privacy, were a direct and proximate cause of the constitutional deprivations suffered by me and my children.


**Claim 2 The Circuit Court of Cook County violated my civil rights under state law**
99. I incorporate the preceding paragraphs by reference as if fully rewritten herein.

100. Defendants at all times relevant to this action were acting under color of state law.

101. Defendants Grace Dickler, Timothy Evans, Robert Johnson, Michael Bender, Bradley Trowbride and Christopher Wehrman, Steven Klein and Kaye Mason unlawfully deprived me of my right to equal protection under the law as protected by The Fourteenth Amendment of the Constitution of the United States of America through repeated and persistent gender discrimination and harassment.

103. Under The McDonnell-Douglas framework gender discrimination can be shown where there is a clear pattern of two similarly situated individuals receiving disparate treatment due to an identifiable association of one party with a protected class. Mr. Matt is a man. I am a woman. We are both litigants, both parents, named as parties in the same divorce suit. Our disparate treatment has been voluminously demonstrated in the following ways:

    a. Mr. Matt is allowed to file pleadings and have them heard and ruled upon. I am not generally allowed to file pleadings and have them ruled upon.

b. Mr. Matt has violated the parenting plan many times and has not received any sanctions or contempt findings. I have not violated the parenting plan and I have received three findings of contempt and multiple sanctions.

c. Mr. Matt has been legally served all filings and court dates. I have been denied service on at least five documented occasions.

d. Mr. Matt is allowed to break the law. I do not break the law.

e. Mr. Matt is allowed to have legal counsel. I cannot have legal counsel because no attorney will work with me due to no fault of my own.

f. Mr. Matt has service information in the official Clerk record reflecting his actual identity and actual legal representation. I have service information in the official Clerk records that is fraudulent and Ms. Martinez personally, willfully, refuses to correct it.

g. There are clear gender disparities in the Domestic Relations Division of the Circuit Court of Cook County that benefit Mr. Matt and harm me as a woman.

104. Defendants John Palen, Michael Bender and Christopher Wehrman for violation of A.D.M.'s rights under the Americans With Disabilities Act of 1990 which provides for equal access to state programs. By exploiting A.D.M.'s disability status in Mr. Matt's Disability Fraud Scheme, namely claiming to gift a business to A.D.M. in order to defraud business partners out of contracts and then to later steal the gift back from A.D.M. they discriminated against him due to his disability status. Perhaps the most important outcome of this lawsuit will be the thorough discovery of any conflicts of interest or other schemes by which these parties are or plan to exploit A.D.M. further. I believe his personal safety may be in danger.

105. Defendants Gerald Blechman, Robert Johnson, John Palen, Michael Bender and Christopher Wehrman for violation of my First Amendment right to freedom of religion, which

includes a passionate and spiritual belief in social justice. The defendants did this by presenting my statements about my faith in democracy to impugn my reputation and infer mental defect. They did this by issuing a factless contempt finding based only on the letter impugning my reputation (by hearsay). And they persist doing this even as I write this Complaint by attempting to completely sever my relationship with my children, my most important, precious relationship, in retaliation for my statements of faith about the pursuit of justice.

106. At all times relevant hereto, Defendants acted pursuant to a policy of The Domestic Relations Division of the Circuit Court of Cook County of granting absolute power to division GALs and judges, which allows for the exploitation of vulnerable people in the system, for maintaining an environment that is discriminatory and hostile to women, and by hiding abuse and misconduct by judges instead of reporting them to The Judicial Inquiry Board.

107. The Domestic Relations Division of the Circuit Court of Cook County  failed to adopt clear policies and failed to properly train an supervise division judges and appointees to prevent sexual harassment and abuse. The Division also failed to put in basic systems for reporting and monitoring abuse and actively discouraged litigants from bringing misconduct to Judge Dickler's attention.

108. The Circuit Court of Cook County's policy or custom, and its failure to adopt clear policies and failure to properly protect vulnerable people and enforce Illinois and federal law, were a direct and proximate cause of the constitutional deprivations suffered by me and my children.


**Claim 3 under The Bender Syndicate engaged in a pattern of racketering activity under RICO § 1962(c)**

109. I incorporate the preceding paragraphs by reference as if fully rewritten herein.

110.  This Claim is against Defendants Michael Bender, Bradley Trowbridge, Robert Johnson,

Christopher Wehrman, Gerald Blechman, John Palen, Grace Dickler, Steven Klein, Matthew

Lihnk and Kaye Mason  (the "Bender Syndicate").

111. The Bender Syndicate is an enterprise engaged in and whose activities affect interstate

commerce. The RICO Defendants are employed by or associated with the enterprise. The RICO

Defendants agreed to and did conduct and participate in the conduct of the enterprise's affairs

through a pattern of racketeering activity and for the unlawful purpose of intentionally

defrauding me. Specifically: The parties conspired in acts of identity theft and using a false

access device (email) to steal an identity by using a fake email to change my court mailing

address; in multiple acts of wire fraud through emails intended to deceive me and distract me

from action being taken against me in court; in contributing to the delinquency of a minor by

conspiring to engage A.D.M., a minor child, in Mr. Matt's disability fraud scheme; in money

laundering by receiving payments from Mr. Matt they know to be ill gotten; in multiple acts of

obstruction of justice by blocking a Motion for Allocation of fees in order to hide Mr. Matt's and

parties' financial crimes, by suppressing doctors' reports of child abuse, by hiding Mr. Matt's

psychological tests; in acts of witness retaliation including efforts to completly sever my

relationship with my children in punishment for prior testimony regarding parties; in multiple

acts of conspiracy to deprive me of my rights, including my right to due process and protection

from unreasonable seizure of my property in the form of financial sanctions which have

destroyed my finances and bankrupted me. These parties even now continue to perform frequent

federal criminal acts in the form of witness intimidation and obstruction of justice in their state

court actions. In fact I would go so far as to suggest that any activity a party named as a

defendant in this suit has taken since May 3, 2022 when this was filed, cannot be legitimate and are wholly criminal.

112. Pursuant to and in furtherance of their fraudulent scheme, Defendant(s) committed multiple related acts of wire fraud, money laundering, witness tampering and retaliation toward a witness.

113. The acts of wire fraud, money laundering, witness tampering and retaliation toward a witness set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

114. The RICO Defendants have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity described above, in violation of 18 U.S.C. § 1962(c).

115. As a direct and proximate result of the RICO Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), I have been injured in my business and property in that: I have lost time and energy to focus on my business which is wholly engaged in interstate commerce. I have lost revenue, or about 50% of earnings potential. The fraudulent pattern of racketeering activity has directly led to my bankruptcy which has destroyed my reputation and seriously reduced my earning potential and marketability. I have also paid about $150,000 in direct legal costs, sanctions and extra fees imposed by Mr. Matt and the Court. The minor children have lost a quality of life due to the financial pain imposed on them through their mother.

116. WHEREFORE, Plaintiff requests that this Court enter judgment against the RICO Defendants as follows:  Treble damages including lost income, lost future earnings, loss of reputation, direct fees and sanctions and legal fees and costs. As a pro se litigant I ask the Court,

perhaps through the appointment of pro bono counsel, to assist in determining the appropriate damages in this case. I provided an estimate based on a conservative amount that I thought might be a good basis for negotiating settlement but I believe the damages allowed under law are considerably higher than the $20,000,000 requested. In the case of my earnings, Blake Mckenzie, Complex Head for Morgan Stanley Deerfield, my former boss and Bob Peyreigne, my current boss and head of Global Wealth Management at Jefferies, have both indicated that they expect me to earn about $400,000 per year within the next two to three years. As I am forty five, this would amount to about $8,000,000 over the next twenty years. Treble $8 million would be $24,000,000. But this amount does not reflect damages pain and suffering allowed under civil rights violations, damages to the children, direct legal costs imposed by fraud and others. This is why I believe $20,000,000 is a conservative amount at which to start negotiation.

## VII.    Prayer for Relief

  A.  **Trial by jury is requested on all Claims**

   **PRELIMINARY INJUNCTIVE RELIEF SOUGHT.**

  B.  I pray this Court intervenes swiftly and decisively to protect my and my children's safety and well being. I am submitting by separate motion a request for preliminary injunctive relief. I specifically pray that this Court:

    1. Order all defendants to recuse themselves or withdraw from any involvement in the underlying Circuit Court case 2016 D 9534 immediately.

2. Temporarily prohibit the minor children, A.D.M. and T.M.M. from leaving the United States until at least such time as the complaints raised here have been resolved by trial or by separate agreement.

3. Immediately order Presiding Judge Grace Dickler to transfer the Domestic Relations Case 2016 D 9534 to adjoining Lake County in the interest of justice, at the expense of the Circuit Court of Cook County.

4. Permanently prohibit any individual named as a defendant in this suit from serving as trustee, guardian, executor or any other position of legal, financial or physical authority over the minor children A.D.M. and T.M.M. either individually or through trusts, businesses. and/or other entities associated with the children or the defendants.

5. In the event that any individual named as a defendant in this suit has already been hired, named or appointed in any capacity named above that this individual discloses the nature of their appointment to the Court.

6. Order all parties to disclose any life insurance policies, businesses, trusts or other assets or financial instruments owned by the minor children A.D.M. or T.M.M. that they are aware of even, if they have no controlling or beneficial interest in such vehicles.

7. Order Iris Martinez to correct my service contact information and to provide to me the name, phone number and email address of an individual in her employment to whom I can report future problems with software, service information or electronic filing.

8. Order Iris Martinez to immediately stop the practice of anonymous filings and emails by her staff, requiring clerk employees to use their full legal name in any court correspondence and to use their full name in the log of any online filings. Order Iris Martinez to require employees in her office to disclose their name and position when asked.

**OTHER RELIEF SOUGHT**

C. Order that the Domestic Relations Division of the Circuit Court of Cook County immediately put in place the following necessary policies with regard to Domestic Relations Division Court Appointees:

a) Order all judges in the Domestic Relations Division of the Circuit Court of Chicago to comply with Illinois law with regard to the basis for appointment, role, scope, and authority given to individuals appointed by the Court under **(750 ILCS 5/) Illinois Marriage and Dissolution of Marriage Act**.

b) Allow any litigant, pro se or represented by an attorney, to request a civil rights witness be in attendance at any meeting with Court employees or appointees, including but not limited to judges, clerks, Guardian Ad Litems, Custody Evaluators and Parenting Coordinators. Further, to order that should a litigant invoke his or her right to have a witness in attendance that this invocation not be used to disparage the litigant in any formal or informal reports to the Court.

     c) Prohibit any current or past Cook County Circuit Court judges from serving as Guardian Ad Litems, child representatives or any other Court appointed family law specialist or advocate.

     d) Order that any retired Cook County Circuit Court judges currently serving as Guardian Ad Litems or child representatives be removed within thirty days.

     e) Create a formal, transparent system for reporting, monitoring and addressing reports of abuse and crimes by Domestic Relations Division appointees and judges to the Presiding Judge.

D. I pray that this Court award damages to A.D.M. for:

     a) Pain and suffering due to court's interference with his right to association with his mother;

     b) Pain and suffering due to actions by defendants Trowbridge, Palen, Bender, Klein and Wehrman to empower his father to exploit him financially and legally;

     c) Ongoing therapy costs;

     d) Loss in quality of life due to financial abuse of his mother, which has limited funds available for his medical needs, entertainment, cultural activities, clothing and care.

E. I pray that this Court award damages to A.D.M. for:

     a) Pain and suffering due to interference with his right to association with his mother;

     b) Ongoing therapy costs

     c) Pain and suffering due to actions to obstruct investigation into claims of child abuse;

     d) Loss in quality of life due to financial abuse of his mother, which has limited funds available for his medical needs, entertainment, cultural activities, clothing and care.

F.   I pray this Court award damages to me, Megan Mason for:

     a) Lost business income due to time spent on legal harassment, litigation and attempts to stop civil rights and criminal abuses;

     b) Lost future earnings due to impending devaluation of and potential loss of financial service license;

     c) Loss of reputation;

     d) Legal fees imposed due to fraudulent acts or paid to attorneys who committed fraud while purporting to act in my interest;

     e) Sanctions imposed due to fraudulent acts;

     f) Fees ordered to be paid to Mr.Bender, Dr. Palen and Dr. Blechman;

     g) Interest incurred on high interest loans I was forced to borrow as a result of fraud;

     h) Loss of reputation as an educator due to defamatory and baseless allegations of medical neglect and unfit child rearing decisions. This is relevant because if I lose my financial securities license, a natural job market for me is normally as a teacher or administrator in a school setting because I hold a Masters degree in Education.

However, The Bender Syndicate has destroyed my reputation as an educator.

i) Pain and suffering due to six years of harassment and abuse caused by the decision makers of the Domestic Relations Division of the Circuit Court of Chicago.

j) Pain and suffering due to three years of abuse by The Bender Syndicate and all parties involved;

k) Pain and suffering due to the denial of justice and dignity by the Clerk of the Circuit Court of Cook County;

l) A loss of quality of life over six years as Mr. Matt has used the harassment described here to depict me to neighbors, family members, educators at our childrens' schools, coaches, therapists, doctors and any other mutual contact to describe me as a crazy, unfit mother who the Court is forced to curb with the appointment of a GAL and other sanctions. People assume there is something wrong with my conduct, my mental health or my criminal history that requires intense court intervention because it is much easier to believe a one woman is crazy than that a court division in our nation in 2022 is corrupt;

m) This nation promised me full protection of the Constitution, I want that restored.

G. Whatever further relief and protection the Court deems fit and is able to provide me and my children.

H.  Whatever intervention this Court may make to restore justice to the families of Cook County Illinois who may be subject to the Domestic Relations Division of the Circuit Court of Cook County and Clerk of the Court. I ask that this Court please make sensible consideration on the impact of the abuse I have described on individuals for whom English is a second language, individuals who are unsophisticated about the law, to vulnerable people of all kinds. Consider the added stress such abuse brings to families struggling with poverty and addiction and generational violence. Consider the impact of this type of judicial abuse on vulnerable children. The people of Illinois have given these defendants tremendous power over precious children and families. With great power comes great responsibility. However I see a shocking lack of accountability, or frankly even any sense of shame, among the individuals working in the institutions in charge adjudicating matters impacting Chicago and Chicago area families. This must change. Please help us.

Respectfully Submitted by

/s/Megan Mason

Megan Mason, Plaintiff  Pro Se

June 20, 2022

Exhibit A



CIRCUIT COURT OF COOK COUNTY
DOM REL DIV. RM. 802 DALEY CTR.
CHICAGO, IL 60602-1305

03-26-

PRESORTED
FIRST CLASS

U.S. POSTAGE ›› PITNEY BOWES

ZIP 60602
02 1W
0001375666 MAR. 24. 2020

$ 000.27

MATT            MEGAN
423 LINDA APT 2E
CHICAGO,                        IL   68097

16D009534

Exhibit A
Continued

16D9534

04/14/2020

CIRCUIT COURT OF COOK COUNTY
DOM REL DIV. RM. 802 DALEY
CHICAGO, IL 60602-1305

U.S. POSTAGE >> PITNEY BOWES

ZIP 60602  $ 000.35⁰
02 4W
0000360973 MAY 14 2020

MATT        MEGAN
423 LINDA APT 2E
CHICAGO,            IL  68091

1

Exhibit A
Continued

16D9534



CIRCUIT COURT OF COOK COUNTY
DOM REL DIV. RM. 802 DALEY CTR.
CHICAGO, IL. 60602-1305

PRESORTED
FIRST CLASS



MATT            MEGAN
423 LINDA APT 2E
CHICAGO,                    IL   60891



000037242429 JUN 03. 2020
02 4W
ZIP 60563
$ 000.07⁶

U.S. POSTAGE ⟫ PITNEY BOWES
16D009534

FIRST CLASS

 **Megan M <megan42@gmail.com>**

---

## Invoice

**Megan Mason** <megan42@gmail.com>                                      Wed, Apr 15, 2020 at 10:31 AM
To: Brad Trowbridge <brad@bradtrowbridge.com>

Hi Brad,

I hope you're well and your clients are not suffering too badly from the quarantine. I'm personally quite pleased that no motions are being filed right now, a nice break =).

Please run the attached cc for the $200 balance.

Thanks,
Megan
[Quoted text hidden]

Exhibit C

 **Gmail**

**Megan M <megan42@gmail.com>**

---

## Invoice

**Brad Trowbridge** <brad@bradtrowbridge.com>                    Wed, Apr 15, 2020 at 11:19 AM
To: Megan Mason <megan42@gmail.com>

Hi Megan. Yes, unfortunately, it took a pandemic to stop Peter's legal abuse of you! I don't think there's a cc attached unless there's a glitch on my end. Stay well!

**Brad Trowbridge**
**The Law Offices of Bradley R. Trowbridge**
**3257 N. Sheffield Suite 104**
**Chicago, IL 60657**
**P: 773-784-9900**
**E: brad@bradtrowbridge.com**

**PRIVACY AND CONFIDENTIALITY NOTICE**
The information contained in this communication is confidential and may be legally privileged. If you are not the intended recipient you are notified that any disclosure, copying, distribution or taking action based on the contents is strictly prohibited. If you received this communication in error, please immediately notify us at (773) 784-9900.

[Quoted text hidden]

 Gmail

**Megan M <megan42@gmail.com>**

---

## Re: New Bill from Caesar & Bender, LLP
13 messages

---

**Brad Trowbridge** <brad@bradtrowbridge.com>                    Mon, Jul 13, 2020 at 12:37 PM
To: Megan Mason <megan42@gmail.com>

We had a zoom court date of July 6 that I had on my calendar as July 7. That could have only have been for a short time. I also don't know how much preparation there could have been. It looks like a lot of activities have been lumped into one line item. The next zoom date is July 20 at 9 AM. Anything I need to know?

On Sun, Jul 12, 2020, 12:25 PM Megan Mason <megan42@gmail.com> wrote:
Zoom court? What?

---------- Forwarded message ---------
From: **Caesar & Bender, LLP** <notifications@clio.com>
Date: Sun, Jul 12, 2020 at 12:18 PM
Subject: New Bill from Caesar & Bender, LLP
To: Megan Mason <megan42@gmail.com>



**Caesar & Bender, LLP**

Dear Megan Mason,

Your bill is ready. You can view it in the attachment.

### Account summary

**Amount due on Invoice 4768**                                    **$455.00**
Due date: 07/12/2020

**Amount due on 3 other invoices**                               **$1,333.50**

**Total amount due**                                             **$1,788.50**

Pay online now

The payment link will expire in 90 days upon receipt.

 **Megan M <megan42@gmail.com>**

---

## Re: New Bill from Caesar & Bender, LLP

**Brad Trowbridge** <brad@bradtrowbridge.com>                    Mon, Jul 13, 2020 at 12:37 PM
To: Megan Mason <megan42@gmail.com>

We had a zoom court date of July 6 that I had on my calendar as July 7. That could have only have been for a short time. I also don't know how much preparation there could have been. It looks like a lot of activities have been lumped into one line item. The next zoom date is July 20 at 9 AM. Anything I need to know?

On Sun, Jul 12, 2020, 12:25 PM Megan Mason <megan42@gmail.com> wrote:
Zoom court? What?

---------- Forwarded message ---------
From: **Caesar & Bender, LLP** <notifications@clio.com>
Date: Sun, Jul 12, 2020 at 12:18 PM
Subject: New Bill from Caesar & Bender, LLP
To: Megan Mason <megan42@gmail.com>



**Caesar & Bender, LLP**

Dear Megan Mason,

Your bill is ready. You can view it in the attachment.

### Account summary

**Amount due on Invoice 4768**                                        **$455.00**
Due date: 07/12/2020

**Amount due on 3 other invoices**                                **$1,333.50**

**Total amount due**                                                     **$1,788.50**

Pay online now

The payment link will expire in 90 days upon receipt.

 Gmail

**Megan M <megan42@gmail.com>**

---

## Court

1 message

---

**Megan Mason** <megan42@gmail.com>                                  Mon, Jul 20, 2020 at 2:46 PM
To: Brad Trowbridge <brad@bradtrowbridge.com>

Hi Brad,
Did Michael make a motion to be removed? Anything filed against me?
M

 Gmail

**Megan M <megan42@gmail.com>**

FILED DATE: 12/3/2021 2:59 PM    2016D009534

## Re: New Bill from Caesar & Bender, LLP

**Megan Mason** <megan42@gmail.com>                                    Tue, Jul 21, 2020 at 3:20 PM
To: Brad Trowbridge <brad@bradtrowbridge.com>

Michael Bender has never spoken to the boys' pediatrician of six years, who has ordered the boys removed from Peter's home; to his developmental pediatrician of five years; or to our long-term ABA supervisor.

He's met my children one time. He's billed me for over a year and is trying to force me into therapy with him that he's not authorized to administer.

I thought he was going to ask to be removed. I'm done trying to appease him. I'm filing an ethics complaint. I don't think he'll retaliate any worse that what he's doing now.

I know you don't/wouldn't recommend it. And I'll make sure he knows you didn't recommend it.
[Quoted text hidden]

FILED
12/3/2021 2:59 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2016D009534
Calendar, 23
15818330

 Gmail

**Megan M <megan42@gmail.com>**

---

## IRMO Matt; 2016 D 9534; COURT ORDER

**John Palen** <jpalen@johnpalenphd.com>                              Sat, Dec 5, 2020 at 1:53 PM
To: "Kaye Mason (Chief Judge's Office)" <kaye.mason@cookcountyil.gov>, Megan Mason <megan42@gmail.com>,
Christopher Wehrman <cwehrman@smbtrials.com>
Cc: Laura Fried <lfried@smbtrials.com>, Michael I Bender <mbender@caesarbenderlaw.com>

I want to be paid. It is as simple as that

JOHN M. PALEN, PH.D., LCSW

http://www.johnpalenphd.com

- Psychotherapy with Older Children, Adolescents, Adults and Families

- Therapy with Children Resisting Contact with a Parent

- Co-Parenting Counseling

- Parenting Plan Consultation/Child Custody Evaluation

- Individual and Family Counseling with Members of the LGBTQ Community and their Families.

- Consultation with Men attempting to become better Partners, Husbands and Fathers

5225 Old Orchard Road, Suite One

Skokie, Illinois 60077

T: 847-967-1695

Please be advised that because e-mail is not a secure form of communication I cannot ensure confidentiality of any information sent by email. Nevertheless, this message (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521, is intended to be confidential, and may be privileged.  If you are not the intended recipient, please be aware that any retention, dissemination or distribution is prohibited, . Please reply to sender if you have received this message in error, then kindly delete it.  Thank you for helping to maintain privacy.

 **Gmail**

**Megan M <megan42@gmail.com>**

## IRMO Matt; 2016 D 9534; COURT ORDER

**John Palen** <jpalen@johnpalenphd.com>                                    Sat, Dec 5, 2020 at 1:58 PM
To: "Kaye Mason (Chief Judge's Office)" <kaye.mason@cookcountyil.gov>, Megan Mason <megan42@gmail.com>,
Christopher Wehrman <cwehrman@smbtrials.com>
Cc: Laura Fried <lfried@smbtrials.com>, Michael I Bender <mbender@caesarbenderlaw.com>

Sorry- this was meant for another case. I had not noticed Ms. Mason on the list of recipients.


Regards,


John Palen

[Quoted text hidden]

# Goedecke and Associates, Inc.

**Identity**

Goedecke offers high-quality, fast and reliable procurement service of IT, banking and POS spare parts. With ▮▮▮▮ as the new owner and decision maker Goedecke will become a diversified supplier certified by DisabilityIN. ▮▮▮▮ will learn valuable life skills.

**Problem**

Large, publicly listed maintenance and repair organizations are looking for high-quality spare parts and their fast delivery. As part of their social responsibility commitments to their shareholders these companies are looking to do business with companies that have a Supplier Diversity Certification.

**Our solution**

Our decades old organization acquired a large database of vendors that enables us to offer new and end-of-life parts to our customers. We can procure high quality parts quickly for a good price due to our long standing relationships, while being supplier diversity certified.

**Target market**

Large and global maintenance and repair organizations that are looking to outsource parts of their purchasing and supply chain processes in a social responsible way.

**The competition**

We are specialized in hard-to-find and end-of-life spare parts since many years and have built deep relationships with our business partners. Other companies that can offer such customized service are similar small and flexible companies like TeamOne, Redsis, RMC International.

**Revenue streams**

Goedecke sells directly to customers by responding to their daily RFQs. ▮▮▮▮' salary, as well as any distributions should remain with Peter. Megan should have no claim to any of the money or shares even in case of the death of ▮▮▮▮. Megan shall not impact the business in any way.

**Marketing activities**

Goedecke will search the internet for other public opportunities to respond to those RFQs inviations.

**Expenses**

- Labor to search parts and offer them to the customers after applying a margin
- Shipping and packing material cost
- Space for inventory, test and repacking the products

**Team and key roles**

Currently, the team members are:

- Peter Matt, the current 100% owner, 12 years tenure
- Leo Matt and family in Germany
- Hemendra (8 years), Pratik (8 years), Shashikant (6 years) and Jalpa (5 years) in India

▮▮▮▮ is familiar with all the team members.

**Milestones**

As the business matures, Goedecke will improve its on-time-shipment performance, will get invited to more RFQ opportunities due to its diversified status and will on-board new clients.

Once ▮▮▮▮ becomes eligible for SSDI and/or in case his ownership is no longer beneficial as been decided by Peter, his shares and title should fall back to Peter.

 Gmail

**Megan M <megan42@gmail.com>**

---

## Truing up parenting plan for parenting time

---

**peter@goedecke.com** <peter@goedecke.com>                                    Tue, May 11, 2021 at 11:26 AM
To: Megan Matt <megan42@gmail.com>
Cc: John Palen <jpalen@johnpalenphd.com>

Hi Megan,
I talked with John on the below last week. He believes it is not necessary since he is already advising us on the scheduling and we don't have any conflict on this. If one of us would violate the schedule he would step in. In this regard the parenting plan is trued up and in place for about 5 years, I believe. I understand that you are upset about May 2nd, when dropped the kids late. Can we talk about this in our next meeting with John, which should be in about 2 weeks?

Further, I talked to ███ ' Orthodontist. They refunded us $500 of the $1,000 deposit. They are saying they cannot refund us the other $500 as it has paid for the panorex xray, lateral cephalometric and Dr's diagnostic treatment planning. This is understandable and ok from my side.

I also did a business plan, as suggested by John, for ███ becoming the main shareholder of Goedecke so the company would get a Disability Supplier Diversity Certification. Please see attach and comment. To address your specific concerns how it would impact ███ ' entitlements, I should guarantee that you or ███ would not have any financial disadvantages and most likely once ███ would turn 18 and eligible for SSDI, we would reverse ███ ' ownership and control.

Regards,
Peter
[Quoted text hidden]

---

📄 **Goedecke Business Plan with ███ .pdf**
69K

 Gmail

**Megan M <megan42@gmail.com>**

## Matt - proposed order
5 messages

**Christopher Wehrman** <cwehrman@smbtrials.com>                    Mon, May 24, 2021 at 5:27 PM
To: Megan Mason <megan42@gmail.com>, Michael I Bender <mbender@caesarbenderlaw.com>

Please find attached the proposed order from this morning's court appearance.

Please advise of your review.

Chris

Christopher D. Wehrman | Partner

Swanson, Martin & Bell, LLP

330 N. Wabash #3300

Chicago, IL 60611

Office: 312/321-9100

Direct: 312/222-8534

Fax: 312/321-0990

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by Mimecast, a leader in email security and cyber resilience. Mimecast integrates email defenses with brand protection, security awareness training, web security, compliance and other essential capabilities. Mimecast helps protect large and small organizations from malicious activity, human error and technology failure; and to lead the movement toward building a more resilient world. To find out more, visit our website.

 **Matt - 5.21.21 proposed order.pdf**
255K

**Megan Mason** <megan42@gmail.com>                    Tue, May 25, 2021 at 9:35 AM
To: Christopher Wehrman <cwehrman@smbtrials.com>
Cc: Michael I Bender <mbender@caesarbenderlaw.com>

Hi Chris,

I think this is a good start. Thank you. I don't understand what point 2 relates to so I can't agree to this. Was this discussed? Can you please explain? I'm available at 312.750.4437.

Kindly,
Megan Mason

[Quoted text hidden]

---

**Megan Mason** <megan42@gmail.com>                     Tue, May 25, 2021 at 9:48 AM
To: Christopher Wehrman <cwehrman@smbtrials.com>
Cc: Michael I Bender <mbender@caesarbenderlaw.com>

Actually,  I also think that we have a lot of issues with parties being appointed in this case without any basis or scope so I'm a little concerned about the vague and broad nature of point 1. I have two motions pending - the motion for the appointment of the parenting coordinator and the motion for allocation of parenting responsibilities. Since you do not have anything pending it would seem the appointment should be limited to those matters I've raised and intended to address those concerns.

So I would propose the following

"Dr. Gerald Blechman (1751 South Naperville Road, Suite 206, Wheaton, IL 60189, 630/664-0525) is appointed as a 604.10(b) evaluator to evaluate the current shared allocation of parental responsibility in educational and medical decision making matters to determine which parent ought to have full medical decision making authority and which parent ought to have full educational decision making authority and to evaluate the parents' overall competence and fitness as caregivers and to make recommendations for training, therapy or other remediation where appropriate".

Does that work? I think that's not creating something new, it aligns with what I've asked for and, presumably the order is addressing what I asked for, right?

[Quoted text hidden]

---

**Christopher Wehrman** <cwehrman@smbtrials.com>            Tue, May 25, 2021 at 11:35 AM
To: Megan Mason <megan42@gmail.com>
Cc: Michael I Bender <mbender@caesarbenderlaw.com>

I do not agree to any language providing scope to Dr. Blechman.  He will have the pleadings and access to Mr. Bender as to the issues.

I will submit the order to the court and you can raise your question for Judge Johnson to address.

Christopher D. Wehrman | Partner

Swanson, Martin & Bell, LLP

330 N. Wabash #3300

Chicago, IL 60611

Office: 312/321-9100

Direct: 312/222-8534

Fax: 312/321-0990

Exhibit K
Continued

[Quoted text hidden]
[Quoted text hidden]

---

**Megan Mason** <megan42@gmail.com>                                    Wed, May 26, 2021 at 7:00 AM
To: Christopher Wehrman <cwehrman@smbtrials.com>
Cc: Michael I Bender <mbender@caesarbenderlaw.com>

Please see my other email. This is entered against my objection.

[Quoted text hidden]

Exhibit
L

FILED DATE: 3/18/2021 11:47 AM   2016D009534

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

FILED
3/18/2021 11:47 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2016D009534

12623650

IN RE THE MARRIAGE OF:            )
                                 )
PETER MATT,                      )
                                 )
            Petitioner,          )
                                 )
        and                      )        No.  16 D 9534
                                 )
MEGAN MATT n/k/a MASON,          )
                                 )
            Respondent.          )

IT IS ORDERED that the party herein named shall appear personally before Judge Robert

Johnson via Zoom, at  9:30 am, on  April 20th, 2021, to show cause why he/she should not be

held in contempt of court for  failing to comply with the order entered by this Court on

September 27th, 2017, and states that the  following is true and correct:

**MEGAN MASON'S PETITION FOR RULE TO SHOW CAUSE AND MOTION
TO COMPEL RE: STRANGE ADULTS IN CHILDREN'S HOME**

MEGAN MATT n/k/a MASON, ("Megan"), pursuant to the parties' Allocation of Parental

Responsibilities Judgment and Parenting Plan ("Allocation Judgment") entered on September 27,

2017 and all applicable rules and statutes, moves this Court to issue a Rule to Show Cause

compelling PETER MATT to appear and show cause as to why he should not be held in indirect

civil contempt of Court for his failure to comply with the Judgment and Marital Settlement

Agreement. In support of her petition, Megan Mason states as follows:

1

All Domestic Relations cases will be heard by phone or video.
Go to http://www.cookcountycourt.org/LinkClick.aspx?fileticket=G7A8KAcSj85%2d&portalid=0
to get more information and Zoom meeting IDs.
Remote Court Date: No hearing scheduled

FILED DATE: 3/18/2021 11:47 AM   2016D009534

Exhibit L
Continued

## Introduction

This matter requires this Court's urgent attention as the safety of two minor children, Angus and Theodore Matt, are at risk due to continued negligence and disregard for the September 27, 2017 Allocation Judgment, specifically as it pertains to strange adults living in the children's residence.

## Background

1.      The parties were divorced on September 27, 2017. Two children were born during the marriage, namely: Angus (age 10) and Theodore (age 8).

2.      Also on September 27, 2017, the Court entered an Allocation Judgment, which incorporated the parties' Parenting Plan. Paragraph 9 of the Parenting Plan provides, in no uncertain terms:

> "Both parents shall update the other parent in writing of any changes of the individuals living in their residence as soon as such an arrangement is known. Each party will keep the other informed of the current cell phone number of any person residing with the party and any childcare provider of the minor children".

See Paragraph 9 of the Parenting Plan incorporated into the Allocation Judgment, which is attached as **Exhibit A**.

3.      The parties' children Angus Matt (12) and Theodore Matt (9) spend 50% of their parenting time at Peter Matt's single family residence 246 Maple Avenue in Wilmette.

4.      On at least three occasions housed room-mates at 246 Maple in exchange for rent or labor for extended periods of time.

5.      Mr. Matt intends to convert his home to a boarding house with three tenants.

6.      In 2017 the boys informed Megan that their friend Luke's dad was living on their couch. Peter never mentioned this fact to Megan.

All Domestic Relations cases will be heard by phone or video.
Go to http://www.cookcountycourt.org/LinkClick.aspx?fileticket=G7A8KAqSi85%23&portalid=0
to get more information and zoom meeting ids.
Remote Court Date: No hearing scheduled

Exhibit L
Continued

FILED DATE: 3/18/2021 11:47 AM   2016D009534

7.      On April 29, 2020 the boys informed Megan that they had a new roommate named Amapoul.

8.      On April 29, 2020 Megan asked Peter to please tell her the name of his new room-mate. In direct violation of the Allocation Order paragraph 9 Mr. Matt refused **(Exhibit B)**

9.      Megan also asked for an id and more information about the man living with her children, such as his occupation or how Peter knew him. Peter refused. This refusal is in direct violation of the Allocation Order paragraph 14 which requires each party to *"respect the other party's primary role as the Children's mother and father"*.

10.     It is entirely reasonable for the mother of minor children to inquire as to which strange adults are spending extended periods of time with her children, to inquire as to their background and safety around children. Mr. Matt's obstinate refusal to provide information to Megan about the life of her children violates the Allocation Order.

11.     One tenant named Pablo Gonzales currently lives with Mr. Matt and, for 50% of Court allocated Parenting time, lives with the minor children. Mr. Gonzales works as a day laborer for Mr. Matt doing unpermitted electrical, plumbing and construction renovations on the property at 246 Maple. Mr. Matt gives Mr. Gonzales boarding in exchange for labor.

12.     In December 2020 Theodore  informed Megan that they had a new roommate in their house named Pablo. On December 26, 2020, Megan messaged Mr. Matt on the Talking Platform and asked for more information about his roommate. Mr. Matt refused to provide details about his roommate **(Exhibit D)**

13.     Megan emailed Mr. Matt on December 29, 2020 and asked him to comply with the order and tell her the last name and phone number of his roommate. **(Exhibit E)**.

3

All Domestic Relations cases will be heard by phone or video.
Go to http://www.cookcountycourt.org/LinkClick.aspx?fileticket=G7A8KAoSi85%3d&portalid=0
to get more information and Zoom Meeting IDs.
Remote Court Date: No hearing scheduled

Exhibit L
Continued

FILED DATE: 3/18/2021 11:47 AM   2016D009534

14.     On December 29, 2020 Mr. Matt deceitfully claimed that Mr. Gonzales was not living in his residence, claiming "they have their own additional entrance, own kitchen, own washer and dryer etc.. **(Exhibit J)**

15.     In an email on January 12, 2021, Dr. John Palen, PC,  instructed Mr. Matt to comply with the MSA, stating, "Peter, in order to avoid more court expenses and stress, please provide Megan with what the JPA stipulates you (and she) must provide the other about housemates.  This shouldn't be this difficult." **(Exhibit F)**

16.     On January 12, 2021, Mr. Matt again made the deceitful claim that Mr. Gonzales is not a roommate and that the MSA does not apply to his lodger, again refusing to provide full name and phone number **(Exhbit G)**

17.     In fact Mr. Gonzales lives inside the residence in the room next to the minor children, formerly Megan and Mr. Matt's marital bedroom as shown in a picture provided by Mr. Matt as an attachment to his email on January 12, 2021. **(Exhibit C)**.

18.     In a Zoom meeting with Dr. John Palen, the Court Appointed Parenting Coordinator in this Case, and Megan, on January 14, 2021, Mr. Matt finally admitted to  Dr. Palen and Megan that he has a roommate but initially refused to provide his last name.

19.     When ordered to do so by Dr. Palen, Mr. Matt told Megan Mr. Gonzales's name.

20.     When ordered to do so by Dr. Palen, Mr. Matt gave Megan what he claimed was Mr. Gonzales's phone number: 773-660-0960.

21.     On January 12, 2021, Megan dialed the number provided for Mr. Gonzales but received a message that the number was no longer in service. When Megan attempted to call again the phone did not ring. **(Exhibit H).**

22.     A search of the number 773-660-0960 indicates that it is the phone number of a 77 year old woman named Jenetta Sowell **(Exhibit I).**

All Domestic Relations cases will be heard by phone or video.
Go to http://www.cookcountycourt.org/LinkClick.aspx?fileticket=G7A8KAqSi85%23&portalid=0
to get more information and Zoom Meeting IDs.
Remote Court Date: No hearing scheduled

Case: 1:22-cv-02315 Document #: 8 Filed: 06/21/22 Page 102 of 299 PageID #:712

Exhibit L
Continued

FILED DATE: 3/18/2021 11:47 AM   2016D009534

23.     Mr. Matt remains bizarrely contemptuous of the allocation order, and has still not provided a valid phone number for Mr. Gonzales.

24.     In a zoom meeting with their younger son's therapist, Amanda Whitlock, on February 9, 2021, Ms. Whitlock asked both parents if any other adults live in their respective homes. Mr. Matt said he has one roommate and he's going to have more, for a total of three boarders.

25.     In a Zoom meeting with Dr. John Palen, the Court Appointed Parenting Coordinator in this Case, and Megan, on March 10, 2021, Megan asked Mr. Matt if he really means to take on three boarders. Mr. Matt admitted that he is renovating his home to house a total of three boarders. Mr. Matt explained in detail to Dr Palen and Megan his plan to renovate his home to contain three apartments with their own washers and dryers, electric stoves, bathrooms and beds to rent out to boarders. He admitted that he has not applied for permits for any of the construction in the Village of Wilmette and confirmed that his home is zoned for single-family use only, but he believes he can have up to three non-family adults living in the home according to local ordinance.

26.     Megan asked that Mr. Matt please get the home inspected by the Village of Wilmette and get permits in order to ensure the safety of the children, particularly as Mr. Matt is building kitchens and dryers in the units. Mr. Matt refused.

27.     Megan asked Mr. Matt to please give her a copy of Mr. Gonzales's id and a real phone number. Mr. Matt refused.

28.     Mr. Matt has at no point demonstrated that he understands either the safety issue related to the minor children or Megan's right to care and inquire about their safety. He has argued exhaustively about details and semantics but not acknowledged or shown an ability to

5

FILED DATE: 3/18/2021 11:47 AM   2016D009534

feel concern for the children's well being. It is questionable if Mr. Matt is competent to make parenting decisions that impact the safety and well-being of the children.

29. Mr. Matt remains in violation of the MSA.

WHEREFORE, MEGAN MATT, requests that this Court enter an Order:

A. Enforcing the Allocation Judgment paragraph 9 that Peter Matt provide information about individuals living in his home;

B. Enforcing the Allocation Judgment paragraph 14 that Peter Matt respect Megan's role as the children's mother;

C. Issuing a rule, returnable *instanter*, requiring Peter to show cause why he should not be held in indirect civil contempt for his failure to comply with the Allocation Judgment;

D. Finding Peter to be in indirect civil contempt for his failure to comply the Allocation Judgment;

E. Modifying the Allocation Order as follows:

> "In the event that either Parent intends to give an adult access to the children's living space, as a roommate, long-term guest, tenant, boarder, romantic partner, live-in employee, or other type of resident not mentioned, that Parent must inform the other Parent *in advance* of the individual moving into the home with the minor children. "Access" shall be defined as any of the following: having a key to the children's residence, sleeping in any part of the children's residence on a regular basis, using the children's address as his or her home address.
>
> Furthermore, in advance of this person residing at the particular family residence, the host Parent shall provide the other parent with an id for the person residing with the children. The host Parent shall also conduct a soft criminal background check at his or her own expense on the proposed resident and provide this to the other Parent. If the background check shows criminal convictions the other Parent may demand that this person not reside with the children. If the host Parent fails to provide this documentation in advance of the new resident moving in he or she shall be in violation of this Order and in Contempt. If the host Parent refuses to deny a proposed resident with a criminal background occupancy with the children, that parent shall be in violation of this Order and in Contempt."

FILED DATE: 3/18/2021 11:47 AM   2016D009534

Case: 1:22-cv-02315 Document #: 8 Filed: 06/21/22 Page 104 of 299 PageID #:714

Exhibit L
Continued

F.   Ordering Peter to comply with the Allocation Judgment and;

G.   Ordering Mr. Matt to get permits from the Village of Wilmette for all electrical, plumbing and major construction work on the home at 246 Maple in Wilmette within 45 days;

H.   Ordering Mr. Matt to run a soft background check on Mr. Gonzales for any criminal violations within 30 days;

I.   Ordering Mr. Matt to get his home zoned as multi-family before taking on paid boarders;

J.   Requiring Peter to reimburse Megan for lost wages do to the exhaustive efforts to resolve this matter, calculated as hour spent in researching, drafting and filing documents in this matter at a rate of her current annual salary ($72,000) adjusted to an hourly rate of $36 per hour, pursuant to Illinois Rule 137; and

K.   For such further relief as this Court deems appropriate.

Respectfully submitted,

*Megan Mason*

MEGAN MASON

7

All Domestic Relations Cases will be heard by phone or video.
Go to http://www.cookcountycourt.org/LinkClick.aspx?fileticket=G7A8KAcSi8E%3d&portalid=0
    to get more information and Zoom Meeting IDs.

Exhibit M

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

FILED
3/19/2021 9:32 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2016D009534
Calendar, 23
12669360

| | | |
|---|---|---|
| IN RE THE MARRIAGE OF: | ) | |
| | ) | |
| PETER MATT, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| and | ) | No. 16 D 9534 |
| | ) | |
| MEGAN MATT n/k/a MASON, | ) | |
| | ) | |
| Respondent. | ) | |

IT IS ORDERED that the party herein named shall appear personally before Judge Robert Johnson via Zoom, at 9:30 am, on April 20th, 2021, to show cause why he/she should not be held in contempt of court for failing to comply with the order entered by this Court on September 27th, 2017, and states that the following is true and correct:

**MEGAN MASON'S PETITION FOR RULE TO SHOW CAUSE AND MOTION TO COMPEL RE: FAILURE TO PROVIDE CHILDCARE FOR CHILDREN AND FAILURE TO ADDRESS CHILDREN's SAFETY**

MEGAN MATT n/k/a MASON, ("Megan"), pursuant to the parties' Allocation of Parental Responsibilities Judgment and Parenting Plan ("Allocation Judgment") entered on September 27, 2017 and all applicable rules and statutes, moves this Court to issue a Rule to Show Cause compelling PETER MATT to appear and show cause as to why he should not be held in indirect civil contempt of Court for his failure to comply with the Judgment and Marital Settlement Agreement. In support of her petition, Megan Mason states as follows:

1

All Domestic Relations cases will be heard by phone or video.
Go to http://www.cookcountycourt.org/LinkClick.aspx?fileticket=G7A8KAcSi85%3d&portalid=0
to get more information and Zoom Meeting IDs.
Remote Court Date: No hearing scheduled

1:20-cv-02315 Document #: 8 Filed: 06/21/22 Page 106 of 299 PageID #:716

Exhibit M Continued

FILED DATE: 13/30/2021 0:32 PM  2016D008534

## Introduction

This matter requires this Court's urgent attention as the safety of two minor children, Angus and Theodore Matt, are at risk due to continued negligence and disregard for the September 27, 2017 Allocation Judgment, specifically as it pertains to childcare for the two minor children.

## Background

1. The parties were divorced on September 27, 2017. Two children were born during the marriage, namely: Angus (age 10) and Theodore (age 8).

2. Also on September 27, 2017, the Court entered an Allocation Judgment, which incorporated the parties' Parenting Plan **(Exhibit A.)**.

3. Paragraph 1 of the Parenting Plan provides, in no uncertain terms:
   *"The parties agree that, from time to time, decisions will need to be made regarding the following issues of long-term importance of the Minor children (the "Significant Issues"):*

   *....health (including all decisions relating to the medical, dental and psychological needs of the child and to the treatments arising or resulting from those needs)...*

   *any other issues of long-term importance in the life of a child.....*

   *Accordingly, the parties agree to discuss any decisions regarding any of the above Significant Issues prior to any decision being made."*

4. Mr. Matt has willfully violated his essential duty to discuss issues of "long-term importance" to the children as mandated by the Allocation Judgment. In particular, he displays a shocking inability to discuss issues of safety with regards to the Minor children:

   a. In August of 2019, the parties son Theodore (then aged seven) told Megan that his dad and uncle wanted to take him to shoot guns if it was ok with her. Megan wrote a message in Talking Parents on August 27, 2019 raising the issue of gun safety and asking that Teddy not be allowed to use guns until aged 15 and after

2

All Domestic Relations cases will be heard by phone or video.
Go to http://www.cookcountycourt.org/LinkClick.aspx?fileticket=G7A8KAoSi85%2d&portalid=0
to get more information and Zoom Meeting IDs.
Remote Court Date: No hearing scheduled

FILED DATE: 13/30/2021 8:32 PM   2016D008534

receiving gun safety training. Mr. Matt ignored her thoughtful list of concerns about gun safety and was incapable of replying to the actual topic, stating, "I understand that you think you can make final decisions and that you have no respect for coparenting". **(Exhibit E).**

b. On October 20, 2020 Megan wanted to touch base with Peter about the family's COVID policy, stating in the Talking Parents app, "As we enter another Coronavirus surge, I'd like to have some policies we agree to as far as the boys' behavior….We need to inform each other about kids' other exposures, particularly other vulnerable people...please let me know your thoughts". Peter, incapable of replying to this important topic, wrote, "I understand that you think I break the law or I should change my parenting otherwise." **(Exhibit F)**

c. There is nothing of more "long-term importance to the Minor children", as the Judgment reads, than their life, safety and health. On these occasions Mr. Matt clearly violated his obligation to discuss and collaborate on these topics as he is clearly required to do.

d. In these and other instances Mr. Matt has shown himself to be shockingly belligerent, paranoid and incapable of rational discussion on topics of profound importance to the children's safety and well being.

5. Paragraph 4 of the Parenting Plan provides, in no uncertain terms:

*"The parties agree that the children shall be in school or appropriate childcare from 9:00a.m.to5:00p.m."*

6. On January 1, 2017 Megan tried to get Mr. Matt to tell her his child care arrangement by email. He replied, "I understand u r saying again u r the better parent. only u r

FILED DATE: 3/30/2021 8:32 PM   2016D008534

the parent that is able to give the kids a good start into to the school week. Not sure if my parenting is ur biz. I guess something to discuss in mediation." **(Exhibit I)**

7.        On August 5, 2019 Megan asked in the Talking Parent Platform, "What's your plan for child care next year?", when Mr. Matt did not answer, Megan asked, "Do you work? If so, when?". Mr. Matt replied, "I don't see however the need for you to know about my professional life". **(Exhibit C)**

8.        In addition to violating paragraph 4 of the Parenting Plan, which requires that each party have the children in child care, Mr. Matt's bizarre refusal to explain his child care schedule violates Megan's rights as a mother to know how her children are cared for as Paragraph 14 of the Parenting Plan requires, stating:

> ""*Each party shall respect the other party's primary role as the Minor Children's mother and father*"

9.        Mothers are allowed to ask who is caring for their children and what their schedule is. A competent parent would answer.

10.        Mr. Matt's goal is to have the parties' younger son, Theodore, become a professional athlete and to play in the Olympics. He wishes to schedule Theodore in sports programming for three to five hours per day to achieve this goal on his father's behalf.

11.        This has caused a continued challenge as Mr. Matt has put the boys in dangerous situations in order to schedule hours of sports every day as well as hours of therapy every day for the Parties' other child, Angus. Mr. Matt remains obstinately and bizarrely opposed to paying for child care and will seek to avoid it in any way.

12.        On August 27, 2018, the Parties' younger son, Theodore (then seven) informed Megan that:

4

All Domestic Relations cases will be heard by phone or video.
Go to http://www.cookcountycourt.org/LinkClick.aspx?fileticket=G7A8KAqSi85%23&portalid=0
to get more information and Zoom Meeting IDs.
Remote Court Date: No hearing scheduled

FILED DATE: 13/30/2021 8:32 RM    2016D009534

a.  His father was in the habit of routinely dropping him unattended in front of the Evanston YMCA (in order to not have to spend time parking). The Evanston YMCA is a busy facility that shares its building with a men's SRO.

b.  Teddy would check himself into the Y and go to the dressing room and dress himself for a drop in swimming class. He said he was the only one alone and that the other kids had parents or babysitters.

c.  After the swimming class Teddy would go alone to the showers in the dressing room, used by adults as well as children, and dress for a drop-in basketball class.

d.  Megan asked if all the kids changed together, thinking perhaps it was a formal program, but Teddy said again that other kids had grownups picking them up and dropping them off.

e.  In total Teddy would spend two hours at the Y without a responsible adult ensuring his safety, some of that time naked and alone in an adult dressing room.

f.  Mr. Matt confirmed these facts and refused to change his behavior.

g.  Megan confirmed with the Evanston YMCA that drop in classes are not child care and that per policy: Teddy needed to be checked in by an adult to the facility, brought to class and picked up from class by an adult.

h.  The Evanston YMCA called Mr. Matt and wrote him a note to immediately cease this behavior. **(Exhibit D)**

13.  However, rather than hiring a babysitter, Peter started taking Teddy to sports leaving Angus alone with therapists for hours at a time.

14.  Since 20011, Angus Matt, the younger Parties' older son, has received Applied Behavioral Analysis (ABA) therapy with a variety of providers. As therapists, ABA providers are not child care providers and require a responsible adult to be with the children during sessions per their standard contract.

All Domestic Relations cases will be heard by phone or video.
Go to http://www.cookcountycourt.org/LinkClick.aspx?fileticket=G7A8KAoSi85%3d&portalid=0
to get information and Zoom Meeting IDs.
Remote Court Date: No hearing scheduled

a.  On August 4, 2017, Peter Matt said for that, for child care, "Angus could do ABA"

    **(Exhibit G)**

b.  On August 25, 2020, Megan Peter raised the issue of Peter's inappropriate use

    of ABA as child care in the Talking Parents Platform, stating:

    > "your plan is to spend 40-50 minutes driving Teddy to soccer then returning, leaving Angus without childcare. You will then later spend 40-50 minutes going back to get Teddy after practice. Since you are scheduling ABA in the home at that time, you will live Angus uncared for with a male therapist, for between an hour and twenty minutes and an hour and forty minutes every day, depending on traffic….do you dispute these facts? Do you have a child care plan?"

    > Mr. Matt replied, "I understand you want to know from me my parenting plan" **(Exhibit K)**

15.     In October of 2020 Reach ABA dropped Angus as a patient. Given his many

bizarre behaviors and continued violation of their contract, Mr. Matt's behaviors make it difficult

for quality providers to be willing to work with Angus.

16.     Mr. Matt remains in violation of the MSA.

WHEREFORE, MEGAN MATT, requests that this Court enter an Order:

A.      Enforcing the Allocation Judgment paragraph 9 that Peter Matt provide childcare

for the minor children during his work day;

B.      Enforcing the Allocation Judgment paragraph 1 that Peter Matt   address

Significant Issues;

C.      Enforcing the Allocation Judgment paragraph 14 that Peter Matt respect Megan's

role as the children's mother;

D.      Issuing a rule, returnable *instanter*, requiring Peter to show cause why he should

not be held in indirect civil contempt for his failure to comply with the Allocation Judgment;

E.      Finding Peter to be in indirect civil contempt for his failure to comply the

Allocation Judgment;

6

All Domestic Relations cases will be heard by phone or video.
Go to http://www.cookcountycourt.org/LinkClick.aspx?fileticket=G7A8KAoSi85%2d&portalid=0
to get more information and Zoom Meeting IDs.
Remote Court Date: No hearing scheduled

FILED DATE: 3/30/2021 8:32 PM   2016D008534

F.  Modifying the Allocation Order as follows:

> *"1. Each parent shall provide the other with a current work schedule and description of his or her childcare arrangements prior to the beginning of each school year or whenever requested by the other parent.*
>
> *2. Each parent is obligated to answer questions from the other parent related to the safety of the Minor children. If a parent refuses to answer or excessively delays answering such questions, he or she will be in violation of this Order.*
>
> *3.Each parent will provide appropriate child care at all times when they are unable to care for them because of work or other commitments"*

G.  Ordering Peter to comply with the Allocation Judgment and;

H.  Requiring Peter to reimburse Megan for lost wages do to the exhaustive efforts to resolve this matter, calculated as hour spent in researching, drafting and filing documents in this matter at a rate of her current annual salary ($72,000) adjusted to an hourly rate of $36 per hour, pursuant to Illinois Rule 137; and

I.  For such further relief as this Court deems appropriate.

Respectfully submitted,

MEGAN MASON

7

All Domestic Relations cases will be heard by phone or video.
Go to http://www.cookcountycourt.org/LinkClick.aspx?fileticket=G7A8KAqSi85%3d&portalid=0
to get more information and Zoom Meeting IDs.
Remote Court Date: No hearing scheduled

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

|  |  |  |
|---|---|---|
| IN RE THE MARRIAGE OF: | ) | |
| | ) | |
| PETER MATT, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| and | ) | No. 16 D 9534 |
| | ) | |
| MEGAN MATT n/k/a MASON, | ) | |
| | ) | |
| Respondent. | ) | |

**AFFIDAVIT OF MEGAN MATT N/K/A MASON IN SUPPORT OF**

I, MEGAN MATT n/k/a MASON, hereby submit this affidavit under penalties provided by law pursuant to section 1-109 of the Illinois Code of Civil Procedure and certify that the statement set forth in this affidavit are true and correct.

1.      I am the Respondent in this matter.

2.      I have personal knowledge of the matters stated in my PETITION FOR RULE TO SHOW CAUSE AND MOTION TO COMPEL RE: FAILURE TO SUPERVISE CHILDREN and they are true and correct except as to those matters stated on information and belief, which are believed to be true.

3.      I hereby restate and incorporate by reference the allegations contained in my Petition as if the same were set forth here verbatim.

Respectfully Submitted,

*Megan Mason*

MEGAN MATT n/k/a MASON

8

All Domestic Relations cases will be heard by phone or video.
Go to http://www.cookcountycourt.org/LinkClick.aspx?fileticket=G7A8KAoSi85%3d&portalid=0
to get more information and Zoom Meeting IDs.

Exhibit N

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

FILED
4/9/2021 9:11 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2016D009534

12889840

| | | |
|---|---|---|
| IN RE THE MARRIAGE OF: | ) | |
| | ) | |
| PETER MATT, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| and | ) | No.  16 D 9534 |
| | ) | |
| MEGAN MATT n/k/a MASON, | ) | |
| | ) | |
| Respondent. | ) | |

FILED DATE: 4/9/2021 9:11 AM   2016D009534

IT IS ORDERED that the party herein named shall appear personally before Judge Robert Johnson via Zoom, at  9:30 am, on  April 20th, 2021, to show cause why he/she should not be held in contempt of court for  failing to comply with the order entered by this Court on September 27th, 2017, and states that the  following is true and correct:

**MEGAN MASON'S PETITION FOR RULE TO SHOW CAUSE AND MOTION TO COMPEL RE: HARASSMENT AND FAILURE TO ADHERE TO PARENTING PLAN WITH REGARD TO PARENTING TIME**

MEGAN MATT n/k/a MASON, ("Megan"), pursuant to the parties' Allocation of Parental Responsibilities Judgment and Parenting Plan ("Allocation Judgment") entered on September 27, 2017 and all applicable rules and statutes, moves this Court to issue a Rule to Show Cause compelling PETER MATT to appear and show cause as to why he should not be held in indirect civil contempt of Court for his failure to comply with the Judgment and Marital Settlement Agreement. In support of her petition, Megan Mason states as follows:

**Introduction**

1

FILED DATE: 4/9/2021 9:11 AM  2016D009534

This matter requires this Court's urgent attention as Mr. Matt had demonstrated a consistent contempt and disregard for the Allocation Order entered into on September 27, 2017 Allocation Judgment, specifically as it pertains to Megan's right to parent the children during her parenting time and Mr. Matt's obligation to communicate respectfully and with appropriate boundaries presents an ongoing impediment to successful co-parenting.

### Background

1.     The parties were divorced on September 27, 2017. Two children were born during the marriage, namely: Angus (age 12) and Theodore (age 9).

2.     Also on September 27, 2017, the Court entered an Allocation Judgment (Parenting Plan), which incorporated the parties' Parenting Plan **(Exhibit A.)**.

3.     On September 25, 2019 a Parenting Coordinator, Dr. John Palen, was appointed to assist in routine decisions between the parties **(Exhibit M)**

4.     The Parenting Plan The Parenting Plan paragraph 2 "Allocation of Routine and Emergency Decision Making Responsibility" reads, in no uncertain terms that: "A parent shall have sole responsibility for making routine decisions with respect to the Minor Children and for emergency decisions affecting the Minor Children's health and safety during that  parent's parenting time".

5.     Mr. Matt routinely and incessantly violates the specific provision that "a parent shall have *sole* responsibility for making routine decisions" during his or her parenting time and violates the very spirit of the Parenting Plan which assumes that both parents are allowed to make decisions about the children.

6.     Mr. Matt is particularly obsessive and controlling Megan's time to force her to make sure that the Parties' 9-year-old son, Theodore, participates in a soccer program for at least

2

All Domestic Relations cases will be heard by phone or video.
Go to http://www.cookcountycourt.org/LinkClick.aspx?fileticket=G7A8KAqSi85%23d&portalid=0
to get more information and Zoom Meeting IDs.
Remote Court Date: No hearing scheduled

FILED DATE: 4/9/2021 9:11 AM   2016D009534

three hours a day, seven days a week because Mr. Matt has decided that Teddy will be in the Olympics and then a professional soccer player. When Teddy was in second grade, Mr. Matt wrote, "Ideally [Teddy] doesn't play high school, but the US Soccer Development Academy...Before that he should make it into the Olympic Development Academy…" **(Exhibit H).**

7.     Peter is obsessed with Theodore's involvement in soccer on Sunday mornings and this has been a topic of his harassment for several years, going so far as to threaten Megan and her church community.

    a.  In 2019, asked Megan to switch schedules so he could have parenting time on Sunday. Megan agreed, but then Mr. Matt changed his mind, declining to have parenting time on Sunday.

    b.  Mr. Matt, however, wants to control Megan's time on Sunday.

    c.  Megan has attended Lake Street Church in Evanston with both children since two years before the parties divorced **(Exhibit F)**. Lake Street Church is very important to Megan and the boys socially, personally and spiritually.

    d.  Megan has told Mr. Matt that she believes while still in elementary school, the children should go to Sunday school with her during her parenting time. She believes as a mom she should expose children to the values and communities she thinks are good for them and it's her right and duty to do so. She has stated when Teddy is thirteen she will allow him to decide whether to attend church or other social activities or sports.

    e.  Mr. Matt will not accept Megan's parenting time decisions. In order to intimidate Megan into taking Teddy to soccer on Sunday mornings, on April 29, 2019, Peter

All Domestic Relations cases will be heard by phone or video.
Go to http://www.cookcountycourt.org/LinkClick.aspx?fileticket=G7A8KAqSi85%23&portalid=0
to get more information and Zoom Meeting IDs.
Remote Court Date: No hearing scheduled

Case: 1:22-cv-02315 Document #: 8 Filed: 06/21/22 Page 116 of 299 PageID #:726

Exhibit N Continued

FILED DATE: 4/9/2021 9:11 AM   2016D009534

Matt called Lake Street Church and threatened the Lake Street Church

administrator, Pat Stringer, who states:

"He introduced himself as 'Peter Matt'....and he doesn't like what's going on [at Lake Street Church]. Again I asked him to elaborate. He doesn't want his kids to come to this church. Nothing more specific than that". **(Exhibit D)**

f.  On April 29, 2019, Mr. Matt emailed and threatened the Director of Youth Programming at Lake Street Church, Jillian Westerfield:

"Attached is the parenting agreement for Angus and Teddy Matt. Let me know if they show up at your church again please. I will call the police and have them removed I offered her multiple times family therapy, mediation, and a guardian ad litem for the kids and the outstanding issues. She refuses all that". **(Exhibit E)**

g.  On April 29, 2019, Mr. Matt again threatened Megan, "If you bring them [to

church] again I will call the police" Via email **(Exhibit D)**

h.  The Lake Street Church youth director, Jillian Westerfield, was concerned about

violence to the church community and to Megan and her children and referred

Megan to a Lake Street congregant and attorney who specializes in violence

against women, Kaethe Morris Hoffer, Executive Director of the Chicago

Alliance Against Sexual Exploitation. **(Exhibit G)**

i.  Megan had a phone consultation with Kaethe Morris Hoffer on May 9, 2019 in

which she described Mr. Matt's pattern of behavior to Ms. Hoffer. Ms. Hoffer told

Megan that vexatious litigation, financial abuse and harassment are forms of

domestic abuse and referred Megan to a domestic violence advocacy group in the

hope of accessing subsidized legal help. **(Exhibit G)**

j.  On at least three occasions Mr. Matt has filed spurious motions to this Court

alleging that Megan has violated the Parenting Plan's provision that the parents

"maintain the faith" of the children. This is not only deceitful, as Megan has been

All Domestic Relations cases will be heard by phone or video.
Go to http://www.cookcountycourt.org/LinkClick.aspx?fileticket=G7A8KAcSi85%3d&portalid=0
to get more information and Zoom Meeting IDs.
Remote Court Date: No hearing scheduled

FILED DATE: 4/9/2021 9:11 AM   2016D009534

taking the children to Lake Street church since two years before their divorce, but
it is a blatant attempt to control Megan's time for Mr. Matt's selfish interests.

k.  Mr. Matt continues to attempt to force Megan to schedule activities on Sunday
mornings.

l.  Sunday mornings are still Megan's parenting time per mutual agreement.

m.  Mr. Matt bullies and harasses Megan to try to force her to do Sunday swimming
for the parties' other child, Angus, during her parenting time.. **(Exhibit I, Exhibit
P).**

n.  On November 5, 2020, Megan reached out the PC, Dr. Palen, to ask him to help
stop Mr. Matt from harassing about Sundays. **(Exhibit I).**

o.  Instead of ceasing his harassment, Mr. Matt responded to the email, "I think
Angus Special Olympics is more important and fun for him" and " if there is
soccer, that is more important than church" **(Exhibit I)**.

8.    Mr. Matt shows a shocking lack of awareness that Megan is entitled to make
decisions, suggesting that because he has an opinion about her parenting time, she must obey.
This defies the basic premise of co-parenting.

9.    Mr. Matt also attempts to force Megan to schedule activities on every other day of
her parenting time and will not accept no for an answer.

10.    Every other Saturday evening, the boys are with Megan per mutual agreement.
Mr. Matt regularly harasses Megan to control her Saturday schedule, going so far as to kidnap
the children.

a.  In 2019 Mr. Matt asked Megan if he could enroll Teddy in a third soccer program
that played on Saturday evenings, "The Quad". Megan considered the program

All Domestic Relations cases will be heard by phone or video.
Go to http://www.cookcountycourt.org/LinkClick.aspx?fileticket=G7A8KaSi85%2d&portalid=0
to get more information and Zoom Meeting IDs.
Remote Court Date: No hearing scheduled

Case: 1:22-cv-02315 Document #: 8 Filed: 06/21/22 Page 118 of 299 PageID #:728

Exhibit N Continued

FILED DATE: 4/9/2021 9:11 AM   2016D009534

but ultimately said no, preferring to keep the parenting time she shares with the boys every other Saturday for family time such as visiting friends or going to cultural activities.

b.  Mr. Matt nonetheless enrolled Teddy in the Saturday soccer program and badgered Megan repeatedly to attend this program every other week.

c.  On January 3, 2020 he again asked to take Teddy to the Quad and Megan repeated that she did not support this program during her parenting time. **(Exhibit L)**

d.  Mr. Matt continued to harass Megan about the Quad and also raised the issue of the Quad to Teddy, violating basic parenting common sense and the specific clause in the Parenting Plan that, "the parties shall not initiate discussions about disputed issues between the parties or make extensive inquiries into the activities of the other party with the Minor Children" **(Exhibit O, Exhibit A)**

e.  Mr. Matt continued to not only ask to take Teddy to the Quad but escalated and kidnapped the children in order to take Teddy to the Quad on Saturday, July 20, 2019. **(Exhibit Q)**

f.  Per mutual parental agreement, the boys were to be in Megan's care alternating Saturdays at 3pm. This parenting time plan has been in place for several years by mutual agreement.

g.  On Saturday, July 20, 2019, Megan went to Peter's home to pick up  the children to take them to an art festival she and the boys planned to attend her parenting time. Mr. Matt had Teddy at the Quad and refused to relinquish the children.

All Domestic Relations cases will be heard by phone or video.
Go to http://www.cookcountycourt.org/LinkClick.aspx?fileticket=G7A8KAqSi85%23&portalid=0
to get more information and Zoom Meeting IDs.
Remote Court Date: No hearing scheduled

FILED DATE: 4/9/2021 9:11 AM   2016D009534

    h.   Mr. Matt showed the texts from Megan, in which she admonished him for kidnapping and indicated she would call the police in the future, to the minor children Teddy and Angus.

11.    Mr. Matt also continues to attempt to force Megan to schedule activities on Mondays and Tuesdays and ignores the PC decisions in the matter. **(Exhibits B, M, O).**

12.    Mr. Matt is unable to respond in an emotionally appropriate manner to Megan having parenting rights and occasionally having opinions with which he disagrees.

    a.   Multiple times a week, Mr. Matt emails, texts or messages Megan and/or other Parties involved in children's care - therapists, GAL, PC - to "discuss" scheduling something during Megan's parenting time.

    b.   Mr. Matt calls this harassment collaboration. Mr. Matt believes he is entitled to control all hours of Megan's parenting time if he calls this control collaboration, co-parenting or frames it as in the children's interest.

    c.   Mr. Matt believes only his opinions matter when it comes to the interest of the children, so any discussion of "children's interest" by Mr. Matt is really a discussion of how to do what he wants and how to force others to do what he wants.

13.    When the Parties do agree to activities across parenting time, Mr. Matt is controlling and inappropriate in his monitoring of Megan's activity.

    a.   Megan had agreed for a season to take Teddy to soccer practice in Chicago on Mondays in the Fall season of 2020.

    b.   One day Megan decided to keep Teddy home to decorate the Christmas tree and emailed the coach in advance to inform him of Teddy's absence. **(Exhibit K)**

7

All Domestic Relations cases will be heard by phone or video.
Go to http://www.cookcountycourt.org/LinkClick.aspx?fileticket=G7A8KAoSi85%23d&portalid=0
to get more information and Zoom Meeting IDs.
Remote Court Date: No hearing scheduled

FILED DATE: 4/9/2021 9:11 AM   2016D009534

    c.   Having learned that Teddy missed a practice Mr Matt became enraged and used this as a basis to ask the PC to revoke Megan's parenting rights. He wrote, "John. It seems Megan didn't go again this Monday. Teddy said that mom said it was too muddy, but she knew that practice was happening. Can you make a decision please?". By "make a decision", Mr. Matt was referring to his ongoing campaign to get John to revoke Megan's right to make parental decisions **(Exhibit J).**

    d.   When Megan clarified that this was a minor scheduling change, cleared with the coach, Mr. Matt asked her to copy him on all her communications to the coach, demonstrating his profound lack of awareness when it comes to infringing on others' rights and boundaries. **(Exhbit K)**

14.    In his pattern of abuse, harassment and intimidation, Mr Matt has gone so far as to involve the parties' young children in their disputes, in violation of the Parenting Plan regarding disparaging other parent in direct violation of the Parenting Plan.

    a.   On November 23rd, 2020, Mr. Matt let Theodore, then eight, attend a Zoom meeting with the Parenting Coordinator and/or GAL, without informing the other parties.

    b.   As Teddy was not in front of the camera, only Peter knew that Teddy was in attendance.

    c.   This meeting was planned around  a number of high conflict topics and inappropriate for a young child.

    d.   When Megan asked Mr. Matt why Teddy was there, Mr. Matt replied, "What am I supposed to do, ask him to leave?", suggesting Mr. Matt is perhaps incapable of enforcing the type of boundaries important for a child.

All Domestic Relations cases will be heard by phone or video.
Go to http://www.cookcountycourt.org/LinkClick.aspx?fileticket=G7A8KAoSi85%2d&portalid=0
to get more information and zoom Meeting ids.
Remote Court Date: No hearing scheduled

FILED DATE: 4/9/2021 9:11 AM   2016D009534

e.  Mr. Matt also lets the children read texts and emails and Talking Parents messages between himself and Megan and refuses to stop doing so. He seems particularly focused on showing them any communication that is contentious as a means of disparaging Megan to the children.

15.  As part of his efforts to punish and control Megan, Mr. Matt also slanders Megan to neighbors, family and other acquaintances by falsely stating that Megan has embezzled money. His attorney has also stated that Megan embezzled money.

a.  At no point has Megan stolen or embezzled money.

16.  As part of his efforts to punish and control Megan, Mr. Matt also slanders Megan to neighbors, family and other acquaintances by falsely stating that Megan has a diagnosed personality disorder.

a.  Megan takes mental health issues seriously, particularly as they may relate to the safety of the children, and has consistently expressed an openness to getting mental health assessments and support should that be necessary. Mr. Matt has provided no specific concern or interest in an evaluation.

b.  Megan has asked Mr. Matt and his counsel to support a Section 604B Evaluation that includes a psychological evaluation of both parents, including herself, but Mr. Matt refuses.

c.  Mr. Matt continues to claim to mutually acquaintances and family members that Megan has a severe personality disorder.

17.  Mr. Matt remains in violation of the MSA.

FILED DATE: 4/9/2021 9:11 AM  2016D009534

18.     Mr. Matt's inability to respect boundaries, his unrelenting harassment, and his cruel attacks on Megan demand serious consideration as they are part of a pattern of abuse that may escalate to harm Megan and the minor children.

WHEREFORE, MEGAN MATT, requests that this Court enter an Order:

A.     Enforcing the Allocation Judgment

B.     Issuing a rule, returnable *instanter*, requiring Peter to show cause why he should not be held in indirect civil contempt for his failure to comply with the Allocation Judgment;

C.     Finding Peter to be in indirect civil contempt for his failure to comply the Allocation Judgment;

D.     Ordering Peter to comply with the Allocation Judgment and;

E.     Modifying the Allocation Order as follows:

"1. Each parent shall respect the other parent's right to disagree on occasion. Neither parent is allowed to harass the other. If either parent raises an issue more than five times after the other parent has made a decision with which he or she disagrees, the parent raising the issue more than five times shall be considered harassing the other parent and in violation of this Order. This Court may impose financial penalties on a party found to be harassing the other.

2. "Neither parent shall show emails, texts or Talking Parents messages from the other parent to the children. Both parents will make a reasonable effort to stop the children from reading communications from one parent to the other or being involved in disputes, including putin a password lock on their phones. Neither parent shall allow the children to attend virtual or in-person court or

FILED DATE: 4/9/2021 9:11 AM   2016D009534

meetings with the parties attorneys, meetings with the GAL or meetings with the Parenting Coordinator unless all parties are aware and give consent. This Court may impose financial penalties if either parent is found to be willfully exposing the Minor children to parental conflict, negotiations or discussions about parenting decisions"

F.  Modifying the order appointing a parenting coordinator to read:

> "The parties shall meet with the Parenting Coordinator on a monthly basis to discuss parenting decisions. Between meetings, the parties shall make every effort to refrain from involving the Parenting Coordinator in any discussions, including calling for meetings or copying the Parenting Coordinator on emails, except in genuinely time sensitive, urgent issues related to the health and safety of the children. Under no circumstances may one Parent ask the Parenting Coordinator to tell the other parent what to do during that Parent's Parenting Time."

G.  Ordering Mr. Matt to never schedule an activity during Megan's time.

H.  Ordering Mr. Matt not to allege that Megan has engaged in theft or embezzlement;

I.  Ordering Mr. Matt to not allege that Megan has a diagnosed personality disorder;

J.  Ordering Mr. Matt to engage a parenting coach or therapist recommended by Dr. John Palen within 30 days;

K.  Ordering Mr. Matt to to meet with the parenting coach or therapist recommended by Dr. John Palen on, at minimum, a monthly basis for a period of no less than six months, with a goal to: improve Mr. Matt's understanding of appropriate parenting

11

All Domestic Relations cases will be heard by phone or video.
Go to http://www.cookcountycourt.org/LinkClick.aspx?fileticket=G7A8KAqSi85%3d&portalid=0
to get more information and Zoom Meeting IDs.
Remote Court Date: No hearing scheduled

responsibilities, improve Mr. Matt's understanding of basic child safety and supervision; improve Mr Matt's ability to communicate in a non-threatening manner and to improve Mr. Matt's ability to acknowledge and respect personal boundaries;

L.      Requiring Peter to reimburse Megan for all payments to Dr. John Palen in the role of Parenting Coordinator, to date;

M.      Requiring Peter to reimburse Megan for lost wages do to the exhaustive efforts to resolve this matter, calculated as hour spent in researching, drafting and filing documents in this matter at a rate of her current annual salary ($72,000) adjusted to an hourly rate of $36 per hour, pursuant to Illinois Rule 137; and

N.      For such further relief as this Court deems appropriate.

Respectfully submitted,

*Megan Mason*

MEGAN MASON

12

All Domestic Relations cases will be heard by phone or video.
Go to http://www.cookcountycourt.org/LinkClick.aspx?fileticket=G7A8KAoSi85%3d&portalid=0
to get more information and Zoom Meeting IDs.

Exhibit O

FILED
11/24/2020 2:53 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2016D009534

11258666

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION**

|  |  |  |
|---|---|---|
| IN RE THE FORMER MARRIAGE OF: | ) | |
| | ) | |
| PETER MATT, | ) | |
| | ) | |
| *Petitioner*, | ) | Case No. 2016 D 009534 |
| | ) | |
| and | ) | |
| | ) | |
| MEGAN MATT, | ) | |
| n/k/a MEGAN MASON, | ) | |
| | ) | |
| *Respondent*. | ) | |

**Motion for Allocation of GAL Fees, Extraordinary Healthcare Costs, 604B Investigation Costs, and Attorney Fees for Megan Mason**

I, Megan Mason, acting pro se, humbly ask the court to consider my plea for a just allocation of fees related to the medical care of our minor children Angus and Theodore Matt. Because of Angus Matt's unique special medical needs, this encompasses a wide range of costs directly and indirectly related to his care and to the organization and compensation of professionals assisting with his care. I will present this motion at our scheduled appearance on December 3, 2020.

1.     The issue of who should be responsible for costs related to the care of the minor children Angus and Theodore Matt has been a matter of debate before this court on prior occasions. Specifically, Megan Mason has asserted that Peter Matt is independently wealthy and supported by his even wealthier father and should therefore pay a larger portion of fees.

2.     Mr. Matt has disputed this assertion on prior occasions.

3.     In the matter of Michael Bender's fees and the cost of the children's healthcare, the court has ordered that allocation be revisited through an order entered on November 20, 2019 for medical expense allocation to be revisited and on a June 9, 2019 order, parties were ordered

FILED DATE: 11/24/2020 2:53 PM   2016D009534

Exhibit O Continued

to exchange Financial Affidavits within 28 days and to revisit the Allocation of GAL and other fees.

4.  Megan Mason presented financial affidavits and complete supporting documents on July 24, 2019 through her then attorney as requested and Peter Matt's attorney confirmed receipt. Megan Mason has subsequently provided to Peter Matt through counsel her updated financial affidavit presented here for the court. (Exhibit A.) she has also disclosed supporting financial statements and tax forms and indicated a willingness to provide any requested documentation.

5.  On July 3, 2019 Peter Matt presented a Financial Affidavit and a checking account statement showing a balance of $0 and a single tax form showing $26,000 in salary. (Exhibit B, Exhibit C, Exhibit D)Megan Mason raised to Peter Matt's counsel that the financial affidavit provided by Peter Matt was incomplete and missing vital information. Specifically, Megan Mason pointed out that the financial affidavit grossly under-represented Peter Matt's wealth and access to his father's wealth as an ongoing source of support prior to the marriage, during the marriage, during the divorce proceedings and at present. Megan asked for clarification on a multitude of material financial issues which Peter Matt refused. (Exhibit E)

6.  Peter Matt refused to respond to requests for supporting documents and clarification. Peter Matt also refused to update his financial affidavit, therefore his financial affidavit must be regarded as final.

7.  I ask that the Court please consider the appropriate Allocation of fees. I also ask that the Court consider the gross misrepresentations made in Peter Matt's financial disclosures and his refusal to clarify when considering just allocation of fees.

8.  Peter Matt intentionally deceived the court by grossly under-representing his income, wealth and access to parental support. Specifically:

All Domestic Relations cases will be heard by phone or video.
Go to http://www.cookcountycourt.org/LinkClick.aspx?fileticket=G7A8KAcSi85%2d&portalid=0
to get more information and Zoom Meeting IDs.
Remote Court Date: No hearing scheduled

FILED DATE: 11/24/2020 2:53 PM   2016D009534

Exhibit O Continued

a. Peter Matt's Business Bank Accounts

    i. Peter Matt has on prior occasion submitted to this court that he owns four businesses: Goedecke US, Goedecke Germany, Goedecke Poland, and Goedecke India (Exhibit F)

    ii. Peter Matt refuses to provide bank statement for any of the business bank accounts he controls or are controlled by his father for Peter Matt's benefit, specifically:  ING Poland Account Number 96 1050 1025 1000 0090 7475 0911(Exhibit G), Postbank Germany (Exhibit H), Northshore Community Bank and Trust (Exhibit J), Goedecke India Bank Accounts, any Goedecke business accounts not listed.

    iii. Paypal accounts for India, Poland, Germany and the US (Exhibit I)

b. Peter Matt's business entity and tax forms, specifically:

    i. Goedecke US tax filings in the US and other countries

    ii. Goedecke Germany's tax flings in the US and Germany

    iii. Goedecke Poland's tax filings in the US and Poland

    iv. Goedecke India's tax filings in the US and India

9. Peter Matt has routinely used business accounts controlled by him, his father, Leo Matt, or both parties in order to pay for his personal expenses. (Exhibit K)

10. This use of parental support through supposed businesses and gifts predates the marriage and was an ongoing source of familial income while both parties were married. Particular scrutiny ought to therefore be given to Peter Matt's businesses and the omission of these details ought to be regarded as specifically intended to deceive the court as to his means.

3

All Domestic Relations cases will be heard by phone or video.
Go to http://www.cookcountycourt.org/LinkClick.aspx?fileticket=G7A8KAqSi85%2d&portalid=0
to get more information and Zoom Meeting IDs.
Remote Court Date: No hearing scheduled

FILED DATE: 11/24/2020 2:53 PM   2016D009534

11. As further evidence of the commingling of business and personal assets, Peter Matt uses his home address and his father's home address as the business address for his multiple bank accounts (Exhibit G, Exhibit H,  Exhibit J).

12. As further evidence of his father's undisclosed contribution, European business expenses are paid by Leo Matt's personal credit cards, not disclosed or included in his financial disclosures (Exhibit I).

13. Peter Matt declared on his financial affidavit that he receives $3,583 in dividend income. He refuses to describe the source of this income or to disclose supporting documents such as tax filings or bank accounts.

14. Peter Matt refuses to disclose if he is employed and by whom.

15. Peter Matt claims that his income is less than 10% of what he claimed four months prior to marital separation in financial statements shared with Megan Mason by Peter Matt and by his father Leo Matt. He refuses to provide an explanation for this dramatic reduction in income. (Exhibit L, Exhibit M).

16. Peter Matt claimed in a meeting with John Palen and Megan Mason on November 23rd, 2020 that his income is about $26,000 annually. In the same conversation he claimed that extraordinary healthcare costs in the amount of $20,000 annually are appropriate and necessary. This defies logic and is further evidence of brazen deceit.

17. Mr. Matt also claims to have a mortgage and to own a property in East Wilmette that Zillow values at over $882,000 (Exhibit N). Mr. Matt refuses to provide a proof of the mortgage, title or other property details. Given that Mr. Matt's wealthy father supports him in many ways, the court should consider that Mr. Matt's home is paid for by his father, unless he

All Domestic Relations cases will be heard by phone or video.
Go to http://www.cookcountycourt.org/LinkClick.aspx?fileticket=G7A8KAqSi85%2d&portalid=0
to get more information and Zoom Meeting IDs.
Remote Court Date: No hearing scheduled

FILED DATE: 11/24/2020 2:53 PM    2016D009534

Exhibit O
Continued

can prove otherwise. This is further evidence of the extraordinary financial means available to

Mr. Matt while Megan Mason must pay for her own housing..

18.     Megan Mason worked as the accountant for Goedecke and its international

businesses (at that time Goedecke India and Goedecke Poland) until 2012. She is qualified to

speak to the operation of Peter's businesses as well as common standards in business accounting

and tax. In 2012 Megan Mason withdrew from all financial operations because of concern for

Mr. Matt's financial dealings and their disagreement over the interpretation of US tax laws.

Specifically:

    a.   In 2011 Mr. Matt inherited $800,000 in Germany which Megan Mason believed

       should be declared on the US tax forms. Mr. Matt would not do this.

    b.   Peter Matt then claimed to gift the $800,000 to his father who in turn has made

       "Business Loans" to Peter Matt over the years.

    c.   Peter's father, Leo Matt, subsequently advanced part of Mr. Matt's inheritance

       from his own large estate in the form of "Business Loans"

19. Megan Mason has always fully disclosed her financial status and pays taxes in

accordance with a traditional interpretation of tax law and should therefore be treated as more

credible in all financial matters.

20. Given the preponderance of evidence of hidden accounts and commingling of business

and personal assets as well as the continued access to gifts, the Court ought to treat with

particular scrutiny any assertions by Peter Matt as to his financial means.

21. Given that Mr. Matt has untold resources with which to maintain his lifestyle and to

continue his profligate use of the judicial system, he can afford to contribute significantly more

to the well being of the minor children than Megan Mason can.

5

All Domestic Relations cases will be heard by phone or video.
Go to http://www.cookcountycourt.org/LinkClick.aspx?fileticket=G7A8KAoSi85%2d&portalid=0
to get more information and Zoom Meeting IDs.
Remote Court Date: No hearing scheduled

FILED DATE: 11/24/2020 2:53 PM   2016D009534

22. Given the unequal financial means available to both parties, I humbly ask that the court order that:

    a. **Peter Matt be ordered to pay Michael Bender, GAL, the outstanding balance as of $2,478.50 as of November 15, 2020. Peter Matt agrees to be responsible for 100% of Michael Bender's fees going forward until an order is entered removing Michael Bender from this case**. Peter Matt will pay Michael Bender within 30 days of receipt of an invoice.

    b. **Peter Matt be ordered to pay John Palen's fees** in full until such time as John Palen is removed by the court. Peter Matt will pay Michael Bender within 30 days of receipt of an invoice.

    c. Because of Angus Matt's special medical and educational needs, extraordinary medical expenses are often incurred. **Peter Matt shall be fully responsible for all medical costs beyond health insurance premiums.** This includes ABA therapy, occupational therapy, therapeutic sports or recreational programs, medical specialists, and any other expense deemed medically necessary by any parent with medical or educational decision making rights. This includes any past, present or future obligations described as "medical expenses".

    d. Because the Allocation of Parenting responsibilities and Marital Settlement Agreement have proven ineffective to meet the needs of the minor children in this case and have created opportunities for excessive litigation, future negotiation and the drafting of new orders is necessary. Megan Mason cannot afford an attorney to properly support her in this matter. Peter Matt is independently wealthy and is

All Domestic Relations cases will be heard by phone or video.
Go to http://www.cookcountycourt.org/LinkClick.aspx?fileticket=G7A8KAoSi85%3d&portalid=0
to get more information and Zoom Meeting IDs.
Remote Court Date: No hearing scheduled

FILED DATE: 11/24/2020 2:53 PM   2016D009534

regularly supported by his wealthy father. **Peter Matt should be responsible for Megan Mason's necessary legal fees, in the amount of up to $20,000 annually.**

e.   **Peter Matt will be fully responsible for the cost of a 604B evaluation** should one prove necessary.

PRESENTED BY:

_____

Megan (Matt) Mason, pro se,

November 24, 2020

7

All Domestic Relations cases will be heard by phone or video.
Go to http://www.cookcountycourt.org/LinkClick.aspx?fileticket=G7A8KAoSi85%3d&portalid=0
to get more information and Zoom Meeting IDs.
Remote Court Date: No hearing scheduled

Exhibit P

FILED
1/19/2021 10:53 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2016D009534

FILED DATE: 1/19/2021 10:53 AM    2016D009534

Subpoena in a Civil Matter (For Testimony and/or Documents)          (12/01/20) CCG 0106 A

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Peter Matt
_____
                                Plaintiff/Petitioner

                    v.                          Case No.    16 D 009534

Megan Matt nka Mason
_____
                                Defendant/Respondent

### SUBPOENA IN A CIVIL MATTER
### (For Testimony and/or Documents)

To:     Swanson, Martin & Bell LLP
        330 N. Wabash
        Suite 3300
        Chicago, Illinois 6061

1.      YOU ARE COMMANDED to appear to give your testimony before the

        Honorable _____ in Room _____ ,

        _____ , Illinois on _____

        at _____     AM     PM

2.      YOU ARE COMMANDED to appear and give your deposition testimony before a Notary Public

        at: _____ in Room _____ ,

        _____ , Illinois on _____

        at _____     AM     PM

3.   YOU ARE COMMANDED to mail the following documents in your possession or control

     to  Megan Mason _____ at  423 Linden Ave., Apt. 2E Wilmette, IL 60091 ,

     on or before ___2/15/2021___ at _____1_____     AM   ✓ PM
     (THIS IS FOR RECORDS ONLY.  THERE WILL BE NO ORAL INTERROGATORIES.):

     A full accounting of payments from or on behalf of Peter Matt in connection to case 16 D 09534
     from the time of engagement with Mr. Matt, Goedecke and Associates, or any of his affiliates.
     These records shall include....(continued)
     ✓  Description continued on attached page(s).

**Your failure to respond to this subpoena will subject you to punishment for contempt of this Court.**

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**

**cookcountyclerkofcourt.org**

All Domestic Relations cases will be heard by phone or video.
Go to http://www.cookcountycourt.org/LinkClick.aspx?fileticket=G7A8KaoSi85%3d&portalid=0
to get more information and Zoom Meeting IDs.
Remote Court Date: No hearing scheduled

Case: 1:22-cv-02315 Document #: 8 Filed: 06/21/22 Page 133 of 299 PageID #:743

Exhibit P Continued

FILED DATE: 1/19/2021 10:53 AM   2016D009534

**Addendum:**

**Subpoena in a Civil Matter (Supporting Documents) in the matter of Matt v Matt (16 D 009534)**

Swanson, Martin & Bell LLP (SMB) shall provide all records of payments received by or for their client Peter Matt or his affiliated enterprises, eg Goedecke and Associates, related to ongoing domestic relations matters, including but not limited to:

- All check stubs, wire transfer receipts or electronic funds verification for payment received from accounts associated with:
    - Peter Matt
    - Goedecke and Associates, Inc.
    - Goedecke Poland
    - Goedecke Germany
    - Goedecke India
    - Leo Matt
    - Joe Connelly
    - Anne Mason
    - Angus Matt
    - Theodore Matt
    - Any trusts, corporations, or entities not heretofore mentioned that have issued payments on behalf of Peter Matt

- A full accounting of all payments received by Peter Matt or any associates, including but not limited to those listed above, since his first engagement with SMB prior to these divorce matters to the present including:
    - Date and amount of payments received
    - Source bank account for payments received

- Any credit card authorizations or bank transfer authorizations completed by Peter Matt or his associates in this matter

All Domestic Relations cases will be heard by phone or video.
Go to http://www.cookcountycourt.org/LinkClick.aspx?fileticket=G7A8KAoSi85%3d&portalid=0
to get more information and Zoom Meeting IDs.
Remote Court Date: No hearing scheduled

**Subpoena in a Civil Matter (For Testimony and/or Documents)**      **(12/01/20) CCG 0106 B**

Notice to Deponent:

1.      The deponent is a public or private corporation, partnership, association, or governmental agency. The matter(s) on which examination is requested are as follows:

_____

     Description continued on attached page(s).

     (A nonparty organization has a duty to designate one or more officers, directors, or managing agents, or other persons to testify on its behalf, and may set forth, for each person designated, the matters on which that person will testify. Ill. Sup. Ct. Rule 206.)

2.      The deponent's testimony will be recorded by use of an audio-visual recording device, operated

by _____ .
           (Name of Recording Device Operator)

3.      No discovery deposition of any party or witnesses shall exceed three hours regardless of the number of parties involved in the case, except by stipulation of the parties or by order upon showing that good cause warrants a lengthier examination. Ill. Sup. Ct. Rule 206(d).

     Atty. No.: _____

✓ Pro Se 99500

Name: _Megan Mason_____

Atty. for (if applicable):

_____

Address: _423 Linden Ave., Apt. 2E_____

City: _Wilmette_____

State: _IL___ Zip: _60091_____

Telephone: _917.518.1808_____

Primary Email: _megan42@gmail.com_____

Issued by: /s/_____
                          Signature
        Attorney     Clerk of Court

Date: _____

I attest that I will serve this upon Christopher Wherman at SMB Trials once this document is stamped. I further attest that I will present proof of service to this Court.

     I served this subpoena by mailing a copy, as required by Ill. Sup. Ct. Rules 11, 12 and 204(a) (2),

to _____ by certified mail, return receipt requested

(Receipt # _____) on _____ . I paid the witness $ _____0_____ for witness and mileage fees.

     I served this subpoena by handing a copy to _____

on _____ . I paid the witness $ _____ for witness and mileage fees.

/s/ _____      Megan Mason_____
         (Signature of Server)                            (Print Name)

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

FILED DATE: 1/19/2021 10:53 AM   2016D009534

All Domestic Relations cases will be heard by phone or video.
Go to http://www.cookcountycourt.org/LinkClick.aspx?fileticket=G7A8KaQSi85%2d&portalid=0
to get more information and Zoom Meeting IDs.

FILED DATE: 2/11/2021 9:59 AM   2016D009534

Exhibit Q

FILED
2/11/2021 9:59 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2016D009534

12181292

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

IN RE:  THE MARRIAGE OF          )
PETER MATT,                      )
    Petitioner,                  )
                                 )        Case No. 16 D 9534
    and                          )
                                 )
MEGAN MATT,                      )
    Respondent.                  )

**MOTION TO QUASH SUBPOENA TO SWANSON, MARTIN & BELL**

NOW COMES the Petitioner, PETER MATT, by and through his attorneys, SWANSON,

MARTIN & BELL, LLP, pursuant to Section 2-1101 of the Illinois Code of Civil Procedure (735

ILCS 5/2-1101) and Supreme Court Rules 201 and 204, and hereby moves this Honorable Court

to quash the subpoena for deposition issued by MEGAN MATT to Swanson, Martin & Bell,

LLP.  In support thereof, PETER MATT states as follows:

1.     The Court has jurisdiction over the subject matter herein and the parties hereto.

2.     PETER MATT is the Petitioner in the above-captioned matter.

3.     There is set for hearing a number of pending motions set for hearing on March 3,

2021, namely PETER MATT's Petition for 508(b) Attorney's Fees, PETER MATT's Motion to

Enforce Marital Settlement Agreement – Insurance Premiums, PETER MATT's Motion to

Enforce Marital Settlement Agreement – Children's Expenses, MEGAL MATT's Motion for

Health Insurance Modification, and MEGEN MATT's Motion for Allocation of GAL Fees,

Extraordinary Healthcare Costs, 604B Investigation Costs, and Attorney Fees.  **See Exhibit A,**

**December 3, 2020 Court Order.**

4.     On January 19, 2021, MEGAN MATT caused to be filed a Subpoena issued to

Swanson, Martin & Bell, LLP.  **See Exhibit B, Subpoena.**

FILED DATE: 2/11/2021 9:59 AM   2016D009534

Exhibit Q Continued

5.      The subpoena requests the following documents:

"A full accounting of payments from or on behalf of Peter Matt in connection to case 16 D 09534 from the time of engagement with Mr. Matt, Goedecke and Associates, or any of his affiliates.  These records shall include

• All check stubs, wire transfer receipts or electronic funds verification for payment received from accounts associated with:

   ○ Peter Matt
   ○ Goedecke and Associates, Inc.
   ○ Goedecke Poland
   ○ Goedecke Germany
   ○ Goedecke India
   ○ Leo Matt
   ○ Joe Connelly
   ○ Anne Mason
   ○ Angus Matt
   ○ Any trusts, corporation, or entities not heretofore mentioned that have issued payments on behalf of Peter Matt

• A full accounting of all payments received by Peter Matt or any associates, including but not limited to those listed above, since his first engagement with SMB prior to these divorce matters to the present including:
   ○ Date and amount of payments received
   ○ Source bank account for payments received

• Any credit card authorization or bank transfer authorizations completed by Peter Matt or his associates in this matter."  **See Exhibit B.**

6.      Section 2-1101 of the Illinois Code of Civil Procedure provides in pertinent part;

"The clerk of any court in which an action is pending shall, from time to time, issue subpoenas for those witnesses and to those counties in the State as may be required by either party...An attorney admitted to practice in the State of Illinois, as an officer of the court, may also issue subpoenas on behalf of the court for witnesses and to counties in a pending action.  An order of court is not required to obtain the issuance by the clerk or by an attorney of a subpoena duces tecum.  For good cause shown, the court on motion may quash or modify any subpoena or, in the case of a subpoena duces tecum, condition the denial of the motion upon payment in advance by the person in whose behalf the subpoena is issued of the reasonable expense of producing any item therein specified." *See 735 ILCS 5/2-1101.*

All Domestic Relations cases will be heard by phone or video.
Go to http://www.cookcountycourt.org/LinkClick.aspx?fileticket=G7A8KAqSi85%2d&portalid=0
to get more information and Zoom Meeting IDs.
Remote Court Date: No hearing scheduled

Case: 1:22-cv-02315 Document #: 8 Filed: 06/21/22 Page 137 of 299 PageID #:747

Exhibit Q Continued

FILED DATE: 2/11/2021 9:59 AM   2016D009534

7.     The subpoena issued by MEGAN MATT is defective on its face.

8.     First, MEGAN MATT did not cause the subpoena to be issued by the clerk of the court as is required by Section 1101 of the Illinois Code of Civil Procedure.

9.     Second, MEGAN MATT is not an attorney admitted to practice in the State of Illinois and therefore did not, and could not, issue the subpoena as an officer of the Court.

10.     Third, MEGAN MATT did not advance payment for the expense of producing the documents.

11.     Further, the Supreme Court of Illinois has explicitly adopted the four requirements for the issuance of a subpoena as set forth by the United States Supreme Court in *U.S. v. Nixon*, 419 U.S. 683 (1974):

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

See also, *People ex rel. Fisher v. Carey*, 77 Ill.2d259, 32 Ill.Dec. 904, 396 N.E.2d 17 (1979).

12.     Although Supreme Court Rule 201 establishes a liberal standard of discovery, the liberal scope is limited to all facts concerning a claim or a defense. As our Supreme Court has observed, discovery, although wide-ranging, "should only be utilized to illuminate the actual issues in the case." *Owen v. Mann,* 105 Ill.2d 525, 530 (1985). The pleadings frame the relevant issues.

13.     Illinois case law is clear as it relates to post-judgment discovery: rarely have courts allowed post-judgment discovery. In fact, many courts are reluctant to allow post-judgment discovery and will only grant discovery in special circumstances, as when new evidence is discovered. *Shapo v. Tires N. Tracks, Inc.,* 782 N.E.2d 813, 823 (1st Dist. 2002).

All Domestic Relations cases will be heard by phone or video.
Go to http://www.cookcountycourt.org/LinkClick.aspx?fileticket=G7A8KAqSi85%3d&portalid=0
to get more information and Zoom Meeting IDs.
Remote Court Date: No hearing scheduled

FILED DATE: 2/11/2021 9:59 AM   2016D009534

Exhibit Q Continued

14.     Moreover, when dealing with discovery directed at third parties and the records of such non-parties, courts are especially protective of non-party records and are empowered to "deny, limit, condition, or regulate the taking of discovery in order to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or oppression." Ill. S. Ct. Rule 201(c); *Continental Illinois Nat'l Bank and Trust Co. v. Eastern Illinois Water Co.,* 31 Ill.App.3d 148 (5th Dist. 1975).

15.     Indeed, non-parties should not be inconvenienced at the whim of a particular party.

16.     Here, the Subpoena to Swanson, Martin & Bell, LLP should be quashed as it is overly broad, harassing, and requests information that is immaterial and not relevant to the determination of the issues before the court, and seeks information that occurred pre-judgment and therefore not relevant to the pending proceedings.

17.     Swanson, Martin & Bell, LLP is not the keeper of PETER MATT's financial records.

18.     Additionally, the request is overly broad in that it requests all documents from PETER MATT's "first engagement" of SMB.

19.     Further, this matter is post-decree and subject to the limitation on the liberal discovery scope.  MEGAN MATTs Subpoena is directed to obtain irrelevant records from Swanson, Martin & Bell, LLP which are not part of the instant action, including financial documents from the pre-decree action.

20.     MEGAN MATT is merely engaged in a "fishing expedition" intended to uncover information for the primary purpose of harassing PETER MATT and not to further any of the claims or defenses related to the pending issues.

4

All Domestic Relations cases will be heard by phone or video.
Go to http://www.cookcountycourt.org/LinkClick.aspx?fileticket=G7A8KAoSi85%23&portalid=0
to get more information and Zoom Meeting IDs.
Remote Court Date: No hearing scheduled

FILED DATE: 2/11/2021 9:59 AM    2016D009534

21.    As such, MEGAN MATT's Subpoena was issued in bad faith as an effort to embarrass, harass, and intimidate PETER MATT.

22.    "[Supreme Court] Rule 201(b)(1) is founded on the basic premise that the objective of discovery is the "expeditious and final determination of controversies in accordance with the substantive rights of the parties." *Owen v. Mann*, 105 Ill. 2d 525, 530, 475 N.E.2d 886 (1985).

23.    Under Supreme Court Rule 201(c), the trial court should deny any discovery request "to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or oppression." *People v. Teller*, 207 Ill. App. 3d 346, 350, 565 N.E.2d 1046, 1049 (2nd Dist. 1991).

24.    MEGAN MATT's Subpoena is not relevant to the pending issues in this matter and was issued as a means of harassment.

25.    The documents sought are not for the objective of "expeditious and final determination of the controversies," as they are irrelevant and not determinative of PETER MATT's income or financial means is it relates to the pending motions.

26.    As a result, the Court should quash the Subpoena issued by MEGAN MATT.

WHEREFORE, the Petitioner, PETER MATT, by and through his attorneys, Swanson, Martin & Bell, LLP, respectfully prays as follows:

A.    That this Honorable Court quash MEGAN MATT's Subpoena to Swanson, Martin & Bell, LLP;

B.    Attorneys fees and costs in favor of PETER MATT and against MEGAN MATT for the preparation and prosecution of this Motion to Quash; and,

All Domestic Relations cases will be heard by phone or video.
Go to http://www.cookcountycourt.org/LinkClick.aspx?fileticket=G7A8KAoSi85%3d&portalid=0
to get more information and Zoom Meeting IDs.
Remote Court Date: No hearing scheduled

Case: 1:22-cv-02315 Document #: 8 Filed: 06/21/22 Page 140 of 299 PageID #:750

Exhibit Q Continued

FILED DATE: 2/11/2021 9:59 AM   2016D009534

C.  For such other and further relief as this Court deems equitable and just.

Respectfully submitted,

One of the Attorneys for PETER MATT

SWANSON, MARTIN, & BELL, LLP
Attorneys for the Petitioner
330 North Wabash, Suite 3300
Chicago, Illinois  60611
(312) 321-9100
Firm I.D. No. 29558
sklein@smbtrials.com

All Domestic Relations cases will be heard by phone or video.
Go to http://www.cookcountycourt.org/LinkClick.aspx?fileticket=G7A8KAcSi85%23d&portalid=0
to get more information and Zoom Meeting IDs.
Remote Court Date: No hearing scheduled

Exhibit R

FILED
2/24/2021 12:12 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2016D009534

12331387

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

IN RE THE MARRIAGE OF: )
)
PETER MATT, )
)
        Petitioner, )
)
  and )    No. 16 D 9534
)
MEGAN MATT n/k/a MASON, )
)
        Respondent. )

## RESPONSE TO MOTION TO QUASH SUBPOENA AND MOTION TO COMPEL

Now comes Megan Matt nka Mason's response to Petitioner's Motion to Quash subpoena and Motion to compel that Swanson, Martin & Bell to tender documents as subpoenaed:

1. Respondent agrees that the Court has jurisdiction over the subject matters herein and the parties hereto.

2. Respondent agrees that Peter Matt is the Petitioner in the above-captioned matter.

3. Respondent agrees that there is set for hearing a number of pending motions.

4. Respondent agrees that a subpoena request was submitted to Swanson, Martin & Bell.

5. Respondent agrees that the subpoena is for a full accounting of payments on Peter Matt's account and various payers were listed.

6. Respondent agrees that parties in Illinois are subject to the Illinois Code of Civil Procedure.

7. Respondent disagrees that the subpoena is defective on its face.

8. Respondent disagrees and asserts that she did cause the subpoena to be issued by the clerk of the Court. Having reviewed the above mentioned subpoena clerks on behalf of Iris Y. Martinez, Circuit Clerk of Cook County, stamped and ratified said subpoena at 10:53am on January 19, 2021. Respondent further notes that, due to

FILED DATE: 2/24/2021 12:12 PM    2016D009534

All Domestic Relations cases will be heard by phone or video.
Go to http://www.cookcountycourt.org/LinkClick.aspx?fileticket=G7A8KAoSi85%23&portalid=0
to get more information and Zoom Meeting IDs.
Remote Court Date: No hearing scheduled

2016D002315 Document #: 8 Filed: 06/21/22 Page 142 of 299 PageID #:752

Exhibit R Continued

FILED DATE: 2/24/2021 12:12 PM   2016D009534

the COVID 19 pandemic, efiling is the only method available to the public to engage with Clerks of Cook County and this is the method she used to get the stamp before submitting to Petitioner. Petitioner is cynically implying that, due to a public health crisis, pro se litigants should be denied due process. This is on the face of it false. This subpoena should not be thrown out.

9.  Respondent agrees that she is not an attorney.

10. Respondent agrees she did not advance payment for documents and further notes that Swanson, Martin, Bell has sent Respondent accounting statements in the past at no cost, presumably because the firm uses a standard accounting software such as Quickbooks. Respondent notes that such objection is disingenuous and that an emailed copy of the documents could be generated and emailed in moments. (see Exhibit A Invoice).

11. Respondent agrees that the Supreme Court of Illinois has adopted requirements for the issuance of a subpoena.

12. Respondent agrees that subpoenas should be relevant.

13. Respondent agrees that courts have good reasons for post-judgment discovery.

14. Respondent agrees that discovery is worthy of serious consideration.

15. Respondent agrees that non-parties ought not to be inconvenienced.

16. Respondent vehemently disagrees that the subpoena is harassing and ought to be quashed for the following reasons:

a.  This line of post-decree discovery has been ordered by the Court. This Court has, on two occasions, ordered matters for reallocation pending financial review. Assuming Petitioner agrees that this Court has authority to order a review of financial allocation and the obvious discovery and document exchange such allocation entails, this matter is settled as germaine and important to the matters before this Court.

b.  The specific details requested are quite narrow -source of funds for payment of Petitioner invoices. Petitioner has brazenly lied about the existence of multiple bank accounts in the US and Europe with which he pays his expenses. Respondent would like to show the Court that Petitioner

All Domestic Relations cases will be heard by phone or video.
Go to http://www.cookcountycourt.org/LinkClick.aspx?fileticket=G7A8KAqSj85%23&portalid=0
to get more information and Zoom Meeting IDs.
Remote Court Date: No hearing scheduled

Case: 1D02315 Document #: 8 Filed: 06/21/22 Page 143 of 299 PageID #:753

Exhibit R Continued

FILED DATE: 2/24/2021 12:12 PM    2016D009534

has multiple undisclosed resources with which he pays his legal bills but which he refuses to use for family expenses.

c. Respondent also notes that she made this petition after multiple attempts at a normal exchange of financial information as ordered by this Court. Specifically, Respondent showed evidence of four bank accounts controlled by Mr. Matt not disclosed in his most recent financial affidavit. She requested proof that these accounts were closed and received no response. It is Petitioners willful refusal to comply with the Order that necessitates this subpoena.

d. It is also reasonable to show Petitioners pattern of deceitful behavior in financial matters. Quite simply, Petitioner should not be rewarded for hiding assets, evading taxes and lying in documents heretofore presented in this Court.

17. Respondent does not understand what this means and can neither confirm nor deny Swanson, Martin & Bell's scope of engagement with Mr. Matt.

18. Respondent denies that the request is overly broad as only source payment sources are requested. The full payment history is requested because the matter of source bank accounts and claims that such accounts have been closed is relevant to this matter.

19. Respondent agrees that this matter is post-decree but notes that there are obvious times when records from the past are relevant, as explained above.

20. Respondent disagrees that she is engaged in a "fishing expedition" and again points out that this discovery is in relation to financial allocation ordered by this Court. If the Petitioner questions the Court's authority to order a review of allocation, that is not Respondent's matter to resolve.

21. Respondent denies that the Subpoena was not issued in good faith and further demands compliance with the request.

22. Respondent agrees that discovery ought to be expeditious and substantive.

23. Respondent agrees that discovery ought not to cause undue burdens.

24. Respondent disagrees that her subpoena is irrelevant as details extensively above.

All Domestic Relations cases will be heard by phone or video.
Go to http://www.cookcountycourt.org/LinkClick.aspx?fileticket=G7A8KAqSi85%3d&portalid=0
to get more information and Zoom Meeting IDs.
Remote Court Date: No hearing scheduled

Case: 1:22-cv-02315 Document #: 8 Filed: 06/21/22 Page 144 of 299 PageID #:754

Exhibit R Continued

FILED DATE: 2/24/2021 12:12 PM   2016D009534

25. Respondent disagrees and further notes that Peter Matt's financial means are primarily gifts and transfers from his hidden overseas businesses. In this case, bank records are the only documentation as Peter Matt refuses to report overseas assets or pay taxes on his businesses held overseas, so there are no paystubs, tax records or other documents that a "traditional" financial discovery would entail. Respondent further notes that she complies with the law and pays taxes and does not feel that she should disproportionately be assigned expenses simply because Petitioner refuses to comply with Discovery or the law.

26. Respondent disagrees that this Subpoena should be quashed and asks the Court to please swiftly and decisively force compliance with said subpoena.

Respectfully submitted,

*Megan Mason*

MEGAN MATT n/k/a MASON

4

All Domestic Relations cases will be heard by phone or video.
Go to http://www.cookcountycourt.org/LinkClick.aspx?fileticket=G7A8KAcSi8E%3d&portalid=0
to get more information and Zoom Meeting IDs.

Exhibit S

FILED
11/30/2021 9:32 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2016D009534
Calendar, 23
15765159

FILED DATE: 11/30/2021 9:32 AM   2016D009534

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

| | |
|---|---|
| IN RE THE FORMER MARRIAGE OF: | ) |
| | ) |
| PETER MATT, | ) |
| | ) |
| *Petitioner,* | )     Case No. 2016 D 009534 |
| | ) |
| and | ) |
| | ) |
| MEGAN MATT, | ) |
| n/k/a MEGAN MASON, | ) |
| | ) |
| *Respondent.* | ) |

## PETITION TO SUBSTITUTE JUDGE FOR CAUSE

On December 6, 2021 I intend to present this petition at Zoom Court before Judge Robert Johnson at 10 am via (Zoom ID: 934 9022 2003; Password 543296). As will be detailed herein, I am fearful that this pleading will go unheard and I am fearful of retaliation, and submit this as a potential whistleblower, given the volume of irregular events that have transpired. I am therefore also requesting that The Honorable Grace Dickerson ensure that I am granted a hearing by an objective judge not related to this case.

### Summary

I pray that The Honorable Judge Robert Johnson be substituted for cause on the basis of judicial bias against me, Megan Matt (NKA Mason), Respondent, acting pro se in this case.

> *Section 5/2-1001 of the Code of Civil Procedure governs substitution of judges. 735 ILCS § 5/2-1001.* **Motions for substitution of a judge may be made for involvement in the action, cause, as a matter of right, or in contempt proceedings.** *Id. § 5/2-1001(a).* **A party may move for substitution for cause at any time by filing a petition that asserts the specific allegations that justify substitution.** *Id. § 5/2-1001(a)(3).*

> **Each party is entitled to move for substitution as a matter of cause.** *735 ILCS § 5/2-1001(a)(3)(i). To move for substitution as a matter of cause, a party must file a petition setting forth the cause for substitution and praying for a substitution of judge. Id. § 5/2-1001(a)(3)(ii). The petition must be verified by the affidavit of the moving party. Id. § 5/2-1001(a)(3)(ii). A judge who is not named in the petition will conduct a hearing to determine whether cause for substitution exists. Id. § 5/2- 1001(a)(3)(iii).*

In support thereof, I state as follows:

FILED DATE: 11/30/2021 9:32 AM    2016D009534

1. Judge Robert Johnson's demonstrated bias against me is grounds for substitution for cause.

2. Judge Johnson's bias has been witnessed and documented extensively.

3. Specifically: Judge Johnson's bias against me has been demonstrated by: repeated ex parte communications; repeated denial of due process; and a contempt finding against me not based in fact.


**Overview**

4. On September 27, 2017, the parties were divorced and the Court entered an Allocation Judgment.

5. Two children were born of the marriage, namely Angus, born on 8/11/08 and currently age 13; and, Theodore, born on 2/12/12 and currently age 9.

6. On February 19, 2019, Mr. Matt, petitioner, moved that a guardian ad litem be appointed.

7. I, Megan Mason, Respondent,  opposed this appointment.

8. On June 6, 2019, Judge Johnson selected and ordered the appointment of Michael Bender as Guardian Ad Litem, two years post decree with no underlying legal proceeding pending.

9. Subsequently Mr. Bender has requested and was granted by Judge Johnson the appointment of Dr. John Palen as Parenting Coordinator on September 25, 2020..


**Ex Parte Communications**

10. *Ill. Sup. Ct. R. 63,(5)* **A judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding except that: (a) Where circumstances require, ex parte communications for scheduling, administrative purposes or emergencies that <u>do not deal with substantive matters</u> or issues on the merits are authorized**; *provided:*
   **(i) <u>the judge reasonably believes that no party will gain a procedural or tactical advantage as a result of the ex parte communication</u>, and**
   **(ii) <u>the judge makes provision promptly to notify all other parties of the substance of the ex parte communication</u>** *and allows an opportunity to respond*

11. Judge Johnson has allowed and indirectly participated in inappropriate ex parte communication via emails with opposing counsel to and from his clerk, Ms. Kaye Mason, on at least two occasions.

FILED DATE: 11/30/2021 9:32 AM   2016D009534

12. On December 5, 2020, Dr. John Palen, parenting coordinator, accidentally copied me on an email including Mr. Bender; Mr. Christopher Wehrman, opposing counsel; and Ms. Kaye Mason, Judge Johnson's clerk.

    a. This email was one of a seeming thread of emails discussing this case. It appears there are other emails between these parties because Dr. Palen uses no address (eg "Hi John"), but rather writes a statement as if in response to prior discussion.

    b. I was excluded and no attorney representing me has been included in this or other email threads between these individuals and Ms. Kaye Mason.

    a. I happened to receive this one email unintentionally when Dr. Palen accidentally copied me because I share Ms. Kaye Mason's last name.

    b. This email is evidence of inappropriate ex parte communication wherein all parties in this case, except me, are given access to communicate with each other and with Judge Johnson via his clerk, on an ongoing, secretive basis.

    c. This private email thread almost certainly gives the opposing parties in this matter a tactical advantage. This is on the face of it evidence of profound bias and prejudice toward me.

    d. The contents of this particular email are particularly troubling. In this email, Dr. Palen wrote, **"I want to be paid. It is as simple as that".**(**Exhibit A** "I want to be paid" email)

    e. At this time Dr. Palen had been paid in full and was still being compensated by funds drawn from his positive retainer balance. No fee motions were pending or even contemplated.

    f. It's implausible to regard this email as part of a routine scheduling matter.

    g. Further, Dr. Palen lied about the nature of this email, suggesting guilt. Specifically, Dr. Palen, upon realizing he had accidentally copied me, wrote, "Sorry- this was meant for another case. I had not noticed Ms. (Megan) Mason on the list of recipients." (**Exhibit B** "Sorry this was meant for another case" email)

    h. No reasonable person would believe this was meant for another case or that Mr. Wehrman, Mr. Bender and Judge Johnson happen to be involved in another case with Dr. Palen, as evidenced by the fact that no counterparty attorney was copied.

FILED DATE: 11/30/2021 9:32 AM   2016D009534

i. If by some stretch of the imagination this could be considered appropriate ex parte communication, there would necessarily be an attorney for both the Petitioner and the Respondent copied. There was not, except by accident.

j. The discussion of personal remuneration in an ex parte communication, not intended to be read by one party, is deeply troubling. Any reasonable person would have to question the credibility of court proceedings after becoming aware of such behaviors.

k. No party has ever informed me of the other emails in the chain, much less acted promptly to notify me of the substance of the ex parte communication

l. By allowing such practices in his court, Judge Johnson has created an atmosphere that is inherently untrustworthy and imbalanced unfairly against me.

13. The second instance of ex parte communication observed by me occurred on May 27, 2021 when, having duly followed procedures and guidelines for Cook County Domestic Relations Division under Covid protocols, I scheduled a hearing on three petitions.(**Exhibit T** *PETITION FOR RULE TO SHOW CAUSE AND MOTION TO COMPEL RE: STRANGE ADULTS IN CHILDREN'S HOME*; **Exhibit U**: *PETITION FOR RULE TO SHOW CAUSE AND MOTION TO COMPEL RE: FAILURE TO PROVIDE CHILDCARE FOR CHILDREN AND FAILURE TO ADDRESS CHILDREN' S SAFETY;* and  **Exhibit V:** *PETITION FOR RULE TO SHOW CAUSE AND MOTION TO COMPEL RE: HARASSMENT AND FAILURE TO ADHERE TO PARENTING PLAN WITH REGARD TO PARENTING TIME.)*

(**Exhibit C** Please may I have a hearing date email)

a. These pleadings all contain matters that seriously impact the well being of the children.

b. The pleadings are supported by more than fifty pieces of documentary evidence including: a police report, an email from a police officer stating that the parenting time violations ought to be addressed by a judge, an email from the parenting coordinator stating that some matters need to be brought before the judge and multiple threatening emails from Mr. Matt to me and staff members at my church.

c. On May 27, 2021 I emailed Ms. Kaye Mason, Judge Johnson's clerk, to schedule my hearing on the matters (**Exhibit C** Please may I have a hearing date email).

d. As is protocol, I copied Mr. Wehrman, Petitioner's attorney, and Mr. Bender, GAL.

e. Ms. Mason followed Cook County Domestic Relations Division protocols and scheduled my court appearance (**Exhibit D** "The first available date" email).

Exhibit S Continued

f.  Mr. Matt did not want these pleadings brought to court because they contain voluminous evidence of his ongoing violations of the parenting plan and other misconduct.

g.  Mr. Matt had been given the opportunity to provide a written response to the pleadings and did so.

h.  Mr. Matt, via Mr. Wehrman, responded to the pleadings and provided no evidence that the claims made therein were in any way false. Mr. Matt provided no explanation for the serious misconduct disclosed therein nor did Mr. Matt indicate he intended to stop any of the misconduct.

i.  On May 27, 2021 Mr. Wehrman requested Ms. Mason ask Judge Johnson to deny me a hearing on these matters . Mr. Wehrman emailed Ms. Mason,
    "Kaye: When we were before the Judge on Monday, he appointed a 604 evaluator and set everything for status on July 13, 2021. I do not believe Judge Johnson is having any hearings on this case at this time." (Exhibit E "I do not believe Judge Johnson is having hearings" email).

j.  Ms. Mason then wrote that she would accommodate Mr. Wehrman's request by verbally communicating his wish to cancel my hearing to Judge Johnson (**Exhibit F** "I will verify with the judge" email).

k.  As a basis for his special treatment Mr. Wehrman suggests that because Judge Johnson appointed a custody evaluator no matters should be heard. This is simply unimaginable.

l.  A custody evaluation can be long and protracted and parents ought to at no time be barred from accessing due process to address urgent matters relating to their children's well being.

m.  Further, as is the case of financial allocation, not all matters related to domestic relations are addressed by a custody evaluation and there is no reason that such a process should displace normal court functioning.

n.  Ms. Mason agreed to follow Mr. Wehrman's instructions and set aside Cook County Domestic Relations Division policies in order to see if Judge Johnson would grant Mr. Wehrman his favor of blocking the hearing (**Exhibit F** "I will verify by the end of the day" email)

o.  According to an email from Ms. Mason, without any reference to a legal basis, Judge Johnson verbally approved this favor to Mr. Wehrman and ordered her to cancel my duly scheduled hearing date. (**Exhibit G** "I just spoke with the judge" email).

FILED DATE: 11/30/2021 9:32 AM   2016D009534

FILED DATE: 11/30/2021 9:32 AM   2016D009534

p.   Ms. Mason's reference to the fact that she received an email request form Mr. Wehrman and then "just spoke the judge" firmly establishes that she is in the habit of using email as a way to brazenly facilitate ex parte dealings and she must therefore in all her communications be seen as a proxy for Judge Johnson.

q.   On the face of it these events demonstrate an unequal relationship wherein Petitioner's counsel is allowed to seek and receive favors outside of open court to my detriment.

r.   Ms. Kaye Mason had previously rebuked me via email to, "Please do not include me (Coordinator) in correspondence between counsels and litigants" (**Exhiibt H** "Please do not include me").

s.   Because Petitioner is given the ongoing opportunity to discuss any number of matters with Judge Johnson via his clerk on an ex parte basis and I have been strictly rebuked for any communication to Ms. Kaye Mason that is not routine scheduling, which is to say legally allowable, there is an inherent imbalance.

t.   Particular scrutiny should be given to the fact that I was at this time pro se and, Judge Johnson did not utilize the leniency afforded to judges to *Ill. Sup. Ct. R. 63, (4)* to "*make reasonable efforts, consistent with the law and court rules, to facilitate the ability of self-represented litigants to be fairly heard*".

u.   In fact, contrary to the above statute, Judge Johnson has consistently held me to a higher standard in order to access judicial process than the standard an attorney must meet. This is simply an impossible situation for a litigant.

v.   This imbalance is evidence of overwhelming bias against me.

18.  In denying me hearing dates for various urgent matters I have attempted to bring to his attention, Judge Johnson deprived me of my legally protected right to due process.

19. My right to due process is protected by the Fifth Amendment of the Constitution of the United States of America and explicitly by *Ill. Sup. Ct. R. 63, (4) which* reads, **A judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law.** *A judge may make reasonable efforts, consistent with the law and court rules, to facilitate the ability of self-represented litigants to be fairly heard*

20. In a further attack on my constitutional right to due process, I have also been denied notice and the right to participate in hearings in my own case on multiple occasions. .

FILED DATE: 11/30/2021 9:32 AM   2016D009534

a.  In the first instance, on November 19, 2018 Mr. Matt filed a Petition for Rule to show cause against me.

b.  On December 3, 2018 I was found in contempt without having received notice. In fact I received a US postal service mailed notice the evening of Dec. 3, 2018 informing me of the hearing earlier that day at which I was found guilty by default. Curiously Mr. Matt's attorneys emailed me the ruling. (**Exhibit X** First Contempt Ruling Without Due Process).

c.  Pro se at that time I was forced to use my entire $5,000 savings to retain counsel in order to have this overturned.

d.  On March 10, 2020, unbeknownst to me, Mr. Matt filed a  Petition for Rule to Show Cause alleging that I was in contempt of court for various matters.

e.  Mr. Matt, through counsel, served this petition via email on my attorney at the time, Brad Trowbridge, on March 10, 2020, but I would not learn of this matter until over four months later.

f.  Mr. Matt is a vexatious litigant who has been in the habit of filing motions and petitions intended to harass me and inflict financial harm on me since I separated from him and our divorce proceedings began in 2016.

g.  Because he is a vexatious litigant, I had followed up with my then attorney Brad Trowbridge periodically and on April 22, 2020 specifically wrote,
    *"I hope you're well and your clients are not suffering too badly from the quarantine. I'm personally **quite pleased that no motions are being filed right now, a nice break =)"**. .*(**Exhibit I,** "No motions are being filed" email).

h.  Mr. Trowbridge did not tell me at that time that there was a scheduled court appearance or that a PRTSC had been served on me and a contempt allegation made against me. In fact he affirmed that there was no litigation, writing:
    *"**Megan. Yes, unfortunately, it took a pandemic to stop Peter's legal abuse of you!"** (***Exhibit J**  "It took a pandemic to stop Peter's abuse of you!" email)

i.  Around this time someone logged into the court filing system and changed my mailing address from 423 Lind**en** Ave. **Wilmette** to 423 LInd**a** Ave., **Chicago**.

j.  In June of 2021 I personally spoke to a clerk in the Domestic Relations Division and was told the change was made by someone logging in purporting to be me, not due to transcription or computer error.

FILED DATE: 11/30/2021 9:32 AM   2016D009534

k.  I had received mail without issue at this address for four years and after this notices were returned undeliverable (**Exhibit K** "Actual Docket" pdf).

l.  In April, 2020 there was a scheduled court appearance related to the PRTSC. I was never informed by Mr. Trowbridge. I was never informed by Michael Bender, GAL. I was never informed by opposing counsel. I was never informed by court mailing due to the address change.

m.  This date was postponed due to COVID.

n.  On July 6, 2020 there was a court appearance with all parties but me or anyone representing me in attendance. I was never informed by Mr. Trowbridge. I was never informed by Michael Bender, GAL. I was never informed by opposing counsel. I was never informed by mailing due to the aforementioned address change.

o.  On July 20, 2020, according to Court Docket, it appears there was to be a third scheduled date. Nobody informed me of this.

p.  I have no way of knowing what might have been discussed at the July 6th court hearing.

q.  Nobody informed me or followed up to ask why I wasn't at the July 6th, 2020 court appearance, including Michael Bender who serves as my children's Guardian Ad Litem and would presumably be curious why the mother of the children he is tasked with advocating skipped a court hearing.

r.  On July 12, 2020 I received a bill from Mr. Bender's office indicating he had attended court for my case. On this same date I wrote to Brad Trowbridge: "Zoom court? What?" (Exhibit L "Zoom court what?" email).**At this time Mr. Trowbridge still did not inform me that a PRTSC had been served on me**, writing:

> *"We had a zoom court date of July 6 that I had on my calendar as July 7.* ***That could have only have been for a short time. I also don't know how much preparation there could have been. It looks like a lot of activities have been lumped into one line item.*** *The next zoom date is July 20 at 9 AM.* ***Anything I need to know?"***

s.  Mr. Trowbridge has a close professional and personal relationship with Mr. Bender, GAL, and frequently has cause to speak to him. During the preceding seven months, according to Mr. Trowbridge, Mr. Bender repeatedly indicated to Mr. Trowbridge that he would be ending his assignment. He had written on January 22, 2020:

FILED DATE: 11/30/2021 9:32 AM   2016D009534

"*Bender already told the judge this would be his last request*" (**Exhibit N** "Bender told the judge this would be his last appearance" email)

t. Because Mr. Bender does not speak to me or my children, I had no way of knowing he was still acting as a Guardian Ad Litem, so I assumed the court appearances were an opportunity for him to step down.

u. On July 22, 2020, still unaware of any PRTSC allegedly served on me on March 10, 2020, I specifically asked Mr. Trowbridge if Mr. Bender had finally stepped down and if anything had been filed against me, writing:
" *Hi Brad, Did Michael make a motion to be removed? Anything filed against me?"* (**Exhibit O**"Anything filed against me?" email)

v. On July 22, 2020 Mr. Trowbridge finally informed me of the PRTSC served on March 10, 2020. This was four months after the fact and after multiple scheduled court appearances. Mr. Trowbridge wrote:
*"Peter filed this and it was supposed to be up in April when the courts were closed*" (**Exhibit M** "Peter filed this" email).

w. Mr. Trowbridge actually received this pleading, as certified by Mr. Wehrman's notification of filing, on March 10, 2020 via email. Mr. Trowbridge clearly read this pleading in March, 2020 as I would only later realize, when I reviewed his invoice for this period. He billed me for reading it. (**Exhibit P** Trowbridge Invoice)

x. Nevertheless Mr. Trowbridge still refuses to provide me with the email or NOF that he received with the PRTSC and maintains  a curious fallacy that he did not get the PRTSC, claiming, "I didn't receive anything" on June 11, 2021. (**Exhibit Q** "I didn't receive anything" email).

y. As in the case of Dr. Palen, when a party in this case commits malfeasance and then lies about doing so, it only intensifies the way their misconduct damages the entire credibility of proceedings before Judge Johnson.

z. Clearly Mr. Trowbridge either willfully failed in his duties as my attorney or was somehow profoundly impaired.

aa. Judge Johnson can not necessarily be blamed for Mr. Trowbridge's misconduct.

bb. However it is the responsibility of Judge Johnson to ensure officers in his court and other court professionals operate ethically and decently and to see that they are mentally and physically able to perform the important duties of advocating for parents and children.

FILED DATE: 11/30/2021 9:32 AM   2016D009534

cc. In fact Mr. Bender, Mr. Wehrman and Judge Johnson, are all, as officers of the court, expected to report misconduct or unfitness they witness in other attorneys.

dd. One can imagine any number of scenarios - physical calamity, addiction, illness, even death - where an officer of the court might be unable to serve.

ee. It is the responsibility of all officers of the court to act vigilantly when another officer of the court might appear to be impaired or unable to serve the client.

ff. As a lay person I would have thought it unusual for an attorney and his client not to file a response or appear at court for four months after a serious allegation of contempt was made and I remain curious as to why no one ever contacted me during this period.

gg. By not ensuring that I had been notified and given the opportunity to participate in hearings in my own case, Judge Johnson has allowed a profound violation of my rights that suggests he is deeply biased against me.

**Contempt ruling not based in fact**

21.  One further demonstration of bias is a finding of willful contempt of court that is not based in fact. Namely, Judge Johnson ruled that I had violated his November 20, 2019 order that, "Parents shall continue ABA Therapy". (**Exhibit R** November 20, 2019 ABA Order; **Exhibit W** Aug 21, 2020 Contempt Order).

a. As part of his pattern of vexatious litigation, Mr. Matt has long made the claim that I interfere with our older child receiving Applied Behavioral Analysis (ABA) Therapy.

b. ABA therapy is a kind of hands-on behavioral therapy for individuals with autism and other developmental disabilities.

c. In fact, though ABA therapy has never been ordered or recommended by a medical doctor, I have enrolled our older child in this therapy and participated many times in this therapy since he was four years old. He's now thirteen.

d. The basis of Mr. Matt's claim that I interfere with ABA therapy stems from his history of financial abuse and vexatious litigation and my attempts to protect myself in response. Notably:

i. On one occasion Mr. Matt committed in writing to pay the full $14,000 for ABA therapy for that year because I was unemployed at the time and had no money to contribute. Later Mr. Matt brought a motion before Judge Johnson to sue me for the fees he'd previously committed to pay.

FILED DATE: 11/30/2021 9:32 AM   2016D009534

    ii. On another occasion I lost my job and emailed the ABA provider that day to tell her I needed to pause therapy until we could set up COBRA. Mr. Matt has used this in court as an example of me aggressively "blocking" ABA therapy because I was in financial distress.

e. I maintain the alleged conflict is a ruse for abusive litigation. There has never been an "Issue" with ABA therapy.

f. Nevertheless, onNovember 20, 2019, based only on instructions from Michael Bender, GAL, Judge Johnson entered an order that "The parties shall continue ABA therapy".

g. We have done so.

h. In October, 2019 I enrolled my son in after school care on Monday and Tuesday afternoons so that I could work.

i. As a result of work I am able to feed and house my children. I receive no maintenance or child support.

j. I asked the after school program director to allow ABA therapists to push in therapy on Monday and Tuesday afternoons. The school staff said they could not accommodate this as it is a public school program and they cannot allow outside providers.

k. ABA usually requires a minimum of three hours and it was impossible to fit in on the days I worked, but our son was continuing every other day of the week, subject to therapist availability.

l. Mr. Matt has aggressively sought to sabotage my career as part of his ongoing emotional and financial abuse as well as to aggressively control my parenting time, contrary to the duly enacted parenting plan.

m. In November of 2019, Mr. Matt threatened me with litigation for not doing ABA on Mondays and Tuesdays because of employment.

n. Mr. Trowbridge, my then attorney, told me I had nothing to fear because the order was that ABA therapy continue, with no number of days or hours, no location, and no specific parental involvement mandated in the order. I was made to understand that the standard of proving contempt is (theoretically) very high and this could not possibly rise to that standard since ABA was continuing and any reasonable family law judge believes parental employment is good for children.

o. Mr. Matt never raised this issue again, nor did Michael Bender serving as GAL. I would not learn there was an allegation of a problem until July, 2020, eight months later.

FILED DATE: 11/30/2021 9:32 AM   2016D009534

p. At the time that the PRTSC alleging that I violated the order that "ABA shall continue" was filed on March 10, 2020 (without my knowledge), the entire state was locked down due to COVID. During Illinois's COVID lockdown no parent, including Mr. Matt himself, could possibly have been expected to continue an in-person therapy.

q. In fact, on June 5th, 2020, Mr. Matt texted me:
> "Are you ok with me getting a new ABA provider? They continue dragging their feet providing services because of covid, while many other providers work"(**Exhibit S** "Are you ok with me getting a new ABA provider?" Text).

r. During COVID lockdown some providers did offer Zoom therapy but this is not an approved or appropriate methodology for people who, due to developmental disabilities or cognitive impairment, lack the ability to regulate themselves and focus for sustained periods.

s. Our older son has severe ADHD and struggles very much with sitting in front of a screen.

t. Our older son reported to me in spring of 2020 that Mr. Matt was dragging him, kicking him and physically holding him down in a chair to force the Zoom therapy.

u. This violence was also reported to me by my younger son who is neurotypical.

v. I am a former teacher with a Masters Degree in Early Childhood Education and a trained mandated reporter.

w. I recognized this behavior by Mr. Matt as abusive and reported this behavior to my older son's school, to DCFS and to Michael Bender, GAL in the spring and summer of 2020.

x. In the spring of 2020 my older son's school offered us access to an ABA software called TeachTown which I was using with my son to provide ABA therapy modified for COVID lockdown.

y. In an effort to try to reduce violence from his father and my son's mistreatment I wrote to the ABA provider that we didn't need the Zoom therapy because the school was providing software that was more appropriate for children of my son's ability than a video conferencing tool.

z. I had no way of knowing that there was anything wrong with this because, between March and July, 2020, nobody told me there was a contempt allegation or, more pointedly, nobody suggested there was an underlying issue that would necessitate a contempt allegation.

FILED DATE: 11/30/2021 9:32 AM   2016D009534

aa. As a lay person it is my understanding that the purpose of a contempt finding is to ensure parties comply with judicial orders, not to inflict harm on individuals one does not like.

bb. I believe I ought to have been able to explain that my employment and wish to prevent child abuse factored into my decisions and that I had every reason to believe I was in compliance with the order.

cc. On August 21, 2020 we appeared before Judge Johnson for a hearing but Mr. Trowbridge did not speak, specifically he did not present any points from the response we drafted.

dd. No evidence was presented by Mr. Matt to prove that I willfully violated the order that "ABA shall continue".

ee. I do not believe Judge Johnson fulfilled his duty to review the facts of the case.

ff. On August 21, 2020 Judge Johnson found, "Megan Matt willfully and contumaciously failed to participate in the court ordered ABA therapy for Angus". This is untrue.
   i.   In order for me to have willfully defied the order I would have needed to know I violated it.

   ii.  In order to be contumacious, one must necessarily know they are in violation and stubbornly persist, which implies at least knowing at one time. I did not at any time know this.

gg. On the face of it, I still maintain I was in compliance with an order that "Parents shall continue ABA therapy" as, barring lockdown and employment constraints, ABA was continuing.

hh. Because the finding was so utterly unsupported by fact, Mr. Trowbridge told me upon ruling that he would immediately file a motion to reconsider.

ii. Mr. Trowbridge did not file a motion to reconsider.

jj. Mr. Trowbridge stepped down as counsel  forty days after the ruling, citing ongoing "computer issues" in the court system as one reason he could not continue.

kk. Judge Johnson's baseless contempt ruling was not based on fact and can therefore only be based on his bias.

22. One factor that has contributed to rulings not based in fact and the denial of due process by Judge Johnson is the appointment of Michael Bender as Guardian Ad Litem.

Exhibit S Continued

A. Mr. Bender was appointed at the request of Peter Matt, who wished to control and harass me but was unable to find a legal basis to modify the parenting plan or to claim I was in non-compliance.

B. To my understanding, having been divorced for two years, with no court motions pending, there was not a legal basis to diminish my parental rights in any way.

C. Divorced women are not a separate class of citizens. We are entitled to the same rights as any other citizen and I ought to have been allowed to exercise my right to parent without state intervention, barring legitimate court proceedings.

D. Having been appointed in the role of GAL, Mr. Bender has demonstrated a shocking inability or disinclination to advocate for my children.

   a. In two years he has never spoken to my older son's developmental pediatrician, who is a faculty member of the University of Chicago and serves on many boards of the American Academy of Pediatrics.

   b. In two years he has never spoken to any of my children's teachers or other school staff.

   c. In two years he has never spoken to my older son's long term ABA therapist.

   d. He does not respond to my emails or calls.

   e. In two years he had never spoken to my children's doctors until my older son's pediatrician tried to reach Mr. Bender for two weeks in order to report to him a sealed visit note containing reports of child abuse. A court appearance occurred in this period, once the appearance was made and he had "nothing to report", he finally returned her call.

E. Because of my concerns about Mr. Bender's commitment to his duty, it is therefore doubly concerning that Judge Johnson has frequently set aside my due process rights and assigned Mr. Bender, as GAL, to investigate, assess and form judgement on all matters relating to my case.

   a. In early spring of 2021 I moved that a post-decree parenting evaluation be conducted (604.10 b) for a variety of reasons, but most significantly Mr. Matt's firm opposition to psychiatric medication, which has severely damaged our older son's well being and access to education as well as Mr. Matt's use of his medical decision right to incur excessive medical expenses in order to repeatedly sue me and cause harm.

   b. Judge Johnson denied my motion and firmly stated that there was no basis or issue with parentage to warrant an investigation.

FILED DATE: 11/30/2021 9:32 AM 2016D009534

c. At this time I told Judge Johnson that there were serious issues, such as Mr. Matt's tenement scheme and failure to supervise the children.

d. At this time Judge Jonson told me, "If that's true, you need to file something or I can't do anything about it".

e. I filed multiple Petitions, included here (Exhbits T, U, V).

f. When I attempted to present these in court, Judge Johnson did not address me but spoke to Mr.Wehrman and said, "Mr. Wehrman, I suggest you talk to Mr. Bender and agree to a 604.10B or she's just going to keep doing this".

g. On the face of this, Judge Johnson is obviously prejudiced against me if he had already decided my pleadings were a waste of time, as implied.

h. During discussions to which I was not privy, Mr. Bender proffered to Mr. Wehrman a custody evaluation, with a custody evaluator hand selected by Mr. Bender, in exchange for denying me due process.

i. Mr. Wehrman agreed and drafted the order for a custody evaluation.

j. I beseeched Mr. Wehrman to limit the scope to my prior motion. Mr. Wehrman insisted on filing an order for an evaluation with no scope.

k. I saw then and see now, that this custody evaluation is not in any way intended for my children's well being but just another example of individuals in this case seeking to silence my legitimate claims.

l. At our next court appearance I attempted to get Judge Johnson to hear my motion for financial allocation with regard to Mr. Bender's fees; an allocation actually ordered by Judge Johnson himself at the time of Mr. Bender's appointment.

m. Mr. Trowbridge stated, "Your honor, Bender said if we agreed to the custody evaluation we wouldn't have to deal with these".

n. I also attempted Judge Johnson to rule on a motion I had filed to compel a subpoena related to the aforementioned financial allocation motion.
    i. I had subpoenaed from Mr. Wehrman his record of payment from Mr. Matt.
        1. Mr. Matt had stated in his most recent financial affidavit related to the matter of allocation that he earns $27,000 per year and has one bank account with $1,000.

FILED DATE: 11/30/2021 9:32 AM   2016D009534

2. Mr. Matt uses a bank account he shares with his father, into which his father deposits gifts and loans, as well as profits from multiple international businesses which Mr. Matt refuses to disclose in tax or court filing.

3. Mr. Matt also uses his business accounts for personal expenses, thereby managing to report losses in the US on his own personal spending.

4. I simply wanted to show these accounts are available to Mr. Matt to pay Mr. Bender's fees.

5. Because the allocation motion was for financial means to pay an attorney, it was appropriate to subpoena Mr. Wehrman's receipts from Mr. Matt.

ii. Mr. Wehrman said, "Your honor, she just wants to show I'm laundering money for my client".

iii. I believe this was a joke.

iv. I am actually trained quarterly on anti money laundering law and a licensed financial advisor so I cannot be seen to joke or make light of financial activities that may be criminal.

v. Such interchanges are typical since Mr. Bender's appointment. I presented documentary evidence of wrongdoing. This documentary evidence was blocked by Mr. Bender and Mr. Wehrman. Then Mr. Wehrman and Mr. Bender later use my true statements as evidence of fancy or hysteria. Jokes at my expense are frequent in Judge Johnson's court.

1. Mr. Wehrman in particular is in the habit of spewing long monologues at every status hearing in which he disparages me and uses disrespectful language.

2. Mr. Wehrman degrades me by typically referring to me as "this woman" or "that woman".

3. Mr. Wehrman makes generalized, untrue, disparaging statements not related to the proceedings such as "That woman lies", "This woman doesn't care about her children", "That woman can't be trusted", "That woman doesn't want to take care of her kids".

FILED DATE: 11/30/2021 9:32 AM   2016D009534

4. It is very obviously part of Mr. Wehrman's strategy to attempt to provoke an emotional reaction or outburst by tyrading against me. If this is obvious to me, it would seem obvious to a judge.

5. I have attempted to stop this by doing what I see on tv and saying, "Your honor, I object. Please ask Mr. Wehrman to speak to me respectfully".

6. Judge Johnson has never indicated to Mr. Wehrman that I should be addressed politely or that he should refrain from monologuing on alleged character flaws.

23. An unfortunate outcome of the irregularities in my case is that is a challenge for me to find counsel willing to represent me.

A. At least four attorneys have told me in the last year that they will not work with me due to the negative regard with which the Judge and GAL regard me.

B. This further supports my fear of bias.

C. I retained Alexandra Brinkmeier in the summer of 2021 as counsel.

D. On November 8th I emailed Ms. Brinkmeier a summary of reports of suspected crimes in my case.

E. On November 11th, three days after I explicitly stated that I suspected and had reported crimes, Ms. Brinkmeier moved to end the engagement against my objection, citing philosophical differences.

F. I pleaded with Judge Johnson to not allow her to resign and described why this would do me material harm as a client.

G. I did not know how or what to legally file to stop her motion, so I filed an affidavit and served it on parties. (**Exhibit Y** Affidavit Stating Objection)

H. Ms. Brinkmeier was granted her request to quit and I am pro se.

24. The totality of events here are a basis for substitution of Judge Johnson for cause due to his overwhelming bias against me.

WHEREFORE, Respondent prays that the Court enters an order that:

A. This case and all pending matters be immediately reassigned to a new judge in the Domestic Relations Division of Cook County Circuit Court.

B. Mr. Bender's appointment as Guardian Ad Litem be immediately terminated..

FILED DATE: 11/30/2021 9:32 AM   2016D009534

C. Any order entered in this case after the appearance of Bradley Trowbridge as my attorney on July 5, 2019 be overturned.

D. That I be allowed to have clergy from Lake Street Church of Evanston and members of the Lake Street Church Peace and Justice Committee to be present to serve as civil rights observers in any future court appearances or meetings with court professionals.

Respectfully Submitted,

Megan (Matt) Mason
Pro Se Respondent

Exhibit S Continued

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION**

IN RE THE FORMER MARRIAGE OF:  )
)
PETER MATT,  )
)
      *Petitioner,*  )    Case No. 2016 D 009534
)
  and  )
)
MEGAN MATT,  )
    n/k/a MEGAN MASON,  )
)
     *Respondent.*  )

**AFFIDAVIT OF MEGAN MATT N/K/A MASON IN SUPPORT OF PETITION TO SUBSTITUTE**
**JUDGE FOR CAUSE**

I, MEGAN MATT n/k/a MASON, hereby submit this affidavit under penalties provided
by law pursuant to section 1-109 of the Illinois Code of Civil Procedure and certify that the
statements set forth in this affidavit are true and correct.

1. I am the Respondent in this matter.

2. I have personal knowledge of the matters stated in my PETITION TO SUBSTITUTE JUDGE
FOR CAUSE and they are true and correct except as to those matters stated on information and
belief, which are believed to be true.

3. I hereby restate and incorporate by reference the allegations contained in my
Petition as if the same were set forth here verbatim.

_____

Megan Mason, Pro Se Respondent
419 Greenleaf Ave.
Wilmette, IL 60091
917.518.188

SUBSCRIBED AND SWORN TO BEFORE ME this 29 day of November, 2021

OFFICIAL SEAL
GLENN J BURNS
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES: 07/04/22

_____
Notary Public

FILED
2/16/2022 9:48 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2016D009534
Calendar, 63
16726233

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

IN RE THE MARRIAGE OF: )
)
PETER MATT, )
)
              Petitioner, )
)
   and )   No.  16 D 9534
)
MEGAN MATT n/k/a MASON, )
)
           Respondent. )

## **PETITION TO TRANSFER VENUE IN THE INTEREST OF JUSTICE**

    I, Megan Mason, formerly known as Megan Matt, am pro se Respondent in the Divorce

entered in this court on September 27, 2017. I am petitioning this Court to grant an immediate

transfer of this case and all pending parentage matters to adjoining Lake County in the interest

of justice. A preponderance of factual evidence demonstrates that it is impossible for me and my

children to access justice in the Domestic Relations Division of the Circuit Court of Cook County

("this Court"). I cannot receive a fair hearing on any matter  in the present venue due to ongoing

criminality of parties involved in this case and among the appointees and staff of this Court..

Further I cannot access justice in the present venue due to persistent denial of due process and

denial of access to justice by individuals involved in this case and staff at this Court.

  Furthermore, as I am currently bringing a Civil Rights complaint against this Court itself and

against the Clerk's office in Federal District Court and seeking an investigation of gender

discrimination in the Civil Rights Division of the Justice Department,  it would be impossible for

me to expect fair treatment within the Court and Clerk's Division which are themselves parties

named in an ongoing inquiry. I therefore demand whistleblower protection, including relocating

this case and all pending family law matters relating to myself and to my minor children, Angus

FILED DATE: 2/16/2022 9:48 AM   2016D009534

FILED DATE: 2/16/2022 9:48 AM    2016D009534

Matt and Theodore Matt, to a new venue outside Cook County Illinois and convenient to both parties.

### Legal Basis for Post-Decree Transfer

1. This post-decree transfer is legal and necessary under Federal Law. Section 1404(a) of Title 28 provides that: "for the convenience of parties and witnesses, ***in the interest of justice***, a district may transfer any civil action to any other district where it might have been brought.".

2. Further, Illinois Law allows for the transfer of venue post decree. Specifically:

   735 ILCS 5/2-1001.5) (from Ch. 110, par. 2-1001.5)
   Sec. 2-1001.5. Change of venue.
   (a) *A change of venue in any civil action may be had when the court determines that any party may not receive a fair trial in the court in which the action is pending because the inhabitants of the county are prejudiced against the party, or his or her attorney, or the adverse party has an undue influence over the minds of the inhabitants.*
   (b) Every application for a change of venue by a party or his or her attorney shall be by petition, verified by the affidavit of the applicant. The petition shall set forth the facts upon which the petitioner bases his or her belief of prejudice of the inhabitants of the county or the undue influence of the adverse party over their minds, *and must be supported by the affidavits of at least 2 other reputable persons residing in the county.* The adverse party may controvert the petition by counter affidavits, and the court may grant or deny the petition as shall appear to be according to the right of the case.
   (c) A petition for change of venue shall not be granted unless it is presented before trial or hearing begins and before the judge to whom it is presented has ruled on any substantial issue in the case, but *if any ground for change of venue occurs thereafter, a petition for change of venue may be presented based upon that ground.*"

3. I am including here two affidavits from Jillian Westerfield, Associate Pastor and Head of Youth Programs at Lake Street Church in Evanston, Illinois and Ms. Delane Haro, Instructor at Loyola University in Chicago, Illinois. (Exhibit F Westerfield Affidavit, Exhibit G Haro Affidavit)The parties are both upstanding citizens of Cook County familiar with matters in

2

FILED DATE: 2/16/2022 9:48 AM   2016D009534

this case and both know me well. Both attest to the veracity and suitability of my request for a transfer of venue based on the interest of justice

4.  A multitude of inappropriate and concerning events have occurred after the original divorce proceeding commenced in October, 2016 making a post-decree change of venue necessary due to the undue influence of Mr. Matt and other opposing parties over the judges, staff and appointees in the Domestic Relations Division of the Circuit Court of Chicago.

5.  In order to justify a transfer of venue  "The petition shall set forth the facts upon which the petitioner bases his or her belief of prejudice of the inhabitants of the county or the undue influence of the adverse party over their minds."

6.  At issue is whether the "interest of justice" can be served or there is an "adverse influence" of one party over the minds of those determining cases. In my case, the opposing parties have an undue influence over those in power to determine my parentage and family law matters and therefore immediate transfer of venue is necessary.

7.  Although divorce and parentage matters in Illinois are not heard by juries, it is obvious that Illinois law is not intended to exclude litigants from recourse to legal remedies because hearings are heard exclusively by judges.

8.  And so, to the extent that the judges, appointees, staff and officers of the court collectively determine all outcomes of hearings in this division, they ought to be held to the same standards of fair trials as are expected of  juries.

9.  The staff, appointees and employees who collectively determine legal outcomes in the Domestic Relations Division of the Circuit Court of Chicago are so biased against me and the undue influence in favor of my former husband, Peter Matt, is so great, that an immediate transfer of venue is necessary.

3

**Background**

10. The parties were legally divorced on September 27, 2017 and entered into a Marital

    Settlement Agreement (MSA) and Allocation Judgment Parenting Plan (Exhibit A MSA

    Parenting Plan).

11. Two children were born of this marriage, Angus Matt (aged 13) and Theodore ("Teddy")

    Matt (aged 10).

12. The parties have been engaged in frequent litigation since divorcing in 2017, primarily

    initiated by Mr. Matt, who uses vexatious litigation as a method of financial and emotional

    abuse.

13. Mr. Matt has never proposed a change or modification to the parenting plan through

    motion.

14. Mr. Matt has sought Court intervention on numerous occasions in pursuit of his wish to

    force contact with me, to inflict financial harm to me and to control every moment of my

    parenting time.

15. The Court has appointed multiple individuals in post-decree actions.

    a. Michael Bender was appointed Guardian Ad Litem on June 6, 2019 at Mr. Matt's

       request; I opposed the appointment. (Exhibit B GAL Order).

    b. Dr. John Palen was  appointed as Parenting Coordinator on September 25, 2020. I was

       never informed of Dr. Palen's potential appointment or asked if I approved. (Exhibit C PC

       Appointment)

    c. Dr. Gerald Blechman was appointed as Custody Evaluator on May 25, 2021 with no

       scope or basis stated (Exhibit D 604.10b Order). I asked that a scope or basis to Dr.

       Blechman's appointment be described in the order but I was denied by Opposing

       Counsel (Exhibit E Opposition to Order Language).

4

FILED DATE: 2/16/2022 9:48 AM   2016D009534

**Endemic Criminality**

16. The primary evidence of the undue influence of other parties over the outcome of actions in my case is the large volume of crimes committed against me by parties in this case, some of which continue to this date.

17. In the course of post-decree litigation over parentage issues with Petitioner Peter Matt, I have been the victim of fraud upon me and fraud upon the court by my prior counsel, Bradley Trowbridge.

    a. These fraudulent acts ultimately contributed to a baseless ruling of contempt against me on August 21, 2020 which ultimately contributed to severe financial punishment and is now being used as a basis to move to revoke my parental decision rights by the opposing parties. (Exhibit L SOJ).

    b. I was originally referred to Mr. Trowbridge by an individual at Lifespan, a Domestic Violence advocacy and legal resource nonprofit, in May, 2019. I had been referred to the organization by Kaethe Morris Hoffer who is a fellow congregant at Lake Street Church of Evanston. I became introduced to Ms. Hoffer by Jillian Westerfield who had suggested I speak to her after witnessing domestic violence by Mr. Matt.

    c. Namely, Mr. Matt had called and emailed Ms. Westerfield two times to threaten that he would have my children dragged out of the court by police if they attended church during my parenting time. (Exhibit I PRTSC RE Harassment)

    d. Although I did not qualify for legal support rom Lifespan, they had listed Mr. Trowbridge as an attorney who works with domestic violence victims and provided his name in a resource list mailed to me.

FILED DATE: 2/16/2022 9:48 AM    2016D009534

FILED DATE: 2/16/2022 9:48 AM   2016D009534

e.   In addition to being an attorney, Mr. Trowbridge stated to me that he is a former social worker and from the initial meeting this inspired a higher level of personal trust in me than is normal with an attorney.

f.   When Michael Bender was appointed as Guardian Ad Litem on June 6, 2019, I believed it was an illegal infringement of my parenting rights, unsupported by law. I still believe this as Illinois Law allows for the appointment of a GAL during any proceeding but there was no proceeding and parties were divorced at the time of the appointment.

g.   I borrowed money from a friend in order to retain Mr. Trowbridge to get the GAL appointment overturned. However, when I met Mr. Trowbridge he explained that Mr. Bender was a close associate of his and that I should try to work with him.

h.   It was my understanding from Mr. Trowbridge that he was in regular contact and communication with Mr. Bender from the time I retained him to the time he resigned in October, 2020. Prior to my first meeting with Michael Bender, Mr. Trowbridge had spoken to him privately. I do not know what was discussed. (Exhibit J He Mentioned You Two Had Spoken).

i.   From the time of his engagement, Mr. Trowbridge asserted that he wanted to protect me from the stress of Mr. Matt's vexatious litigation and to literally "keep me out of court". I was discouraged by Mr. Trowbridge from attending hearings as a strategy to reduce Mr. Matt's opportunity to harass me, Mr. Trowbridge claimed.

j.   Between March 10, 2020 and July 13, 2020 Mr. Trowbridge, hid a contempt allegation filed against me by Peter Matt (Exhibit K March Contempt).

k.   According to affidavit entered under threat of perjury by Christopher Wehrman, opposing counsel, Mr. Trowbridge was served a PRTSC on my behalf on March

FILED DATE: 2/16/2022 9:48 AM    2016D009534

10, via email. According to Mr. Wehrman's affidavit and Court Records this March PRTSC was filed on March 10, 2002 and emailed to the email address I know to be Mr. Trowbridge's regular email.It was set for hearing on March 20, 2020.

l.   Mr. Trowbridge billed me for reading this Petition for Rule to Show Cause on March 10, 2020 as invoiced on April 17, 2020 (Exhibit L SOJ).

m.   However, Mr. Trowbridge not only did not tell me about the PRTSC. He explicitly denied that there were pleadings filed against me on two subsequent occasions. (Exhibit L SOJ).

   i.   On April 22, 2020, I wrote to Mr. Trowbridge:

   *"I hope you're well and your clients are not suffering too badly from quarantine. I'm personally quite pleased that no motions are being filed right now, a nice break =)."*

   ii.   On April 22, 2020, Mr. Trowbridge wrote back:
   *"Megan. Yes, unfortunately it took a pandemic to stop Peter's abuse of you!".*

   iii.   At this time Mr. Trowbridge made no mention of a PRTSC or an underlying concern necessitating a PRTSC.

   iv.   On July 12, 2020 I became aware that Mr. Bender had attended a court appearance on behalf of my minor children by reading about it on his invoice. I wrote to Mr. Trowbridge:

   *"Zoom court? What?"*

   v.   Mr. Trowbridge wrote back within the day. He not only failed to mention the PRTSC from four months earlier but specifically played down the importance of this appearance, writing back to say:

   *"We had a zoom court date of July 6 that I had on my calendar as July 7. That could have only have been for a short time.* ***I also don't know how much preparation there could have been. It looks like a lot of activities have been lumped into one line item. The next zoom date is July 20 at 9 AM. Anything I need to know?"***

vi.    On July 22, 2020, still unaware of a contempt allegation or a PRTSC served on me, knowing only that Mr. Trowbridge had told me Mr. Bender was resigning imminently, I wrote to Mr. Trowbridge:

" *Hi Brad, Did Michael make a motion to be removed? Anything filed against me?*"

vii.    Mr. Trowbridge finally served me the PRTSC on July 22, 2020.

n.    Mr. Trowbridge also did not inform me of court hearings scheduled on March 20, 2020, and multiple hearing dates rescheduled due to COVID between March 20, 2020 and July 6, 2020 or a hearing actually held on July 6, 2020.

o.    Mr. Trowbridge has lied about receiving notice on multiple subsequent occasions and still refuses to provide the original proof of service. (Exhibit L SOJ)

p.    I was never presented with evidence supporting a contempt claim and from what I can find none was ever filed by opposing counsel in support of the contempt allegation, though I do recall Mr. Wehrman screen sharing one or two images during the fifteen minutes before Judge Johnson that was called a trial.

q.    I believed a contempt ruling was impossible because on March 10, 2020 I was alleged to have refused to facilitate ABA therapy, an in-home therapy for our older son, Angus.

r.    ABA, though never prescribed or suggested by a doctor, had been ordered by Judge Johnson at the request of Michael Bender, GAL. The order, specifically, was "ABA shall continue", with no location, no hours or other scope listed. (Exhibit M ABA Shall Continue).

s.    There was no in-home therapy for children in March, April, May, June in Cook County, Illinois in this period due to COVID restrictions.

8

FILED DATE: 2/16/2022 9:48 AM    2016D009534

FILED DATE: 2/16/2022 9:48 AM   2016D009534

    t.    On August 21, 2020 I was held in contempt for refusing to facilitate ABA therapy during the period when in-home therapy was banned. I vehemently opposed this ruling.

    u.    Mr. Trowbridge promised to file a motion to reconsider at which time he would present a text message from Mr. Matt in which he said, "can we get a new provider because Reach does not provide ABA?" (Exhibit L SOJ).

    v.    Mr. Trowbridge did not file a motion to reconsider and resigned a week after the thirty day period to file an appeal or motion to reconsider had lapsed citing "computer issues in the courts" and personal issues.

    w.    Mr. Trowbridge also indicated he would not be doing work as an attorney going forward due to another unnamed job. I have later become aware that Mr. Trowbride operates a custody supervision service, Safe Travels LLC and was listed as a court approved child representative in a list created by the Domestic Relations  Division of the Circuit Court of Chicago on July 22, 2020. No conflict of interest was ever disclosed to me by Mr. Trowbridge. (Exhibit M Child Rep List)

18. I fear the baseless ruling of contempt was orchestrated to lend legitimacy to proceedings that are anything but legitimate.

19. Mr. Bender had been appointed on June 6, 2019. During this time there were no motions by parties to consider and Mr. Bender did not perform any duties other than levying fees and responding to Mr. Matt's emails and calls. He does not read my emails as a rule. Mr. Bender has never spoken to any of the children's teachers or therapists and would not speak to any of the children's doctors until September, 2021, more than two years after his first appointment.

FILED DATE: 2/16/2022 9:48 AM   2016D009534

20. At no point did I or Mr. Trowbridge attend one of the three status calls during the spring and summer of 2020. Mr. Wehrman, opposing counsel, and Mr. Michael Bender, GAL and Judge Johnson were present at all of these proceedings and in communication. Neither party ever contacted me to inquire about my absence, lack of response, or to inform me that an allegation of contempt was made against me.

21. Notably, Mr. Bender was ostensibly serving as an advocate for my children as a GAL and did not take any action to intervene in an alleged failure toward the children on my part. After all, how could a parentage issue rise to the level of a contempt ruling though not inspire a dutiful GAL to so much as shoot off an email over the course of four months?

22. During this same period I was under the impression that Mr. Trowbridge was in frequent contact with Mr. Bender who, according to Mr. Trowbride, was preparing to step down from the case. This is evidenced by my repeated question, "Did Bender step down?" (Exhibit L SOJ).

23. Mr. Trowbridge's malfeasance cannot be entirely blamed on others but it has nonetheless tainted every proceeding since his involvement in the case and I genuinely do not believe that any ruling can be ultimately upheld on appeal due to this taint.

24. I am further unfairly denied justice because  I have also been forced to participate in criminal activity by court order on two occasions. On March 4, 2021 I was ordered by the court to reimburse Mr. Matt $4,266.21 for health insurance I knew him to obtain fraudulently.

    a.  Mr. Matt does not  believe in the traditional taxation system and therefore keeps his considerable family wealth and assets hidden abroad.

FILED DATE: 2/16/2022 9:48 AM   2016D009534

b.  Although he paid for his Wilmette home and his MBA degree with cash,  Mr. Matt enjoys

    displaying a facade of poverty and on two occasions he has engaged in welfare fraud.

    (Exhibit N Financial Allocation).

c.   In the first instance Mr. Matt attempted to enroll our children in Food Stamps and Aid to

    Families with Dependent Children.

d.  In this second instance Mr. Matt enrolled our younger son Theodore, who is my

    dependent by Court order, in the Allkids health insurance program, either by falsely

    claiming him as a dependent or by providing false tax records.

e.  Mr. Matt had enrolled the children in the state plans, despite my wish to cover them with

    my much cheaper, much better employer insurance,  in order to generate excessive

    medical costs to then sue me for them.

f.  Despite my objections that Mr. Matt had obtained government subsidized health

    insurance illegally, I was forced by Court Order to reimburse Mr. Matt for payments to

    the Allkids plan.


25. On another occasion, Mr. Matt was supported by Dr. John Palen, the court ordered

    parenting coordinator, in attempting to force me to engage in a criminal scheme. Mr. Matt

    disclosed to myself and Dr. John Palen in a meeting that he planned to fraudulently name

    our son, who has profound intellectual disabilities and does not consistently count to ten at

    age thirteen, as CEO of his company in order to claim his company is owned by a disabled

    person (Exhibit L SOJ).

a.  Mr. Matt wished to have his company named as a disabled person owned business and

    therefore get contracts from companies wishing to support companies owned by

    disabled people.

FILED DATE: 2/16/2022 9:48 AM   2016D009534

b.  My son does not own and operate Mr. Matt's businesses, as such a certification requires. To state that he does, is fraud.

c.  Mr. Matt wished to have Dr. Palen order me, as his mother,  "not to interfere" with his criminal scheme.

d.  I stated that this is fraud and he should not do this.

e.  Dr. Palen, who I was forced by court order to pay and defer my parenting decisions to, suggested Mr. Matt should create a business plan.

f.  At this time I further stated I was opposed to our son being named CEO because it might interrupt his future access to Social Security disability benefits. Mr. Matt wrote that this would not be an issue because, when Angus is eighteen, his shares would "revert" to Mr. Matt.

g.  There is no legal method of gifting to a vulnerable person in order to defraud a business partner and then "reverting" (stealing) the gift  after the fraud, tax benefit or other means have been achieved.

h.  I am a licensed financial advisor and fiduciary who cannot be associated with financial crimes but I have been continually forced by Court Order to compensate Mr. Matt for services procured illegally and to be associated with his criminal schemes while under the authority of Dr. John Palen in the role of Court appointed Parenting Coordinator.

i.  This jeopardizes my livelihood which is necessary to support my children.

26. In my employment in financial services I am also trained to monitor and intervene where I see vulnerable people fall subject to criminal schemes.  I fear for my son, Angus Matt, who I believe may have been exploited or may come to be exploited in the following ways by Mr. Matt, Dr. Palen and others involved in this case:

FILED DATE: 2/16/2022 9:48 AM   2016D009534

a.  I  fear Angus's identity may be used to launder money, by disguising funds from businesses not disclosed to the IRS as gifts or loans from Angus's wealthy German grandfather to Angus for his care;

b.  I fear Angus's disability and minor child status may be exploited in order to create trusts, businesses and other structures wholly intended to launder money, remit payment to other parties and to evade taxation;

c.  I fear Angus's disability and minor child status may be used as a basis to appoint individuals as executors, guardians, trustees or other paid roles for as a means to receive kickbacks or bribes;

d.  I fear Angus's identity may be used as a means for further fraudulent activity of the type already proposed by Mr. Matt.

27.  Given that Angus has already been the target of an open scheme to defraud him, supported by appointees of this court, I am also submitting this petition on behalf of Angus. Angus has a right to trust that the officers and appointees of the court entrusted with the sacred duty of protecting him are acting in the interest of justice. This makes immediate transfer necessary.

28.  Given my concern for my children's well being in light of continued financial misdealings, it is particularly troubling that Court appointed professionals and attorneys have sought to hide financial misbehavior by Mr. Matt.

a.   On November 24, 2020 I filed a motion for an allocation of fees (Exhibit N Financial Allocation), including the GAL fees, which Judge Johnson had ordered for allocation and ordered parties to exchange documents on June 6, 2019 (Exhibit B GAL Order).

13

FILED DATE: 2/16/2022 9:48 AM    2016D009534

b.   On January 19, 2021,  in support of this motion for Allocation of Fees, I served Mr. Wehrman with a subpoena for payments from Mr. Matt (Exhibit O Payment Subpoena). I know Mr. Matt to own and control at least five bank accounts not disclosed in his financial affidavit.

c.   Bank statements, canceled checks, court filings and company financial statements were presented in support of the Motion for Financial Allocation and Payment Subpoena.

d.   One bank account is held at Wintrust. Mr. Matt shares this account with his father, Leo Matt, who resides in Germany. This account has been used to wire funds from Mr. Matt's unreported businesses: Goedecke Germany, Goedecke Poland and Goedecke India as well as cash from the over $1 million I know Mr. Matt to hold in personal investments and accounts held abroad.

e.   Because Mr. Matt does not report these businesses or assets to the IRS it is difficult for him to wire funds directly to himself, so Mr. Matt and his father call the funds "loans" and "gifts" from Mr. Matt's father. Mr. Matt did not disclose this Wintrust account in his financial affidavit.

f.   Because the financial allocation hearing was to determine means to pay for an attorney in the role of Guardian Ad Litem, I subpoenaed Mr. Wehrman to provide a record of all payments from Mr. Matt and source accounts, reasoning Mr. Matt's method and means of paying his own attorney were relevant to his ability to pay an attorney in the role of GAL. In particular I believe Mr. Matt uses his Wintrust Account as a means to pay Mr. Wehrman.

g.   Mr. Wehrman did not provide me with the financial details and filed a motion to quash my subpoena.

14

Exhibit 1 Continued

FILED DATE: 2/16/2022 9:48 AM    2016D009534

h.  On March 4, 2020, without hearing, Judge Johnson denied  my motion for allocation of fees but reserved the right to rule on allocation of GAL fees and the subpoena for financial documents. Judge Johnson said that he found it concerning that Mr. Matt was claiming an annual income of $27,000 given his lifestyle, and suggested we negotiate a division of fees. We were unable to.

i.   On May 25, 2021, with no stated basis or underlying motion by either party, Judge Johnson ordered Gerald Blechmen to be appointed as a Custody Evaluator.

j.  On May 25, 2021 I asked Judge Johnson to rule on Mr. Wehrman's motion to quash my subpoena and to schedule a hearing on allocation of fees. Mr. Wehrman stated, "Your honor, Mr. Bender said we wouldn't have to deal with these [pleadings] if we agreed to a 604.10 B [Custody Evaluation]".

k.   Judge Johnson still refuses to hear my motion for an allocation of fees. He instead on November 21, 2021 ordered me to pay Mr. Bender GAL, who he has described as a friend and mentor, without reviewing facts related to my ability to pay.

l.  It is my belief that Judge Johnson did not wish to embarrass Mr. Bender and Mr. Wehrman by letting the Motion for Financial Allocation and subpoenaed documents be revealed in open court.

m.  This is a clear indication of the need for a transfer to a neutral venue due to the unrelenting influence of cronyism and collegiality.

n.  I am currently in the process of filing for bankruptcy due to the tremendous financial burden this ongoing judicial harassment has caused me.

29.  I have also observed and documented child abuse and neglect by Mr. Matt which court appointees have aggressively hidden. I hold a Masters Degree in Education, have previously taught and worked as a supervisor in child care settings, have taught child

15

development at the college level, and am a trained mandated reporter. I am trained and

very familiar with appropriate observation, interview and reporting methods where child

abuse has been alleged or suspected.

a. Mr. Bender in his role as Guardian Ad Litem has sought to hide reports of Mr. Matt's

abusive behaviors or parental unfitness on repeated occasions. (Exhibit H 2nd Motion

to Terminate GAL).

b. In the PRTSC Regarding Failure to Supervise Children, Mr. Bender was presented

with extensive documentary evidence of Mr. Matt's refusal or inability to provide

appropriate supervision for our children, among other concerning behaviors. In the

PRTSC Regarding Strange Adults in the Children's Home, Mr. Bender was made

aware of Mr. Matt's plan to convert his zoned single family home into a tenement

building for single men. Mr. Matt to this date refuses to get background checks for the

men residing in the home who have unchecked access to our children's living quarters

and bedrooms. In the PRTSC Regarding Harassment,Mr. Bender read two threats Mr.

Matt emailed to members of my church and a police report stating that Mr. Matt's

persistent parenting time violations need to be heard by a judge. (Exhibit I PRTSC RE

Harassment, Exhibit P PRTSC RE Strange Adults in the Children's Home, Exhibt Q

RE Failure to provide child care).

c. In addition to specific acts committed by Mr. Matt, the documents contain disturbing

examples of Mr. Matt's emotionally abusive method of interacting with me and his ease

in lying and gaslighting in order to manipulate others.

d. Mr. Bender agreed not to allow any of the disturbing matters presented in the above

Petitions to be heard as part of the deal with Mr. Wehrman to initiate a Custody

Evaluation.

FILED DATE: 2/16/2022 9:48 AM   2016D009534

FILED DATE: 2/16/2022 9:48 AM   2016D009534

e.  Subsequent to these filings, reports of domestic violence have been raised by myself and credible third parties but Mr. Bender has sought to mischaracterize or hide these reports in order to protect his own and Mr. Matt's reputation.

f.  On Monday, July 26, 2021 I attended a meeting with my younger son Theodore, then aged nine, and Dr. Gerald Blechman, Custody Evaluator on Monday. At this time Teddy expressed suicidal ideation to Dr. Blechman and myself, stating multiple times that he wished to kill himself.

g.  At the time neither Dr. Blechman nor myself believed Teddy actually intended self harm, but I was concerned about his mental well being. Dr. Blechman also stated that he felt Teddy seemed distressed.

h.  That evening Teddy became further distressed and said the reason that he wants to kill himself is because his dad makes him go to Northwestern. He also said his dad told him he needs to have perfect MAP [standardized test] scores. He cried and said that he doesn't want to go to his dad's any more.

i.  Northwestern refers to The Northwestern Center for Talent Development, an enrichment program Mr. Matt makes Teddy attend despite his opposition.

j.  On Tuesday, July 28th, 2021 I wrote to my attorney at the time, Alexandra Brinkmeier, concerned that Teddy's distress might be used to disparage or discredit me.

k.  Ms. Brinkmeier was concerned about Teddy's behavior and called Michael Bender that day to report the incident and express an interest in removing Teddy from his father's home while this matter could be investigated.

l.  After picking Teddy up from soccer camp on Tuesday, July 28th, 2021, I was driving Teddy and his brother Angus to the community pool to swim when he escalated his talk of self harm to action. I recounted the events to my attorney:

17

FILED DATE: 2/16/2022 9:48 AM   2016D009534

*"I was in the car around 5 today, driving Teddy and Angus home from camp. Teddy picked up a plastic wrapper in the backseat and covered his mouth. He said he was going to kill himself. Angus and I both told him not to do it.*

*I asked why he wanted to kill himself. He said he wasn't good at anything. I said I thought he was good at a lot of things, why does he think that. He said I'm not good at anything.*

*Angus yelled, is it because of Dad's lies. Teddy didn't say anything. I said, what do you mean about Dad's lies. Angus said, dad's lies!*

*I asked Teddy if he still wanted to go to the pool, where we were headed, he said I'm going to drown myself. I said I would be really sad if that happened. Because he goes to his dad's tomorrow, I asked him if he was sad about going to his dad's. He said he was and started to cry,*

*I asked Teddy if he would like me to make it so he doesn't go back to his dad's. He said there's no way that would ever work. I told him that I actually could do that if that's what he needs.*

*He said wouldn't he get really mean to you? I said it was ok if his dad's mad at me, we just need to keep him safe."*

m. I was concerned because Teddy had escalated his self harming behaviors to a physical act, not just words, so I called his pediatrician, Dr. Patricia Brunner, the next morning, Wednesday, July 29th, 2021.

n. Dr. Brunner instructed me not to send Teddy to camp, that she wanted to see him first.

o. At 5:00pm Mr. Matt met me at Dr. Brunner's office with Teddy, who was now in his care per court ordered parenting time. Teddy, Mr. Matt and I entered Dr. Brunner's office and she interviewed Teddy in our presence. After exchanging greetings, neither Mr. Matt nor I spoke.  Dr. Brunner asked Teddy a number of questions. He stated to her that he knew he was there because he had said he wanted to kill himself. He said he first said it on Monday, the day of his appointment with Dr. Blechman. Teddy also

FILED DATE: 2/16/2022 9:48 AM   2016D009534

stated to Dr. Brunner that he didn't want to go to his dad's house and he didn't want to do Northwestern.

p.  That day Dr. Brunner called Mr. Bender who could not be reached and did not return her calls.

q.  On Saturday, August 7th, 2021 Teddy and his brother Angus returned to my residence per Parenting Plan. After dinner on that date I asked Teddy if he had ever seen his dad hit or drag his brother, Angus. Angus had reported to me that during the Covid lockdowns Mr. Matt had hit him, kicked him and physically restrained him in order to force him to do Zoom therapy. I asked Teddy if that was true. Teddy said, "Yes it was really bad during COVID."

r.  I asked Teddy if his father ever hit him (Teddy). He nodded his head. I asked him where his dad hit him, he put his hand on his right cheek.

s.  I asked why his dad had hit him. Teddy said, "Northwestern".

t.  Teddy then started crying and hid his face with his hands. He said he didn't want to talk about it.

u.  At this same time Teddy had been congested, feverish and had a sore throat.

v.  On Wednesday, August 11th, Teddy was ordered to have a COVID test and a telehealth appointment at his pediatrician's office with Dr. Shoshana Woskow. I told Dr. Woskow during this appointment that I am a trauma survivor and I have learned that ongoing illness of the type that Teddy was experiencing is sometimes the result of trauma which weakens a person's immune response. I told Dr. Woskow that Teddy had recently reported physical violence in the home at his father's residence.

w.  Dr. Woskow questioned Teddy and he  reported to Dr. Woskow that  his father had hit him with the back of the hand. At first he said "He hit my face". Mr. Matt is right handed

and, were he to backhand Teddy on the face, his hand would hit the right side where Teddy first indicated to me he had been hit. Teddy then became upset and said, "never mind, he hit my arm" then he said, "never mind, he didn't hit me". Teddy then wanted to hide his face and not be on screen. Teddy also reported that his dad had locked him in his room "to do math worksheets". He also stated that when he told his dad he didn't want to do "Northwestern" his dad told him he would force him to stay up all night if he refused to do the work.

x.   On August 11th, 2021 Dr. Woskow recorded these events in a sealed record which I was not allowed to access in order to protect Teddy during an investigative process. I still do not have this record though I believe it may have been given or offered to Mr. Bender.

y.   Dr. Woskow indicated that Dr. Brunner would call Mr. Bender. Dr. Brunner did again attempt to call Mr. Bender that same day but could not reach him. He did not return her calls. He had not returned her call from the week before regarding the suicidal ideation reports.

z.   In fact, two years after his appointment Mr. Bender had never spoken to any of the children's doctors, therapists, or teachers, though he purported to have opinions on medical and educational matters.

aa. Due to Mr. Bender's intentional failure to intervene, a proper investigation was made virtually impossible.

30.  Mr. Bender's actions, whether induced to hide abuse by Mr. Matt or out of a personal interest in protecting his reputation, have been profoundly damaging to to Teddy who has

FILED DATE: 2/16/2022 9:48 AM   2016D009534

disclosed to me and this therapist that he is fearful of punishment by his father if he speaks

the truth or voices disagreement.

31. On August 25, 2021, over four weeks after Dr. Patricia Brunner had made an urgent call to

Mr. Bender reporting her concern about Teddy's wellbeing, Mr. Bender appeared at a status

hearing before Judge Johnson. At this time, Mr. Bender stated that he had talked to Dr.

Blechman and Dr. Blechman had relayed that Teddy was a little upset but didn't think he

would kill himself.Mr. Bender made no reference to  the reports from the children's

pediatricians because he had intentionally avoided receiving the reports for a month at this

time. Ms. Brinkmeier asked the judge to have Mr. Bender interview Teddy. Mr. Bender

stated he would speak to Teddy. To my knowledge he never did.

32. When the initial issues of neglect and unsafe parenting were presented in one of three

petitions I attempted to present in the spring of 2021, Judge Johson said, "These seem like

some serious issues .I'lll have Mr. Bender look at these and if there's anything there he'll let

me know.". (Exhibit I PRTSC RE Harassment, Exhibit P PRTSC RE Strange Adults, Exhibit

Q PRTSC RE Failure to provide child care).

33. Mr. Bender has blocked these pleadings from being heard though they present

documentary evidence that overwhelmingly demonstrates the complaints raised therein.

Mr. Matt has responded to the pleadings but has never provided counter-argument or

contradictory evidence.

34. When Mr. Wehrman stated on May 25, 2021 that "Mr. Bender said we wouldn't have to deal

with these if we agreed to a 604.10 B", he was referring to the voluminous evidence of

21

parental misconduct and unfitness disclosed in these pleadings, as well as to the Allocation of Fees Motion. In other words, the Custody Evaluation was proffered as a means to hide money laundering, tax fraud, and reports of abuse by credible third parties such as police and clergy.

35. Mr. Wehrman further used his private influence with Judge Johnson to hide evidence of Mr. Matt's parental misconduct.  (Exhibit L SOJ)

    a. On May 27, 2021 I scheduled a hearing on my motion for allocation of fees as well as the the PRTSC RE Harassment, the PRTSC RE Strange adults in the children's home and the PRTSC RE Failure to provide childcare. I scheduled this hearing using standard procedure and was assigned a court date.

    b. Mr. Wehrman, upon learning that a trial would be held which would disclose serious misconduct by his client, wrote to Judge Johnson's clerk, Ms. Kaye Mason,  and asked her to do him the favor of canceling the hearing.

    c. Ms. Mason  verbally relayed  Mr. Wehrman's private email request to Judge Johnson.

    d. Judge Johnson verbally approved Mr. Wehrman's request for the favor of denying me a hearing.

    e. Ms. Mason informed us via email that the hearing was canceled.


36. The criminal violations against me by Mr. Bradley Trowbridge, court ordered participation in criminal activity, and activity by officers of the court to hide ongoing crimes whether each on the face of it demonstrate that a fair proceeding is impossible for me in The Domestic Relations Division of The Circuit Court of Chicago due to widespread, stubborn criminality by individuals involved in this case.

FILED DATE: 2/16/2022 9:48 AM   2016D009534

37. I am unable to retain counsel due to my status as a target of crime. This was made evident when I emailed my most recent attorney, Alexandra Brinkmeier on date an email with the subject line, "Crimes I've reported to you" on on November 8, 2021, and demanded help in stopping ongoing crimes against me and bringing these facts to Court. (Exhibit R Crimes I've Reported)

    a. At the order of senior leadership at her firm, Ms. Brinkmeier abruptly resigned three days later.

    b. I asked Judge Johnson to please deny Ms. Brinnkmeier's motion until counsel could be found to replace her and stated that her abrupt departure would cause me material harm and imperils me and my children. Judge Johnson ignored my request and allowed Ms. Brinmeier to resign with no attorney to replace her (Exhibit S Affidavit Objecting to Withdrawl)

38. Further, I am subject to ongoing interference and fraudulent behaviors using the court's technology. In June of 2021 I had occasion to visit the Domestic Relations Division Clerks' office to review the docket of my case, after having been told by an attorney I was interviewing how to look at the Docket online.

    a. When I reviewed the Docket I noticed a number of events that I didn't understand.

    b. In March of 2020 my address was altered. My official address of record in the court software was 423 Linden Ave. in Wilmette when my divorce commenced in Fall, 2016 and remained unchanged for four years.

    c. Around March, 2020 my address was changed from 423 Lind**en** Ave., ***Wilmette*** to 423 Lind**a** Ave., ***Chicago*** in March, 2020. I was told by a clerk that this was by an individual logging in purporting to be me.

23

FILED DATE: 2/16/2022 9:48 AM   2016D009534

Exhibit T Continued

d. Subsequently, three mailings were returned to the court addressee not found, notices of court appearances I did not know were taking place because they were hidden by Brad Trowbridge and all other parties. (Exhibit T Notifications of Returned Service)

e. In June, 2021, when I consulted an employee at the Domestic Relations Records Division she told me that on July 22, 2020 someone filed a pro se appearance on my behalf while I believed I was represented by Brad Trowbridge.

f. On July 21, 2020 I had informed Brad Trowbridge via email that I had filed an ARDC complaint against Michael Bender with the Illinois Bar.

g. At this time this same clerk informed me that these changes could not have been the result of computer error or transcription error. She told me that someone purporting to be me made these changes using a spoof email.

39. On February 10 I had occasion to visit the Records Division of the Domestic Relations Division. I spoke to Ms. Chevon Edmondson and who brought over her supervisor, Ms. Laurie Garner.

a. I asked Ms. Garner for contact information for  the person who handles internet security for the court because I had reason to fear my identity had been stolen and fraudulent  actions made. I told Ms. Garner that someone had changed my mailing address from 423 Lind**en** Ave. in **Wilmette** to 423 Lind**a** Ave. in **Chicago**. I indicated that I was pursuing litigation for the court's failure to protect my identity and I needed to speak to someone who could explain how these changes were made. Ms. Garner told me I could not have a phone number for someone to speak to about

24

FILED DATE: 2/16/2022 9:48 AM    2016D009534

data security and Ms.Garner took my name and telephone

number and indicated "her Chief" would call me. Nobody has

called me as of this filing.

40. Fraudulent service information remains in Odyssey File, the courts E-file software, and I

have no recourse to correct it.

    a.  On February 10 I logged into Odyssey File again and noticed that my prior attorney,

       Alexandra Brinkmeier of Law Offices of Jonathan Merel PC and three other lead

       attorneys are still listed as representing me though she had resigned in November,

       2021 and I am currently pro se. I reviewed Ms. Brinkmeier's contact details in Odyssey

       File and noted that her address for services has been changed to 423 LINDA APT 2E

       CHICAGO IL 680910000 with no email given. Ms. Brinkmeier has previously listed a

       work email in her contact information and her firm's address: 180 N Stetson Ave Ste

       1300, Chicago, IL 60601.

    b.  On this same date I wrote to Ms. Brinkmeier to ask if she could please remove the

       contact.

    c.  Ms. Brinkmeier wrote back and affirmed that her contact was indeed altered in the Efile

       profile but informed me that they had to be made by an employee of the clerk's office

       and that she knew no way to remove herself as a service contact..

    d.  Having attempted to speak to an individual in the records division of the Domestic

       Relations Division of the Circuit Court of Chicago, I remain at this date unable to correct

       my digital identity in the court's software, further necessitating a transfer to a venue that

       will uphold my legal documentary rights.

e.  Because of the frankly brazen deception that I have witnessed by sworn officers of the court, I emailed a video screenshot of myself logging into Odyssey File and displaying the fraudulent service information on February 16th, 2022 to Ms. Brianna Steger, attorney for this Court, so that there might be no suggestion at a future datethat, for example, such a claim of fraud is indicative of my mental unfitness.

41. It is a most basic principle of justice that methods be in place to protect the integrity of data, whether in paper or electronic filings, and to correct errors in the same. It is simply impossible for me to believe that Domestic Relations Division of the CIrcuit Court of Chicago can do this in my case given that I cannot even trust that I will be provided notice of actions in my case or have recourse in the event of other parties' failure to provide notice.

42. In the interest of the most basic semblance of justice my case must be transferred due to the inability of me to have accurate court records in the present venue

43. I am now pro se. Practices intended to hide court activity from me persist by parties in this case. Mr. Wehrman has attested to serving notice to me of a new PRTSC. He has not.

a.  On February 8th, 2022 Christopher Wehrman filed an attestation that he had served me a PRTSC. In this attestation, Mr. Wehrman indicated he served me by email. He indicated that the email address used was megan42@gmail.com.

b.  As of February 16, 2022 I have received no service from Mr. Wehrman.

c.  As of February 16, 2022 I have not received the standard computer generated notice of filing from the court itself.

44.  Further it is impossible to access the normal methods of recourse such as appeals to a higher court or motions to substitute a judge that would typically be available to litigants in an American courtroom due to the well known collegiality and self protective tendencies of

FILED DATE: 2/16/2022 9:48 AM    2016D009534

judges in this Division. This was exemplified in a recent hearing before Judge Matthew Link

on January 6th, 2022  at which time I presented a Motion to Substitute Judge for Cause

due to bias, raising most of the issues evidence presented here in my petition.

a. At issue is not Judge Link's ruling or analysis, which is subject to appellate oversight in a

   functioning court system.  Rather, at issue is Judge Link's active participation in hiding

   pro se communications by his colleagues which exemplifies the conflict when judges are

   confronted with information damaging to their colleagues.

b. This necessitates a change of venue.

c. Although many serious factors were raised in my motion to substitute judge Johnson due

   to bias, and never refuted by Judge Johnson via affidavit as statute allows,  a key issue

   presented was ongoing ex parte communication between Mr. Wehrman, Mr. Bender, and

   Judge Johnson via his clerk, Kaye Mason, as well as other court appointed professionals

   in a secret email thread about my case.

d. I raised as evidence at this proceeding an email from Dr. John Palen, PC, on which I

   was accidentally copied because I share the same last name as Judge Johnson's clerk,

   Kaye Mason on Dec 3, 2020.

e. In this email, which included Mr. Bender, Mr. Wehrman, and Ms. Kaye Mason as a proxy

   for Judge Johnson, with the subject "IRMO Matt: 2016 D 9534; COURT ORDER",  Dr.

   Palen wrote a single line, apparently part of a larger thread, "I  want to be paid. It is as

   simple as that."

f. I was accidentally copied as is evidenced by Dr. Palen's follow up email in which he

   deceitfully claimed that this email was not intended for me and related to another case.

FILED DATE: 2/16/2022 9:48 AM   2016D009534

FILED DATE: 2/16/2022 9:48 AM    2016D009534

g. It is utterly implausible that this email related to another case given that there was no opposing party copied other than myself, accidentally, and the subject of the email was my married name and case number.

h. I have attempted on multiple occasions to get Dr. Palen, Mr. Bender, Mr. Wehrman, and Ms. Mason to comply with the law and swiftly disclose to me the remainder of the ex parte communications, which is to say the other messages in this email thread. They refuse.

i. In an ironic turn, Ms. Mason even rebuked me for engaging in ex parte communications by asking her to disclose her own ex parte communications on behalf of Judge Johnson.

j. I raised this email as evidence of ongoing ex parte communication to Judge Link on January 6, 2021 when he ruled on my Motion for Substitution of Judge for Cause (Exhibiit L SOJ). Mr. Bender and Mr. Wehrman were both in attendance. In fact, both had, without providing any form of written response or evidence opposing my motion for a substitution of judge, interjected into the proceedings their musings and comments upon the case.

k. At no point did Mr. Wehrman present an argument as to why a substitution of judge would be inappropriate or harmful to his client, which would be an understandable reason for his input on the proceeding. Rather, he sought to argue why I deserved to be abused by the court due to vague inferences about my character.

l. During one of Mr. Wehrman's monologues he  stated affirmatively that no ex parte communications had occurred in this case and that I had been given access to all ex parte communications. He also stated to the court that I do not know what ex parte communication is.

28

FILED DATE: 2/16/2022 9:48 AM   2016D009534

m. When I asked on two occasions during this hearing that Judge Link swear in Mr. Bender and Mr. Wehrman so that they might testify under oath as witnesses to the email from Dr. Palen, Judge Link ignored me.

n. I wished, and still wish, for Mr. Bender and Mr. Wehrman to explain the email "I want to be paid" and to disclose the remainder of the conversation, as unambiguously required by law in the event Ex Parte communication takes place.

o. Alternately, though I don't find it plausible, if there were no other messages in this thread and it were true that as Mr. Wehrman said, "No ex parte communication happened" he ought to have no issue affirmatively stating this under oath.

p. At issue is not Judge Link's ruling, though by denying my motion for substitution of judge he acted contrary to law and fact, but rather his active participation in hiding ongoing ex parte communication. Namely, by allowing Mr. Wehrman to "argue" that no ex parte communication occurred, and seemingly to consider this "argument" in his ruling,  but simultaneously refusing to have Mr. Wehrman, as witness and participant, swear under oath to these facts, it's clear that Judge Link prioritized protecting his colleagues' reputation over the interest of justice.

q. By not allowing a full hearing of the facts or ordering the parties to disclose all ex parte communications, as is required by law, Judge Link demonstrated that it is impossible for me to have a fair hearing in the present venue and furthered my claims raised herein.

45. I believe the average person apprised of the facts of this case would agree that these facts are very embarrassing to the Domestic Relations DIvision of the Circuit Court of Chicago.

46. Embarrassment is not a legal basis to ignore my Civil Rights or the needs of myself and my children and to hide serious misconduct.

FILED DATE: 2/16/2022 9:48 AM   2016D009534

47.   Deference ought to be given to the litigant where the misdeeds of even one individual

appear to have so muddied the waters of justice. Where there appears to be conflict

between disclosing an act that would embarrass a friend and following the law, the law is to

prevail. Litigants must not be exploited because individuals have elected not to recuse

themselves.

48.   Since my fundamental rights are not being recognized in the Domestic Relations Division of

the Circuit Court of Chicago, immediate transfer is necessary.

49.   Further, I have come to observe that appeals are almost impossible for litigants in the

Domestic Relations DIvision of the CIrcuit Court of Chicago due to aggressive actions by

individuals in the division to block my legal right to appeal. Namely, on more than five

occasions, I have had employees of the court provide legal advice that is erroneous and

intended to curb my furtherance of an appeal. (Exhibit U Who are you?, Exhibit V Refusal

of clerks to certify copies, Exhibit X Bystander Report)

   a.   In order to submit a Bystander Report for entry into the official record, a litigant must

file a motion and have that Bystander Report reviewed by the judge who issued the

ruling under appeal. In this case, notice of appeal has been filed and served on Judge

Matthew Link

   b.   On Friday, January 21, 2022 I wrote to the email address from which I had previously

received scheduling communications, asking to schedule a trial.

   c.   An anonymous individual, presumably the individual named Roxanne named as

scheduler on Judge Link's zoom hearings, wrote back to me that there are no

hearings, that all matters are before Judge Johnson. I pointed out to her that she ought

not to give legal advice and  I repeatedly asked her to give her name and contact

information. She did not give her name or contact information.

FILED DATE: 2/16/2022 9:48 AM   2016D009534

    d.  Further, the clerks refused to certify my Bystander Report, Motion for hearing on Bystander Report and notification of service for Bystander Report three times. Each time they provided the erroneous instruction, "This is for appellate court".

    e.  This is troubling for three reasons. First, this individual gave unsolicited legal advice. Second, the advice was erroneous. Third, the message was anonymous to the reader

    f.  On January 25th, 2022 I apprised Ms. Brianna Steger, attorney for the court, of this situation.

    g.  Ms. Steger wrote back that she could not provide legal advice.

    h.  I again wrote to Ms. Steger and clarified that I was not seeking legal advice but rather, in her role as an attorney for the Court, apprising her of ongoing acts that may be the basis of future litigation against the court.

    i.  Shortly thereafter my previously rejected pleadings were accepted without comment.

    j.  I would eventually attend a status call with Judge Link at which time he verbally instructed me to ask Judge Johnson to transfer the case back to his calendar.

    k.  I was forced to file my documents three times, to write no less than ten emails, to verbally speak to a judge and to specifically state to counsel for the court my basis for legal action in order to get part of one tiny part of the appeals process accomplished.

50. It is simply not acceptable that a litigant should have to go through such effort to access her legal right to have her case heard by an Appellate court.  Such chilling practices effectively eliminate my legally protected right of appeal.

51.  Without the ability to trust that proceedings are appealable and subject to oversight by higher courts, there can be no faith in the justice system.Because of the lack of my ability to trust in the Appeals Process, I must be granted a change of venue.

FILED DATE: 2/16/2022 9:48 AM   2016D009534

52. The use of intimidation and misinformation to curb my pursuit of an appeal is only one example of the ways in which I have been prevented by officers and employees of the court to access justice. On at least five occasions I have been denied the right to be informed about and appear at my own trials.

   a. This includes the three court appearances hidden from me by Mr. Trowbridge and his associates referenced above  and the recent fraudulent claim by Mr. Wehrman  that I was served notice of a new motion on February 8, 2022.

   b. Another instance occurred on  December 3, 2018(Exhibit L SOJ) when I was found in contempt by default when Mr. Wehrman presented a PRTSC before Judge Johnson before I received notice. Although Mr. Wehrman used email to inform me of the in absentia contempt finding, he had mailed the original notice of hearing using standard mail with an obstructed  metered stamp  (clear tape was placed over the barcode for the postage) and it was only after coming home from work the day of the hearing that I learned of the allegation.

53. The denial of a litigant's right to attend her own hearing, or to be informed about her own hearing, is abhorrent and not in keeping with democratic principles. To have occurred five times in one case defies probability and is clear evidence of brazen lawlessness in my treatment in this division. Transfer to a new venue in the interest of justice is necessary and appropriate.

**Whistleblower Protections Needed and Gender Discrimination**

54. I am currently in the process of filing a report of gender discrimination with the Civil Rights DIvision of the Department of Justice as well as filing a complaint in federal Court for a multitude of Civil Rights Violations. In both proceedings the Circuit Court of Chicago and

FILED DATE: 2/16/2022 9:48 AM   2016D009534

the Clerk of the Circuit Court of Chicago are named as the public institutions responsible for my civil rights violations.

55. Just within this Motion there are a number of obvious claims of civil rights violations which make such claims obviously warranted and worthy of serious attention. Other events involved these parties but occurred while my case was presided over by now disgraced Judge Raul Vega.

56. Numerous individuals employed within the Domestic Relations Division of the Circuit Court of Chicago may be called as witnesses or named as participants in discriminatory acts, and therefore a new venue is essential.

57.  I am entitled to protection from retaliation as a whistleblower under federal law as someone who has reported Civil Rights violations and discrimination in a public facility. A swift transfer to a new venue is critical because  I have already been specifically targeted as a whistleblower.

58. On February 7, 2022 the court appointed Custody Evaluator, Dr. Gerald Blechman, selected by Michael Bender, submitted a document he called a preliminary report of his investigation.

   a. Dr. Blechman has interviewed me and my children for more than four hours.

   b. Dr. Blechman has been given consent to speak to the children's doctors, therapists and teachers.

   c. Dr. Blechman has reviewed all the pleadings that present evidence of Mr. Matt's concerning behavior, the PRTSCS RE Harassment, Failure to provide  childcare and strange adults in the children's home. I have personally given him the documents twice. First I gave him a large colored binder with tabs dividing the pleadings and exhibits. Dr.

Blechman reported to me that he did not recall receiving it. I then mailed the documents

via tracked parcel using Fedex and Dr. Blechman confirmed receipt.

d.  Dr. Blechman has administered three psychological evaluations of me:

   i.  On September 24, 2021 Dr. Blechman administered the MMPI-2 or Minnesota

      Multiphasic Personality Inventory -2 (MMPI-2) on me as part of his Custody

      Evaluation, using test form number 348278 in his office in Wheaton, Illinois.

   ii.  On Sept 24, 2021 Dr. Blechman administered the Millon Clinical Multiaxial Inventory

      - III (MCM I-III) using test form number 1130499 in his office in Wheaton, Illinois.

   iii.  On this date Dr. Blechman told me he had administered the same psychological

      evaluations to Mr. Matt.

   iv.  Around October 17th, 2021 I received a test form in the mail for the SCL-90-R

      Symptom Checklist-90-R with the product number 51417. I completed and returned

      this form to Dr. Blechman via US mail on October 17th, 2021.

e.  However Dr. Blechman's preliminary report contained no visit notes, no evaluation

   findings, no test results, no documentary evidence and no input from credible third

   parties, such as doctors, teachers and police, which had been presented repeatedly to

   Dr. Blechman by myself.

f.  Dr. Blechman's preliminary "report" consists exclusively of pasting an incoherent screed

   from Mr. Matt received via email, according to Dr. Blechman's letter.

g.  Among Mr. Matt's grievances listed - and apparently also Dr. Blechman's professional

   opinion as Dr. Blechman submitted this letter as official finding - were inferences about

   my own mental well being, Mr. Matt wrote of me and Dr. Blechman entered into the

   record:

   "During the hearing I was a little frightened to hear how her mind works these
   days. She was saying things like: "...you know, first of all, I love democracy. And
   January 6, 2020 (sic), I saw people storming the Capital (sic). So, I feel spiritually

   34

FILED DATE: 2/16/2022 9:48 AM   2016D009534

and emotionally called to protect democracy, And my understanding of a judge's role in an American courtroom is that it is a sacred duty to uphold the judicial process in that court And so, Mr. Trowbridge's (her former lawyer) malfeasance only matters here because Judge Johnson, Mr. Wehrman, and Mr. Bender observed it over the course of four months, and did nothing to intervene."

h.  First, I would like to state the obvious. Dr. Blechman, after 8 months of "evaluating" me, presented a two page letter addressed to Judge Johnson in which he just happened to find it necessary to make Judge Johnson aware that I have complained about my civil rights abuses by Judge Johnson himself. It seems curious to me that of all the factors that influence my children's well being, it stood out as Dr. Blechman as critical to highlight my whistleblower activity.

i.  In my nine years of employment with children, often with impoverished children from challenging home environments, I can assure this Court I never observed a social worker, DCFS worker, teacher, therapist, guardian ad litem or other authority feel that an analysis of a parent's political beliefs. or her disclosure of her willingness to speak truth to power entered into evaluation of an individual's parenting abilities.

j.  As it happensI do believe that a judge's role is sacred. I am a woman of faith and I do believe that God wishes for me, and all others, to act in the furtherance of truth and justice. My faith and my political beliefs ought never to be entered into the record as "proof" of my mental unfitness, particularly where an actual investigation was conducted as to my mental fitness and set aside to be replaced by deranged hearsay.

59. Where my faith drives me to pursue Civil Rights Actions, to speak truthfully in the furtherance of justice, to call upon my community to stand witness to Civil Rights Abuses I am protected by the laws of this nation and this state. I am demanding these protections now.

Exhibit I Continued

FILED DATE: 2/16/2022 9:48 AM   2016D009534

60. The need for a new venue is obvious given that my advocacy for justice on behalf of myself and other litigants in the Domestic Relations Division of the Circuit Court of Chicago is already being unjustly raised as evidence of my parental unfitness and flagged to the very people empowered to do me and my children harm.

WHEREFORE, I, Megan Mason (formerly known as Megan Matt), request that this Court enter an Order:

A. Immediately transferring this case to adjoining Lake County;

B. Waiving the right to tax fees to myself related to this transfer;

C. Overturning all rulings subsequent to the appointment of Michael Bender as Guardian Ad Litem on June 6, 2019;

D. Staying all proceedings and pending proceedings until this case is brought before a judge in Lake County;

E. Immediately terminating Michael Bender's appointment as GAL;

F. Immediately terminating Gerald Blechman's appointment as Custody Evaluator;

G. For such further relief as this court deems appropriate.

Respectfully Submitted By

By: _____

Megan Mason, Pro Se Respondent

**Megan Mason**
**419 Greenleaf Ave.**
**Wilmette, IL 60091**

This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois Appellate Courts.

| **Instructions** ▼ | ☑ **THIS APPEAL INVOLVES A MATTER SUBJECT TO EXPEDITED DISPOSITION UNDER RULE 311(a).** |

| Keep this cover page white. |

| Check the box to the right if your case involves custody, visitation, or removal of a child. |

E-FILED
Transaction ID: 1-22-0079
File Date: 4/6/2022 2:09 PM
Thomas D. Palella
Clerk of the Appellate Court
APPELLATE COURT 1ST DISTRICT

| Enter the Appellate Court case number. |

Appellate Case No.: 1-22-0079

# IN THE APPELLATE COURT OF ILLINOIS

| Just below "In the Appellate Court of Illinois," enter the number of the appellate district where the appeal was filed. |

First ▼ **District**

| If the case name in the trial court began with "In re" (for example, "In re Marriage of Jones"), enter that name. Below that, enter the names of the parties in the trial court, and check the correct boxes to show which party filed the appeal ("appellant") and which party is responding to the appeal ("appellee"). |

**In re** divorce of Megan and Peter Matt

Peter Matt
**Plaintiff/Petitioner** *(First, middle, last names)*

☐ **Appellant**   ☑ **Appellee**

v.

Megan Matt (NKA Megan Mason
**Defendant/Respondent** *(First, middle, last names)*

☑ **Appellant**   ☐ **Appellee**

**Appeal from the Circuit Court**
of Cook ▼ County

**Trial Court Case No.:**
2016 D 9534

**Honorable**
Matthew Link

**Judge, Presiding**

| To the far right, enter the trial court county, trial court case number, and trial judge's name. |

## APPELLANT'S BRIEF

| Add your:
1) Name;
2) Address;
3) Phone number; and
4) Email address.
**NOTE**: insert your email address only if you agree to receive court documents by email. |

### Your Information

Name: Megan Mason
First          Middle          Last

Address: 419 Greenleaf Ave., Wilmette, IL 60091
Street, Apt #          City          State          ZIP

Phone: (917) 518-1808

Email: megan42@gmail.com

| Check "Requested" if you want oral argument OR check "Not Requested" if you do not want oral argument. See *How to File an Appellant's Brief* for a discussion of oral arguments. |

### Oral Argument

☑ Requested   ☐ Not Requested

ABA-B 2103.1                                                                 (09/16)

Exhibit 1 Continued

Enter the Case Number given by the Appellate Court Clerk: <u>1-22-0079</u>

## **POINTS AND AUTHORITIES**
[Refer to Illinois Supreme Court Rule 341(h)(1)]

| | |
|---|---|
| You may have to complete the Argument section before completing the Points and Authorities section. | |

Page of Brief

| | |
|---|---|
| State the title of your 1st argument here and list the page where the argument starts later in the brief. | |

1. The ☑ trial court or ☐ jury *(check one)* made a mistake by _____ _____

Not ruling in Apellant's favor after considering the manifest weight of evidence demonstrating judicial bias necessitating a substitution of judge.

Authorities:

| | |
|---|---|
| In the formats provided by Illinois Supreme Court Rule 6, list the authorities (cases, statutes (laws), etc.) that you refer to in your 1st argument, in order of their importance, and the pages on which they will appear. | |

The Fourteenth Amendment of the United States Constitution

Rule (735 ILCS 5/2-1001) (from Ch. 110, par. 2-1001) Sec. 2-1001

Illinois Code of Judicial Conduct, Canon 3 A

(09/16)

Exhibit L Continued

Enter the Case Number given by the Appellate Court Clerk: 1-22-0079

Page of
Brief

> You may have to complete the Argument section before completing the Points and Authorities section.

> If you have a 2nd argument, state the title of your 2nd argument here and list the page where the argument starts later in the brief. If you don't have a 2nd argument, remove this page.

2. The ☑ trial court or ☐ jury *(check one)* made a mistake by _____ _____

Abusing Court discretion by allowing the Apellee's attorney to testify as witness

and expert without substitution of attorney and without agreeing to testify under oath,

and then considering the attorney's testimony in making his ruling.

_____

> In the formats provided by Illinois Supreme Court Rule 6, list the authorities (cases, statutes (laws), etc.) that you refer to in your 2nd argument, in order of their importance, and the pages on which they will appear.

Authorities:

Ill. Sup. Ct. R. 3.7 _____ _____

Illinois Code of Judicial Conduct Canon 3. A. _____ _____

_____ _____

_____ _____

_____ _____

_____ _____

_____ _____

_____ _____

_____ _____

_____ _____

_____ _____

_____ _____

_____ _____

_____ _____

_____ _____

Exhibit G-Continued

Enter the Case Number given by the Appellate Court Clerk: 1-22-0079

## NATURE OF THE CASE
[Refer to Illinois Supreme Court Rule 341(h)(2)]

State the kind of case that was in the trial court (e.g., "This case was filed in the trial court to recover damages caused by the alleged negligence of the defendant in driving his automobile.").

This case was filed in the trial court to   substitute the judge hearing post decree matters

related to ongoing parenting and allocation issues.

Check boxes to designate:

(1) whether or not the judgment you are appealing was based on a jury's verdict;

(2) whether the judgment was in favor of the plaintiff/petitioner or the defendant/respondent; and

(3) whether or not the judgment said there was a problem in the pleadings (meaning the complaint or petition). If the judgment did find a problem, describe the problem.

(1)     The trial court judgment was based on a jury verdict

☐ Yes   ☑ No

(2)     The trial court entered a judgment in favor of

☑ Plaintiff/Petitioner      ☐ Defendant/Respondent

(3)     A question is raised on the pleadings

☐ Yes ☑ No

If a question is raised on the pleadings, describe it: _____

_____

_____

_____

_____

Starting with this page, number the pages of your brief 1, 2, 3, etc. (This page is numbered for you.)

_____

_____

_____

_____

Exhibit U Continued

Enter the Case Number given by the Appellate Court Clerk: 1-22-0079

## ISSUES PRESENTED FOR REVIEW

[Refer to Illinois Supreme Court Rule 341(h)(3)]

In **1**, state the title of your 1st argument as you wrote it in the Points and Authorities section above.

1. Whether ☑ the trial court or ☐ the jury *(check one)* made a mistake by _____

Not ruling in Appellant's favor after considering the manifest weight of evidence

demonstrating judicial bias necessitating a substitution of judge.

_____

_____

_____

If you are making more than 1 argument, use **2** and **3** (if necessary) to state the titles of those arguments. If not, leave the rest of this section blank.

2. Whether ☑ the trial court or ☐ the jury *(check one)* made a mistake by _____

Abusing Court discretion by allowing the Apellee's attorney to testify as witness

and expert without substitution of attorney and without agreeing to testify under oath, and then

considering the attorney's testimony in making his ruling

_____

3. Whether ☐ the trial court or ☐ the jury *(check one)* made a mistake by _____

_____

_____

_____

_____

If you are making more than 3 arguments, fill out and insert 1 or more *Additional Issues Presented for Review* forms after this page.

Enter the Case Number given by the Appellate Court Clerk: 1-22-0079

## JURISDICTION

[Refer to Illinois Supreme Court Rule 341(h)(4)(ii)]

| | |
|---|---|
| In **1**, state the Illinois Supreme Court Rule under which the appellate court has jurisdiction, and explain why the trial court's judgment is appealable under that rule. | |

1. This court has jurisdiction under Illinois Supreme Court Rule

☐ 301, because the trial court's judgment ended a civil (non-criminal) case.

☐ 304, because the trial court's judgment

   ☐ ended only part of a civil (non-criminal) case but included a special finding of appealability under Rule 304(a).

   ☑ ended only part of a civil (non-criminal) case but is one of the judgments listed in Rule 304(b), such as a child custody order.

   Specifically, the judgment _____

   _____

☐ 307, because the trial court's judgment did not end any part of a civil (non-criminal)

   case but is one of the judgments listed in Rule 307, such as a termination of

   parental rights or a restraining order.

   Specifically, the judgment _____

   _____

☑ Other:  Parties were divorced and there are no motions pending before the trial court.

   In that sense this ruling was "final".

| | |
|---|---|
| In **2**, **3**, **4**, and **5**, referring to the pages of the common law record where the documents appear, fill in the dates of the documents that show that the appeal is timely. Specifically, fill in the date of the judgment, the dates of any post-judgment motions, the dates of the rulings on those motions, and the date of the *Notice of Appeal*. | |

2. On ___September 27, 2017___, the trial court entered the judgment  (C __525-564__ )v2
        *Enter Date*                                                                                      *Enter page(s) of record*

3. On ___November 30, 2021___, post-judgment motion(s) was/were filed
        *Enter Date(s)*

   (C __1420-1438__ )v2
        *Enter page(s) of record*

4. On ___January 11, 2022___, the trial court ruled on the post-judgment
        *Enter Date(s)*

motion(s)  (C __1544__ ).
              *Enter page(s) of record*

5. On ___January 14, 2022___, the *Notice of Appeal* was filed  (C __1816, 1817 V2__ ).
        *Enter Date*                                                                    *Enter page(s) of record*

Exhibit C Continued

Enter the Case Number given by the Appellate Court Clerk: 1-22-0079

## STATUTES (LAWS) INVOLVED
[Refer to Illinois Supreme Court Rule 341(h)(5)]

If the case involves the meaning or validity of a statute (law), constitutional provision, treaty, ordinance, or regulation, provide the language and the number (for example, 735 ILCS 5/2-615) for each.

If the case does not involve a statute (law) or other provision, leave this page blank.

The Fourteenth Amendment of the Constitution of the United States of America
_____

Rule (735 ILCS 5/2-1001) (from Ch. 110, par. 2-1001) Sec. 2-1001
_____

Ill. Sup. Ct. R. 3.7
_____

Illinois Code of Judicial Conduct Canon 3. A.
_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

If you need more room, fill out and insert 1 or more *Additional Statutes (Laws) Involved* forms after this page.

Enter the Case Number given by the Appellate Court Clerk: 1-22-0079

**STATEMENT OF FACTS**
[Refer to Illinois Supreme Court Rule 341(h)(6)]

Tell the story of what happened in the trial court, with references to the specific pages of the record where each fact appears. Refer to pages of the common law record as "C [page]." Refer to pages of the report of proceedings as "R [page]." For example, "On January 2, 2015, the plaintiff filed his complaint. C 1."

On September 27, 2017 the parties were divorced and entered into a

Marital Settlement Agreement (MSA) and Allocation Parenting Plan. Two

Children were born of the marriage, Angus Matt, born August 11, 2008

and now age 13 and Theodore Matt, born February 12, 2012, and now

age 10. (C 525-564 v2)

Following the divorce Mr. Matt moved for the appointment of a

Guardian Ad Litem on February 19, 2019 . (C 662-673 V 1).  I, Ms. Mason, opposed the

appointment and filed a response on March 18, 2019 in which I laid out my reasons for

opposing  the appointment of a GAL (C 6988-717 V 1)

On June 6, 2019  Michael Bender was appointed Guardian Ad Litem and has

been in this role for three years (C 720-721). Because there was never an underlying

proceeding necessitating the report of a GAL and the parties had a duly

enacted MSA and Parenting Plan It is unclear how or when the GAL will

be removed. I have twice moved to have the GAL step down,

You should describe the following:
- what was said in the complaint or petition,
- anything relevant that happened in court before the trial,
- the testimony of all witnesses,
- how the judge ruled, any findings by the jury, and anything that happened in court after the trial.

Refer to the specific pages of the record where each fact appears.

Tell the story correctly and fairly. Do not make arguments or comments here.

noting that in the first year of his appointment he never spoke to any of

the children's doctors, teachers or therapists and had only met the

children themselves on one occasion in 2019. On January 12, 2021 I filed my first

motion to remove the GAL. (C.1013 - C 1016 v.1) This motion was denied and Judge

Johnson entered an order to that effect. (C  1081- C1082 v. 2)The second motion to terminate

the GAL was filedby me on December 3, 2021 (C 1496-C1508 v. 2. ) raising Mr. Bender's

multiple ethical violations as a primary basis.

A number of bizarre events transpired in the case between  March, 2020 and the

date of this filing to make me come to see  that I cannot get a fair trial in Judge Johnson's court.

On March 10, 2020  Mr. Matt  filed a Petition for Rule to Show Cause alleging contempt. Mr.

Matt attested to having served this PRTSC via counsel upon my then attorney,

Brad Trowbridge via the email address on record with the court and

known by myself to be Brad Trowbridge's email address. Mr.

Wehrman attested under perjury to having served Mr. Trowbridge and

filed a proof of service with the Court. Mr. Trowbridge billed me in

his March, 2020 invoice for having read the PRTSC, though I would

only notice this a year later. C

Although the PRTSC made a number of allegations that I had violated court

order, they particularly focused on an allegation that I was refusing to take

our older son to ABA therapy. There was an order issued by Judge Johnson on date that

"ABA shall continue". Mr. Trowbridge never told me there was an allegation

of contempt. There were three scheduled court appearances, two delayed due to

COVID. I was never informed. At the same time someone changed my

mailing address for service from 423 Linden Ave in Wilmette to 423 Linda

Ave in Chicago. I have been unable to get this corrected. Notices were returned to the

court "addressee not found" on April 14, 2020 and June 12, 2020. (C759 and C761 V 1.)

Mr. Bender as GAL never informed me that there was a concern about ABA. On two

occasions Brad Trowbridge repeatedly lied to me, affirming there were no filings

against me when I checked in and even failing to disclose the contempt allegation after

he had attended a court hearing where, presumably it was discussed. Mr. Trowbridge

had advised me that it would be better strategically for me not to appear in court if

possible.

During this time I, unaware of a contempt allegation, was in regular

communication with Mr. Matt, including on the topic of ABA. Mr. Matt texted me

in June of 2020 to ask if I would agree to a new provider because, due to

Enter the Case Number given by the Appellate Court Clerk: 1-22-0079

COVID, their agency would not provide therapy during COVID. I had also

purchased a version of the ABA software Teach Town which Angus's school was

using. I was doing this virtual ABA therapy with Angus because providers were

unavailable due to Cook County Covid rules. (C 1420 - C 1438 v. 2).

Judge Johnson ruled that I was willfully and contumaciously in contempt of court order

on 8/21/2020 (C 1816, 1817 V2).

On date Dr. John Palen, a friend of Mr. Bender, was appointed as parenting coordinator

on Mr. Bender's recommendation. On December 5th, 2020, Dr. Palen accidentally

copied me on an email to Mr. Wehrman, opposing counsel, Michael Bender, GAL and

Ms. Mason, clerk for Judge Johnson because Ms. Mason and I share the last name.At

the time Dr. Palen had a positive retainer balance and no fee motions were before the

court. Dr. Palen wrote in this email, "I want to be paid. It is as simple as that." The

subject of the email included my case number and married name. I believe this was a

solicitation of a bribe, either direct or indirect. All parties refuse to provide me an

alternate explanation and refuse to disclose to me the other emails in which both Mr.

Wehrman and Ms. Mason, clerk, are participants but I am excluded. Communications

between opposing counsel and the Court are ex parte unless I am included. (C 1439, C
1441)

Shortly after copying me on the email, Dr. Palen wrote to the parties just named and

myself that I was copied by accident and that this was meant for another case.

A multitude of further violations of procedure and impingements of my rights were

laid out in my motion for a substitution of judge. No explanation or counter-argument

has been raised by Judge Johnson, who was given the opportunity to put a response in

writing and did not do so. On January 11th, 2022 Judge Link ruled that I had not proven

a substitution of judge was warranted because in his opinion I had not proven actual

bias or given reason to believe I would continue to face future bias. On January 11, 2022

my case  was ordered back to Judge Johnson. (C 1544 v. 2)

Enter the Case Number given by the Appellate Court Clerk: 1-22-0079 _____

### ARGUMENT
[Refer to Illinois Supreme Court Rule 341(h)(7)]

<table>
<tr><td>State the title of your 1st argument here as you wrote it in the Points and Authorities section above.</td></tr>
</table>

1. The ☑ trial court or ☐ jury *(check one)* made a mistake by  not ruling in Apellant's favor

after considering the manifest weight of evidence demonstrating judicial bias necessitating a

substitution of judge.

_____

_____

Standard of review  (*Check all that apply to your 1st argument*)

☐ The trial court made a mistake in applying the law. (This is **de novo** review.

The appellate court must give **no** deference to the trial court);

☑ The trial court or the jury made a mistake in deciding the facts. (This is **manifest**

**weight of the evidence** review. The appellate court must give **great** deference to

the trial court or the jury);

☐ The trial court made a mistake in conducting the trial procedure. (This is **abuse of**

**discretion** review. The appellate court must give **extreme** deference to the trial

court); and/or

☐ other: _____

Authority for standard of review: _____

<table>
<tr><td>Using the authorities from your Points and Authorities section, and with references to the pages of the record for facts within your argument, explain:
<br>• the standard of review you want the appellate court to apply;
<br>• the law that you want the appellate court to apply;
<br>• how the law applies to your case; and
<br>• the relief you want from the appellate court.</td></tr>
</table>

Explain your argument, using the law to demonstrate how, under the facts of your case, the

outcome should have been different. *(Use the facts of the case and your authorities (cases and*

*statutes (laws)) to help you do this.)*  I presented documentation of two known instances of ex parte

communication between Ms. Kaye Mason, clerk for Judge Robert Johnson, and Mr. Christopher

Wehrman, Appellee's counsel. I presented evidence that the ex parte communication is ongoing

and that parties still refuse to tender to me secret email communications between Mr. Wehrman

Enter the Case Number given by the Appellate Court Clerk: 1-22-0079

and Ms. Mason under the email subject "IRMO Matt; 2016 D 9534". The ex parte communications are signs of obvious bias. No party has questioned the accuracy of the documentary evidence submitted with my Motion for a Substitution of Judge. No party has provided a legal, ethical explanation to one ex parte communication in particular, in which a Court appointed parenting coordinator, Dr. John Palen, wrote to Ms. Mason, Clerk, "I want to be paid It is as simple as that". This was at a time when Dr. Palen had a positive retainer balance and no fee motions were being discussed, much less pending. I refer to Illinois Code of Judicial Conduct Canon 3 A.

In addition to ex parte communications I presented a preponderance of evidence showing that I cannot receive fair treatment before Judge Robert Johnson. This included documentation of multiple instances of denial of service, multiple instances of court dates scheduled without my awareness, multiple instances of fraud upon the court committed to my or my children's detriment, and denial of access to counsel.

Rule (735 ILCS 5/2-1001) (from Ch. 110, par. 2-1001) Sec. 2-1001. Substitution of judge provides any party the right to petition the Court to substitute a judge for cause. Bias is good cause for substitiution. The manifest weight of evidence shows bias.

In In People v. Bradshaw, 171 Ill. App. 3d 971, 975-76 (1988), this Court found that, "A trial judge further has an obligation of assuring the public that justice is administered fairly, because the appearance of bias or prejudice can be as damaging to public confidence as would be the actual presence of bias or prejudice". In that case, also in the Cook County Circuit Court, the Appellate Court found that a judge should recuse himself simply because other parties witnessed one defendant's mother pass a note and then speak to the trial judge but no actual acts of bias were shown. In my case I witnessed similarly disturbing acts, that likewise create the appearance of bias. However I also exceeded the standard of the appearance of bias by showing a pattern of actual bias.

In his role as a Domestic Relations Judge, Judge Johnson has been given the authority to act on behalf of the State to order me to pay fees, to imprison me, and to control my parenting

time. Although family law judges are given some latitude to address complex family needs it does not f

ollow that mothers are not entitled to the full protection of the law. I am protected by the Fourteenth

Amendment which states in part, "nor shall any State deprive any person of life, liberty, or property,

without due process of law; nor deny to any person within its jurisdiction the equal protection of the

laws."I am now filing for bankruptcy as a direct result of unjust penalties from this court and

unwarranted fees for court appointees. The impact of unjust contempt rulings and court

ordered expenses will likely force me to lose my job as a licensed financial advisor and causes profound

stress for my family.

Enter the Case Number given by the Appellate Court Clerk: 1-22-0079

State the title of your 2nd argument here as you wrote it in the Points and Authorities section above.

2. The ☑ trial court or ☐ jury *(check one)* made a mistake by _____

Abusing Court discretion by allowing the Apellee's attorney to testify as witness

and expert without substitution of attorney and without agreeing to testify

under oath, and then considering the attorney's testimony in making his ruling.

If you don't have a 2nd argument, remove this page and the following argument pages.

Standard of review (*Check all that apply to your 2nd argument*)

☐ The trial court made a mistake in applying the law. (This is **de novo** review. The appellate court must give **no** deference to the trial court);

☐ The trial court or the jury made a mistake in deciding the facts. (This is **manifest weight of the evidence** review. The appellate court must give **great** deference to the trial court or the jury);

☑ The trial court made a mistake in conducting the trial procedure. (This is **abuse of discretion** review. The appellate court must give **extreme** deference to the trial court); and/or

☐ other: _____

Using the authorities from your Points and Authorities section, and with references to the pages of the record for facts within your argument, explain:

- the standard of review you want the appellate court to apply;
- the law that you want the appellate court to apply;
- how the law applies to your case; and
- the relief you want from the appellate court.

Authority for standard of review: _____

Explain your argument, using the law to demonstrate how, under the facts of your case, the outcome should have been different. *(Use the facts of the case and your authorities (cases and statutes (laws)) to help you do this.)* While deciding on my Petition for a Substitution of

Judge for the cause of judicial bias, the trial judge allowed Mr. Christopher Wehrman,

Attorney for the Appellee to affirmatively state, in his role as Mr. Matt's attorney, that

"There has never been any ex parte communication in this case.". I objected to

Mr. Wehrman making any arguments because there had been no response or refutal

of facts via an affidavit from Judge Johnson, as statute allows, so I did not feel there

Case: 1:22-cv-02315 Document #: 8 Filed: 06/21/22 Page 214 of 299 PageID #:824
Exhibit C continued
Enter the Case Number given by the Appellate Court Clerk:  1-22-0079

was a basis for Mr. Wehrman to create novel arguments. Further, because the

"ex parte communications" I refer to here and in the original pleading all included

Mr. Wehrman as either a witness or alleged participant, Mr. Wehrman ought to have

been disqualified according to Ill. Sup. Ct. R. 3.7. Further, Mr. Wehrman, in his

oral arguments asserted that I, Appellant, "do not know what 'ex parte' means,

and offering no basis for him to act as an expert witness in regard to my competence.

Both Mr. Bender and Mr. Wehrman were at the trial and repeatedly stated to the

Court their opinions, recollections, and statements of facts. Both parties were

also witnesses and alleged participants in ex parte communications and other acts

that formed the basis of my complaint. Therefore I repeatedly asked Judge Link to

please swear the parties in so they could testify under oath. The first time I

asked, Judge Link replied, "We'll get to that later". When I asked subsequently he

ignored me.

Specifically, at one point Mr. Wehrman stated, "Your honor, there was no ex

parte communication". I asked that he be sworn under oath to testify that there

were no emails between himself and Ms. Kaye Mason on which I'd not been

copied and which had not been tendered to me quickly, as the Illinois Code of

Judicial Conduct Demands in Canon 3 A. Judge Link ignored my request.

Because Judge Link listened to Mr. Wehrman's arguments, he must have

considered Mr. Wehrman's arguments as well as his statements of fact in

forming his ruling. It is utterly inappropriate that one party, perhaps in order to

protect his license and reputation, be allowed to testify at a trial when he is at

once attorney, witness and alleged participant, without being

sworn under oath and under threat of perjury as any other witness would be

required to do. Therefore the entire proceeding perpetuated the appearance of bias

it was intended to remedy.

Exhibit U Continued

Enter the Case Number given by the Appellate Court Clerk:  1-22-0079

    Because the Motion to Substitute Judge for the cause of judicial bias presented a

   prima facie basis for substitution and no refutal was made via allowed affidavit by

   Judge Johnson or  refuted by legally  allowed evidence, it would be impossible to

   consider anything but Mr. Wehrman's  orations as supporting Judge Link's ruling.

   Because Mr. Wehrman's statements were not made under  oath and did not direct the court to

   duly filed evidence or a the testimony of a duly sworn witness they should not have been

   considered at all.

Enter the Case Number given by the Appellate Court Clerk: 1-22-0079

## **CONCLUSION**
[Refer to Illinois Supreme Court Rule 341(h)(8)]

State what you want
the court to do. You
may check as many as
apply.

The appellant respectfully requests that this court:

☑ reverse the trial court's judgment *(change the judgment in favor of the other party into a judgment in your favor)* and ☐ send the case back to the trial court for any hearings that are still required;

☐ vacate the trial court's judgment *(erase the judgment in favor of the other party)* and ☐ send the case back to the trial court for a new hearing and a new judgment;

☐ change the trial court's judgment to say: _____

_____

_____

☑ order the trial court to:  transfer this case to Lake County in the interest of justice.

_____

_____

☐ other: _____

_____

_____

_____

_____

_____

and grant any other relief that the court finds appropriate.

If you are completing
this form on a
computer, sign your
name by typing it. If
you are completing it
by hand, sign by hand
and print your name.

Respectfully submitted,

/s/ *Megan Mason*
*Signature*

Megan Mason
*Print Name*

Exhibit 16 / Continued

Enter the Case Number given by the Appellate Court Clerk: 1-22-0079

## **CERTIFICATE OF COMPLIANCE**
[Refer to Illinois Supreme Court Rule 341(c)]

Rule 341(a) governs
the form of briefs, and
Rule 341(b) governs
the length. Unless a
motion to file a longer
*Brief* is granted, the
*Appellant's Brief* (not
counting the pages
listed) must contain no
more than 50 pages OR
no more than 15,000
words.

If your *Brief* is within
the page limit, add the
number of pages in
your *Brief* (not
counting the pages
listed).

If your *Brief* is not
within the page limit,
but is within the word
limit, add the number
of words in your *Brief*
(not counting the pages
listed).

I certify that this *Brief* conforms to the requirements of Supreme Court Rules 341(a) and (b).

The length of this *Brief*, excluding the pages or words contained in the Rule 341(d) cover, the

Rule 341(h)(1) statement of points and authorities, the Rule 341(c) certificate of compliance, the

certificate of service, and those matters to be appended to the brief under Rule 342(a), is

_____14_____ pages or words.

If you are completing
this form on a
computer, sign your
name by typing it. If
you are completing it
by hand, sign by hand
and print your name.

*Megan Mason*
*Signature*

Megan Mason
*Print Name*

ABA-B 2103.1

(09/16)

Exhibit C – Conduct

Enter the Case Number given by the Appellate Court Clerk: 1-22-0079

## PROOF OF SERVICE
[Refer to Illinois Supreme Court Rule 11]

| | |
|---|---|
| In **1a**, enter the name, mailing address, and email address of the party or lawyer to whom you sent the document. | **1.** I sent this document: |

**a.** To:

Name: Christopher Wehrman

*First*          *Middle*          *Last*

Address: Katz, Goldstein & Warren 410 N. Michigan Ave., Suite 400 Chicago, IL 60611

*Street, Apt #*      *City*      *State*      *ZIP*

Email address: cwherman@kglaw.com

> In **1b**, check the box to show how you sent the document, and fill in any other information required on the blank lines.

> **CAUTION:** If the other party does not have a lawyer, you may send the document by email only if the other party has listed their email address on a court document.

**b.** By:
- ☐ Personal hand delivery
- ☐ Regular, First-Class Mail, put into the U.S. Mail with postage paid at:

_____
*Address of Post Office or Mailbox*

- ☐ Third-party commercial carrier, with delivery paid for at:

_____
*Name (for example, FedEx or UPS) and office address*

- ☐ The court's electronic filing manager (EFM) or an approved electronic filing service provider (EFSP)
- ☑ Email *(not through an EFM or EFSP)*
- ☐ Mail from a prison or jail at:

_____
*Name of prison or jail*

> In **c**, fill in the date and time that you sent the document.

**c.** On: April 6, 2022
*Date*

At: 3:00    ☐ a.m.    ☑ p.m.
*Time*

> In **2**, if you sent the document to more than 1 party or lawyer, fill in **a**, **b**, and **c**. Otherwise leave **2** blank.

**2.** I sent this document:

**a.** To:

Name: Michael Bender

*First* Caesar Bender LLP    *Middle*      *Last*

Address: 150 N. Michigan Ave., #2130 Chicago, IL 60601

*Street, Apt #*      *City*      *State*      *ZIP*

Email address: mbender@caesarbenderlaw.com

**b.** By:
- ☐ Personal hand delivery
- ☐ Regular, First-Class Mail, put into the U.S. Mail with postage paid at:

_____
*Address of Post Office or Mailbox*

E-filed + commade

Enter the Case Number given by the Appellate Court Clerk: 1-22-0079

☐ Third-party commercial carrier, with delivery paid for at:

_____

*Name (for example, FedEx or UPS) and office address*

☐ The court's electronic filing manager (EFM) or an approved electronic filing
service provider (EFSP)

☑ Email *(not through an EFM or EFSP)*

☐ Mail from a prison or jail at:

_____

*Name of prison or jail*

c.  On:  April 6, 2022
    _____
    *Date*

    At:  3:00 ____ ☐ a.m. ☑ p.m.
         _____
         *Time*

> In **3**, if you sent the
> document to more than
> 2 parties or lawyers, fill
> in **a**, **b**, and **c**.
> Otherwise leave **3**
> blank.

3.  I sent this document:

a.  To:

Name:  _____
       *First*               *Middle*              *Last*

Address:  _____
          *Street, Apt #*              *City*        *State*   *ZIP*

Email address:  _____

b.  By:  ☐ Personal hand delivery
         ☐ Regular, First-Class Mail, put into the U.S. Mail with postage paid at:

_____

*Address of Post Office or Mailbox*

☐ Third-party commercial carrier, with delivery paid for at:

_____

*Name (for example, FedEx or UPS) and office address*

☐ The court's electronic filing manager (EFM) or an approved electronic filing
service provider (EFSP)

☐ Email *(not through an EFM or EFSP)*

☐ Mail from a prison or jail at:

_____

*Name of prison or jail*

c.  On:  _____
         *Date*

    At:  _____ ☐ a.m. ☐ p.m.
         *Time*

> If you are serving more
> than 3 parties or
> lawyers, fill out and
> insert 1 or more
> *Additional Proof of
> Service* forms after this
> page.

ABA-B 2103.1                                                      (09/16)

Exhibit U Continued

Enter the Case Number given by the Appellate Court Clerk: 1-22-0079

| | |
|---|---|
| Under the Code of Civil Procedure, 735 ILCS 5/1-109, making a statement on this form that you know to be false is perjury, a Class 3 Felony. | **I certify that everything in the Proof of Service is true and correct. I understand that making a false statement on this form is perjury and has penalties provided by law under 735 ILCS 5/1-109.** |

/s/ *Megan Mason*

*Your Signature*

Megan Mason

*Print Your Name*

If you are completing this form on a computer, sign your name by typing it. If you are completing it by hand, sign by hand and print your name.

ABA-B 2103.1                                                                (09/16)

Enter the Case Number given by the Appellate Court Clerk: <u>1-22-0079</u>

## **APPENDIX**
[Refer to Illinois Supreme Court Rule 342(a)]

| | |
|---|---|
| This is a Table of Contents for the Appendix. | |
| • In addition to the materials listed, list any other materials from the record that are relevant to the appeal. Do not list materials that are not in the record. | |
| • Add those materials to the end of the Appendix, in the order in which you list them. | |
| • Number the pages of the Appendix A-1, A-2, A-3, etc. | |
| • Fill in the appropriate page numbers on the Table of Contents. | |

1. Index to the record      A- <u>1</u>

2. Complaint or Petition      A- <u>2</u>

3. Judgment      A- <u>23</u>

4. *Notice of Appeal*      A- <u>25</u>

(09/16)

ATTENTION APPELATE COURT. I URGENTLY NEED TO FILE THE APPELLATE BRIEF ASSOCIATED WITH THIS INDEX. HOWEVER, AS OF 4/6/22 THE COPY OF VOLUME 1 I RECEIVED FROM THE APPELLATE COURT, PRESUMABLY FROM THE CIRCUIT COURT IS STILL MISSING MANY DOCUMENTS, INCLUDING MOST OF THE DOCUMENTS LISTED IN THIS INDEX. I BELIEVE MOST OF THE DOCUMENTS ARE FOR PARTIE NOT RELATED TO ME OR MY CASE. I WILL BE SENDING COPIES OF THE MISSING DOCUMENTS TO THE CIRCUIT COURT BUT DO NOT WISH TO MISS MY DEADLINE PLEASE ACCEPT THIS FILING. MM

Enter the Case Number given by the Appellate Court Clerk: 1-22-0079

## INDEX TO THE RECORD

### Exhibit U Continued

**Common Law Record ("C")**

[Refer to Illinois Supreme Court Rule 321]

Rule 321 discusses the common law record. List the title of each document in the common law record (the documents filed in the trial court), the date on which each document was filed, and the page of the record on which each document begins.

| Document | Date of Filing | Page |
|---|---|---|
| Judgment for Dissolution of Marriage | 9/27/2017 | C526-C546 v 1 |
| Allocation of Parental Responsibilities Judgment and Parenting Plan | 9/27/2017 | C547-C564 v. 1 |
| Motion to Appoint a Guardian Ad Litem | 2/19/2019 | C662-C673 v. 1 |
| Response to Motion to Appoint a Guardian Ad Litem | 3/18/2019 | C 698 - C 717 V. 1 |
| Order Appointing Child's Rep, GAL or Attorney for Minor Children | 6/6/2019 | C 720-C721 v. 1 |
| Petition for Rule to Show Cause | 3/10/2020 | C 742- C744 v. 1 |
| Response to Petition for Rule to Show Cause | 8/11/2020 | C 764- C 772 v. 1 |
| Order appointing Parenting Coordinator | 9/25/2020 | C 794-C795 v. 1 |
| Petition to Substitute Judge for Cause | 11/30/2021 | C1420-C1438 v.2 |
| Exhibit A | 11/30/2021 | C 1439-C1449 v. 2 |
| Exhibit B | 11/30/2021 | C 1441 v. 2 |
| Exhibit C | 11/30/2021 | C 1442 -C144 v. 2 |
| Exhibit D | 11/30/2021 | C 1445 v. 2 |
| Exhibit E | 11/30/2021 | C 1446 v. 2 |
| Exhibit F | 11/30/2021 | C 1447 v. 2 |
| Exhibit G | 11/30/2021 | C 1448 v. 2 |
| Exhibit H | 11/30/2021 | C 1449 v. 2 |
| Exhibit I | 11/30/2021 | C 1450 v. 2 |

If you need more room, fill out and insert 1 or more *Additional Common Law Record* forms after this page.

**A-** __1__

ABA-B 2103.1 (09/16)

Enter the Case Number given by the Appellate Court Clerk: _____

Page 2 of 2

## **INDEX TO THE RECORD**

### Exhibit U Continued

**Common Law Record ("C")**

[Refer to Illinois Supreme Court Rule 321]

Rule 321 discusses the common law record. List the title of each document in the common law record (the documents filed in the trial court), the date on which each document was filed, and the page of the record on which each document begins.

| Document | Date of Filing | Page |
|---|---|---|
| Exhibit J | 11/30/2021 | C 1451 v. 2 |
| Exhibit K | 11/30/2021 | C 1452-C 1457 v. 2 |
| Exhibit L | 11/30/2021 | C 1458 v. 2 |
| Exhibit M | 11/30/2021 | C 1459 v. 2 |
| Exhibit N | 11/30/2021 | C 1460 v. 2 |
| Exhibit O | 11/30/2021 | C 1461 v. 2 |
| Exhibit P | 11/30/2021 | C 1462-C1463 v. 2 |
| Exhibit Q | 11/30/2021 | C 1464 v. 2 |
| Exhibit S | 11/30/2021 | C 1465 v. 2 |
| Exhibit T | 11/30/2021 | C 1466-C 1472 v. 2 |
| Exhibit U | 11/30/2021 | C 1473 - C 1480 v. 2 |
| Exhibit V | 11/30/2021 | C 1481-C 1492 v. 2 |
| Exhibit W | 11/30/2021 | C 1493- C 1494 v. 2 |
| Affidavit in Support of SOJ | 11/30/2021 | C 1495 v. 2 |
| Motion to Terminate the GAL | 12/3/2021 | C 1496 - C 1508 v. 2 |
| Order Denying | 1/11/2022 | C 1544 v. 2 |
| | | |
| | | |

If you need more room, fill out and insert 1 or more *Additional Common Law Record* forms after this page.

**A-** 1.a

**This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois Appellate Courts.**

| **Instructions ▼** |
| --- |

Check the box to the right if your case involves parental responsibility or parenting time (custody/visitation rights) or relocation of a child.

☑ **THIS APPEAL INVOLVES A MATTER SUBJECT TO EXPEDITED DISPOSITION UNDER RULE 311(a).**

V

FILED
1/14/2022 2:24 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL

16306084

**APPEAL TO THE APPELLATE COURT OF ILLINOIS**

FIRST District

Just below "Appeal to the Appellate Court of Illinois," enter the number of the appellate district that will hear the appeal and the county of the trial court.

**from the Circuit Court of**
Cook County

If the case name in the trial court began with "In re" (for example, "In re Marriage of Jones"), enter that name. Below that, enter the names of the parties in the trial court, and check the correct boxes to show which party is filing the appeal ("appellant") and which party is responding to the appeal ("appellee").

To the far right, enter the trial court case number and trial judge's name.

**In re** the marriage of Megan and Peter Matt

Peter Matt

**Plaintiff/Petitioner** *(First, middle, last names)*
☐ Appellant    ☑ Appellee

v.

Megan Matt (nka Megan Mason)

**Defendant/Respondent** *(First, middle, last names)*
☑ Appellant    ☐ Appellee

**Trial Court Case No.:**
2016 D 9534

**Honorable**
Matthew Link

**Judge, Presiding**

## NOTICE OF APPEAL

In **1**, check the type of appeal.

For more information on choosing a type of appeal, see *How to File a Notice of Appeal.*

1. **Type of Appeal:**
   ☐ Appeal
   ☑ Interlocutory Appeal
   ☐ Joining Prior Appeal
   ☐ Separate Appeal
   ☐ Cross Appeal

In **2**, list the name of each person filing the appeal and check the proper box for each person.

2. **Name of Each Person Appealing:**
   Name: Megan Mason

   | First | Middle | Last |
   | --- | --- | --- |

   ☐ Plaintiff-Appellant    ☐ Petitioner-Appellant

   **OR**

   ☐ Defendant-Appellant    ☑ Respondent-Appellant

   Name:

   | First | Middle | Last |
   | --- | --- | --- |

   ☐ Plaintiff-Appellant    ☐ Petitioner-Appellant

   **OR**

   ☐ Defendant-Appellant    ☐ Respondent-Appellant

*FILED DATE: 1/14/2022 2:24 PM    2016D009534*

Exhibit O Continued

**In 3**, identify every order or judgment you want to appeal by listing the date the trial court entered it.

3. **List the date of every order or judgment you want to appeal:**

1/11/2022
*Date*

_____
*Date*

_____
*Date*

**In 4**, state what you want the appellate court to do. You may check as many boxes as apply.

4. **State your relief:**

☑ reverse the trial court's judgment *(change the judgment in favor of the other party into a judgment in your favor)* and ☐ send the case back to the trial court for any hearings that are still required;

☐ vacate the trial court's judgment *(erase the judgment in favor of the other party)* and ☐ send the case back to the trial court for a new hearing and a new judgment;

☐ change the trial court's judgment to say: _____

_____
_____

☑ order the trial court to: assign this case to a new judge within the Domestic Relations Division of the Circuit Court of Cook County

_____

☐ other: _____

_____

and grant any other relief that the court finds appropriate.

If you are completing this form on a computer, sign your name by typing it. If you are completing it by hand, sign by hand and print your name. Fill in your address and telephone number.

/s/ *Megan Mason*
*Your Signature*

Megan Mason
*Your Name*

419 Greenleaf Ave.
*Street Address*

Wilmette, IL 60091
*City, State, ZIP*

917.518.1808
*Telephone*

**Additional Appellant Signature**

All appellants must sign this form. Have each additional appellant sign the form here and enter their name, address, and telephone number.

_____
*Signature*

_____
*Name*

_____
*Street Address*

_____
*City, State, ZIP*

_____
*Telephone*

**GETTING COURT DOCUMENTS BY EMAIL:** If you agree to receive court documents by email, check the box below and enter your email address. You should use an email account that you do not share with anyone else and that you check every day. If you do not check your email every day, you may miss important information or notice of court dates. Other parties may still send you court documents by mail.

☑ I agree to receive court documents at this email address during my entire case.

megan42@gmail.com
*Email*

FILED DATE: 1/14/2022 2:24 PM   2016D009534

**PROOF OF SERVICE** *(You must serve the other party and complete this section)*

FILED DATE: 1/14/2022 2:24 PM   2016D009534

In **1a**, enter the name, mailing address, and email address of the party or lawyer to whom you sent the document.

In **1b**, check the box to show how you sent the document, and fill in any other information required on the blank lines.

**CAUTION:** If the other party does not have a lawyer, you may send the document by email only if the other party has listed their email address on a court document.

1. I sent this document:

   a. To:

   Name: ___Peter Matt_____
            *First*                 *Middle*            *Last*

   Address: ___246 Maple Ave., Wilmette, IL 60091_____
            *Street, Apt #*        *City*       *State*      *ZIP*

   Email address: ___cwherman@smbtrial.com___

   b. By:
   ☐ Personal hand delivery
   ☐ Regular, First-Class Mail, put into the U.S. Mail with postage paid at:

   _____
   *Address of Post Office or Mailbox*

   ☐ Third-party commercial carrier, with delivery paid for at:

   _____
   *Name (for example, FedEx or UPS) and office address*

   ☐ The court's electronic filing manager (EFM) or an approved electronic filing service provider (EFSP)

   ☒ Email *(not through an EFM or EFSP)*

   ☐ Mail from a prison or jail at:

   _____
   *Name of prison or jail*

In 1**c**, fill in the date and time that you sent the document.

   c. On: ___January 14, 2022_____
         *Date*

   At: ___3:00_____ ☐ a.m. ☒ p.m.
        *Time*

In **2**, if you sent the document to more than 1 party or lawyer, fill in **a**, **b**, and **c**. Otherwise leave **2** blank.

2. I sent this document:

   a. To:

   Name: ___Michael Bender_____
            *First*                 *Middle*            *Last*

   Address: ___150 N. Michigan Ave., Suite 2130 Chicago, IL 60601___
            *Street, Apt #*        *City*       *State*      *ZIP*

   Email address: ___mbender@caesarbenderlaw.com___

   b. By:
   ☐ Personal hand delivery
   ☐ Regular, First-Class Mail, put into the U.S. Mail with postage paid at:

   _____
   *Address of Post Office or Mailbox*

   ☐ Third-party commercial carrier, with delivery paid for at:

   _____
   *Name (for example, FedEx or UPS) and office address*

   ☐ The court's electronic filing manager (EFM) or an approved electronic filing service provider (EFSP)

   ☒ Email *(not through an EFM or EFSP)*

☐ Mail from a prison or jail at:

_____
*Name of prison or jail*

c. On: 1/14/2022
_____
*Date*

At: 3:00 ☐ a.m. ☑ p.m.
_____
*Time*

In **3**, if you sent the document to more than 2 parties or lawyers, fill in **a**, **b**, and **c**. Otherwise leave **3** blank.

3. I sent this document:

a. To:

Name: The Honorable Judge Matthew Link
_____
*First*　　　　*Middle*　　　　*Last*

Address: Domestic Relations Division, Daley Center, 50 W. Washington St. Rm. 2002 Chicago, IL 60602
_____
*Street, Apt #*　*City*　*State*　*ZIP*

Email address: _____

b. By: ☐ Personal hand delivery

☑ Regular, First-Class Mail, put into the U.S. Mail with postage paid at:

Linden ave and 4th Street In Wilmette
_____
*Address of Post Office or Mailbox*

☐ Third-party commercial carrier, with delivery paid for at:

_____
*Name (for example, FedEx or UPS) and office address*

☐ The court's electronic filing manager (EFM) or an approved electronic filing service provider (EFSP)

☑ Email *(not through an EFM or EFSP)*

☐ Mail from a prison or jail at:

_____
*Name of prison or jail*

If you are serving more than 3 parties or lawyers, fill out and insert 1 or more *Additional Proof of Service* forms after this page.

c. On: 1/14/2022
_____
*Date*

At: 3:00 ☐ a.m. ☑ p.m.
_____
*Time*

Under the Code of Civil Procedure, 735 ILCS 5/1-109, making a statement on this form that you know to be false is perjury, a Class 3 Felony.

**I certify that everything in the Proof of Service is true and correct. I understand that making a false statement on this form is perjury and has penalties provided by law under 735 ILCS 5/1-109.**

If you are completing this form on a computer, sign your name by typing it. If you are completing it by hand, sign by hand and print your name.

/s/ *Megan Mason*
_____
*Your Signature*

Megan Mason
_____
*Print Your Name*

4. I sent this document to: The Honorable Judge Grace Dickers, Presiding Judge
Domestic Relations Division, Daley Center, 50 W. Washington St. Rm. 2002 Chicago, IL 60602
via First class mail at the post office box at Linden Av. and 4th Street in Wilmette, IL at 3:00pm on January 14, 2022
and via email at ccc.
domrelcr2002@cookcountyil.gov

FILED DATE: 1/14/2022 2:24 PM 2016D009534

Print Form　　　Save Form　　　Reset Form

Exhibit V

 Gmail

**Megan M <megan42@gmail.com>**

---

## Filing Accepted for Case: 2016D009534; MATT PETER Vs. MATT MEGAN; Envelope Number: 11799099

---

**Megan Mason** <megan42@gmail.com>                                          Wed, Jan 13, 2021 at 3:14 PM
To: "Kaye Mason (Chief Judge's Office)" <kaye.mason@cookcountyil.gov>
Cc: domesticreldivservices@cookcountycourt.com, "Gerese Z. Collins (Circuit Court)" <gzcollins@cookcountycourt.com>

Dear Ms. Mason,

I'm a pro se Respondent with a case in front of Judge Johnson. I would like to schedule an appearance to present a motion. I have tried every possible method to schedule an appearance but I can't. Can you please tell me who to contact? I know Ms. Collins was emailed in the past so I'm including her here as well. Sorry for any inconvenience. I think I tried everything.

I am unable to get through to a clerk when I call 312. 603.6300. I have tried four times in the last two days and every time my call is dropped.

I texted and called the court assistance line and they could not help me schedule an appearance.

The option to schedule an appearance doesn't work in Odyssey when motions are uploaded.

I need to provide proof of service and an appearance time/date to Mr. Wehrman. My motion and exhibits were accepted yesterday. May I schedule Thursday, January 21 at 9:30 am?

Kindly,
Megan Matt nka Mason, Plaintiff
Case: 16 D 9534, Peter Matt vs. Megan Matt

[Quoted text hidden]



Exhibit W

**Megan M <megan42@gmail.com>**

---

# Subpoena's To Certify
5 messages

---

**Megan Mason** <megan42@gmail.com>                              Thu, Feb 17, 2022 at 10:23 AM
To: "DomesticRelDiv Services (Circuit Court)" <DomesticRelDivServices@cookcountycourt.com>

Dear Domestic Relation Division Clerk,

Please stamp the attached document subpoenas, urgently required in support of my Motion to Transfer Venue. As a pro se litigant I am unable to self certify and therefore rely upon your timely support in this matter.

Kind Regards,
Megan Mason
2016 D 9534

---

**3 attachments**

 **Martinez Subpoena.pdf**
389K

 **Steger Subpoena .pdf**
398K

 **Mason Subpoena .pdf**
411K

---

**DomesticRelDiv Services (Circuit Court)** <DomesticRelDivservices@cookcountycourt.com>   Thu, Feb 17, 2022 at 5:41 PM
To: Megan Mason <megan42@gmail.com>

Ms. Mason,


Thanks for your email request.  Your request has been forwarded to the Customer Care.  Once completed you will be notified regarding further instructions.  Please allow two to three weeks to process.


Sincerely,


---

**From:** Megan Mason [mailto:megan42@gmail.com]
**Sent:** Thursday, February 17, 2022 10:23 AM
**To:** DomesticRelDiv Services (Circuit Court) <DomesticRelDivservices@cookcountycourt.com>
**Subject:** Subpoena's To Certify

---

**External Message Disclaimer**

This message originated from an external source. Please use proper judgment and caution when opening attachments, clicking links, or responding to this email.

[Quoted text hidden]

---

**Megan Mason** <megan42@gmail.com>                     Fri, Feb 18, 2022 at 8:33 AM
To: "DomesticRelDiv Services (Circuit Court)" <DomesticRelDivservices@cookcountycourt.com>
Cc: civilrights@ilag.gov, CivilRightsDivision@usdoj.gov, aemmanuel@injusticewatch.org

Dear Anonymous Sir or Madam,

I apologize but as a pro se litigant I am not familiar with "the Customer Care". I have already attempted to submit the
pleadings to Odyssey File. There is not a file type "Subponea". I submitted the subpoenas under a related category and
asked in my notes to be advised of the correct file type. No advice was given. I then emailed the documents to you and
was advised that they have been passed along to "the Customer Care".

1. Who are you?
2. Who is "the Customer Care"?
3. Why have my subpoenas not been stamped?
4. Is there an error in the way my subpoenas were written? If so, please advise how I may correct this.
5. Is there a legal reason my subpoenas have not been stamped?

Kind Regards,
Megan Mason

[Quoted text hidden]

---

**Megan Mason** <megan42@gmail.com>                    Mon, Mar 28, 2022 at 12:20 PM
To: "DomesticRelDiv Services (Circuit Court)" <DomesticRelDivservices@cookcountycourt.com>
Cc: CivilRights <civilrights@ilag.gov>, CivilRightsDivision@usdoj.gov, "Pond, Laura J." <Laura.Pond@ilag.gov>, "Brianna
Steger (Chief Judge's Office)" <brianna.steger@cookcountyil.gov>, "courtclerk (Circuit Court)"
<courtclerk@cookcountycourt.com>

Dear Anonymous Sir or Madam,

I am writing as a pro se litigant who wishes to have multiple document subpoenas certified. On a prior occasion you wrote
to me that you had forwarded my request to "The Customer Care". Would you be so kind as to provide me with the
"Customer care" contact? I still have not received those stamps as shocking as that may sound. Please advise
their status.

I have more subpoenas I require to be stamped. Please let me know how I may please have the attached subpoenas
certified? I have the right to access justice. It is your obligation as an employee of the people of Cook County to support
the people of Cook County in equal access to justice. Help me get these certified, please.

Thanks,
Megan Mason, Respondent, Pro Se, 2016 D 9534
[Quoted text hidden]

**5 attachments**

📄 **Doc Subpoena Martinez.pdf**
363K

📄 **Doc Subpoena Mr. Bradley Trowbridge.pdf**
344K

📄 **Doc Subpoena Wehrman.pdf**
307K

📄 **Document Subpoena Bender.pdf**
370K

📄 **Doc Subpoena Blechman.pdf**
699K

 Gmail

**Megan M <megan42@gmail.com>**

---

## Re: MATT 16 D 9534 Request for Hearing Date

8 messages

---

**Kaye Mason (Chief Judge's Office)** <kaye.mason@cookcountyil.gov>          Thu, May 27, 2021 at 12:56 PM
To: Megan Mason <megan42@gmail.com>
Cc: Christopher Wehrman <cwehrman@smbtrials.com>

Hi again

Please remember to include your case name and number on all submissions to the court.

The first available hearing date is July 27 at 11 am.  Kindly advise of your availability


Kaye Mason, Coordinator
Calendar 23 - Judge Robert W. Johnson
Domestic Relations Division

**EMAIL COMMUNICATION** to court personnel and judges shall be limited to scheduling and administrative purposes and shall not include information relating to the substantive matters or the issues on the merits. If email communication includes any language that could be construed as impermissible ex parte communication, neither court personnel nor judges will respond to the email.

---

**From:** Megan Mason <megan42@gmail.com>
**Sent:** Thursday, May 27, 2021 12:41 PM
**To:** Kaye Mason (Chief Judge's Office) <kaye.mason@cookcountyil.gov>
**Cc:** Christopher Wehrman <cwehrman@smbtrials.com>; DomesticRelDiv Services (Circuit Court) <DomesticRelDivservices@cookcountycourt.com>
**Subject:** Re: Hearing Date

---

> ### External Message Disclaimer
>
> This message originated from an external source. Please use proper judgment and caution when opening attachments, clicking links, or responding to this email.

---

Hi Ms. Mason,

Thanks for your response. I have served OC, OC has responded, I have responded to the affirmative defense. I am copying Mr. Wehrman here as I believe we are at this step:

"After the time to reply expires, the movant shall submit the non-emergency motion and any responses

and replies to the Circuit Court (along with all necessary and referenced exhibits) via e-mail
transmission with all counsel of record or self-represented parties included as recipients of the e-mail
to the following individuals at the date that time to reply expires:
the Court Coordinator for any judge who maintains an individual calendar, or
i. the Division Administrator for any judge who does not have a Court Coordinator, or;
ii. any other method directed by the judge assigned to the matter."

May I please have a date to present the pleadings?

Thanks,
Megan Mason


On Thu, May 27, 2021 at 12:25 PM Kaye Mason (Chief Judge's Office) <kaye.mason@cookcountyil.gov> wrote:

Good afternoon Ms Mason

Please be guided by the attached Administrative Order for guidelines on requesting
dates for newly filed Motions

Best,




Kaye Mason, Coordinator
Calendar 23 - Judge Robert W. Johnson
Domestic Relations Division

**EMAIL COMMUNICATION** to court personnel and judges shall be limited to scheduling and administrative purposes
and shall not include information relating to the substantive matters or the issues on the merits. If email
communication includes any language that could be construed as impermissible ex parte communication, neither
court personnel nor judges will respond to the email.

---

**From:** Megan Mason <megan42@gmail.com>
**Sent:** Thursday, May 27, 2021 12:16 PM
**To:** Kaye Mason (Chief Judge's Office) <kaye.mason@cookcountyil.gov>
**Cc:** DomesticRelDiv Services (Circuit Court) <DomesticRelDivservices@cookcountycourt.com>
**Subject:** Hearing Date

> **External Message Disclaimer**
>
> This message originated from an external source. Please use proper judgment and caution when
> opening attachments, clicking links, or responding to this email.

Hi Ms. Mason,

I would like a date to present three petitions and one motion to Judge Johnson and to schedule a hearing date.
Attached are the petitions and motion, responses from OC and my responses to OC. These matters are separate from
other issues being brought for status in the near future and related to ongoing, clear violation of the parenting plan, so I
would greatly appreciate the opportunity to present them and set a trial in the near future.

| Does Judge Johnson have any availability the week of June 7?

Kindly,
Megan Mason
2016 D

---

**Megan Mason** <megan42@gmail.com>                                    Thu, May 27, 2021 at 1:06 PM
To: "Kaye Mason (Chief Judge's Office)" <kaye.mason@cookcountyil.gov>
Cc: Christopher Wehrman <cwehrman@smbtrials.com>

Hi Ms. Mason,

Yes, July 27 at 11am is great for me. I will provide notice to Mr. Wehrman and Mr. Bender.

Kindly,
Megan Mason
[Quoted text hidden]

---

**Christopher Wehrman** <cwehrman@smbtrials.com>                        Thu, May 27, 2021 at 1:08 PM
To: Megan Mason <megan42@gmail.com>, "Kaye Mason (Chief Judge's Office)" <kaye.mason@cookcountyil.gov>
Cc: Michael I Bender <mbender@caesarbenderlaw.com>

Kaye:


When we were before the Judge on Monday, he appointed at 604 evaluator and set everything for status on July 13, 2021. I do not believe Judge Johnson is having any hearings on this case at this time.


Chris


Christopher D. Wehrman | Partner

Swanson, Martin & Bell, LLP

330 N. Wabash #3300

Chicago, IL 60611

Office: 312/321-9100

Direct: 312/222-8534

Fax: 312/321-0990

[Quoted text hidden]


## Disclaimer

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by Mimecast, a leader in email security and cyber resilience. Mimecast integrates email defenses with brand protection, security awareness training, web security, compliance and other essential capabilities. Mimecast helps protect large and small organizations from malicious activity, human error and technology failure; and to lead the movement toward building a more resilient world. To find out more, visit our website.

**Kaye Mason (Chief Judge's Office)** <kaye.mason@cookcountyil.gov>          Thu, May 27, 2021 at 1:15 PM
To: Christopher Wehrman <cwehrman@smbtrials.com>, Megan Mason <megan42@gmail.com>
Cc: Michael I Bender <mbender@caesarbenderlaw.com>

The judge is in a hearing but I will verify before the end of the day

Kaye Mason, Coordinator
Calendar 23 - Judge Robert W. Johnson
Domestic Relations Division

**EMAIL COMMUNICATION** to court personnel and judges shall be limited to scheduling and administrative purposes and shall not include information relating to the substantive matters or the issues on the merits. If email communication includes any language that could be construed as impermissible ex parte communication, neither court personnel nor judges will respond to the email.

**From:** Christopher Wehrman <cwehrman@smbtrials.com>
**Sent:** Thursday, May 27, 2021 1:08 PM
**To:** Megan Mason <megan42@gmail.com>; Kaye Mason (Chief Judge's Office) <kaye.mason@cookcountyil.gov>
**Cc:** Michael I Bender <mbender@caesarbenderlaw.com>
**Subject:** RE: MATT 16 D 9534 Request for Hearing Date

[Quoted text hidden]

**Megan Mason** <megan42@gmail.com>          Thu, May 27, 2021 at 1:53 PM
To: Christopher Wehrman <cwehrman@smbtrials.com>
Cc: Michael I Bender <mbender@caesarbenderlaw.com>
Bcc: "Kaye Mason (Chief Judge's Office)" <kaye.mason@cookcountyil.gov>

Confirming the July 27 hearing and notice was just filed.

I believe it's unfair to Ms. Mason to include her in arguments between parties, which she has explicitly asked us not to do. So dropping Ms. Mason to bcc. But I do wish to confirm that I have filed notice before receiving this communication and plan to have my pleadings heard at that date and time.

Mr. Wehrman, I think you are able to move to dismiss, counter the motions, or use any variety of methods to oppose my pleadings. I believe you and Mr. Bender must be aware that these are prima facie matters. Put simply: He did it. Over and over again. It's not ok to try to intimidate me into not accessing due process.

1. I do not recall my pleadings being dismissed or ruled upon at the least court status. They are legitimate and I am entitled to due process.

2. The custody evaluation process would not change the fact that one party or another violated the parenting plan prior to the custody evaluation process so this is a separate issue. If a party violated the parenting plan at the time, that's a violation. Future modifications do not change past violations.

3. It would be extremely prejudicial to the custody evaluation process to impede one party from filing a pleading so as to hide the other parties extensive misconduct. Given that I am pro se and openly opposed to Mr. Bender's outsized influence on this case, it's in everyone's best interest that a semblance of fairness and objectivity is maintained. If I'm not allowed to tell the truth, how can I possibly believe in the legitimacy of these proceedings?

Megan

[Quoted text hidden]

---

**Kaye Mason (Chief Judge's Office)** <kaye.mason@cookcountyil.gov>                Thu, May 27, 2021 at 2:10 PM
To: Megan Mason <megan42@gmail.com>, Christopher Wehrman <cwehrman@smbtrials.com>
Cc: Michael I Bender <mbender@caesarbenderlaw.com>

## Ms Matt

I just spoke with Judge Johnson and he has indicated that he will not be hearing any other issues on this case until he has heard from the evaluator.

Please be guided accordingly.

[Quoted text hidden]

---

 Gmail

**Megan M <megan42@gmail.com>**

---

## Blechman

**Megan Mason** <megan42@gmail.com>                                            Tue, Jul 27, 2021 at 7:07 AM
To: Alexandra Brinkmeier <ABrinkmeier@merelfamilylaw.com>

Hi Alex,

I wanted to update you on Blechman to make sure I'm not doing something that could damage my custody situation. I feel more comfortable with Blechman but I know this process can be dangerous for me so I want to be clear eyed.

So basically when I saw Blechman and the boys a couple weeks ago, Teddy kind of got worked up. Saying things like "I can't do anything". As Blechman said, he appears really disregulated. Blechman said he's worried about Teddy's state of mind and asked me to bring him back two more times.

I think, but don't know, that he wants me as opposed to Peter at the sessions to build rapport and help Teddy open up. Yesterday we went and he had me stay in the room the whole time. Teddy said a bit more, got quite emotional and even said he wants to kill himself. His main expressed issue to me is this Northwestern grammar class Peter is forcing on him, but he didn't bring it up to Blechman.

In the session Teddy kept saying he couldn't do anything, he thought that everyone was lying when we say he's doing well at school. Blechman specifically said, "I know for 100% fact that your mom is not saying that. Is someone else saying something that makes you think you're not good at anything?".

I was obviously a bit emotional hearing Teddy say that he wants to harm himself (I've never heard him say this) and asked Blechman if I should take Teddy to someone. He said for now just keep doing this, as in talking to Teddy about his feelings, sharing my experience getting him to express himself. I think this is another good sign. We talked about getting some books about feelings for kids. And I did order a deck of feelings conversation cards for us.

I had told Blechman in my last one on one meeting that the boys have been not wanting to go to Peter's. I admitted this was new and, in the past, when asked, both boys would say they like to the current schedule.

Now Teddy says he hates going to his dad's. Teddy said to me "my dad doesn't understand the word no", forces him to do these classes (by the way the PC told Peter NOT to put Teddy in summer school). I said to Blechman I would be happy to have them more or even full time.

Please let me know if I should or can be doing anything to protect myself. I don't want to have this blow back on me. I've disclosed more than I would like to Blechman about my own history of trauma (which would be used against me as the crazy/damaged parent) but it's very hard to participate in these sessions with Teddy without opening up (which could also be used against me as the cold mother!).

Thanks,
Megan

Name: Teddy Matt | DOB: 2/12/2012 | MRN: 2305322 | PCP: Patricia Brunner, MD

Exhibit Z

# Progress Notes

## Patricia Brunner, MD at 07/28/21 1700

Here with Mom and Dad for evaluation of potential self harm.

Teddy was in the car with his Mom two days ago and said "I want to kill myself" and then proceeded to hold his breath for a very short time.

He is here to evaluate that statement and action

Teddy has never seen how long he can hold his breath and has never tried to hold his breath for long.

When I asked him how he would hurt himself he said "I would get shot, or drowned". I asked how he would do that - he said " a bad guy would do it to me".

Teddy has no access to guns and no unmonitored access to water.

On further questioning I asked Teddy if he meant something else when he said he wanted to kill himself. He said he does not want to go to the Northwestern class ( "it's too hard". ) And he does not want to go to his Dad's house.

I asked Teddy if he was going to hurt himself in any way and he said no

I then spoke with Teddy's parents alone. My assessment is that Teddy does not want to hurt himself, is not even really aware what that would mean. He is clearly voicing frustration at 2 situations in his life. He does not want to do the Northwestern class and does not want to go to his Dad's house. I do think he is safe.

**Allergies**

| Allergen | Reactions |
|---|---|
| • Amoxicillin | Hives |

No current outpatient medications on file prior to visit.

No current facility-administered medications on file prior to visit.

PE: .NAD, no resp distress
Wt 66 lb (29.9 kg)

PE deferred d

A/P: assessment for safety - Teddy is safe. He does not want to go the the Northwestern class or his Dad's house.
Follow up if needed

**Medical Decision Making**

**Problems Addressed:**  1 undiagnosed new problem with uncertain prognosis (Moderate LOS 4)

**Amount and/or Complexity of Data Reviewed and Analyzed:** Assessment requiring an independent historian


**Risk of Complications and/or Morbidity or Mortality of Patient Management:**
Plan for scheduled follow-up


**Total Time Spent with Patient:**
Established Patient: 20-29 minutes

Due to the declared public health emergency during the COVID-19 pandemic, additional supplies, materials, and preparation time have been required and provided by the physician or APN and/or clinical staff over and above those usually included in an office visit.


# Patient Instructions

Patricia Brunner, MD at 07/29/21 1226
assessment for safety - Teddy is safe. He does not want to go the the Northwestern class or his Dad's house.
Follow up if needed


MyChart® licensed from Epic Systems Corporation © 1999 - 2022

All Domestic Relations cases will be heard by phone or video.
Go to http://www.cookcountycourt.org/LinkClick.aspx?fileticket=G7A8KAcSi8E%3d&portalid=0
    to get more information and Zoom Meeting IDs.
Remote Court Date: No hearing scheduled

Exhibit AA

FILED
11/15/2021 6:36 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2016D009534
Calendar, 23
15592432

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

| | | |
|---|---|---|
| IN RE THE MARRIAGE OF: | ) | |
| | ) | |
| PETER MATT, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| and | ) | No. 16 D 9534 |
| | ) | |
| MEGAN MATT n/k/a MASON, | ) | |
| | ) | |
| Respondent. | ) | |

**AFFIDAVIT OF MEGAN MATT N/K/A MASON IN OPPOSITION TO ALEXANDRA BRINKMEIER'S MOTION TO WITHDRAW AS COUNSEL**

I, MEGAN MATT n/k/a MASON, hereby submit this affidavit under penalties provided by law pursuant to section 1-109 of the Illinois Code of Civil Procedure and certify that the statement set forth in this affidavit are true and correct.

I am submitting this affidavit to express my opposition to the withdrawal of Alexandra Brinkmeier as my attorney. I ask this Court to please deny Ms. Brinkmeier's removal at this late juncture as such an abrupt change would cause material harm to me as her client. We are nearing the end of a custody evaluation and it would be unconscionable to deny me as a mother access to legal representation through a process that is so impactful to me and my children. I have no way of knowing that I will be able to obtain counsel in a timely manner who is able to familiarize him or herself with the matters of this case and give me the representation that I am entitled to.

Furthermore, as Ms. Brinkmeier is well aware, there are extremely sensitive and unusual factors in this case that I have reason to believe put me and my children in peril. Ms. Brinkmeier must not be allowed to put her convenience above her client's well being. This is antithetical to the lawyer-client relationship.

Ms. Brinkmeier stated the reason for her wish to withdraw is a difference of principle. At no point has Ms. Brinkmeier ever stated to me that she had concerns about differences of principle. In fact, the first I heard about her wish to withdraw was on Friday, November 12th at 3pm in the

FILED DATE: 11/15/2021 6:36 AM   2016D009534

afternoon. At that time Ms. Brinkmeier explained she has a very heavy caseload and that two attorneys have left her firm. I told her I objected to her leaving and had concerns about my well being and that of my children if we are not provided competent legal counsel.

Having never discussed any concerns about principle, I can only attempt to guess what Ms. Brinkmeier might mean by such a claim. I can only think of one instance of dispute between Ms. Brinkmeier and myself. As it happens I politely followed Ms. Brinkmeier's advice in this matter, so it would appear that the difference of principle was easily resolved through normal client-attorney proceedings.

However, given the abrupt attempt to remove herself from my case I feel compelled to point out that I believe she is doing so in order to extricate herself from a complicated situation. In other words, I desperately need help and so she is trying to get out o f helping me.

When it comes to the one difference of opinion I can recall, shortly before retaining Ms. Brinkmeier as my attorney I came to have strong reason to believe that an individual formerly involved in my case had sabotaged my case resulting in an unfounded contempt finding. I had asked Ms. Brinkmeier to file for a motion to reconsider because of the misconduct of this individual.

I provided Ms. Brinkmeier with extensive evidence supporting my suspicion and invited her to provide me with an alternative explanation. I specifically presented evidence of attorney malfeasance, deceit, fraud upon the court, sabotage, identity theft and internet fraud. Ms. Brinkmeier was unable to provide me with an alternative explanation to the events I documented and described.

I fully appreciate how serious such allegations are and therefore I have also brought my concerns to other attorneys in an informal advisory capacity hoping that I, as a lay person, might learn of an explanation other than fraud for the events that I detailed. Specifically I have consulted with and disclosed to Michael Sharp, the General Counsel of Jefferies Financial LLC; The Honorable Judge Judy Harris Kluger, founder of Sanctuary for Families; and Dorchen Leidholdt, lead attorney for Sanctuary for Families. In addition to the several attorneys I've disclosed to I have consulted with a mental health therapist on a regular basis. I know of no claims that my allegations ar deceitful or misguided, even by Ms. Brinkmeier herself.

FILED DATE: 11/15/2021 6:36 AM   2016D009534

Exhibit AA Continued

Because I believe I was found in contempt in August of 2020 as a direct result of the misconduct just mentioned I asked Ms. Brinkmeier to file a motion to reconsider in this Court. I thought that fraud could be the basis. She said the time that had lapsed was too long and that the suspected crimes were not a basis. I accepted her decision.

However, I reported my suspicions to The Department of Justice's Task Force on Internet Crime and other Federal authorities. On November 8th, four days before her abrupt decision to withdraw, I wrote to tell Ms. Brinkmeier that I had submitted complaints to the Department of Justice alleging internet fraud, fraud upon the court and identity theft by this individual. I also disclosed other reports to federal law enforcement that I fear put me at peril of retaliation or attempts to evade prosecution by others who may be involved in these matters.

I beg this Court to deny Ms. Brinkmeier's motion to withdraw. If the court does grant this motion against my strong objection, I ask that Ms. Brinkmeier only do so after she has presented me with three attorneys who are willing and able to accept my case.

MEGAN MATT n/k/a MASON

 Gmail

**Megan M <megan42@gmail.com>**

---

## Filing Returned for Envelope Number: 17138374 in Case: 2016D009534, PETER MATT-vs-MEGAN MATT for filing Exhibits Filed

**Megan Mason** <megan42@gmail.com>                                      Mon, Mar 21, 2022 at 2:17 PM
To: "DomesticRelDiv Services (Circuit Court)" <domesticreldivservices@cookcountycourt.com>
Cc: "Brianna Steger (Chief Judge's Office)" <brianna.steger@cookcountyil.gov>, civilrights@ilag.gov,
CivilRightsDivision@usdoj.gov

This is not a proof of service. It is an exhibit you received March 18, 2022. Kindly enter it according to law and your duty as a civil servant.

Kind Regards,
Megan Mason

---------- Forwarded message ---------
From: <no-reply@efilingmail.tylertech.cloud>
Date: Fri, Mar 18, 2022 at 2:09 PM
Subject: Filing Returned for Envelope Number: 17138374 in Case: 2016D009534, PETER MATT-vs-MEGAN MATT for filing Exhibits Filed
To: <megan42@gmail.com>



# Filing Returned

Envelope Number: 17138374
Case Number: 2016D009534
Case Style: PETER MATT-vs-MEGAN MATT

The filing below has been reviewed and has been returned for further action. **Please refile with the corrections outlined below.** Please, contact the appropriate court help center for further information.

| Return Reason(s) from Clerk's Office | |
|---|---|
| **Court** | Cook County - Domestic Relations |
| **Returned Reason** | Rejected |
| **Returned Comments** | The correct code is proof of service |

To learn how to copy the rejected filing so that you can make changes to refile, click here

| Document Details | |
|---|---|
| **Case Number** | 2016D009534 |
| **Case Style** | PETER MATT-vs-MEGAN MATT |
| **Date/Time Submitted** | 3/18/2022 8:23 AM CST |
| **Filing Type** | EFileAndServe |
| **Filing Description** | Exhibit D |
| **Activity Requested** | Exhibits Filed |
| **Filed By** | Megan Mason |
| **Filing Attorney** | |

If you are not represented by a lawyer, we want to improve your e-filing experience. Please click here to fill out a short survey.

**Exhibit D Petition to Transfer Venue  .pdf**
358K

Exhibit CC

**GERALD A. BLECHMAN, Ph.D.**
**CLINICAL PSYCHOLOGIST**
**1751 SOUTH NAPERVILLE ROAD, SUITE 206**
**WHEATON, ILLINOIS 60189**
**(630) 664-0525**

February 7, 2022

Michael Ian Bender, Esq.
150 North Michigan Avenue, Suite 2130
Chicago, Illinois 60601

Re: Former Marriage of Matt and Mason

Dear Mr. Bender:

I am the 604.10 (c) Evaluator in the above named case. On January 11, 2022. I received an emailed letter from Megan Mason which I believe also copied you. That email made it clear that Ms. Mason was refusing to cooperate further with the evaluation until "the Appeal on the substitution of judge for cause is ruled upon…" She made clear her notion that there were no parentage issues to deal with. She noted various resources we could utilize if we had concerns about parenting of either Angus or Teddy Matt. I do have concerns about parenting issues with both children which I express here in letter form rather than a 604.10(c) Report.

I had occasion to observe Angus and Teddy on Saturday, February 5, 2022. Before that observation, Mr. Matt emailed the following:

"Megan's motion to substitute the judge was denied and she is now appealing that. To do this she needs to file a bystander report. She wants to do this with the help of a recording she did or one of her fellow church members, who observed the hearing, did. I feel this can backfire on her, since it is illegal to record a court hearing. During the hearing I was a little frightened to hear how her mind works these days. She was saying things like: "…you know, first of all, I love democracy. And January 6, 2020 (sic), I saw people storming the Capital (sic). So, I feel spiritually and emotionally called to protect democracy, And my understanding of a judge's role in an American courtroom is that it is a sacred duty to uphold the judicial process in that court And so, Mr. Trowbridge's (her former lawyer) malfeasance only matters here because Judge Johnson, Mr. Wehrman, and Mr. Bender observed it over the course of four months, and did nothing to intervene. "[…]"I think the appointment of Michael Bender without any legal proceeding (sic) was an illegal appointment. And I believe it was related to Judge Johnson's bias against women, perhaps, against divorced women? I don't know. I don't really have to prove

that. I just know, I am an American citizen, and a mother with a divorce agreement and guardian ad litem was appointed. And I see it as bias."

Due to the completion of her motion we now have a judge (the former one) again for our case. Now my lawyer can file something because Angus still doesn't have ABA. Megan doesn't allow ABA because she doesn't like that the therapist is unvaccinated and she doesn't like the therapist's work in general. Megan is held in contempt for not allowing ABA so I am wondering what happens next. Fact is finding a new ABA will take time. Onboarding in regular circumstances can already take 3 months. I know this because we have been bouncing around between therapists many years now. By now we have gone through around a dozen evaluation and onboarding processes.

Teddy is not allowed to go to soccer practice during her time, because Megan thinks he does enough soccer with me. The back and forth between Megan's opinion about soccer is frustrating to Teddy I can imagine. He is a great player and he has the dream to become pro and certainly has the opportunity. He is willing to put in the work, but he needs to be allowed to do so. Last week Teddy scored a 91% in the national MAP test for reading and 77% for math. i.e. is doing great academically. He is very proud of this but doesn't agree with me that it might be due to his work with the Northwestern Gifted Program. He likes to work hard, but sometimes his initial reaction is "I rather watch TV"

Agnus has no ABA and I believe he is a bit regressing due to that. He moved from regular PE to adaptive PE, and he regularly spitting, hitting, kicking smashing windows, disrobing and toileting issues i.e. stool on clothes. I think this is worse than last year. The school says he needs to sleep more, but the medicine (Strattera) makes him anxious, etc., which also impacts his sleep. I will request a meeting with the school and with the psychiatrist to discuss. When only Megan and me are discussing with the psychiatrist she will get opposing views (maybe out of principle). The meds also have some impact on his overall participation in Special Olympics, which he is doing with me. He has been swimming 3 times per week, but one team doesn't allow his participation anymore, because he has gotten too weak and doesn't swim the whole pool length consistently. I guess this is mainly due to the increased anxiety and drowsiness, which probably is the medicine side effect.

Regards,
Peter

When I saw Teddy on February 5th, he was under good control as opposed to the time I saw him with his mother. He was not anxious and not running around the room saying bizarre things about how unable he thought himself to be. He was proud of doing well in school, but, as many children, resented that he had to spend extra time going to school. In general, I saw a very bright boy who appeared perfectly normal.

Angus was obviously anxious, intolerant of being in my office and had a number of tics and peculiar behaviors. He only related to his father and not to me.

This is an interim report with interim recommendations.

Exhibit CC Continued

Megan apparently sees no problem with her parenting but I think keeping her autistic child out of the appropriate therapy is a form of child abuse.  Therefore, I recommend that her decision making about Angus' treatment be modified so that Peter Matt is the sole decision-maker for the present and foreseeable future.

Similarly, Teddy is doing well and even though he dislikes the extra education at the Northwestern Program is thriving.  Importantly, I did not see the obviously disturbed kid I saw last summer with his mother.  Therefore, I think father should have sole decision making for Teddy as well.   If Megan attempts to interfere with either Angus or Teddy's treatment, her parenting time should be curtailed.

If you have further questions, don't hesitate to call.

Respectfully,


Gerald A. Blechman, Ph.D.
Licensed Clinical Psychologist
Nationally Certified Custody Evaluator

Exhibit
DD

M Gmail

**Megan M <megan42@gmail.com>**

---

# Blechman

**Megan Mason** <megan42@gmail.com>                                    Wed, Jul 28, 2021 at 3:33 PM
To: Alexandra Brinkmeier <ABrinkmeier@merelfamilylaw.com>

Hi Alex,

I really can't emphasize enough how implausible it is to me that Blechman forgot that Teddy said he wants to kill himself.

1. He said it multiple times, using the language, "I want to kill myself", "I want to be dead", "Nobody wants me", "Nobody would miss me".

2. I said to Teddy, "You can't kill yourself." and looked to him for help and Blechman said, "What your mom means is that she would be really sad if something happened to you".

3. At the end of the session, when Teddy had stepped out, I approached Blechman and said, "Do I need to do anything? Should I get him an appointment with his old therapist? I want to make sure I'm doing the right thing because he said he wants to hurt himself".

I don't think either of us thought this was a credible threat to Teddy's life, so the best scenario I can think of is that Blechman told Bender he didn't see an immediate risk to Teddy's safety or a serious threat of suicide and Bender paraphrased it as Teddy never said he wants to harm himself. But this is terrifying. Will let you know what happens with Brunner.

M

[Quoted text hidden]

 **Megan M <megan42@gmail.com>**

---

## Met with Michael Bender

**Megan Mason** <megan42@gmail.com>                                            Wed, Jun 26, 2019 at 6:39 AM
To: Brad Trowbridge <brad@bradtrowbridge.com>

Hi Brad,

I met with Michael Bender yesterday. I think it went well though we did not have time to cover everything. He also mentioned you two had spoken. A few key things stood out:

-I could tell he'd spoken to Peter, which he later mentioned, because of the questions he was asking me. And he later mentioned speaking to Peter. So I was a little disappointed that Peter had set the tone.

- He insists on meeting with Peter and me, though I told him about Peter's abusive tendencies. He seemed to take my concerns seriously though.

-I showed him the attached picture of Teddy after Peter shaved his head and he seemed very disturbed, asked to keep it. He also read the threatening email to the church.

-I told him that I was concerned about Peter not giving medication and that Angus has said he was not.

-I told him Peter wants to take the boys to Germany and I support his family time but am concerned about Angus not being cared for. He said he imagined the trip would be hard because of removing Angus from his routine.

-I told him Peter had said he might just take the boys, but I think he meant a vacation, not take them to Germany permanently. Bender said, "but you don't know that. He just said he might 'take them'. It could mean either. You don't know". This made me think he found a lot of what I said compelling.

I guess next step is a meeting with Peter and Bender and our financial affidavits. I'll get mine to you by the end of the weekend.

Megan

Exhibit EE



Exhibit FF

 Gmail

**Megan M <megan42@gmail.com>**

---

## IRMO Matt; 2016 D 9534; COURT ORDER

**Kaye Mason (Chief Judge's Office)** <kaye.mason@cookcountyil.gov>  Wed, Dec 15, 2021 at 2:58 PM
To: Megan Mason <megan42@gmail.com>
Cc: Christopher Wehrman <cwehrman@smbtrials.com>, John Palen <jpalen@johnpalenphd.com>, Laura Fried
<lfried@smbtrials.com>, Michael I Bender <mbender@caesarbenderlaw.com>

## Per the Presiding Judge, Domestic Relations Division:

## EMAIL COMMUNICATION to court personnel and judges shall be limited to scheduling and administrative purposes and shall not include information relating to the substantive matters or the issues on the merits. If email communication includes any language that could be construed as impermissible ex parte communication, neither court personnel nor judges will respond to the email.

**BEGINNING NOVEMBER 1, 2021, ALL DOCUMENTS, COURTESY COPIES AND ORDERS FOR CALENDAR 23 SHOULD BE SUBMITTED TO CCC.DomRelCR2108@cookcountyil.gov.**

**ATTORNEYS PLEASE NOTE:**
ALL Orders for cases heard on Calendar 23's Daily Morning Call shall be submitted to the court by 1:30 pm on the same day of hearing to:    **CCC.DomRelCR2108@cookcountyil.gov.**

COURTESY COPIES MAY BE DROPPED OFF IN THE DROPYBOX AT THE DALEY CENTER ROOM 2108

---

**From:** Megan Mason <megan42@gmail.com>
**Sent:** Wednesday, December 15, 2021 2:53 PM
**To:** Kaye Mason (Chief Judge's Office) <kaye.mason@cookcountyil.gov>
**Cc:** Christopher Wehrman <cwehrman@smbtrials.com>; John Palen <jpalen@johnpalenphd.com>; Laura
Fried <lfried@smbtrials.com>; Michael I Bender <mbender@caesarbenderlaw.com>
[Quoted text hidden]

[Quoted text hidden]

All Domestic Relations cases will be heard by phone or video.
Go to http://www.cookcountycourt.org/LinkClick.aspx?fileticket=G7A8KAcSi8E%3d&portalid=0
to get more information and Zoom Meeting IDs.
Remote Court Date: No hearing scheduled

*Exhibit GG*

FILED
12/6/2022 12:27 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2016D009534
Calendar, 03
15817245

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

| | | |
|---|---|---|
| IN RE THE FORMER MARRIAGE OF: | ) | |
| | ) | |
| PETER MATT, | ) | |
| | ) | |
| *Petitioner,* | ) | Case No. 2016 D 009534 |
| | ) | |
| and | ) | |
| | ) | |
| MEGAN MATT, | ) | |
| n/k/a MEGAN MASON, | ) | |
| | ) | |
| *Respondent.* | ) | |

**MOTION TO TERMINATE THE GUARDIAN AD LITEM APPOINTMENT**

**Summary**

I, Megan Matt (NKA Mason), Respondent, ask that Michael Bender's appointment as Guardian Ad Litem be immediately and fully terminated.

In support thereof, I state as follows:

1. On September 27, 2017, the parties were divorced and the Court entered an Allocation Judgment.

2. Two children were born of the marriage, namely Angus, born on 8/11/08 and currently age 13; and, Theodore, born on 2/12/12 and currently age 9.

3. On June 6th, 2019 this Court ordered that Michael Bender be appointed as Guardian Ad Litem to the minor children.

4. (750 ILCS 5/506) (from Ch. 40, par. 506)
Sec. 506. Representation of child. reads:

> a) Duties. **In any proceedings** involving the support, custody, visitation, allocation of parental responsibilities, education, parentage, property interest, or general welfare of a minor or dependent child, the court may, on its own motion or that of any party, appoint an attorney to serve in one of the following capacities to address the issues the court delineates:
> (2) Guardian ad litem. **The guardian ad litem shall testify or submit a written report to the court regarding his or her recommendations in accordance with the best interest of the child**. The report shall be made

available to all parties. The guardian ad litem may be called as a
witness for purposes of cross-examination regarding the guardian ad
litem's report or recommendations. **The guardian ad litem shall
investigate the facts of the case and interview the child and the
parties.**
a-5) Appointment considerations. In deciding whether to make an
appointment of an attorney for the minor child, a guardian ad litem, or
a child representative, **the court shall consider the nature and adequacy
of the evidence to be presented by the parties and the availability of
other methods of obtaining information, including social service
organizations and evaluations by mental health professions, as well as
resources for payment.**

**In no event is this Section intended to or designed to abrogate the
decision making power of the trier of fact. Any appointment made under
this Section is not intended to nor should it serve to place any
appointed individual in the role of a surrogate judge.**

5.  There was not a legal basis for this appointment because the parties had been divorced for two years and neither party had moved to modify the parenting plan or initiated any legal proceeding other than the appointment itself.

6.  Although Mr. Matt had indicated, without proof, that there were "issues" between parties, it is not enough for one party to be aggrieved to justify the diminishment of parental authority or increased state intervention.

7.  For example, one "issue" raised by Mr. Matt was my refusal to accompany him, a German citizen, to the German consulate and to obtain German passports for our children, who were born in the US and are American citizens.

8.  US Federal law does not recognize dual citizenship and it is my understanding that a lower court cannot order a citizen to violate federal law.

9.  The other "issues" raised by Mr. Matt could not be proven or did not rise to the level of seriousness to justify a motion for the modification of the parenting plan or other legal action (eg a proceeding).

10. It is impossible therefore that there could be a legal basis for the diminishment of parental rights by appointing a Guardian Ad Litem, which should be done only after the Court has an opportunity to *"consider the nature and adequacy of the evidence to be presented by the parties and the availability of other methods of obtaining information".*

11. It's utterly impossible that the Court considered the nature and adequacy of evidence to be presented by the parties before the appointment because there was no proceeding, no underlying question of fact, to which such an inquiry could be made. There was no

FILED DATE: 12/30/2021 2:23 PM    2016D009534

evidence or source of evidence to consider because there was no underlying proceeding.

12. I was a legally divorced woman and such action indicates that I, as a legally divorced woman, have less protection under the law than a married person as the only matter before this Court was my previously entered final divorce. This is to say there was no matter before the Court.

13. Mr. Bender was appointed against my strong objections.

14. Mr. Bender's appointment resulted in an unlawful diminishment of my parental rights and a financial burden for me and my children.

15. Since his appointment, Mr. Bender has wholly neglected to perform the most basic duties as a GAL.

16. First, (750 ILCS 5/506) requires that "The guardian ad litem shall investigate the facts of the case".

17. I previously filed a motion for Mr. Bender to be replaced January 12, 2021 after Mr. Bender had been appointed for two years as GAL and had not performed the most basic actions to investigate the children, including speaking to the children's teachers or any other school personnel, speaking to the children's doctors or speaking to our older son's long-term Applied Behavioral Anaylsis (ABA) Therapist. Prior to September, 2021, Mr. Bender had never spoken to any of the children's doctors.. (**Exhibit A** Motion to Dismiss Guardian Ad Litem; **Exhibit B** Jamine Text)

18. Mr. Bender has played no discernable role in the children's lives and Teddy stated to a custody evaluator, Dr. Gerald Blechman, on Monday, July 26th that he did not know who Mr. Bender is and had not met him. In an email to my attorney at the time, Alexandra Brinkmeier the next morning, I wrote about Teddy discussing with Dr. Blechman the ways his father exposes him to arguments and things that "are not for kids",
    "[Dr. Blechman] then asked if Teddy had told Mr.Bender, Teddy didn't know who that is. Dr. Blechman said he's a lawyer and asked if Teddy had ever talked to him. He said no." (**Exhbit C** Didn't know who that is email)

19. In fact, as I reminded Teddy, he did meet Mr. Bender one time in the summer of 2019 but he did not recall this encounter.

20. Mr. Bender's inaction may be due to neglect but I fear Mr. Bender's goal in avoiding contact with professionals in the children's lives is to hide Mr. Matt's misconduct and incompetence, which most professionals who have come to know Mr. Matt would attest to his overwhelming unfitness.

21. In fact Mr. Bender has sought to hide evidence of child abuse and endangerment in order to protect Mr. Matt's reputation before the Court.

22. On July 26, 2021I took our younger son, Theodore, then nine, to see the custody evaluator, Dr. Gerald Blechman at Dr. Blechman's request because Teddy had previously appeared dysregulated at a prior visit.

23. At this meeting Teddy repeatedly expressed an interest in harming himself. I reported this via email to my attorney at the time the next morning, writing:

    "*So basically when I saw Blechman and the boys a couple weeks ago, Teddy kind of got worked up. Saying things like "I can't do anything". As Blechman said, he appears really disregulated. Blechman said he's worried about Teddy's state of mind and asked me to bring him back two more times.*

    *I think, but don't know, that he wants me as opposed to Peter at the sessions to build rapport and help Teddy open up. Yesterday we went and he had me stay in the room the whole time. Teddy said a bit more, got quite emotional and even said he wants to kill himself. His main expressed issue to me is this Northwestern grammar class Peter is forcing on him, but he didn't bring it up to Blechman.*

    *In the session Teddy kept saying he couldn't do anything, he thought that everyone was lying when we say he's doing well at school. Blechman specifically said, "I know for 100% fact that your mom is not saying that. Is someone else saying something that makes you think you're not good at anything?".*

    *I was obviously a bit emotional hearing Teddy say that he wants to harm himself (I've never heard him say this) and asked Blechman if I should take Teddy to someone. He said for now just keep doing this, as in talking to Teddy about his feelings, sharing my experience getting him to express himself. I think this is another good sign. We talked about getting some books about feelings for kids. And I did order a deck of feelings conversation cards for us.*" (**Exhibit D** *Self Harm Email*)

24. Upon reading this email, my attorney  was concerned about Teddy thought Mr. Bender would care.

25. My attorney called Mr. Bender to report the incident.

26. The next day my attorney informed me that Mr. Bender had told her he'd spoken to Dr. Blechman and "it never happened", which is to say, Mr. Bender said that Teddy never raised the issue of self harm.

27. In response I wrote:

*"I really can't emphasize enough how implausible it is to me that Blechman forgot that Teddy said he wants to kill himself.*

*1. He said it multiple times, using the language, 'I want to kill myself', 'I want to be dead', 'Nobody wants me', 'Nobody would miss me'.*

*2. I said to Teddy, "You can't kill yourself." and looked to [Blechman] for help and Blechman said, 'What your mom means is that she would be really sad if something happened to you'.*

*3. At the end of the session, when Teddy had stepped out, I approached Blechman and said, 'Do I need to do anything? Should I get him an appointment with his old therapist? I want to make sure I'm doing the right thing because he said he wants to hurt himself'.*

*I don't think either of us thought this was a credible threat to Teddy's life, so the best scenario I can think of is that Blechman told Bender he didn't see an immediate risk to Teddy's safety or a serious threat of suicide and Bender paraphrased it as Teddy never said he wants to harm himself."(**Exhibit** E He said it multiple times)*

28. On the afternoon of Tuesday, July 28th, I wrote to my attorney following an incident described below:

*"I just want to note for my memory the below:*

*I was in the car around 5 today, driving Teddy and Angus home from camp. Teddy picked up a plastic wrapper in the backseat and covered his mouth. He said he was going to kill himself. Angus and I both told him not to do it.*

*I asked why he wanted to kill himself. He said he wasn't good at anything. I said I thought he was good at a lot of things, why does he think that. He said I'm not good at anything.*

*Angus yelled, is it because of Dad's lies. Teddy didn't say anything. I said, what do you mean about Dad's lies. Angus said, dad's lies!*

*I asked Teddy if he still wanted to go to the pool, where we were headed, he said I'm going to drown myself. I said I would be really sad if that happened. Because he goes to his dad's tomorrow, I asked him if he was sad about going to his dad's. He said he was and started to cry,*

*I asked Teddy if he would like me to make it so he doesn't go back to his dad's. He said there's no way that would ever work. I told him that I actually could do*

FILED DATE: 2/23/2022 12:23 PM   2016D009534

> *that if that's what he needs. He said wouldn't he get really mean to you? I said it was ok if his dad's mad at me, we just need to keep him safe.*
>
> *He has been a bit emotional since returning home but is now ok." (Exhibit F Reports of Domestic Violence Email)*

29. Because I considered this an escalation from just talking about self harm to a child's version of an attempt, the next morning I called Teddy's pediatrician, Dr. Patricia Brunner, and asked what I should do.

30. Dr. Brunner advised me to keep Teddy home from camp until he could be seen by her.

31. I kept Teddy at home until 1pm when he was picked up by his Mr. Matt per parenting plan.

32. The afternoon of Wednesday, July 29th, Mr. Matt took Teddy to Dr. Brunner's office around 5pm. I met them there.

33. With his father and myself in attendance Dr. Brunner questioned Teddy. He stated that he was upset because he did not want to go to his father's house any more and he did not want to be forced to do an enrichment class at Northwestern. Following the visit she wrote:

> *"My assessment is that Teddy does not want to hurt himself, is not even really aware what that would mean. He is clearly voicing frustration at 2 situations in his life. He does not want to do the Northwestern class and does not want to go to his Dad's house. I do think he is safe." (Exhibit G My Chart Visit Summary)*

34. That day Dr. Brunner called Mr. Bender's office but did not reach him.

35. Mr. Bender did not return her call.

36. On Saturday, August 7th, Teddy reported that Mr. Matt had physically abused him and his brother, which I reported to my attorney, writing the next morning:

> *"As we were eating dinner I asked Teddy how things were going with him and his dad. He said that he was worried about his dad being mad. I asked what being mad means, he said his dad would lock him up. I said, like a time out? He said yes. I said, What for? He said for Northwestern. He said I would have to stay up all night and not sleep if I didn't do it.*
>
> *I asked how things were doing with his dad and Angus (who had gone to the living room). I said Angus had told me that his dad had kicked and hit him before, was that true. He said, yes. I asked when and he said ABA, back when it was zoom ABA. He*

FILED DATE: 12/30/2021 12:28 PM    2016D009534

*said, it was really bad back then. This was reported to me at the time by Angus and I reported this to Angus's teacher and in my response to the PRTSC re ABA.*

*I asked if his dad had hit him (Teddy). He said yes. I said why? He said Northwestern. I said where? Where did he hit you on your body. He touched his cheek. I said he hit your face? He said yes." (**Exhibit F** Reports of Domestic Violence Email)*

37. On August 11th, Theodore had a virtual appointment with another pediatrician Dr. Shoshana Waskow. Teddy reported to Dr. Woskow that his father had backhanded him and had locked him in his room to force him to do worksheets.

38. Dr. Woskow noted this disclosure in a sealed document on August 11th, 2021.

39. Between August 11 and August 25, 2021, Dr. Brunner again made attempts to reach Mr. Bender in order to report the allegations of physical abuse.

40. Mr. Bender ignored or avoided Dr. Brunner's calls.

41. On August 25, 2021 there was a status hearing in court.

42. At status Mr. Bender was "unaware" of any of the disclosures by Teddy to doctors and did not mention the topic of Teddy's well being except to say that he had talked to Dr. Blechman.

43. Mr. Bender repeated the claim that Teddy was a little upset but had never expressed an interest in self harm, implying that I lied.

44. Mr. Bender said to the Court he would interview Teddy.

45. In the five subsequent months he has not done so.

46. Dr. Blechman did not speak to Teddy again after reports of child abuse were made to Teddys' doctors who eventually reported these facts to Mr. Bender via telephone in September, 2021.

47. Mr. Bender cannot act in the interest of the children while hiding child abuse and intentionally avoiding investiations into facts related to the children's well being.

48. This was not the first time Mr. Bender had sought to hide domestic violence by Mr. Matt.

49. On April 9, 2021 filed in this Court a PRTSC in which I documented extensive harassment by Mr. Matt. ( **Exhibit H** PRTSC RE Harassment)

50. The Court ordered Mr. Bender to investigate the facts of the harassment.

Exhibit GG Continued

51. In May, 2021 I received a phone call from Dr. John Palen, a parenting coordinator selected by Mr. Bender.

52. During this call, Dr. Palen told me,
   "I just spoke to Mr. Bender, who obviously knows you a lot better than me. And he wanted me to tell you the harassment never happened".

53. Illinois (720 ILCS 5/Art. 26.5 heading) ARTICLE 26.5. HARASSING AND OBSCENE COMMUNICATIONS (Source: P.A. 97-1108, eff. 1-1-13.) defines harassment as:
   *"Harass" or "harassing" means knowing conduct which is not necessary to accomplish a purpose that is reasonable under the circumstances, that would cause a reasonable person emotional distress and does cause emotional distress to another."*

54. It would be impossible for an honest, ethical third party to make this claim based on the preponderance of documentary evidence that Mr. Matt contacted me unnecessarily and caused distress. Mr. Matt very frequently harasses me by text, email and messages in Talking Parents.

55. Mr. Matt's harassment of me has also been observed and experienced by others, some of whom are experts in domestic violence.

56. On one occasion, well documented in the PRTSC RE Harassment  Mr. Bender was ordered by Court to review ( **Exhibit H** PRTSC RE Harassment), Mr. Matt threatened me and members of my church, Lake Street Church in Evanston, in order to force me to take Teddy to soccer on Sunday morning during my Court ordered parenting time. Mr. Matt made threatened an administrator on the phone and then made threats by email to me and to the head of youth services at the church, as detailed in Exhibit H.

57. If Dr. Palen was telling the truth, Mr. Bender inappropriately attempted to intimidate me into not advocating for my rights as a parent and litigant to be protected from harassment.

58. In addition to neglecting to investigate the facts related to domestic violence claims or to act in the best interest of the children, Mr. Bender is ethically unfit to serve as a Guardian ad litem as evidenced by:
   a. Mr. Bender has made deceitful statements, specifically his statement to Dr. Palen that harassment did not happen when he knew it to be undeniably true as well as his statements to the Court that I had lied about Theodore's suicidal ideation.

   b. Mr. Bender has participated in ex parte communications he, as a former judge and licensed attorney in the state of Illinois, knows to be prohibited.
       i. Specifically, on December 3, 2020, he was copied in an email thread between Dr. John Palen, parenting coordinator; Mr. Christopher

Wehrman, Opposing Counsel; and Ms. Kaye Mason, Judge Robert Johnson's clerk (**Exhibit I** I want to be Paid Email).

    ii.    In this email Dr. Palen wrote, "I want to be paid. It is as simple as that". (**Exhibit I** I want to be Paid Email)

    iii.    According to (***725 ILCS 5/112A-17.5) Sec. 112A-17.5. Ex parte protective orders*** this conversation was prohibited as it discussed significant information not related to routine scheduling and opposing counsel was not copied on all messages in the thread.

    iv.    In fact I was copied on one email in the thread, but according to a written statement by the sender Dr. John Palen, this was in error.

    v.    I believe from the wording it is clear that there were more emails in the thread and they ought to have been promptly shared with me.

c.    Mr. Bender is strongly associated with two individuals who have lied during court related discussions.

    i.    Dr. John Palen is an associate of Mr. Bender and served at his recommendation. In the above mentioned email thread, Dr. Palen lied to me and said that the email conversation was about a case other than my own. Mr. Bender is therefore associated with a known liar as described in a previously filed **Petition for Substitution of Judge for Cause**.

    ii.    Mr. Bradley Trowbridge, formerly my attorney,  is an associate of Mr. Bender who has told me he has cause to work with Mr. Bender often. Mr. Trowbridge lied to me many times between March 10 and July 13th, 2020. Specifically he hid a contempt allegation and multiple court appearances as described in a previously filed **Petition for Substitution of Judge for Cause**  Mr. Bender's association with Mr. Trowbridge is further evidence of ethical unfitness.

d.    I believe Mr. Bender may also be motivated by vindictiveness and therefore unable to act objectively toward me, specifically because I filed an ethics complaint with the ARDC due to his failure to perform any duty related to my children's well being in the first year of his appointment. (**Exhibit J** I'm filing an Ethics complaint email).

e.    Mr. Bender, as described above, has hidden child abuse either through negligence or because of an intent to protect Mr. Matt's reputation before the Court which suggests Mr. Bender lacks the moral authority required for his role.

FILED DATE: 12/30/2021 2:23 PM    2016D009534

    f.  Mr. Bender has also sought to hide other misconduct by Mr. Matt, specifically financial crimes as detailed in **Petition for Substitution of Judge for Cause**

        i.  As detailed in the Petition of Judge for Cause, Mr. Bender proffered to Mr. Wehrman, Mr. Matt's attorney, an agreement to block hearing on a motion for allocation of Mr. Bender's own fees and hearing on a motion to compel a subpoena related to those fees in exchange for Mr. Matt agreeing to a custody evaluation.

        ii.  Allocation of fees was ordered by the Court.

        iii.  Allocation of fees is not related to a custody evaluation.

        iv.  Mr. Bender ought not to have exerted influence on this matter.

        v.  The Motion for Allocation of Fees documents businesses and accounts controlled and owned by Mr. Matt in other countries but not disclosed to the Court or in tax filings, so it happens to provide evidence of tax evasion.

        vi.  Particular ethical scrutiny should be given to any action where the goal appears to be to hide financial misconduct or financial crimes.

59. Mr. Bender is a former judge and this Court has often had reason to remind me that he is owed a large amount of deference due to his role. By the same logic, he ought to be held to a higher standard than the average person and his behavior during Court business ought to be beyond reproach.

60. Simply participating in one instance of Ex Parte communication without immediately sharing the details with both parties ought to be reason enough to end his appointment.

61. Further, Mr. Bender's actions have not been in the interest of the minor children due to his failure to respect and support my mental health needs, specifically my therapist's recommendations for addressing problems with Mr. Matt due to my PTSD diagnosis.

62. From the beginning of his appointment, Mr. Bender has tried to pressure me into increased contact with Mr. Matt who often repeats the refrain that "Ms. Mason refuses mediation".

63. I have always maintained that I am not obligated to meet with or mediate issues with Mr. Matt unless some change is being proposed and some basic effort has been made to discuss the change.

64. Mr. Matt has on no occasion proposed a modification of the parenting plan or presented a factual claim of violations of the parenting plan by me.

FILED DATE: 2/13/2021 12:23 PM    2016D009534

65. Mr. Matt has never presented a proposal over which we could mediate.

66. I therefore regard Mr. Matt's insistence that I pay for mediation with him as burdensome and unnecessary, as is Mr. Matt's wish to have daily communication with me as his Mr. Matt's wish to have weekly therapy with me four years after our divorce.

67. Mr. Bender has claimed to the Court that parties "just need to talk" without providing a legal or factual basis for his personal belief.

68. One of my objections to unnecessary paid meetings (eg mediation or negotiations with a GAL in attendance) is that there is a financial burden without a benefit.

69. A good example is one of the other "Issues" Mr. Matt raised as a basis for his Motion for a GAL appointment which was "International Travel". In this case, Mr. Matt wanted to take the children to Germany for two weeks during the summer vacation.

70. Per parenting plan, Mr. Matt has one week of vacation with the children and he asked me if he could have another week to have a more meaningful trip.

71. I immediately agreed without qualification. Which is to say, I voluntarily surrendered some of my Court ordered parenting time to Mr. Matt without intervention or order.

72. I am a kind, reasonable person and I typically do accommodate reasonable requests, even when I am not required by law or Court order.

73. However, in this case, Mr. Matt was enraged that I insisted he bring the children back to the United States at least three days before the first day of school so they could overcome jet lag.

74. Mr. Matt was enraged that I had an opinion he didn't like and he might have to pay more for airline tickets.

75. Mr. Bender forced me to pay him to meet with Mr. Matt to discuss this "issue".

76. This only reinforced Mr. Matt's belief that the Court is hear to bully, abuse and force me into accommodating him, even when I am not required by law to do so and even when it is evident to any reasonable person that I have compromised enough and Mr. Matt ought simply to accept facts he does not like without harassing and abusing others.

77. What's more, contact with Mr.Matt is bad for me, and by extension bad for the children.

78. I have maintained that it is not true that further contact is needed and further indicated to Mr. Bender that I have been advised by therapists that it is not in the interest of my mental health to have unnecessary contact with Mr. Matt.

79. I have appealed to Mr. Bender and to Dr. Palen, then parenting coordinator, to have a conversation during which I could safely explain my mental health needs writing on April 22, 2021 (**Exhibit K** Mental Health History Email)

> "As part of your investigation would you be willing to have a 30 minute call with me and Dr. Palen to discuss topics related to my own and Peter's mental health history? I would prefer to have an opportunity to speak candidly about my own background and needs without fear that it will be used against me so I ask for time separate from Peter who, of course, ought to be given the same opportunity. I will also make therapists I've worked with available to consult with John if it's appropriate or necessary, to the extent that they can/will given HIPAA guidelines."

80. As I wrote to my then attorney on October 6, 2021, "Neither responded." (**Exhibit K**)

81. Mr. Bender's utter failure to investigate the family's mental health dynamics and to learn about the mental needs of the mother of the children he serves makes him wholly unqualified to make recommendations for our family or express opinions about my mental fitness.

82. Mr. Bender's appointment has caused emotional and financial harm to me and my children.

83. The original appointment, not based on fact or associated with a legal proceeding, created an impossible dynamic for our family and ought not to have been made.

WHEREFORE, Respondent prays that the Court enters an order that:

A. Mr. Bender be immediately terminated as Guardian Ad Litem in this case.

B. The order appointing a Guardian Ad Litem be vacated.

C. The Motion to Compel Swanson Martin Bell LLP to comply with the subpoena for financial records be granted.

D. The Motion fo Allocation of Fees for GAL be given a hearing and prior ruling, without hearing, overturned.

Respectfully Submitted,

Megan (Matt) Mason
Pro Se Respondent

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

| | |
|---|---|
| IN RE THE FORMER MARRIAGE OF: )<br>)<br>PETER MATT, )<br>)<br>*Petitioner*, )<br>)<br>and )<br>)<br>MEGAN MATT, )<br>n/k/a MEGAN MASON, )<br>)<br>*Respondent*. ) | Case No. 2016 D 009534 |

### AFFIDAVIT OF MEGAN MATT N/K/A MASON IN SUPPORT OF HER MOTION TO TERMINATE THE GUARDIAN AD LITEM APPOINTMENT

I, MEGAN MATT n/k/a MASON, hereby submit this affidavit under penalties provided by law pursuant to section 1-109 of the Illinois Code of Civil Procedure and certify that the statement set forth in this affidavit are true and correct.

1. I am the Respondent in this matter.

2. I have personal knowledge of the matters stated in my SECOND MOTION TO TERMINATE THE GUARDIAN AD LITEM APPOINTMENT and they are true and correct except as to those matters stated on information and belief, which are believed to be true.

3. I hereby restate and incorporate by reference the allegations contained in my Petition as if the same were set forth here verbatim.

*Megan Mason*

Megan Mason, Pro Se Respondent
419 Greenleaf Ave.
Wilmette, IL 60091
917.518.188

All Domestic Relations cases will be heard by phone or video.
Go to http://www.cookcountycourt.org/LinkClick.aspx?fileticket=G7A8KAcSi8E%3d&portalid=0
to get more information and Zoom Meeting IDs.
Remote Court Date: No hearing scheduled

**Exhibit HH**

FILED
4/28/2022 3:33 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2016D009534
Calendar, 23
17693377

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

|  |  |  |
|---|---|---|
| IN RE THE MARRIAGE OF: | ) | |
| PETER MATT, | ) | |
|     Petitioner, | ) | |
| | ) | No. 2016 D 9534 |
| And | ) | |
| | ) | |
| MEGAN MATT, | ) | |
|     Respondent. | ) | |

## MOTION TO MODIFY PARENTING TIME
## AND ALLOCATION OF PARENTAL RESPONSIBILITY

NOW COMES the Petitioner, PETER MATT, individually and by and through his counsel

from the law firm of KATZ, GOLDSTEIN & WARREN, and pursuant to Sections 610.5, 602.5,

602.7 and other provisions of the Illinois Marriage and Dissolution of Marriage Act, respectfully

requests that the Court adjust and modify parenting time and allocation of parental responsibilities.

In support of his motion, PETER MATT states as follows:

1.     The parties were married on January 24, 2007 in New York.

2.     As a result of their marriage, two children were born to parties, namely: Angus,
   born August of 2008; and Theodore, born February of 2012.

3.     On September 27, 2017 a Judgment for Dissolution of Marriage (Judgment),
   incorporating a Marital Settlement Agreement, was entered in this matter, thereby
   dissolving the bonds of matrimony between the parties. A copy of the Judgment
   is attached hereto and incorporated herein *by reference only* as **Exhibit "A."**

4.     On September 27, 2017, an Allocation Judgment and Joint Parenting Agreement
   (JPA) was also entered in this matter allocating parenting time and joint decision-
   making authority amongst the parties. A copy of the JPA is attached hereto and
   incorporated herein *by reference only* as **Exhibit "B."**

5. The parties' eldest child, Angus, has been diagnosed with mental health disabilities requiring medical care and court ordered ABA Therapy.

6. The parties long standing post-decree litigation has caused the appointment of a GAL, parenting coordinator, and Section 604.10(b) evaluator.

7. Megan Matt has alleged that Peter Matt has committed child abuse (which has not been supported by the GAL or the 604.10(b)), has been held in contempt of court for failure to participate in ABA Therapy for Angus (on multiple occasions), and refuses to co-parent with Peter Matt (as to Angus's ABA Therapy and Theodore's extra-curricular activities).

8. In an attempt to manipulate the Court, Megan Matt has gone so far as to allege that Theodore is suicidal (which was unfounded by Theodore's medical provider and the 604.10(b) evaluator).

9. Paragraph 1 of the Allocation of Parental Responsibilities Judgment section titled ALLOCATION OF DECISION-MAKING RESPONSIBILITES provides the parties with joint decision making over the children.

10. Paragraph 1 of the Allocation of Parental Responsibilities Judgment section titled PARENTING TIME provides the parties with a parenting schedule, which was updated by agreement in a court order on May 25, 2021.

11. Pursuant to Section 610.5 of the IMDMA, an allocation of parental responsibilities may be modified upon a showing that a substantial change in circumstances has occurred since the entry of the plan and modification is necessary to serve the children's best interests. 750 ILCS 5/610.5.

12. Section 602.5 of the IMDMA governs the allocation of decision-making

FILED DATE: 4/28/2022 3:33 PM    2016D009534

FILED DATE: 4/28/2022 3:33 PM    2016D009534

responsibilities amongst the parents, including those significant decisions related to the child's health, education, religion, and extracurricular activities. Section 602.5 provides that decision-making responsibilities shall be allocated in accordance with the children's best interests and sets forth specific factors for the court's consideration, including a "catch-all" provision encouraging consideration of any other factor the court finds to be relevant. See 750 ILCS 5/602.5(a),(b),(c)(1)-(15).

13. Section 602.7 of the IMDMA governs the allocation of parenting time amongst parents and similarly states that parenting time shall be allocated in accordance with the child's best interests. Section 602.7 also delineates specific factors for the court's consideration, including a "catch-all" provisions of any relevant factor. See 750 ILCS 5/602.7.

14. Since the entry of the Allocation of Parental Responsibilities Judgment, a substantial change in circumstances has occurred which would warrant a modification of the current parenting schedule as well as a modification of legal custody/allocation of parental responsibility, including but not limited to the following:

    a.    MEGAN MATT does not communicate with PETER MATT except for when she wants something related to the children reducing the efficacy of the parties' ability to co-parent.

    b.    MEGAN MATT has engaged in a pattern of abuse towards PETER MATT preventing the parties' from co-parenting.

    c.    MEGAN MATT undermines the ABA Therapy and will not allow it to occur during her parenting time at a time that the therapists are available.

    d.    MEGAN MATT has caused multiple ABA therapists to be unable to work

- 3 -

FILED DATE: 4/28/2022 3:33 PM    2016D009534

with Angus.

    e.    MEGAN MATT has caused multiple changes in medical providers unminding the efficacy of medical care for Angus.

    f.    MEGAN MATT undermines PETER MATT in the selection and participation of extra-curricular activities for Theodore, including convincing Theodore to claim extra educational activities was causing him to be suicidal.

    g.    MEGAN MATT caused the court appointed parenting coordinator, Dr. John Palen, to cease working with the parties.

    h.    MEGAN MATT has refused to complete working with the Section 604.10(b) evaluator to allow the final report and recommendations to be tendered to the court.

    i.    Dr. Blechman (the Section 604.10(b) evaluator) prepared a preliminary report on February 7, 2022 recommending that PETER MATT be the sole decision maker for Angus's treatment for the foreseeable future. A copy of the Dr. Blechman's February 7, 2022 recommendations are attached hereto and incorporated herein as **Exhibit "C."**

    j.    Dr. Blechman further believes that PETER MATT should have sole decision making for Theodore.

15.    PETER MATT is a fit and proper parent to have additional parenting time with the children.

16.    PETER MATT is a fit and proper parent to have sole allocation of parental responsibilities over the children.

17. It would be in the best interests of the children to adjust the existing parenting schedule to provide for additional parenting time with PETER MATT.

18. It would be in the best interests of the children to provide PETER MATT with sole allocation of parental responsibilities.

19. It would protect the emotional health of the children to adjust parenting time, and have the children's primary residence be with PETER MATT.

20. It would protect the physical and emotional health of the children to give PETER MATT sole allocation of parental responsibilities.

WHEREFORE, the Petitioner, PETER MATT, respectfully prays as follows:

A. That the Court grant to PETER MATT sole allocation of parental responsibilities over the children;

B. That the Court grant to PETER MATT permanent residential possession, and parenting time with an adjustment to parenting time schedule for the children; and,

C. For such other relief as this Court deems equitable and just.

Respectfully submitted,

_____

PETER MATT

Christopher D. Wehrman (cwehrman@kgwlaw.com)
Katz, Goldstein & Warren
410 N. Michigan Ave., Ste. 400
Chicago, Illinois 60611
(847) 317-9500
#35921

- 5 -

## ATTORNEY'S STATEMENT

I, the undersigned, state that I am one of the attorneys employed by the firm of KATZ, GOLDSTEIN & WARREN and representing the party who has signed the foregoing pleading. I certify that I have read the foregoing pleading and that to the best of my knowledge, information and belief, formed after reasonable inquiry of my client, said pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, and that said pleading is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

KATZ, GOLDSTEIN & WARREN

By: _____

One of the attorneys for PETER MATT

## CLIENT'S VERIFICATION

UPON PENALTY OF PERJURY, I, the undersigned, state that I have read the foregoing pleading. I further state that this pleading is being filed with my consent and as part of my attorney's required duties in representing me. I further state that my attorney has explained to me that by signing this pleading and this verification, I am acknowledging that my attorney is acting with my consent and at my direction and that my attorney has based his statement on the factual information provided to him by me, as well as upon his investigation thereof.

_____

PETER MATT

Christopher D. Wehrman (cwehrman@kgwlaw.com)
Katz, Goldstein & Warren
410 N. Michigan Ave., Ste. 400
Chicago, Illinois 60611
(847) 317-9500
#35921

- 6 -

FILED DATE: 4/28/2022 3:33 PM   2016D009534

All Domestic Relations cases will be heard by phone or video.
Go to http://www.cookcountycourt.org/LinkClick.aspx?fileticket=G7A8KAcSi8E%3d&portalid=0
     to get more information and Zoom Meeting IDs.
Remote Court Date: No hearing scheduled

Exhibit II

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION**

FILED
5/2/2022 6:20 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2016D009534
Calendar, 23
17717918

|  |  |  |
|---|---|---|
| IN RE THE MARRIAGE OF: | ) | |
| | ) | |
| PETER MATT, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| and | ) | No.  16 D 9534 |
| | ) | |
| MEGAN MATT n/k/a MASON, | ) | |
| | ) | |
| Respondent. | ) | |

FILED DATE: 5/2/2022 6:20 AM   2016D009534

## AFFIDAVIT OF MEGAN MATT N/K/A MASON IN OPPOSITION TO PETER MATT's MOTION TO REVOKE MY PARENTING RIGHTS INSTANTER

I, MEGAN MATT n/k/a MASON, hereby submit this affidavit under penalties provided by law pursuant to section 1-109 of the Illinois Code of Civil Procedure and certify that the statement set forth in this affidavit are true and correct:

I am writing this letter in response to the pleadings filed yesterday by Mr. Wehrman instanter. I know that as I write this I am probably "too late" to participate in what could only be considered a show trial. The only document called evidence is a letter from Dr Blechman that is hearsay of hearsay and not legally allowable evidence. It contains Dr. Blechman's quote of an email from Mr. Matt, in turn quoting me, as I describe your acts of conspiracy along with Mr Bender and Mr. Wherman in relation to Mr. Trowbridges fraud activity. In this sense it is clearly retaliatory.

There is no basis for an emergency action. I have been and always will be an excellent mother. I have never neglected or harmed my children in any way. I am not under investigation for any crimes. Both my children want to live with me full time. All the children's doctors, teachers and past therapists believe I am a competent, good mother and should have the majority of decision making authority. We all know Mr. Matt to be a low functioning adult, guilty of at least thirty aggravated felonies against the government, with multiple reports by doctors and police of his abusive, harassing behaviors. He has had the children ordered out of his home by their doctor.

Any actions taken to harm me or my children, and it is an unbearably cruel harm to separate me from my children, are retaliatory actions for my whistleblowing activity. I ought not be punished for reporting the crimes of you and your conspirators. Please recuse yourself as law demands. Please follow Illinois law in matters of allocation of parental responsibility and allow a fair hearing of facts. Do not grant Mr.Wehrman's motion to destroy my family in retaliation for my true statements about crimes.

Exhibit II Continued

FILED DATE: 5/2/2022 6:20 AM   2016D009534

As I am finishing my federal complaint, in which you are named as a co-conspirator in multiple RICO claims and Section 1983 claims, I am fully aware of judicial immunity. But this immunity does not extend to criminal behavior. And where there is extreme negligence and wantonness toward the well being of minor children, there is further potential liability.

You have known for at least a year, based on my motion for allocation of fees, that Mr. Matt is guilty of ongoing aggravated felonies toward the federal government. As a green card holder, Mr. Matt faces imminent and permanent deportation. He cannot be my children's guardian because he cannot parent them from a federal prison or from Germany. You also know, based on the same filing, that Mr. Matt is independently wealthy and prone to crime. You also know he has a history of domestic violence. You know putting the children in his care is dangerous and you are liable for any harm that comes to them as a result of your misconduct.

You cannot undo what has been done but you can and must stop escalating this abuse of judicial authority. You cannot ever make me stop telling the truth but you can be decent and stop hurting my children. Stop. Deny the motion to destroy my children's lives.

_Megan Mason_

MEGAN MATT n/k/a MASON

Exhibit JJ

 **Megan M <megan42@gmail.com>**

---

## Witness this am at 8:30?

**Megan Mason** <megan42@gmail.com>                                   Sat, Mar 5, 2022 at 8:56 AM
To: Megan Mason <megan42@gmail.com>
Bcc: Michael Woolf <minister@lakestreet.org>, Jillian Westerfield <jwesterfield@lakestreet.org>, Barb Vaughan
<barb.vaughan@yahoo.com>, Delane Haro <delanewharo@gmail.com>

Friends, I just wanted to share with you a little good news and offer up a prayer of thanksgiving for Ms. Janice Thompson, an employee in the Clerk of the Circuit Court of Chicago! I reached out to you earlier this week because you are folks who are familiar with my case and who have the types of jobs that sometimes allow daytime zoom calls. But you also happen to be people I consider part of my own faith community and with whom I can be open about my spiritual journey.

As I prepared for Court I prayed that God would please send me some sign that someone can help me. I believe both spiritually and intellectually that if I can keep loudly and clearly telling the truth about the wrongs I witness that I can help bring change. But I also know this might take two, five, ten years. I just prayed to have some small sign that I am being heard, that my work on this matters.

I believe my prayers were answered. On Thursday I received a phone call from a woman named Janice Thompson. Ms. Thompson works in the Civil Appeals Division of the Circuit Court. She prepares the record for the Appeals court, it's a very important part of the process.  I can't file my actual appellate brief (case) until the Appeals Court has the official record from the Circuit Court. The appeals process is complicated with lots of deadlines and I've always known that the other attorneys would try to make me miss deadlines. Ms. Thompson informed me that she works for the Circuit Court and prepares the record. Although I'd submitted my request and it was approved (stamped) on January 24th, she didn't get it on her desk until February 28th. The deadline for her to transfer the record had been February 9th. I asked her if I had made any errors to cause this and she answered (the truth!!!!!) that no, there had been some mixups with the other clerks. It wasn't my fault.

Ms. Thompson further gave me advice on how to file a motion for an extension. Then yesterday, when I had the deadline extended to March 18th, Ms. Thompson called me again and mentioned that all of my exhibits were missing labels. I'm new to this, obviously, and I submitted the exhibits (evidence) electronically, with the required format in the file name (Exhibit A, Exhibit B....). But Ms. Thompson had received printed copies and hadn't written titles. She went through my file and personally added labels to more than twenty documents. She didn't need to do this. She did this because she is a woman of integrity who wants to do her job right.

I can't express to you how good it felt to be on the phone with this polite, calm woman, talking to me as if I'm a human being who matters, speaking truthfully and doing her job. I'm just filled with gratitude for this reminder of how many good, decent people there are and what good it does for all of us to have professional civil servants. I wanted to share this with you because you've been there for me to hear the "bad" but I also want to share the good. I know my faith that there is more goodness to be found has been strengthened.

Love,
Megan

[Quoted text hidden]

Exhibit KK



## Party Information

Need Help?

| Party Type | Party Name | Lead Attorney |
|---|---|---|
| Petitioner | PETER MATT | SWANSON MARTIN BELL LL… |
| Respondent | MEGAN MATT | JONATHAN MEREL PC (+3 m… |
| Other Attorney | CAESAR&BENDER LLP | |
| Respondent | Megan (Matt) Mason | Pro Se |

⊕ Add Another Party

### Enter details for this Party

**Party Type**
Respondent

**Lead Attorney**
JONATHAN MEREL PC (+3 more)

**First Name**
MEGAN

**Last Name**
MATT

**Address**
423 LINDA APT 2E CHICAGO IL 680910000

**Country**
United States of America

Undo   Save Changes

## Filings

Need Help?

Enter the details for this filing

All Domestic Relations cases will be heard by phone or video.
Go to http://www.cookcountycourt.org/LinkClick.aspx?fileticket=G7A8KAcSi8E%3d&portalid=0
    to get more information and Zoom Meeting IDs.
Remote Court Date: No hearing scheduled

**Exhibit LL**

FILED
4/28/2022 3:33 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2016D009534
Calendar, 23
17693377

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

IN RE THE MARRIAGE OF:                    )
PETER MATT,                                )
       Petitioner,                         )
                    )     No. 2016 D 9534
And                                        )
                    )
MEGAN MATT,                                )
       Respondent.                         )

## PETER MATT'S RULE 137 PETITION FOR SANCTIONS

     NOW COMES the Petitioner, PETER MATT, by and through his attorneys from the law firm of KATZ, GOLDSTEIN & WARREN, and pursuant to Illinois Supreme Court Rule 137 and Section 508(b) of the Illinois Dissolution of Marriage Act, moves this honorable Court to issue sanctions against MEGAN MATT. In support thereof, PETER MATT states as follows:

1.     The parties were married on January 24, 2007 in New York.

2.     As a result of their marriage, two children were born to parties, namely: Angus, born August of 2008; and Theodore, born February of 2012.

3.     On September 27, 2017 a Judgment for Dissolution of Marriage (Judgment), incorporating a Marital Settlement Agreement, was entered in this matter, thereby dissolving the bonds of matrimony between the parties. **See Exhibit A, Judgment and Marital Settlement Agreement, incorporated by reference.**

4.     On September 27, 2017, an Allocation Judgment and Joint Parenting Agreement (JPA) was also entered in this matter allocating parenting time and

FILED DATE: 4/28/2022 3:33 PM    2016D009534

Exhibit LL Continued

FILED DATE: 4/28/2022 3:33 PM    2016D009534

joint decision-making authority amongst the parties. **See Exhibit B, Allocation Judgment, incorporated by reference.**

5.   There has been significant post-decree litigation related to the minor children including multiple petitions for rule to show cause filed by Peter Matt (which have been granted or granted in part), petitions for rule to show cause filed by Megan Matt (leading to the appointment of a Section 604.10(b) evaluator), a recent serious of motions filed by Megan Matt to increase the costs of litigation and otherwise seek to embarrass and defame Peter Matt along with his counsel, the GAL, the Court, and the court staff.

6.   Megan Matt is representing herself pro se.

7.   Peter Matt caused a Petition for Rule to Show Cause to be filed on February 9, 2022 whereby he alleged that Megan Matt failed to comply with the Court's orders related to ABA Therapy for the parties' eldest child.  Following an evidentiary hearing on April 4, 2022, Megan Matt was held in contempt of Court for her failure to comply with the Court's November 19, 2019 Court Order.  **See Exhibit C, April 4, 2022 Court Order.**

8.   Megan Matt filed a Motion to Dismiss Peter Matt's February 9, 2022 Petition for Rule to Show Cause (which was denied on April 4, 2022).  **See Exhibit D, Megan Matt's Motion to Dismiss, incorporated by reference.**  Among her allegations in the motion were:

2

FILED DATE: 4/28/2022 3:33 PM    2016D009534

a. "There is a long well documented history of fraud, deceit and abuse of power by officers of the court and court appointees involved in this case which makes all actions by court appointees subject to extra scrutiny." **Ex. D, p. 4.**

b. "...Mr. Matt is so obviously and objectively impaired in his abilities to parent, to make decisions and to act ethically that it is impossible that Dr. Blechman could prepare a report based on facts such as documentary evidence, psychological assessments and visit notes that suggests Mr. Matt is capable of decent parental decision making or care." **Ex. D, p. 4.**

c. "Should Dr. Blechman purjor himself or exercise ethical misconduct, for example by conducting psychological assessments of the parties and then hiding these assessments from the Court, he would jeopardize his license as a psychologist in the state of illinois (sic)." **Ex. D, p. 4.**

d. "...I allege that Dr. Blechman is seeking to avoid disclosing reports of child abuse by Mr. Matt raised by the children's doctors on repeated occasions." **Ex. D, p. 4.**

e. "Should it be revealed that Dr. Blechman, along with Mr. Michael Bender, hid credible reports of abuse and child endangerment, both parties' reputations would suffer." **Ex. D, p. 4.**

9. Megan Matt further alleges in her Motion to Dismiss the following:

a. "Mr. Bender, as Guardian Ad Litem, and Mr. Wherman (sic), as opposing counsel, are also witness to a documented solicitation of a bribe by a public official during the course of his appointed duties on December 5th, 2020 by Dr.

3

Exhibit LL Continued

FILED DATE: 4/28/2022 3:33 PM   2016D009534

John Palen, a court appointed parenting coordinator and close colleague of Mr. Bender who Mr. Bender personally asked to be appointed. **Ex. D, p. 5.**

b.  "Mr. Bender has hidden allegations of domestic violence by Mr. Matt including reports by credible third parties such as doctors, police and clergy." **Ex. D, p. 5.**

c.  "Mr. Bender and Mr. Wehrman have both hidden criminal tax fraud and money laundering by Mr. Matt." **Ex. D, p. 5.**

10.  This was not the first time Megan Matt has filed a pleading with baseless and defamatory allegations.  On November 30, 2021, Megan Matt filed her Petition To Substitute Judge For Cause.  **See Exhibit E, Megan Matt's Motion for Substitution of Judge, incorporated by reference.**  In her Petition, Megan Matt alleges:

a.  "On December 5, 2020, Dr. John Palen, parenting coordinator, accidentally copied me on an email including Mr. Bender; Mr. Christopher Wehrman, opposing counsel; and Ms. Kaye Mason, Judge Johnson's clerk…" **Ex. E, p. 3.**

"b. This email is evidence of inappropriate ex parte communication wherein all parties in this case, except me, are given access to communicate with each other and with Judge Johnson via his clerk, on an ongoing, secretive basis." **Ex. E, p. 3.**

"c. This private email thread almost certainly gives the opposing parties in this matter a tactical advantage. This is on the face of it evidence of profound bias and prejudice toward me." **Ex. E, p. 3.**

b.  "The second instance of ex parte communication observed by me occurred on

4

FILED DATE: 4/28/2022 3:33 PM    2016D009534

May 27, 2021…" **Ex. E, p. 4.**

"k. As a basis for his special treatment Mr. Wehrman suggests that because Judge Johnson appointed a custody evaluator no matters should be heard. This is simply unimaginable." **Ex. E, p. 5.**

"n. Ms. Mason agreed to follow Mr. Wehrman's instructions and set aside Cook County Domestic Relations Division policies in order to see if Judge Johnson would grant Mr. Wehrman his favor of blocking the hearing." **Ex. E, p. 5.**

"o. According to an email from Ms. Mason, without any reference to a legal basis, Judge Johnson verbally approved this favor to Mr. Wehrman and ordered her to cancel my duly scheduled hearing date." **Ex. E, p.5.**

"q. On the face of it these events demonstrate an unequal relationship wherein Petitioner's counsel is allowed to seek and receive favors outside of open court to my detriment." **Ex. E, p. 6.**

"s. Because Petitioner is given the ongoing opportunity to discuss any number of matters with Judge Johnson via his clerk on an ex parte basis and I have been strictly rebuked for any communication to Ms. Kaye Mason that is not routine scheduling, which is to say legally allowable, there is an inherent imbalance." **Ex. E, p. 6.**

c. "One factor that has contributed to rulings not based in fact and the denial of due process by Judge Johnson is the appointment of Michael Bender as Guardian Ad Litem." **Ex. E, p.13.**

5

Exhibit LL Continued

FILED DATE: 4/28/2022 3:33 PM   2016D009534

    d.   "During discussions to which I was not privy, Mr. Bender proffered to Mr. Wehrman a custody evaluation, with a custody evaluator hand selected by Mr. Bender, in exchange for denying me due process." **Ex. E., p. 15.**

    e.   "Mr. Wehrman said, "Your honor, she just wants to show I'm laundering money for my client". **Ex. E, p. 16.**

    f.   "Mr. Wehrman makes generalized, untrue, disparaging statements not related to the proceedings such as "That woman lies", "This woman doesn't care about her children", "That woman can't be trusted", "That woman doesn't want to take care of her kids". **Ex. E, p. 16.**

11.    Megan Matt further filed a Petition to Transfer Venue in the Interest of Justice on February 16, 2022. **See Exhibit F, Megan Matt's Petition to Transfer Venue in the Interest of Justice, incorporated by reference.** In her petition, Megan Matt alleges:

    a.   "The staff, appointees and employees who collectively determine legal outcomes in the Domestic Relations Division of the Circuit Court of Chicago are so biased against me and the undue influence in favor of my former husband, Peter Matt, is so great, that an immediate transfer of venue is necessary." **Ex. F, p. 3.**

    b.   "…I have also been forced to participate in criminal activity by court order on two occasions." **Ex. F, p. 10.**

    c.   "Mr. Matt does not believe in the traditional taxation system and therefore keeps his considerable family wealth and assets hidden abroad." **Ex. F, p. 10.**

6

FILED DATE: 4/28/2022 3:33 PM    2016D009534

d. "…Mr. Matt enjoys displaying a facade of poverty and on two occasions he has engaged in welfare fraud." **Ex. F, p. 11.**

e. "…Mr. Matt was supported by Dr. John Palen, the court ordered parenting coordinator, in attempting to force me to engage in a criminal scheme." **Ex. F, p. 11.**

f. "I fear Angus's identity may be used to launder money, by disguising funds from businesses not disclosed to the IRS as gifts or loans from Angus's wealthy German grandfather to Angus for his care;" **Ex. F, p. 13.**

g. "I fear Angus's disability and minor child status may be exploited in order to create trusts, businesses and other structures wholly intended to launder money, remit payment to other parties and to evade taxation;" **Ex. F, p. 13.**

h. "I fear Angus's disability and minor child status may be used as a basis to appoint individuals as executors, guardians, trustees or other paid roles for as a means to receive kickbacks or bribes;" **Ex. F, p. 13.**

i. "I fear Angus's identity may be used as a means for further fraudulent activity of the type already proposed by Mr. Matt." **Ex. F, p. 13.**

j. "Given that Angus has already been the target of an open scheme to defraud him, supported by appointees of this court…" **Ex. F, p. 13.**

k. "One bank account is held at Wintrust. Mr. Matt shares this account with his father, Leo Matt, who resides in Germany. This account has been used to wire funds from Mr. Matt's unreported businesses: Goedecke Germany, Goedecke Poland and Goedecke India as well as cash from the over $1 million I know Mr.

7

FILED DATE: 4/28/2022 3:33 PM   2016D009534

Matt to hold in personal investments and accounts held abroad." **Ex. F, p. 14.**

l.   "It is my belief that Judge Johnson did not wish to embarrass Mr. Bender and Mr. Wehrman by letting the Motion for Financial Allocation and subpoenaed documents be revealed in open court." **Ex. F, p. 15.**

m.   "I have also observed and documented child abuse and neglect by Mr. Matt which court appointees have aggressively hidden." **Ex. F, p. 15.**

n.   "Mr. Bender in his role as Guardian Ad Litem has sought to hide reports of Mr. Matt's abusive behaviors or parental unfitness on repeated occasions." **Ex. F, p. 16.**

o.   "Mr. Bender agreed not to allow any of the disturbing matters presented in the above Petitions to be heard as part of the deal with Mr. Wehrman to initiate a Custody Evaluation." **Ex. F, p. 16.**

p.   "Subsequent to these filings, reports of domestic violence have been raised by myself and credible third parties but Mr. Bender has sought to mischaracterize or hide these reports in order to protect his own and Mr. Matt's reputation." **Ex. F, p. 17.**

q.   "I asked Teddy if his father ever hit him (Teddy). He nodded his head. I asked him where his dad hit him, he put his hand on his right cheek." **Ex. F, p. 18.**

r.   "… the Custody Evaluation was proffered as a means to hide money laundering, tax fraud, and reports of abuse by credible third parties such as police and clergy." **Ex. F, p. 22.**

s.   "Mr. Wehrman further used his private influence with Judge Johnson to hide

8

FILED DATE: 4/28/2022 3:33 PM   2016D009534

evidence of Mr. Matt's parental misconduct." **Ex. F, p. 22.**

t. "I am subject to ongoing interference and fraudulent behaviors using the court's technology." **Ex. F, p. 23.**

12. Peter Matt has been forced to pay substantial funds to not only respond to the allegations in these pleadings, but also to litigate them.  Megan Matt's Motion to Dismiss was denied she was found in contempt of court following an evidentiary hearing on Peter Matt's Petition for Rule to Show Cause, her Motion for Substitution of Judge for Cause was denied, and she chose not to prosecute her Motion to Transfer Venue following the hearing on the Petition for Rule to Show Cause.

13. Trial courts may grant sanctions under 137 at their discretion. *William J. Templeman Co. v. W.E. O'Neil Constr. Co.*, 1998 Ill. App. LEXIS 587 (1st Dist. 1998).

14. Rule 137 provides for the imposition of sanctions if any "pleading, motion, or other document is signed in violation of this rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred because of the filing of the pleading, motion or other document, including a reasonable attorney fee."

15. Deliberately lying, obstructing justice, and misrepresenting facts are sanctionable under Rule 137.

9

FILED DATE: 4/28/2022 3:33 PM   2016D009534

Exhibit LL Continued

16.   Rule 137 requires that litigants who sign a pleading, motion, or other paper certify that he has read the document, has made a reasonable inquiry into its basis, and believes that the statements contained therein are "well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." *Cretton v. Protestant Mem'l Med. Ctr., Inc.*, 371 Ill. App. 841, 864 (5th Dist. 2007).

17.   Rule 137 serves to prevent parties in a legal action from asserting allegations unfounded in fact or law.

18.   Rule 137 provides for the imposition of sanctions against those who make improper pleadings.

19.   Pursuant to Illinois Supreme Court Rule 137(a), a party's signature on a pleading certifies that to the best of the attorney's knowledge, information, and belief formed after reasonable inquiry the pleading is well-grounded in fact and is warranted by existing law. Ill. Sup. Ct., R 137(a).

20.   A party's signature on a pleading also verifies that the pleading is not interposed for any improper purpose. *Id.* Rule 137 further permits the court to sanction the signor if a pleading is signed in violation of Rule 137. *Id.* The sanction may include an order to pay to the other parties the amount of reasonable expenses incurred because of the filing of the pleading, including a reasonable attorney fee. *Id.*

FILED DATE: 4/28/2022 3:33 PM   2016D009534

21. Sanctions "prevent abuse of the judicial process by penalizing claimants who bring vexatious and harassing actions based upon unsupported allegations of fact or law." *Fremarek v. John Hancock Mutual Life Insurance Co.*, 272 Ill. App. 3d 1067, 1074 (1995).

22. A party seeking Rule 137 sanctions must show that the opposing party made false allegations without reasonable cause. *Cretton v. Protestant Mem'l Med. Ctr., Inc.*, 371 Ill. App. 841, 864 (5th Dist. 2007) (upholding imposition of Rule 137 sanctions). The trial court must employ an objective standard to determine whether a party made reasonable inquiry. *Id.* A party's subjective good faith in signing the pleadings is insufficient to avoid Rule 137 sanctions. *Id.* Courts determine reasonableness by looking to the facts and circumstances that existed at the time a pleading was filed. *Id.*

23. Megan Matt's pleadings identified above were submitted and argued in bad faith.

24. Rule 137 sanctions against Megan Matt are appropriate.

25. This Court should impose sanctions against Megan Matt.

WHEREFORE, Petitioner PETER MATT respectfully requests that this Court:

A. Impose sanctions against Megan Matt;

B. Grant Attorney's Fees and costs in favor of Peter Matt; and,

11

FILED DATE: 4/28/2022 3:33 PM    2016D009534

C.    Grant any further relief this Court deems just.

Respectfully submitted,

PETER MATT

Christopher D. Wehrman (cwehrman@kgwlaw.com)
Katz, Goldstein & Warren
410 N. Michigan Ave., Ste. 400
Chicago, Illinois 60611
(847) 317-9500
#35921

Exhibit LL Continued

FILED DATE: 4/28/2022 3:33 PM   2016D009534

## ATTORNEY'S STATEMENT

I, the undersigned, state that I am one of the attorneys employed by the firm of KATZ, GOLDSTEIN & WARREN and representing the party who has signed the foregoing pleading. I certify that I have read the foregoing pleading and that to the best of my knowledge, information and belief, formed after reasonable inquiry of my client, said pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, and that said pleading is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

KATZ, GOLDSTEIN & WARREN

By: _____

One of the attorneys for PETER MATT

## CLIENT'S VERIFICATION

UPON PENALTY OF PERJURY, I, the undersigned, state that I have read the foregoing pleading. I further state that this pleading is being filed with my consent and as part of my attorney's required duties in representing me. I further state that my attorney has explained to me that by signing this pleading and this verification, I am acknowledging that my attorney is acting with my consent and at my direction and that my attorney has based his statement on the factual information provided to him by me, as well as upon his investigation thereof.

_____

PETER MATT

Christopher D. Wehrman (cwehrman@kgwlaw.com)
Katz, Goldstein & Warren
410 Michigan Ave., Ste. 400
Chicago, Illinois 60611
(847) 317-9500
#35921

13

DocuSign Envelope ID: 30DE2796-1845-4345-A3A5-BFDE-C02CB0A19557

All Domestic Relations cases will be heard by phone or video.
Go to http://www.cookcountycourt.org/LinkClick.aspx?fileticket=G7A8KAcSi8E%3d&portalid=0
    to get more information and Zoom Meeting IDs.
Remote Court Date: No hearing scheduled

FILED
6/3/2022 1:31 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2016D009534
Calendar, 23
18153868

**EXHIBIT MM**

ATTORNEY NO. 35724

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

| | | |
|---|---|---|
| IN RE THE MARRIAGE OF: | ) | |
| PETER MATT, | ) | |
|     Petitioner, | ) | |
| | ) | No. 2016 D 9534 |
| And | ) | |
| | ) | |
| MEGAN MATT, | ) | |
|     Respondent. | ) | |

### <u>PETITION FOR PROSPECTIVE ATTORNEYS' FEES,</u>
### <u>AND FOR ALLOCATION OF EXPERT AND GAL FEES</u>

NOW COMES the Petitioner, PETER MATT, individually and by and through his attorneys,

KATZ, GOLDSTEIN & WARREN, who hereby presents his Petition for Prospective Attorney Fees,

and For Allocation of Expert and GAL Fees, pursuant to 750 ILCS 508(a), 750 ILCS 5/506, and 750

ILCS 5/604.10(b), and in support thereof, hereby states as follows:

1.    The parties were married on January 24, 2007 in New York.

2.    As a result of their marriage, two children were born to parties, namely:

Angus, born August of 2008; and Theodore, born February of 2012.

3.    On September 27, 2017 a Judgment for Dissolution of Marriage (Judgment),

incorporating a Marital Settlement Agreement, was entered in this matter,

thereby dissolving the bonds of matrimony between the parties. **See Exhibit**

**A, Judgment and Marital Settlement Agreement, incorporated by**

**reference.**

4.    On September 27, 2017, an Allocation Judgment and Joint Parenting Agreement

(JPA) was also entered in this matter allocating parenting time and joint decision-

making authority amongst the parties. **See Exhibit B, Allocation Judgment,**

**incorporated by reference.**

1

FILED DATE: 6/3/2022 1:31 PM  2016D009534

DocuSign Envelope ID: 30DE2796-1845-42A5-B7DF-C02CB0419557

FILED DATE: 6/3/2022 1:31 PM    2016D009534

5. There has been significant post-decree litigation related to the minor children including multiple petitions for rule to show cause filed by Peter Matt (which have been granted or granted in part), petitions for rule to show cause filed by Megan Matt (leading to the appointment of a Section 604.10(b) evaluator), a recent serious of motions filed by Megan Matt to increase the costs of litigation and otherwise seek to embarrass and defame Peter Matt along with his counsel, the GAL, the Court, and the court staff.

6. On June 6, 2019, on this Court appointed Michael Bender as the Guardian Ad Litem. **See Exhibit C, Court Order dated June 6, 2019, incorporated by reference.**

7. The GAL order required each party to pay one-half of the GAL retainer, and the GAL fees have been allocated 50/50 from that date forward.

8. Through April 30, 2022, PETER MATT has paid 50% of all of the GAL fees and is current on her obligation to same, totaling $11,233.96 paid.

9. Although the GAL fees have been related to the GAL's investigation on pending issues and concerns raised by MEGAN MATT, they have also been increased by repeated returns to Court for MEGAN MATT's failure to comply with court orders and failure to continue with ABA Therapy for Angus.

10. Although PETER MATT has continued to pay one-half of the GAL fees, he should be reimbursed under Section 508(b) for all fees and costs associated with MEGAN MATT's contempt findings, as well as the costs incurred for MEGAN MATT's new filing in the Northern District of Illinois.

DocuSign Envelope ID: 30DE2796-1845-4245-BZDF-C02CB0419557

11. This Honorable Court also appointed a Section 604.10(b) evaluator, Dr. Gerald Blechman, **See Exhibit D, Court Order dated September May 25, 2021, incorporated by reference.**

12. Pursuant to the order appointing Dr. Blechman, each party was to pay 50% towards the retainer.

13. Through April 11, 2022, PETER MATT has paid $8,900.00 to Dr. Blechman for Dr. Blechman's investigation and appearances in this matter. MEGAN MATT has not paid her 50%, and instead PETER MATT has been paying her portion.

14. Upon information and belief, MEGAN MATT has not made any payments beyond her retainer payment.

15. PETER MATT retained the counsel of Steven H. Klein and Christopher D. Wehrman to represent him in the above cause while they were located at Swanson, Martin & Bell, LLP. He is now represented by both attorneys at their new firm of Katz, Goldstein & Warren.

16. Christopher D. Wehrman, who is a partner at Katz, Goldstein & Warren and an experienced practitioner in matrimonial law. He received his law degree from the Michigan State University Detroit College of Law in 2002, his Master's Degree in Public Administration from Michigan State University in 2002, and his undergraduate degree from Michigan State University in 1998. He received his certification for family law mediation through the Northwestern University and is a member of the Chicago Collaborative Law

FILED DATE: 6/3/2022 1:31 PM   2016D009534

DocuSign Envelope ID: 30DE2796-1845-42A5-B7DF-C02CB0419557

**EXHIBIT MM CONTINUED**

Group and member of the American Academy for Certified Financial Litigators. His rate is $375.00 per hour

17.   There is currently a pending a motion by Peter Matt for Rule 137 Sanctions, a Motion for to Modify Parenting Time and Allocation of Parental Responsibilities based in part on MEGAN MATT's continued non-compliance with court orders as well as Dr. Blechman's preliminary recommendations, and Motion for Entry of QMCSO.

18.   MEGAN MATT has further filed a $20,000,000 federal lawsuit to further intimidate PETER MATT and the court system.

19.   PETER MATT's counsel estimates that her prospective attorneys' and costs in preparing this matter for the ongoing litigation of $25,000.00.

20.   PETER MATT lacks the financial resources to pay for his attorneys' fees and costs in these proceedings and will be greatly prejudiced in his ability to assert his rights in this matter unless MEGAN MATT is ordered to advance such funds on his behalf.

16.   Section 5/508(a) of the IMDMA provides, in relevant part, as follows:

The court from time to time, after due notice and hearing, and after considering the financial resources of the parties, may order any party to pay a reasonable amount for his own or the other party's costs and attorney's fees. Interim attorney's fees and costs may be awarded from the opposing party, in a pre-judgment dissolution proceeding in accordance with subsection (c-1) of Section 501 and in any other proceeding under this subsection. At the conclusion of any pre-judgment dissolution proceeding under this subsection, contribution to attorney's fees and costs may be awarded from the opposing party in accordance with subsection (j) of Section 503 and in any other proceeding under this subsection. Fees and costs may be awarded in any proceeding to counsel from a former client in accordance with subsection (c) of this Section. Awards may be made in connection with the following:
    (1) The maintenance or defense of any proceeding under this Act.

4

DocuSign Envelope ID: 30DE2796-1845-4345-B7DF-C02CB0419557

## EXHIBIT MM CONTINUED

(2) The enforcement or modification of any order or judgment under this Act.

(3) The defense of an appeal of any order or judgment under this Act, including the defense of appeals of post-judgment orders.

(3.1) The prosecution of any claim on appeal (if the prosecuting party has substantially prevailed).

(4) The maintenance or defense of a petition brought under Section 2-1401 of the Code of Civil Procedure seeking relief from a final order or judgment under this Act. Fees incurred with respect to motions under Section 2-1401 of the Code of Civil Procedure may be granted only to the party who substantially prevails.

(5) The costs and legal services of an attorney rendered in preparation of the commencement of the proceeding brought under this Act.

(6) Ancillary litigation incident to, or reasonably connected with, a proceeding under this Act.

(7) Costs and attorney's fees incurred in an action under the Hague Convention on the Civil Aspects of International Child Abduction.

All petitions for or relating to interim fees and costs under this subsection shall be accompanied by an affidavit as to the factual basis for the relief requested and all hearings relative to any such petition shall be scheduled expeditiously by the court. All provisions for contribution under this subsection shall also be subject to paragraphs (3), (4), and (5) of subsection (j) of Section 503.

The court may order that the award of attorney's fees and costs (including an interim or contribution award) shall be paid directly to the attorney, who may enforce the order in his or her name, or that it shall be paid to the appropriate party. Judgment may be entered and enforcement had accordingly. Except as otherwise provided in subdivision (e)(1) of this Section, subsection (c) of this Section is exclusive as to the right of any counsel (or former counsel) of record to petition a court for an award and judgment for final fees and costs during the pendency of a proceeding under this Act.

21. The Affidavits of PETER MATT and Christopher D. Wehrman are attached hereto and made a part hereof as Exhibits "A" and "B".

22. PETER MATT has met the criteria set forth in 750 ILCS 5/508 for the payment of prospective attorneys' fees and costs and is requesting that this Court require MEGAN MATT to make such payments on his behalf in this matter so he can be properly and fairly represented concerning the matters presently pending before the Court.

FILED DATE: 6/3/2022 1:31 PM   2016D009534

5

DocuSign Envelope ID: 30DE2796-1845-4345-B7DE-C02CB0419557

FILED DATE: 6/3/2022 1:31 PM    2016D009534

### EXHIBIT MM CONTINUED

WHEREFORE, the PETITIONER, PETER MATT, respectfully requests the following relief:

A.      For the entry of an Order pursuant to 750 ILCS 5/508 providing that MEGAN MATT pay the sum of $25,000.00 to the law firm of Katz, Goldstein & Warren as and for PETER MATT's prospective attorney's fees in this matter;

B.      MEGAN MATT pay 100% of the GAL fees going forward, and reimburse PETER MATT the amount of $11,233.96 for the GAL fees he paid to date;

C.      MEGAN MATT pay 100% of the 604.10(b) fees going forward, and reimburse PETER MATT the amount of $8,900.00 for the 604.10(b) fees he has paid to date;

D.      For such other and further relief as this Honorable Court deems just.


_____

PETER MATT


KATZ, GOLDSTEIN & WARREN
Christopher D. Wehrman, Esq.
Firm No: 35921
2345 Waukegan Road, Suite 150
Bannockburn, Illinois 60015
(847) 317-9500

DocuSign Envelope ID: 30DE2796-1845-4345-B7DF-C02CB0419557

## EXHIBIT MM CONTINUED

ATTORNEY NO. 35921

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

IN RE THE MARRIAGE OF:                )
PETER MATT,                           )
      Petitioner,                 )
                             )   No. 2016 D 9534
And                                   )
                             )
MEGAN MATT,                           )
      Respondent.                 )

### EXHIBIT "A"
### AFFIDAVIT OF PETER MATT IN SUPPORT OF
### PETITION FOR PROSPECTIVE ATTORNEYS' FEES,
### AND FOR ALLOCATION OF EXPERT AND GAL FEES

    I, PETER MATT herein certify under penalty of perjury pursuant to Section 5/1-109 of the Code of Civil Procedure as to the following:

1.    I am the Petitioner in the above-captioned matter.

2.    I have personal knowledge of the matters stated in my Petition for Prospective Attorney Fees and For Allocation of Expert and GAL Fees and verify that they are true and correct, and if called upon to testify would do so consistently with the allegations contained therein.

**FURTHER AFFIANT SAYETH NOT.**

    Under penalties as provided by law pursuant to Section 5/1-109 of the Code of Civil Procedure I certify that the statements set forth in this instrument are true and correct except as to matter therein states to on information and belief and as to I certify that I verify believe the same to be true.

DATED: _6/2/2022_                        _____
                                              PETER MATT

FILED DATE: 6/3/2022 1:31 PM   2016D009534

DocuSign Envelope ID: 3DDE2796-1845-42A5-BZDF-C02CB0419557

ATTORNEY NO. 35921

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

IN RE THE MARRIAGE OF:            )
PETER MATT,                       )
     Petitioner,                 )
                                 )      No. 2016 D 9534
And                               )
                                 )
MEGAN MATT,                       )
     Respondent.                 )

**EXHIBIT "B"**
**AFFIDAVIT OF CHRISTOPHER D. WEHRMAN IN SUPPORT OF**
**PETITION FOR PROSPECTIVE ATTORNEYS' FEES,**
**AND ALLOCATION OF EXPERT AND GAL FEES**

     I, Christopher D. Wehrman, herein certify under penalty of perjury pursuant to Section 5/1-

109 of the Code of Civil Procedure as to the following:

1.     I am the partner primarily responsible for representing PETER MATT in the above
     captioned matter.

2.     The information stated in the attached Petition for Prospective Attorney Fees and
     Allocation of Expert and GAL Fees the status of the proceedings in this cause and the
     estimates of fees and costs PETER MATT is likely to incur to participate adequately
     in the litigation of this cause are matters within my personal knowledge and expertise
     which are true and correct to the best of my knowledge, and if called upon to testify in
     this cause, I would do so consistently with the allegations contained hereinabove.

**FURTHER AFFIANT SAYETH NOT.**

DATED: 6/3/2022 _____

*Christopher D. Wehrman*
E99FF188EC8F4AA...
CHRISTOPHER D. WEHRMAN

     Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure,
I certify that the statements set forth in this instrument are true and correct except as to matters therein
stated to be on information and belief and as to such matters I certify that I verily believe the same to
be true.

*Christopher D. Wehrman*
E99FF188EC8F4AA...
CHRISTOPHER D. WEHRMAN

FILED DATE: 6/3/2022 1:31 PM  2016D009534

8

DocuSign Envelope ID: 30DE2796-1845-42A5-B7DF-C02CB0419557

## ATTORNEY'S STATEMENT

I, the undersigned, state that I am one of the attorneys employed by the firm of KATZ, GOLDSTEIN & WARREN and representing the party who has signed the foregoing pleading. I certify that I have read the foregoing pleading and that to the best of my knowledge, information and belief, formed after reasonable inquiry of my client, said pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, and that said pleading is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

KATZ, GOLDSTEIN & WARREN

By: *Christopher D. Wehrman*
E99FF188EC8F4AA...

One of the attorneys for PETER MATT

## CLIENT'S VERIFICATION

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, I certify that the statements set forth in this instrument are true and correct except as to matters therein stated to be on information and belief and as to such matters I certify that I verily believe the same to be true.

PETER MATT

Christopher D. Wehrman (cwehrman@kgwlaw.com)
Katz, Goldstein & Warren
410 N. Michigan Ave., Ste. 400
Chicago, Illinois 60611
(847) 317-9500
#35921

FILED DATE: 6/3/2022 1:31 PM    2016D0009534

THE LAW OFFICES OF
# BRADLEY R. TROWBRIDGE
3257 NORTH SHEFFIELD AVENUE, SUITE 104
CHICAGO, ILLINOIS 60657

April 13, 2022

Ms. Megan Mason
419 Greenleaf Ave.
Wilmette, IL 60091

**Re: Subpoena**

Ms. Mason,

We are in receipt of your subpoena. By law, you must pay a fee when you request documents via subpoena. You failed to do that. Nonetheless, we have enclosed the PRTSC you are seeking. We do not keep emails from cases we are no longer involved in.

I did not fail to disclose communications and notifications to you. Courts shut down on March 17, 2020, for several months due to the pandemic. You provided me information to file a Response to the PRTSC in question. You attended and testified at the hearing on that PRTSC. Clearly, you were aware of the existence of that PRTSC. To say you were not aware of it is not only inaccurate, but also bizarre.

Finally, nothing I did or did not do while representing you in 2020 has any bearing on your current litigation. I reviewed your file online and discovered you've employed the services of multiple attorneys since I represented you. Multiple PRTSC motions have been filed against you. You were recently, again, found in contempt of court.

Our office will have no further communication with you.

Regards,

*Bradley Trowbridge*

Brad Trowbridge

Enc.

 **Megan M <megan42@gmail.com>**

---

## your subpoena
8 messages

---

**gablechman@aol.com** <gablechman@aol.com>                                        Fri, Apr 8, 2022 at 4:08 PM
Reply-To: gablechman@aol.com
To: "megan42@gmail.com" <megan42@gmail.com>, "pleadings@kgwlaw.com" <pleadings@kgwlaw.com>,
"bender@caesarbenderlawcomcast.com" <bender@caesarbenderlawcomcast.com>

Dear Ms. Mason
I am in receipt of your Subpoena for Documents in case number 2016 D 9534. Please be advised that I cannot honor
your subpoena for the following reasons:
1. I do not release information in my file before the report is written
2. It appears your Subpoena is ex parte. No notice was given to the other attorneys in this case.
3. Raw psychological data cannot by law be released to a client. It must be released to a licensed mental health
professional
4. And, apart from the initial retainer of $2000 that you tendered at the beginning of the evaluation, you have not paid
the remaining $2000
5. I would appreciate also a statement from you indicating you are still actively involved in the evaluation as your prior
email makes it appear you are no longer involved


Gerald A. Blechman, Ph.D..

---

**Megan Mason** <megan42@gmail.com>                                                Sat, Apr 9, 2022 at 7:03 AM
To: gablechman@aol.com
Cc: "bender@caesarbenderlawcomcast.com" <bender@caesarbenderlawcomcast.com>, "pleadings@kgwlaw.com"
<pleadings@kgwlaw.com>

Hi Dr. Blechman,

I find this email confusing. Are you indicating that you believe I owe you funds? I paid the amount required. Any unpaid
invoices are news to me. Please use US Postal service to present to me any invoices you feel are owed. My address is:
419 Greenleaf Ave.
Wilmette, IL 60091

I will not pay them but I will pass them to the bankruptcy trustees.

If you have specific requests for outstanding issues related to the activities referred to as. Custody evaluation please let
me know. I was ordered by court to participate. I did and do.

I never indicated I wished to end the activities referred to as a custody evaluation, Dr. Blechman. I simply must make
efforts to protect myself and my children. To that end I will not meet/speak alone with individuals where I fear there may be
further instances of witness intimidation and whistleblower retaliation regarding litigation in federal and appellate court.

To that end I simply require a civil rights observer, attorney or my own therapist in attendance should you have a need to
speak or meet with me privately. Alternately we can both give consent to record future interactions. The same applies to
the honorable Mr. Bender.

Thanks,

Megan
[Quoted text hidden]

---

**Mail Delivery Subsystem** <mailer-daemon@googlemail.com>                          Sat, Apr 9, 2022 at 7:03 AM
To: megan42@gmail.com

EXHIBIT OO CONTINUED



## Address not found

Your message wasn't delivered to
**bender@caesarbenderlawcomcast.com** because the domain
caesarbenderlawcomcast.com couldn't be found. Check for
typos or unnecessary spaces and try again.

The response was:

```
DNS Error: DNS type 'mx' lookup of caesarbenderlawcomcast.com responded with code NXDOMAIN
Domain name not found: caesarbenderlawcomcast.com
```

Final-Recipient: rfc822; bender@caesarbenderlawcomcast.com
Action: failed
Status: 4.0.0
Diagnostic-Code: smtp; DNS Error: DNS type 'mx' lookup of caesarbenderlawcomcast.com responded with code NXDOMAIN
 Domain name not found: caesarbenderlawcomcast.com
Last-Attempt-Date: Sat, 09 Apr 2022 05:03:46 -0700 (PDT)

---------- Forwarded message ----------
From: Megan Mason <megan42@gmail.com>
To: gablechman@aol.com
Cc: "bender@caesarbenderlawcomcast.com" <bender@caesarbenderlawcomcast.com>, "pleadings@kgwlaw.com" <pleadings@kgwlaw.com>
Bcc:
Date: Sat, 9 Apr 2022 07:03:35 -0500
Subject: Re: your subpoena
----- Message truncated -----

---

**Megan Mason** <megan42@gmail.com>                              Fri, Apr 15, 2022 at 7:36 AM
To: gablechman <gablechman@aol.com>

Hi Dr. Blechman,

I would kindly appreciate a response.
1. What is the basis for your request for money? Did you mail an invoice?
2. Do you need to speak to me, if so, are you able to accommodate my request to not meet alone?

Thanks,
Megan
[Quoted text hidden]

---

**Megan Mason** <megan42@gmail.com>                             Tue, Apr 19, 2022 at 11:34 AM
To: gablechman <gablechman@aol.com>

Why were you soliciting a payment of $2,000?
[Quoted text hidden]

EXHIBIT OO CONTINUED

---

**gablechman** <gablechman@aol.com>                                      Tue, Apr 19, 2022 at 11:53 AM
To: Megan Mason <megan42@gmail.com>

> Megan:
> I apologize for payment request.  I forgot your evaluation was a604.10(b) and therefore you would be responsible for half
> the fee. I believe Mr Matt has paid, so therefore, reimbursement is between you and him.
> I would like to meet with you but it is not my practice to include a 3rd party or record the session. If you accept these
> terms, let me know so we can schedule an appointment.
>
> Gerald A. Blechman, Ph.D.
>
>
>
> Sent from my Verizon, Samsung Galaxy smartphone
> [Quoted text hidden]

---

**Megan Mason** <megan42@gmail.com>                                      Tue, Apr 19, 2022 at 12:02 PM
To: gablechman <gablechman@aol.com>

> Hi Dr. Blechman,
>
> What would you like to meet about? We have had several meetings together. I would like to understand the basis. Your
> office is more than an hour away and I work full time. I don't understand why your report wasn't submitted months ago and
> any clarification would be appreciated, including a demand for further contact.
>
> Why are you opposed to having a third party present? I believe it's a pretty simple accommodation to facilitate my
> comfort and feeling of security. This accommodation requires no expense or inconvenience to you. I fail to see why you
> would be opposed. Please explain.
>
> Thanks,
> Megan
> [Quoted text hidden]

---

**Megan Mason** <megan42@gmail.com>                                      Fri, Jun 17, 2022 at 5:56 PM
To: gablechman <gablechman@aol.com>

> Hi Dr. Blechman,
>
> I am a bit confused about the below conversation. I was told at the time of your appointment that your fee is $4,000 for
> which I was responsible for half. I received an invoice at your office and paid your $2,000 in May or June of last year. On
> April 8 you wrote to me, "apart from the initial retainer of $2000 that you tendered at the beginning of the evaluation,
> you have not paid the remaining $2000".
>
> I then wrote to indicate I was not aware of an outstanding invoice. I indicated that I wished for you to mail any
> outstanding invoices to my address and provided my address for your reference.
>
> You then wrote back,"I apologize for payment request.  I forgot your evaluation was a604.10(b) and therefore you would
> be responsible for half the fee." You have not since this time provided an invoice.
>
> In a motion for fees filed by Christopher Wehrman he wrote, "Through April 11, 2022, Peter Matt has paid $8,900 to Dr.
> Blechman for Dr. Blechman's investigation and appearances in this matter."
>
> Again, do you believe funds are owed to you? Have you invoiced me?  Why do you not want to put your own name on the
> motion for fees if you believe the claim is truthful?
>
> Megan
>
> [Quoted text hidden]