

FILED KG

6/21/2022

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MEGAN MASON,<br>Plaintiff; | Case Number: 1:22-CV-2315 |
| A.D.M., by his mother, Megan Mason,<br>Plaintiff; | |
| T.M.M., by his mother, Megan Mason,<br>Plaintiff; | ORAL ARGUMENT IS REQUESTED |
| **Vs.** | |
| THE CIRCUIT COURT OF COOK<br>COUNTY ILLINOIS, Defendant, et al; | |

## PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND TEMPORARY

## RESTRAINING ORDER

I am a pro se plaintiff in this underlying complaint, a divorced single mother of two minor

children, A.D.M. and T.M.M., also plaintiffs in this suit. In this complaint I have alleged

that multiple employees, attorneys and affiliates of the Circuit Court of Cook County,

Illinois have engaged in  acts to defraud me, my minor children and the Court itself while

acting under color of state law. I have further alleged that defendants named in this suit have

conspired to obstruct justice, engaged in witness intimidation, and conspired in acts of

witness retaliation while acting under the color of state law. I maintain that these acts continue to this date. I further allege that parties named as defendants in this suit have exercised such wanton disregard for my privacy and digital identity that my court records remain corrupted and inaccurate and access to justice impossible in the Circuit Court of Cook County, Illinois.

I filed the initial Complaint in Case Number: 1:22-CV-2315, naming, specifying and documenting the defendants' actions above on May 3, 2022 in the Northern District of Illinois. As of this filing more than forty five days later no defendant Robert Johnson, who is named personally in this suit, is still acting as presiding judge over divorce case 2016 D 9534 in which I am defendant and mother to A.D.M. and T.M.M.. Defendants Grace Dickler and Iris Martinez are still acting in a supervisorial capacity over individuals and matters directly impacting the Illinois divorce case 2016 D 9534 and are named personally as defendants in this suit. Defendant Michael Bender is still acting as guardian ad litem to plaintiffs A.D.M. and T.M.M., in which capacity he has served four years. Defendant Gerald Blechman is still acting as custody evaluator to A.D.M. and T.M.M. in which capacity he's served more than a year. Defendant Kaye Mason named in this suit is still serving as scheduler for all matters before Jude Johnson, including case 2016 D 9534. I have in my federal complaint accused all these individuals of specific criminal acts and all are sued personally.

I can genuinely think of no legitimate basis for their continued engagement in the aforementioned capacity after having received notice of this suit on May 19, 2022 or earlier and ask them to voluntarily and immediately resign or recuse themselves from such roles or,

in the case of Ms. Dickler and Ms. Martinez, to transfer this case to a neutral venue, upon receipt of this motion.

My concerns are more than theoretical and I am seeking urgent injunctive relief to stop ongoing crimes against me and my children and to prevent defendants named in my Case before this Court from retaliating against me as a federal witness through forced separation from my children and the imposition of usurious financial obligations intended to force me into incarceration.

On the face of it, it is impossible for an individual to serve as an attorney, judge or court appointed witness in a state court case impacting a litigant, while at the same time being sued in a serious federal RICO conspiracy claim made by that litigant. On the face of it, it is impossible for a plaintiff who is seeking to be made whole in a federal Civil Rights action against a Circuit Court and in another action against the Clerk of that same Court to litigate a case in that same Court, using that same Clerk's resources.

In fact, having detailed my request for preliminary injunctive relief in , I assert that such action ought never be required by a citizen litigant. I do not believe that there is case law regarding whether a judge can preside over a case involving a litigant who has duly initiated a federal suit against that same judge because it is so obviously unethical and proscribed. I believe the failure of parties to recuse themselves is evidence of their wish to obstruct justice and to prevent facts in this case, including direct evidence of their criminal acts, from being disclosed through court proceedings.

I am therefore seeking a temporary restraining order to prohibit any party named in this case from revoking my parenting rights, imprisoning me or seizing my personal property

either through new order or order to enforce existing financial obligations under state law.

I am further seeking injunctive relief on a preliminary basis in two forms:

1. Order any party named as a defendant in this case to immediately withdraw or recuse themselves from involvement in any ongoing legal matters involving myself or either of the other plaintiffs in the case, A.D.M. and T.M.M.. This includes Illinois case 2016 D 9534. Specifically:

   a. Robert Johnson be ordered to immediately recuse himself as judge from case 2016 D 9534;

   b. Kaye Mason cease participating in any way in the case management of case 2016 D 9534;.

   c. Christopher Wehrman and Steven Klein be ordered to immediately withdraw as counsel to Peter Matt and removed from case 2016 D 9534;

   d. Michael Bender be ordered to immediately resign as Guardian Ad Litem to A.D.M. and T.M.M.;

   e. Gerald Blechman be ordered to immediately resign as Custody Evaluator in case 2016 D 9534.

2. Because The Circuit Court of Cook County and  Division Chief Timothy Evans, Presiding Judge Grace Dickler and Clerk Iris Martinez are all likewise named as defendants in this suit it is obvious that this case must be immediately transferred to another county in the interest of justice. Because of its easy commute I request that this case be transferred within three days to the Circuit Court of Lake County and all

rulings in this case stayed until such time. I understand that Illinois law typically requires that a litigant pays for transfer but in this case I fear that parties in the Circuit Court may intentionally inflate the cost of transfer in furtherance of acts intended to intimidate me as a federal witness. To prevent this, while showing due deference to Illinois law, I therefore I ask that this court please order the Circuit Court of Cook County to pay the cost of transfer while maintaining the right to recover these fees at the resolution of this case if they are found to be entitled to sue for legal costs and other litigation expenses.

3. Take immediate steps to ensure the physical safety my minor children, Plaintiffs A.D.M. and T.M.M., namely:

   a. To prohibit the children from leaving the country until resolution of this case and to order that their passports and birth certificates be held by authorities deemed to be appropriate by this court, such as a federal law enforcement agency.

   b. To require all parties named as defendants in this case to disclose within ten days any: business interests, property, life insurance policies, trusts or any other legal or financial entity related in any to A.D.M. or T.M.M. or both A.D.M. and T.M.M. or any other entity they know to be owned by A.D.M. or T.M.M., collectively or individually, even where defendants may only have indirect knowledge and are not themselves affiliated with such assets.

   c. To order that any defendant in this case to disclose within ten days any business interests with Mr. Peter Matt outside their official court roles and to

5

disclose any business interests with either or both the minor children A.D.M. and T.M.M., examples of which might include but are not limited to roles as a: guardian, trustee, executor, director of a company, consultant or an attorney for any of the previously mentioned parties in a matter other than Illinois case 2016 D 9534..

d. To prohibit any party named in this case from serving in any of the above named capacities or having any other business interest with Peter Matt, A.D.M., or T.M.M..

I present below a Memorandum in Support of Temporary Restraining Order and Preliminary Injunction along with documentary evidence in support of my claim. I pray that this Court take any other measures it may see fit to protect my children.

Respectfully Submitted by,

/S/ Megan Mason

Plaintiff Pro Se and on behalf of Plaintiffs A.D.M. and T.M.M.

6

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| MEGAN MASON,<br>Plaintiff;<br><br>A.D.M., by his mother, Megan Mason,<br>Plaintiff;<br><br>T.M.M., by his mother, Megan Mason,<br>Plaintiff;<br><br>**Vs.**<br><br>THE CIRCUIT COURT OF COOK<br>COUNTY ILLINOIS, Defendant, et al; | Case Number: 1:22-CV-2315 |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR**

**PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER**

**Table of Contents**

Facts p. 9

Argument p. 14

    I.     Plaintiffs have a strong likelihood of success on the merits. p. 14

    II.    Plaintiffs will suffer irreparable injury without injunction p. 30

   III.    The Injunction will not substantially injure others and furthers the public interest p. 31

Conclusion p. 34

I, Megan Mason, acting present this memorandum on behalf of myself, petitioner, and on behalf of my minor children, A.D.M. and T.M.M., present this memorandum in support of our Motion for Temporary Restraining Order and Preliminary Injunction.

**Facts**

As of this writing, Christopher Wehrman, in acts I assert to be personal criminal acts in the guise of state court proceedings, has explicitly referenced the fact of my having filed a complaint in the Northern District of Illinois; my truthful testimony about his and his conspirators' federal crimes made in other state court proceedings; and my truthful written statements made in pleadings before the Circuit Court of Cook County, Illinois and made to this Court itself as a basis to revoke my parental rights. These acts, I maintain, are criminal acts in furtherance of Mr. Wehrman's and others' interest in intimidating me from testifying against them in court for their federal crimes and to retaliate against me for truthful testimony before this and other courts.

Bypassing Illinois law regarding modification of a duly enacted parenting plan, these defendants are seeking, in a hearing scheduled for July 5, 2022  to impose permanent and complete separation from my children  and to impose unjust and usurious financial penalties through financial sanctions.

No proper notice was given for these legal events. The first motion to take my children's mother away was sent "instanter" April 28th, 2022 with no date for presentation of the motion given at filing.  Later, parties agreed on a hearing date through email and an order entered in that effect. Though there has been a guardian ad litem tasked with writing a report for more than four years, it will not be presented before the event being described as a hearing. This guardian ad litem, Michael Bender, is accused in this suit of leading the racketeering enterprise of which I am a victim. It is my sincere belief that Mr. Bender does not wish to file a report because it would be quite literally impossible to write a report indicating support for revoking my parenting rights without perjuring himself and making admissions or deceptions

9

as to his personal role in federal crimes being considered before this Court.

   The Custody Evaluator appointed more than a year ago, Dr. Gerald Blechman, likewise refuses to submit a written report. I believe this is likewise out of a wish to avoid negatively impacting his legal defense for his personal federal crimes. Regarding a legal 604.10 b evaluation, which is what Dr. Blechman was ordered to do, for which he invoiced me, for which I paid fees, "The professional's report must, at a minimum, set forth the following: (1) a description of the procedures employed during the evaluation; (2) a report of the data collected;  (3) all test results…", and the,"The advice to the court shall be in writing and sent by the professional to counsel for the parties and to the court not later than 60 days before the date on which the trial court reasonably anticipates the hearing on the allocation of parental responsibilities will commence." Dr. Blechman conducted multiple psychological assessments in September and October of 2021 and to this date refuses to provide to me the results or the raw data. I have attempted to subpoena the same. In particular I believe Dr. Blechman and his co conspirators wish to avoid having Mr. Matt's psychological assessment results entered into any court record.

   No legitimate evidence has been presented as a basis for any of these recent court actions to impose penalties and harm on me and my children, nor has appropriate service and notice been given for the motion to estrange my children from  me. In addition to seeking to revoke my parenting rights, parties are seeking to impose unjust and punitive financial sanctions on me, in direct furtherance of efforts at witness intimidation and retaliation. In a document entered into the Circuit Court of Cook County Illinois on April 28th, 2022 by Mr.s Wehrman and Klein, stated my testimony against him and his conspirators as a basis for punishment over several pages, quoting my truthful claims made before this Court. He writes, "Megan

Matt further alleges in her Motion to Dismiss the following: 'Mr. Bender, as Guardian Ad Litem, and Mr. Wherman (sic), as opposing counsel, are also witness to a documented solicitation of a bribe by a public official during the course of his appointed duties on December 5th, 2020 by Dr. John Palen, a court appointed parenting coordinator and close colleague of Mr. Bender who Mr. Bender personally asked to be appointed." and "Mr. Bender has hidden allegations of domestic violence by Mr. Matt including reports by credible third parties such as doctors, police and clergy". (Exhibit LL). These statements are true and I will testify under oath to the same. Any party may state under oath or through appropriate proceedings in this matter their disagreement but, barring trial of fact, there is no ethical or legal reason to use a mother's true statements to punish her.

 I ought not to be punished because my truthful accounts of the actions I've witnessed by a powerful man like Mr. Bender disclose criminal acts by Mr. Bender, Mr. Wehrman and others. They ought not to commit crimes. In the same way I ought not to be punished for my truthful utterances regarding my ex husband's crimes. In this same document Mr. Wehrman quotes me as asserting, "Mr. Matt does not believe in the traditional taxation system and therefore keeps his considerable family wealth and assets hidden abroad". And further, "Mr. Matt enjoys displaying a facade of poverty and on two occasions he has engaged in welfare fraud." (Exhibit LL) My statements are true and I ought not to face retaliation for such truthful testimony. Mr. Wehrman further quotes my truthful testimony about Mr. Matt's use of a bank account shared with his father to launder funds and my truthful testimony about his and parties' scheme to defraud A.D.M. but does not provide a single example of a fact that is untrue, again, because for parties to overtly or directly deny almost any of these claims would be an obvious act of fraud. Mr. Wehrman is seeking both attorney fees and financial sanctions.

In a document called "Matt Motion to Modify Parenting Time" filed instanter, without notice or presentation date and time given on April 28th, 2022, Mr. Wehrman further commits two acts in furtherance of acts intended to criminally hide evidence related to child abuse reports. He writes, "In an attempt to manipulate the Court, Megan Matt has gone so far as to allege that T.M.M. is suicidal (which was unfounded by T.M.M.'s medical provider and the 604.10 (be) evaluator". This blatant and destructive lie is contrary to fact and evidence before this court. I reported in writing to my attorney that T.M.M. stated to me in Defendant Gerald Blechman's presence multiple (at least three) times that he wished to kill himself. (Exhibit Y). As it happens I never used the word "suicidal" and even then did not think he would kill himself; in fact it was my attorney who insisted on contacting Mr. Bender who she naively believed to care about children. T.M.M. again made these statements in Mr.Matt's and Dr. Patricia Brunner's presence (Exhibit Z). Dr. Brunner then documented in her visit notes and treatment summary. "Teddy said he wanted to kill himself" and that "Teddy didn't want to go to his dad's." (Exhibit Z) Her clinical recommendation was "Teddy does not want to go to his dad's" (Exhibit Z). On another date, T.M.M. made statements describing physical abuse, specifically Mr. Matt slapping him in the face and threatening to keep him up all night for refusal to do extra academic enrichment activities in addition to his school work. Dr.s Woskow and Brunner both attempted to contact Mr. Bender who refused to take or return their calls. Dr. Woskow presented these statements in a sealed document to Mr. Bender, who has hidden them.

I raise the above issue not out of an interest in litigating the divorce matter, clearly not an appropriate use of this Court's limited time, but rather to directly support my assertion that Mr. Wehrman and Mr.Bender are persisting in the criminal acts of obstruction of justice and

fraudulent filings in furtherance of their racketeering enterprise. My statements are true and serious and should be considered in the appropriate venue which is this Court, whether through my current civil action or through the subsequent criminal suits which will also be before this court. Quite simply, judges and attorneys do not get to adjudicate their own crimes. That is not a privilege afforded to any citizen in this nation, including those with high status in the legal profession. They do not or, I pray, get to use the guise of court proceedings to threaten, punish and hinder their legal adversary in a federal suit.

  In another punitive action, Mr.'s Wehrman, Klein, Blechman, and Bender are further seeking to impose devastating punitive financial sanctions in a document called "Petition for Prospective Attorney's Fees and For Allocationn of Expert and GAL Fees" filed June 3, 2022, the conspirators are brazenly seeking to impose financial sanctions through a state Court on me for my just, truthful actions before this Court and, perplexingly, the parties seem to believe they can sue me in a state court for fees associated with the cost of litigating his personal federal crimes.   In his document Mr. Wherman writes, "Megan [Mason] has further filed a $20,000,000 federal lawsuit to further intimidate Peter Matt and the court system. Peter Matt's counsel estimates that her prospective attorneys' and costs in preparing this matter for ongoing litigation of $25,000." (Exhibit MM). As of this filling Mr. Matt is not a defendant in the suit.

  Mr.s Klein and Wehrman further make deceitful statements to hide Mr. Matt's financial assets and pattern of financial crimes, in furtherance of their conspiracy. They boldly state that "Peter Matt lacks the financial resources to pay for his attorneys' fees and costs in the proceedings and will be greatly prejudiced in his ability to assert his rights in this matter unless Megan Matt is ordered to advance such funds on his behalf" (Exhibit MM). These

assertions were made even after I explicitly asserted, as I maintain now, that these parties know of and participate in Mr. Matt's criminal money laundering activity, part of which purpose is to disguise hidden significant wealth.. I do acknowledge that I believe Mr. Matt, like all the defendants, to be the subject of a related federal criminal investigation but one may not sue a federal witness for the legal costs of defending one's crimes.

Parties are seeking $90,000 in direct fees and an untold sum in sanctions and other attorneys fees to be allocated at a later date. No evidence is provided in support of such claims. I am in the process of filing Chapter 7 Bankruptcy in the Northern District of Illinois and after paying rent each month, I am currently unable to meet the minimum payment toward debts incurred from these parties' prior financial abuse and fraud, much less to pay rent, make these payments and to buy food for myself and my children every month. It is my genuine fear that Defendants named in this case, many of whom are sophisticated attorneys, and all of whom are aware that I am destitute and unable to discharge child support payments through bankruptcy proceedings, are taking these actions in defiance of law and fact in a scheme to incarcerate me for failure to make child support payments. I sincerely fear that they may be seeking to imprison me to stop my legal self advocacy and testimony before this Court.

**Argument**

      **I.**    **Plaintiffs have a strong likelihood of success on the merits.**

**A. My claims are uncontested and ought to be taken as prima facie fact.**

Multiple defendants in this case, directly involved in ongoing litigation at the state level that involves me, were publicly accused by me of serious criminal on or before November 30th, 2020 through my truthful attestations and testimony before an Illinois Court. These are incredibly sophisticated individuals with professional legal experience if not actually members of the Illinois Bar. None, to my knowledge, have made oral or written statements to contradict the facts I have repeatedly raised over the last eight months. My claim must therefore be taken as fact on a prima facie basis.

In general the defendants have to this date attempted to obfuscate consideration of my claims by blanket refusal to respond to the allegations against them. Most notably, all parties received Complaint number 1:22-CV-2315, the form to request a magistrate hearing, as well as two copies of waiver of service form and a stamped envelope addressed to me, as Plaintiff, within a day or two of May 19, 2022, via means of Federal Express or hand delivery to an official department mail box or by hand delivery to a responsible adult tasked with receiving documents (eg a secretary). No party has made a legitimate response though on May 19th, 2022 Christopher Wehrman did send or direct to be sent a communication which I perceive to be in furtherance of fraud and in direct violation of the False Claims Act (18 U.S. Code § 1001).

As a group, the Defendants have demonstrated a disturbing intent to stonewall my pursuit of justice that is implicitly proscribed by Federal Code of Civil Procedure, which clearly demands in Rule 4 d that:

 *"An individual, corporation, or association that is subject to service under Rule 4(e), (f), or (h) has a duty to avoid unnecessary expenses of serving the summons."*

None has upheld that duty.

15

I assert that the parties are engaging in intentional obfuscation out of a personal interest to avoid perjuring themselves or truthfully disclosing their activity in federal crimes. I ask this Court not to reward behavior that is on the face of it contrary to justice. In protecting the American judicial system, I ask this Court to again consider that some of these individuals are or have been incredibly powerful judges whose sacred duty includes holding citizens accountable to the truth. We, lay people, are not allowed to refuse to participate in the justice system when we fear doing so might harm us.

Accordingly, Plaintiffs have a strong likelihood of success on the merits, will suffer irreparable injury without an injunction, and an injunction will not substantially injure others while furthering the public interest. This Court should, therefore, grant Plaintiffs' request for a preliminary and permanent injunction.

**B. The prima facie basis for urgent injunctive relief.**

Below I have detailed the three most distressing actions and related crimes committed by multiple Defendants in this case, each of which is supported by documentary evidence appended to this Memorandum. I can provide upon request many more examples.

**Scheme to exploit A.D.M. in furtherance of fraud**

1. Around the first week of May 2021 I was ordered by Robert Johnsn, presiding Judge, and Michael Bender, Guardian Ad Litem, to attend a meeting with Dr. John Palen, a close friend of Mr. Bender then serving as a parenting coordinator at Mr. Bender's request. I was also under court order by Judge Johnson, at Mr. Bender's instruction, to pay Dr. Palen, at a rate of $150 per hour for this meeting. Dr. Bender's role was stated

to facilitate parent making decisions and weigh in when parties were in disagreement.

2. Dr. Palen scheduled this meeting with myself and my ex husband, father to A.D.M. and T.M.M., Peter Matt at Mr. Matt's request. The goal of the meeting, as stated by Mr. Matt was to, "Get Megan not to interfere with my new business plan". As summarized in an email subsequent to the meeting and in a business plan prepared by Mr. Matt and sent to me and Dr. Palen subsequent to the meeting, Mr. Matt explained that his new business plan is to name A.D.M., who does not consistently count to ten, as CEO of his business. Mr. Matt stated the purpose was to obtain contracts from IBM for businesses owned by disabled people. In his business plan he states, "With A.D.M. as the new owner and decision maker Goedecke will become a diversified supplier certified by DisabilityIN" (Exhibit J). This would also be in furtherance of Mr. Matt's wish to avoid reporting salary or paying employment taxes and reporting and earnings as 1099 contractor fees as he could avoid naming himself as an employee. Mr. Matt explicitly stated in his business plan, "[A.D.M]'s salary, as well as any distributions, should remain with Peter". (Exhibit J)

3. At this meeting in May, I said I was opposed because A.D.M. is not the CEO and I know that would be fraud. I then said I was concerned that if A.D.M. is a business owner he might lose his disability benefits when he turns eighteen. Mr. Matt said this would not be a problem because A.D.M.'s shares would "revert" to him when he turns eighteen. At this meeting, Dr. Palen said he thought that sounds like a nice activity for A.D.M. and encouraged Mr. Matt to send me a business plan.

4. On May 11, 2021 Mr. Matt sent a business plan to all parties by email, outlining the plan described here. In addition to an explicit description of his intent to exploit and

defraud a minor child, Mr. Matt wrote, "Megan should have no claim to any of the money or shares even in the case of death by [A.D.M.]". (Exhibit J). At no point has Dr.Palen stated that Mr. Matt ought not to conduct this fraudulent scheme.

5. In addition to all the obvious concerns regarding A.D.M.'s exploitation I know Mr. Matt to use others to launder money from his own assets in Europe, under the guise of gifts and loans from his father, Leo Matt, who resides in Germany and controls Mr. Matt's business, Goedecke Germany. Goedecke Germany was formed in the years prior to our divorce when Mr. Matt moved our family business Goedecke and Associates, purchased by us as a marital asset in San Juan Capistrano, California in 2009 to Germany and renamed it Goedecke Germany under his and his father's control. Mr. Matt does not believe he has a duty to report the existence of this company to the IRS, to report his salary or to report its assets, specifically bank accounts, over which his father also has control. So Mr. Matt struggles with laundering his earnings to the United States. I believe a primary goal of giving A.D.M. ownership in the US business is to launder money.

6. I further believe that vehicles such as businesses and trusts, titled in one of the minor childrens' names were intended to be used to pay bribes and kickbacks to individuals in this case. Specifically I fear that parties may wish to impose a permanent guardianship of A.D.M. and to compensate themselves in the role of guardian, executor, attorney or other role.

7. Peter Matt, who in my ten years of marriage never indicated an interest in forming an estate plan for himself, also noted in this one page business plan, "Megan should have no claim to any of the money or shares even in case of the death of A.D.M.". (Exhibit

J).

8. I was at that time and remain fearful of even more serious exploitation and harm to A.D.M while he is under the control and influence of Christopher Wehrman, Michael Bender, Gerald Blechman and Robert Johnson, all of whom continue to support and defend Mr. Matt's fraud scheme and in over a year have at no point indicated they feel the scheme is inappropriate.

**Trowbridge Fraud scheme**

9. Between March, 2020 and August, 2020 Mr. Bender and Mr. Trowbridge conspired with Mr. Wehrman, Mr. Matt's attorney, Presiding Judge Robert Johnson and Kaye Mason to have me tried and found in contempt of court without my awareness.

10. Prior to March 8, 2020 someone I believe to be Mr. Trowbridge, at Mr. Bender's instruction, created a fake email address and, purporting to be me, logged into the Circuit Court's e filing system Odyssey File and Serve from Tyler Technologies based in Texas. Because there are no security features in the Circuit Court's version of Odyssey File to verify the identity of pro se litigants anyone can log into Odyssey file and click a box attesting to be "me" and then, receiving a "confirmation" email at the fake email address, the individual can "confirm" they are "me".

11. Once he had created the fraudulent login details the individual I believe to be Mr. Trowbridge was able to change my service contact address. Since October, 2016, when my case began, I had been living at 423 Lind**en** Avenue in **Wilmette** in the **60091** zip code. Someone I believe to be Mr. Trowbridge changed my mailing address to 423 Lind**a** Avenue in **Chicago** with a **6089**1 zip code. After this change two

announcements from the court were returned "Addressee Not Found". Notably I would not receive any notice about the postponement of a court date that I was not informed was scheduled due to subsequent fraud. (Exhibit A)

12. I would not learn about this and the other acts of fraud until much later but throughout this time Mr. Trowbridge mentioned "problems with the court software". I have never heard anyone else mention problems with the court computer system though it is a claim Mr. Trowbridge still repeats.

13. When I eventually had occasion to learn what a docket is and that I could look at it, in the summer of 2021, I began to discover some of these irregularities. In June, 2021 I visited the clerk's office and spoke  to the woman who handles requests for printouts from the Docket. She told me that the change to my address was made by "me". I said, "No, *I* didn't make the change". She said, it was your email. I said it was not *my* email, would she please tell me what email was used purporting to be mine. She would not.

14. I happen to have already had a login for Odyssey file at this time associated with the only personal email I have used for court filings. The Circuit Court version of Odyssey file allows for seemingly any number of individuals to identify themselves as a party named in the case without flagging the existing user. This is to say, unlike most secure software, when someone created a new log in with my name, there was no "flag" in the form of an email saying, "Someone wants to change your address and email, is that you?", for example.

15. In June, 2021 I called Tyler Technologies to ask for the IP address and email used to make these changes. These changes were made by someone attesting to be me so I

believe I own this information. The software company would give me this information.

16. On March 8, 2020 Mr. Trowbridge was served with a Petition for Rule to Show Cause against me, or contempt allegation, filed by Mr. Matt through Mr. Wherman. He aggressively hid this petition and associated court appearances over the next four months, making efforts on two occasions to actively dissuade me from being suspicious, confirming "nothing was happening" .

17. Mr. Trowbridge billed me for reading the PRTSC on March 8, 2020 but I would not see the four word line item on the March bill until a year later. Neither party informed me of the allegation voluntarily over the next four months. This was his first overt act of fraud by hiding the petition.

18. On April 6th, 2020 a continuance was allowed due to Covid.

19. On April 10th a post card was mailed to the fraudulent address for me in Odyssey File ("Linda" Avenue). On that same date an email was sent to Brad Trowbridge at his verified email. The notice was to inform me of the continuance of a court date I did not know about. Mr Trowbridge still did not inform me of a PRTSC or a scheduled court date (Exhibit A). This was his second  act of fraud in not disclosing the court date.

20. Mr. Matt is a vexatious litigant and I mistakenly believed that during the early Covid lockdowns there was no court activity so on April 22, 2020I wrote to Mr. Trowbridge to express relief that "no motions were being filed". At this point in time I would have referred to any written court pleading as a "motion", including a petition. On April 22, 2020, I wrote to Mr. Trowbridge:  *I hope you're well and your clients are not suffering too badly from quarantine. I'm personally quite pleased that no motions are being filed right now, a nice break =)."* (Exhibit B)

21. On April 22, 2020, Mr. Trowbridge wrote back:*"Megan. Yes, unfortunately it took a pandemic to stop Peter's abuse of you!"*. (Exhibit C). This was his third act of fraud in actively assuaging any fear and deceiving me as to avoid discovering the truth.

22. On May 26th, 2020 a continuance was allowed due to Covid.

23. On May 27th, 2020 a post card was mailed to the fraudulent address for me in Odyssey File. On that same date an email was sent to Brad Trowbridge at his verified email. The notice was to inform me of the continuance of a court date I did not know about. Mr Trowbridge still did not inform me of a PRTSC or a scheduled court dat. This was his fourth act of fraud by not disclosing this information.

24. On July 6, 2020 a status call was held. I have no idea who was there or what was said.

25. On July 12, 2020 I noticed a reference to court on Michael Bender's bill for the court appearance on July 6, 202. I emailed Mr Trowbridge, "Zoom Court What?" (Exhibit D)

26. Mr. Trowbridge wrote back, not mentioning a contempt allegation, so I assumed it was a status call for Mr. Bender's removal. He wrote, *"We had a zoom court date of July 6 that I had on my calendar as July 7. That could have only have been for a short time. I also don't know how much preparation there could have been. It looks like a lot of activities have been lumped into one line item. The next zoom date is July 20 at 9 AM. Anything I need to know?"* (Exhibit E). This was his fifth act of fraud.

27. On July 20, 2020 there was a status call which Mr. Trowbridge attended. At that time I believed it was simply a call for Mr. Bender to step down from the GAL appointment. My understanding was that Mr. Bender had agreed to step down the fall before. At this point I did not know there was a PRTSC.

28. Following Mr. Trowbridge's instructions I did not attend this status call. I do not know if parties expressed surprise at Mr. Trowbridge's absence from the prior status call. I don't know if he had in fact been absent, as this is based on Mr. Trowbridge's statement and he has lied to me many times. I don't know if Mr. Trowbridge lied about me. I do not know if Mr. Trowbridge was asked why he did not file a response or indicate he had received the contempt allegation four months before.

29. It is not normal for a litigant to decline to answer a petition, to decline to appear at court, and for her attorney to do likewise for four months. I have attended many status calls during my entanglement with the Domestic Relations Division of the Circuit Court. In my experience when any division judge, including Judge Johnson, sees one party missing he will ask the attorney in attendance if he has spoken to the party and he will ask any other court official such as a GAL if he has spoken to the party. Usually they will call the person immediately, particularly now that one can call into a Zoom hearing, to avoid having to schedule another date.

30. Judge Johnson, Mr. Bender and Mr. Wehrman have all refused to acknowledge my requests for explanation.

31. The most obvious lack of action is any inquiry by Mr. Bender during this time. The Court's appointment of Mr. Bender is based on the Domestic Relations Division custom of placing a GAL as the adjudicator of all matters relating to the minor children. No matter what the law says, all Domestic Relations Division attorneys I've spoken to have told me that Mr.Bender has the final decision making authority for the children on all matters and acts as their advocate. The fact that Mr. Bender can document no efforts to contact me through my attorney or directly during this period is

because he was aware of Mr. Trowbridge's fraud and in fact directed him to commit the acts.

32. Mr. Bender has had every opportunity to provide to me dates of calls, emails or other proof that he was in contact with Mr. Trowbridge regarding the allegation of failure to comply with parenting orders. Which is to say, that he was doing his job. He has provided no explanation or evidence.

33. Mr. Trowbridge refuses to tender to me his emails with Mr. Bender and Mr. Wehrman from this time.

34. On July 20, 2020  I again asked if anything was filed against me and if Mr. Bender had stepped down. On that date Mr. Trowbridge finally informed me of the PRTSC. (Exhibit F)

35. Mr. Trowbridge removed the proof of service before emailing me the PRTSC. Mr. Trowbridge still refuses to provide to me the original proof of service and the email with which it was sent. This was his sixth act of fraud.

36. Mr. Wehrman refuses to provide the email showing the date and delivery of the PRTSC to Mr. Trowbridge or any response, such  as an email stating "received". Mr. Wehrman is conspiring in Mr. Trowbridge's voluminous acts of fraud out of self interest and in conspiracy in their shared criminal acts.

37. On July 20, 2020 when I finally learned about the contempt allegation, after the fourth scheduled court appearance. I stated, "I don't see any evidence. I don't understand what he wants", noting that there were no exhibits included with the PRTSC or appended to the PRTSC itself provided to me by Mr. Trowbridge.

38. I know from experience that Mr. Wehrman sends his proof of service as a page at the end of his pleadings and often the exhibits at the end of the pleading. In the proof of service Mr. Wehrman filed for this PRTSC on March 8, 2020 he attested to the Court under threat of perjury that he emailed this PRTSC to Mr. Trowbridge at the email address I know to be Mr. Trowbridge's on March 8, 2020.

39. On July 21, 2020 at 3:20 pm I wrote to Mr. Trowbridge to explain that I'd filed an ethics complaint about Mr. Bender to the ARDC. (Exhibit G)

40. On July 21, 2020 someone I believe to have been Mr. Trowbridge acting under the instructions of Michael Bender used the fake email to again log in to Odyssey File and file a "pro se" appearance on my behalf, though Mr. Trowbridge had not told me he quit or filed a motion to withdraw. This was also told to me by a clerk at the Division Clerk's office in June of 2021.

41. I believe that Mr. Trowbridge then informed Mr. Bender that I had complained about him to the ARDC because the next day Mr. Bender, who had not spoken to me in almost a year, had his assistant contact me to schedule a meeting to check in.

42. The main allegation in the PRTSC, which Judge Johnson ruled I had done, was that I violated an order by Judge Johnson that "ABA shall continue". The motion was filed on March 8, 2020 a time when all therapy was stopped in the state by law. Since there was no evidence of contempt and contempt wasn't happening, I did not think a ruling of contempt was possible. However, at the hearing, which went very fast and during which time Mr. Trowbridge said virtually nothing, I was found in contempt.

43. Mr. Wehrman also did display some documents at trial which I had never before seen. I still see no exhibits ever filed by Mr. Wehrman on the docket with regard to this

PRTSC allegation and I've never received stamped copies of any exhibits related to the spurious contempt ruling.

44. However I recall at trial Mr. Wehrman screenshared an email from me to A.D.M.'s ABA therapist provider.  I wrote this email because A.D.M. had reported to me that when his father supervised ABA therapy over Zoom he was holding down A.D.M. in the chair and kicking and dragging him back when he tried to escape. His brother T.M.M., who is neurotypical, confirmed this.

45. I reported the violence surrounding Zoom therapy to DCFS, to Mr. Bender and to A.D.M.'s school  in the summer of 2020.

46. I also purchased a home license for the ABA software, Teach Town, designed to be more appropriate for virtual ABA for children like ADM who struggle to attend over video conferencing tools. At this time I was delivering the program to him. Motivated primarily by a desire to stop A.D.M.'s mistreatment, I told the therapy provider I did not need Zoom therapy because the school provided another online ABA alternative. Nobody, including Mr. Matt, Mr. Bender, or Mr. Trowbridge informed me there was a concern about me administering Teach Town as an accommodation to COVID lockdowns.

47. I was found in contempt of court in a ruling not supported by fact on August 21, 2020. Because the contempt ruling was so shocking to me, Mr. Trowbridge said he would file a motion to reconsider. He did not.

48. The period for filing an appeal or motion to reconsider in Illinois is thirty days after ruling. I know this now, but I did not know this then. Mr. Trowbridge quit forty days

after ruling with no appeal filed. When he quit he again referred to ongoing issues with Odyssey File and health issues.

49. Because of what appeared to me to be profound incompetence and a reference to health issues during a stressful time geopolitically, I assumed Mr. Trowbridge had an addiction of some kind and so I did not look into his malfeasance in 2020.

50. I was ordered extremely high attorneys fees as part of my sanction for the baseless contempt ruling. This contempt ruling continues to be raised as a primary basis to attack my character before the Court, and "evidence" of parental unfitness.

51. This contempt ruling, clearly based on multiple acts of fraud, is now being used in a motion to revoke my parenting rights completely from half decision making authority and half parenting time in the Parenting Plan entered in 2017 to an immediate revocation of all parenting rights and no parenting time.

52. Mr. Trowbridge still vehemently persists in the fraud scheme and persists in ongoing acts of deceit and obfuscation intended to curb my efforts to access justice and to hide his crimes and the crimes of others. On April 13, 2022, Mr. Trowbridge responded to a document subpoena with a continued refusal to provide: the notification of filing received with the PRTSC filed on March 8, 2020 or the email from opposing counsel delivering the PRTSC to Mr. Trowbridge at that time. Mr. Trowbridge wrote, knowing full well that he had received filings and correspondence from the court on a continued basis between March and August of 2020:

53. "I did not fail to disclose communications and notifications to you. Courts shut down on March 17, 2020 for several months due to the pandemic." and continues, deceitfully, "Clearly, you were aware of the existence of that PRTSC. To say you were

not aware of it is ot only inaccurate, but also bizarre". (Exhibit NN). Obviously the Courts were impacted, live hearing curbed, but they did not "shut down" in that notifications, pleadings and correspondence were made. Mr. Trowbridge's denial of this is in furtherance of his racketeering activity and fraud.

54. Iris Martinez, Clerk of the Circuit Cout of Cook County has maintained and refused to correct Mr. Trowbridge's fraudulent records. My official service address of record in her division remains 423 Linda Ave., Chicago, a non-existence address at which I never resided. I still do not consistently get service and never receive electronic service from the Clerk, as reequested, other than filings I submit myself for matters in 2016 D 9534.


**Palen solicitation of a bribe**

55. A few months after his appointment On August 28, 2020 I became aware of further misconduct by Dr. Palen and the other parties in my case which continues to be unexplained and disturbing. On December 5, 2020 I learned that Mr. Bender, Mr. Wehrman, Dr. Palen and Judge Johnson, via his clerk Kaye Mason, maintain a secret email thread with the heading, "IRMO Matt; 2016 D 9534; COURT ORDER", my divorce case number and married name. Although all parties and Judge Johnson refuse to share the emails with me I believe it is an ongoing conversation about my court case intentionally excluding me or anyone representing my interest. This thread is ex parte, including opposing counsel and excluding me or anyone representing me, and prohibited under Illinois law.

56. I learned about this email conspiracy because Dr. Palen accidentally copied me, then pro se, on an email intended for Judge Johnson's clerk, Kaye Mason, who shares my last name. He wrote, "I want to be paid. It is as simple as that." (Exhibit H) At this time Dr. Palen had a

positive retainer balance, no unpaid invoices and, legally, was already "paid". I was then and remain concerned a year and a half later that Dr. Palen was soliciting a bribe or kickback.

57. I was copied accidentally. Dr. Palen thought I was Ms. Kaye Mason, Judge Johnson's clerk, with whom I share a last name. Dr. Palen then lied, writing, "Sorry- this was meant for another case. I had not noticed Ms. Mason on the list of recipients." (Exhibit I). The subject line was my case number and married name and all parties, including Kaye Mason, are involved in my family's case.

58. There are more ex parte emails but all parties including Judge Johnson refuse to tender to me the other emails in this ongoing thread. I have subpoenaed the emails from both Brianna Steger, attorney for the Court, and from all parties in the email thread but have not received a response or a motion to quash. I have not received any of the emails though at one point in March, 2022 Judge Johnson affirmed the email thread exists because he said he'd "looked at them and they are fine". Illinois law demands all ex parte communications be swiftly shared with the party who was excluded. There are no exceptions. The Illinois Code of Judicial Conduct, Rule 61, Canon 3 explicitly states:

*A judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding except that: (a) Where circumstances require, ex parte communications for scheduling, administrative purposes or emergencies that do not deal with substantive matters or issues on the merits are authorized; provided the judge reasonably believes that no party will gain a procedural or tactical advantage as a result of the ex parte communication, <u>and the judge makes provision promptly to notify all other parties of the substance of the ex parte communication and allows an opportunity to respond.</u>*

## II.    Plaintiffs will suffer irreparable injury without injunction

### A.    By the written assertion by Christopher Wehrman in coordination with

**Gerald Blechman and Michael Bender, parties are using my testimony as a federal witness in the Northern District of Illinois as a basis for retaliation.**

In multiple filings, to be presented and I fear ordered as written on July 5th, Defendants Christopher Wehrman and Steven Klein, having scheduled a hearing with defendant Kaye Mason, employee to defendant Grace Dickler, will present multiple documents that reference this very civil action and my testimony herein for ordering $90,000 in sanctions I cannot afford and is based on no fact and completely and permanently revoking my parenting rights. Parties, after five years of a duly enacted Illinois parenting plan, which grants me 50% of parenting time under the law, with no evidence or basis presented, are seeking to completely prevent my children from seeing their mother. It would be an abomination. (Exhibits CC, HH, LL, MM)

**B. A.D.M. and T.M.M. are minor children in need of a parent who may advocate for them. Swift intervention is needed to protect their physical and emotional safety.**

It is my fear that another way by which parties may seek to obstruct justice through actions I believe to be personal, though in the guise of judicial proceedings under the color of Illinois law, is by preventing me from advocating for my children before this Court. Specifically, I find one of the most compelling and dangerous impacts of the Defendants' ongoing corruption is the exploitation of A.D.M. financially due to his status as a minor child with a disability. I fear my parenting rights may be revoked so that I may no longer act, legally, as his mother and advocate.

I would specifically note that the parties, as stated in recent state court filings, wish to give all authority over the minor children to Peter Matt, a known criminal who is, I believe,

actively participating in the exploitation described as A.D.M. Fraud Scheme. If the parties are successful in giving him full legal control of A.D.M. there can be no expectation that Mr. Matt will advocate for A.D.M.'s rights and legal protection.

And finally, Mr. Matt is a known criminal who has committed more than thirty aggravated felonies. It is reasonable to imagine he may be imprisoned for his crimes. Should Mr. Matt be incarcerated, my parenting rights having been eliminated, I fear that A.D.M. and T.M.M., who have a loving, supportive mother, may become orphaned wards of the State of Illinois. Such an event would be an abomination. This is indeed a an irreparable injury.

### III.     The Injunction will not substantially injure others and furthers the public interest

The majority of defendants in this suit have a primary obligation to act as neutral professionals within the judicial system and cannot, being neutral, have an interest in a litigant's venue or a personal interest in being involved in her litigation. In fact a legal authority who wishes to force contact and control over an individual who is his or her adversary in another legal proceeding, can only have ill intent so obvious is the conflict of interest. A wish to maintain coercive control over another is not a neutral wish.

In order to balance the equities and harms of any potential action by this court, I would ask that consideration be first given to the profound imbalance of powers between plaintiffs and defendants in this case. I am a single mother with no financial assets, family support or property of value who has filed bankruptcy and have no legal training or means to retain legal counsel. My children, also plaintiffs, are incredibly vulnerable as minor children, one of whom with significant cognitive disabilities. The defendants include primarily high income

31

individuals, including incredibly powerful judges, attorneys and court appointees with tremendous power over me as of this filing. Our judicial system is based on a concept of adversarial justice wherein two parties are given equal opportunity to present their facts and arguments before the Court. It is anathema to our system of justice to suggest that I might receive an equitable hearing before this Court if I must conduct my case and provide personal testimony with the knowledge that my legal adversaries have the opportunity to force separation from my children, to imprison me and to seize my possessions in retaliation for my true statements under oath against them. From this perspective the defendants can only be seen as opposing injunctive relief in order to maintain an exploitative advantage over me that was never envisioned by our legal system.

Public faith in the judicial system is based on the concept of a fair and independent judiciary and where a federal court intervenes in the actions within or by a state court, according to my understanding, it does so often in order to preserve this faith. I have made incredibly serious allegations about multiple judges and other court personnel of the Circuit Court of Cook County that ought to be considered under trial of fact. This is their right and mine.

I believe it is particularly important to also consider that family court impacts profoundly sensitive issues. American people do not want to believe that mothers lose their children without due process. Forced separation of children is regarded by the United Nations as a crime against humanity and I vehemently assert that the actions by defendants in this case subsequent to my public claims of corruption, are in no way official acts and are intended to subvert, not uphold Illinois parentage law. It is in the public interest to protect concepts of decency and to insist that state Courts act according to the laws of their state when determining matters of parenting rights.

I believe from my reading of both Illinois and federal case law that a fundamental concept of impartiality in our judicial system is that it is enough for citizens to perceive their judiciary as corrupt to undermine the functioning of our democracy. It is on the face of it implausible to believe that I could perceive any proceeding in or by the Circuit Court of Cook County as legitimate and in fact legal.

It is reasonable to consider the impact of transferring the post-decree litigation related to divorce case 2016 D 9534 on my former husband, Mr. Peter Matt, father to A.D.M. and T.M.M.. Such a transfer would benefit any legitimate litigant in furtherance of legitimate legal activity, including Mr. Matt in the pursuit of justice through the appropriate application of Illinois family law by removing the taint of corruption. Mr. Matt would further benefit by the removal of Christopher Wehrman and Steven Klein as his attorneys because it would be impossible for one to know if these pareties are acting in theirs wn interest, to avoid incarceration and financial penalties for their alleged personal crimes, while purporting to be acting as an attorney to Mr. Matt..

Under Illinois law parties may bring a divorce case to any suit that is convenient to   all parties. In fact, Mr. Matt and his attorney originally filed the divorce in the Chicago courthouse, which requires a commute of approximately forty five minutes in heavy traffic and expensive parking from our homes, rather than the Skokie Courthouse, also part of the Cook County Circuit Court and located fifteen minutes from our homes. I believe, in fact, he was instructed to do so by Mr. Klein in response to his client's wish to access corrupt parties in power to assist him in his own criminal schemes. The Lake County Courthouse in Waukegan is approximately forty five minutes drive from Mr. Matt's home, essentially the same driving time as the Daley Center where the Chicago Courthouse of the Circuit Court of

Cook County is located.

## Conclusion

  Although I do not have experience in the federal courts, I know that my allegations are
voluminous, disturbing and serious to any reader with a sense of decency. I allege that the
Domestic Relations Division of the Circuit Court of Cook County is so corrupted by the
misdeeds of defendants named in this suit that the proceedings in this division are inherently
illegitimate unless actions are taken to stop ongoing crimes. Please let my allegatings be
considered because questions about the legitimacy of our courts cannot go unanswered if we
expect our courts to remain functional.  "The purpose of a preliminary injunction is always to
prevent irreparable injury so as to preserve the court's ability to render a meaningful decision
on the merits." United Food Commercial Workers Union, Local 1099 v. Southwest Ohio Reg'l
Transit Auth., 163 F.3d 341, 348 (6th Cir. 1998) (citing Stenberg v. Checker Oil Co., 573 F.2d
921, 925 (6th Cir. 1978)).

  Apart from death, there could be no more irreparable injury to a young child, particularly a
child who has special emotional and mental needs as A.D.M. does and would struggle to
understand the abrupt removal of his only loving caregiver, to suffer forced estrangement from
their mother and primary caregiver. I fear for A.D.M.'s physical safety as well as the potential
to deeply traumatize both A.D.M. and T.M.M. through forced parental estrangement. Whether
through direct action, by revoking my parenting rights, or as a result of incarceration due to
my inability to meet the usurious support obligations imposed on me by a judge I maintain is
corrupt, this threat to my boys is real and imminent. I have been both childrens' primary
caregiver since I carried them in my body and have lovingly nurtured them to the best of my
ability ever since. I ask that this Court intervene to protect me and my children and to allow

my truthful claims to be heard and ruled upon without fear of grave harm to myself or to my children.

.Respectfully Submitted by

/s/Megan Mason

Megan Mason, Plaintiff  Pro Se

May 3, 2022

Exhibit A



CIRCUIT COURT OF COOK COUNTY
DOM REL DIV. RM. 802 DALEY CTR.
CHICAGO, IL 60602-1305

03-26-

U.S. POSTAGE >> PITNEY BOWES

ZIP 60602 $ 000.27
02 1W
0001375666 MAR 24. 2020

FILED-A
2020 APR 14 AM 8:46
DOROTHY BROWN
CLERK OF CIRCUIT COURT
DOMESTIC RELATIONS

MATT            MEGAN
423 LINDA APT 2E
CHICAGO,                    IL   68097

16D009534

Exhibit A
Continued

16D9534

04/14/2020

CIRCUIT COURT OF COOK COUNTY
DOM REL DIV. RM. 802 DALEY
CHICAGO, IL 60602-1305

U.S. POSTAGE >> PITNEY BOWES

ZIP 60602 $ 000.35⁰
02 4W
0000360973 MAY 14 2020

MATT        MEGAN
423 LINDA APT 2E
CHICAGO,              IL   68091

1

Exhibit A
Continued

16D09534

CIRCUIT COURT OF COOK COUNTY
DOM REL DIV. RM. 802 DALEY CTR.
CHICAGO, IL. 60602-1305

PRESORTED
FIRST CLASS



U.S POSTAGE PITNEY BOWES

ZIP 60602 $
02 1W
0001375006 MAY 2020

MATT          MEGAN
423 LINDA APT 2E
CHICAGO,                    IL  68891

000037242 9 JUN. 03. 2020
02 4W
ZIP 60563 $ 000.07⁶
U.S. POSTAGE PITNEY BOWES
16D009534

FIRST CLASS

                                    **Megan M <megan42@gmail.com>**

---

## Invoice

**Megan Mason** <megan42@gmail.com>                     Wed, Apr 15, 2020 at 10:31 AM
To: Brad Trowbridge <brad@bradtrowbridge.com>

Hi Brad,

I hope you're well and your clients are not suffering too badly from the quarantine. I'm personally quite pleased that no motions are being filed right now, a nice break =).

Please run the attached cc for the $200 balance.

Thanks,
Megan
[Quoted text hidden]

Exhibit C

 Gmail

**Megan M <megan42@gmail.com>**

---

## Invoice

**Brad Trowbridge** <brad@bradtrowbridge.com>       Wed, Apr 15, 2020 at 11:19 AM
To: Megan Mason <megan42@gmail.com>

Hi Megan. Yes, unfortunately, it took a pandemic to stop Peter's legal abuse of you! I don't think there's a cc attached unless there's a glitch on my end. Stay well!

**Brad Trowbridge**
**The Law Offices of Bradley R. Trowbridge**
**3257 N. Sheffield Suite 104**
**Chicago, IL 60657**
**P: 773-784-9900**
**E: brad@bradtrowbridge.com**

**PRIVACY AND CONFIDENTIALITY NOTICE**
The information contained in this communication is confidential and may be legally privileged. If you are not the intended recipient you are notified that any disclosure, copying, distribution or taking action based on the contents is strictly prohibited. If you received this communication in error, please immediately notify us at (773) 784-9900.

[Quoted text hidden]

Exhibit D

 Gmail

**Megan M <megan42@gmail.com>**

---

## Re: New Bill from Caesar & Bender, LLP
13 messages

---

**Brad Trowbridge** <brad@bradtrowbridge.com>                          Mon, Jul 13, 2020 at 12:37 PM
To: Megan Mason <megan42@gmail.com>

We had a zoom court date of July 6 that I had on my calendar as July 7. That could have only have been for a short time. I also don't know how much preparation there could have been. It looks like a lot of activities have been lumped into one line item. The next zoom date is July 20 at 9 AM. Anything I need to know?


On Sun, Jul 12, 2020, 12:25 PM Megan Mason <megan42@gmail.com> wrote:
Zoom court? What?

---------- Forwarded message ---------
From: **Caesar & Bender, LLP** <notifications@clio.com>
Date: Sun, Jul 12, 2020 at 12:18 PM
Subject: New Bill from Caesar & Bender, LLP
To: Megan Mason <megan42@gmail.com>




**Caesar & Bender, LLP**


Dear Megan Mason,

Your bill is ready. You can view it in the attachment.


### Account summary

**Amount due on Invoice 4768**                                        **$455.00**
Due date: 07/12/2020

**Amount due on 3 other invoices**                                    **$1,333.50**


### Total amount due                                                  **$1,788.50**


Pay online now

The payment link will expire in 90 days upon receipt.

 **Megan M <megan42@gmail.com>**

---

## Re: New Bill from Caesar & Bender, LLP

**Brad Trowbridge** <brad@bradtrowbridge.com>                    Mon, Jul 13, 2020 at 12:37 PM
To: Megan Mason <megan42@gmail.com>

We had a zoom court date of July 6 that I had on my calendar as July 7. That could have only have been for a short time. I also don't know how much preparation there could have been. It looks like a lot of activities have been lumped into one line item. The next zoom date is July 20 at 9 AM. Anything I need to know?

On Sun, Jul 12, 2020, 12:25 PM Megan Mason <megan42@gmail.com> wrote:
Zoom court? What?

---------- Forwarded message ---------
From: **Caesar & Bender, LLP** <notifications@clio.com>
Date: Sun, Jul 12, 2020 at 12:18 PM
Subject: New Bill from Caesar & Bender, LLP
To: Megan Mason <megan42@gmail.com>

                                    **Caesar & Bender, LLP**

Dear Megan Mason,

Your bill is ready. You can view it in the attachment.

### Account summary

**Amount due on Invoice 4768**                                        **$455.00**
Due date: 07/12/2020

**Amount due on 3 other invoices**                            **$1,333.50**

### Total amount due                                                  **$1,788.50**

Pay online now

The payment link will expire in 90 days upon receipt.

 **Gmail**

**Megan M <megan42@gmail.com>**

## Court
1 message

**Megan Mason** <megan42@gmail.com>
To: Brad Trowbridge <brad@bradtrowbridge.com>

Mon, Jul 20, 2020 at 2:46 PM

Hi Brad,
Did Michael make a motion to be removed? Anything filed against me?
M

 Gmail

FILED DATE: 12/3/2021 2:59 PM   2016D009534

**Megan M <megan42@gmail.com>**

---

## Re: New Bill from Caesar & Bender, LLP

**Megan Mason** <megan42@gmail.com>                                    Tue, Jul 21, 2020 at 3:20 PM
To: Brad Trowbridge <brad@bradtrowbridge.com>

Michael Bender has never spoken to the boys' pediatrician of six years, who has ordered the boys removed from Peter's home; to his developmental pediatrician of five years; or to our long-term ABA supervisor.

He's met my children one time. He's billed me for over a year and is trying to force me into therapy with him that he's not authorized to administer.

I thought he was going to ask to be removed. I'm done trying to appease him. I'm filing an ethics complaint. I don't think he'll retaliate any worse that what he's doing now.

I know you don't/wouldn't recommend it. And I'll make sure he knows you didn't recommend it.
[Quoted text hidden]

FILED
12/3/2021 2:59 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2016D009534
Calendar, 23
15818330

 Gmail

**Megan M <megan42@gmail.com>**

---

## IRMO Matt; 2016 D 9534; COURT ORDER

---

**John Palen** <jpalen@johnpalenphd.com>                                      Sat, Dec 5, 2020 at 1:53 PM
To: "Kaye Mason (Chief Judge's Office)" <kaye.mason@cookcountyil.gov>, Megan Mason <megan42@gmail.com>,
Christopher Wehrman <cwehrman@smbtrials.com>
Cc: Laura Fried <lfried@smbtrials.com>, Michael I Bender <mbender@caesarbenderlaw.com>

I want to be paid. It is as simple as that

JOHN M. PALEN, PH.D., LCSW

http://www.johnpalenphd.com

- Psychotherapy with Older Children, Adolescents, Adults and Families

- Therapy with Children Resisting Contact with a Parent

- Co-Parenting Counseling

- Parenting Plan Consultation/Child Custody Evaluation

- Individual and Family Counseling with Members of the LGBTQ Community and their Families.

- Consultation with Men attempting to become better Partners, Husbands and Fathers

5225 Old Orchard Road, Suite One

Skokie, Illinois 60077

T: 847-967-1695

Please be advised that because e-mail is not a secure form of communication I cannot ensure confidentiality of any information sent by email. Nevertheless, this message (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521, is intended to be confidential, and may be privileged.  If you are not the intended recipient, please be aware that any retention, dissemination or distribution is prohibited, . Please reply to sender if you have received this message in error, then kindly delete it.  Thank you for helping to maintain privacy.

 **Gmail**

**Megan M <megan42@gmail.com>**

---

## IRMO Matt; 2016 D 9534; COURT ORDER

---

**John Palen** <jpalen@johnpalenphd.com>                                        Sat, Dec 5, 2020 at 1:58 PM
To: "Kaye Mason (Chief Judge's Office)" <kaye.mason@cookcountyil.gov>, Megan Mason <megan42@gmail.com>,
Christopher Wehrman <cwehrman@smbtrials.com>
Cc: Laura Fried <lfried@smbtrials.com>, Michael I Bender <mbender@caesarbenderlaw.com>

Sorry- this was meant for another case. I had not noticed Ms. Mason on the list of recipients.

Regards,

John Palen

[Quoted text hidden]

# Goedecke and Associates, Inc.

| | |
|---|---|
| **Identity**<br><br>Goedecke offers high-quality, fast and reliable procurement service of IT, banking and POS spare parts. With ████ as the new owner and decision maker Goedecke will become a diversified supplier certified by DisabilityIN. ████ will learn valuable life skills. | **Problem**<br><br>Large, publicly listed maintenance and repair organizations are looking for high-quality spare parts and their fast delivery. As part of their social responsibility commitments to their shareholders these companies are looking to do business with companies that have a *Supplier Diversity Certification*. |
| **Our solution**<br><br>Our decades old organization acquired a large database of vendors that enables us to offer new and end-of-life parts to our customers. We can procure high quality parts quickly for a good price due to our long standing relationships, while being supplier diversity certified. | **Target market**<br><br>Large and global maintenance and repair organizations that are looking to outsource parts of their purchasing and supply chain processes in a social responsible way. |
| **The competition**<br><br>We are specialized in hard-to-find and end-of-life spare parts since many years and have built deep relationships with our business partners. Other companies that can offer such customized service are similar small and flexible companies like TeamOne, Redsis, RMC International. | **Revenue streams**<br><br>Goedecke sells directly to customers by responding to their daily RFQs. ████' salary, as well as any distributions should remain with Peter. Megan should have no claim to any of the money or shares even in case of the death of ████. Megan shall not impact the business in any way. |
| **Marketing activities**<br><br>Goedecke will search the internet for other public opportunities to respond to those RFQs inviations. | **Expenses**<br><br>• Labor to search parts and offer them to the customers after applying a margin<br><br>• Shipping and packing material cost<br><br>• Space for inventory, test and repacking the products |
| **Team and key roles**<br><br>Currently, the team members are:<br><br>• Peter Matt, the current 100% owner,  12 years tenure<br><br>• Leo Matt and family in Germany<br><br>• Hemendra (8 years), Pratik (8 years), Shashikant (6 years) and Jalpa (5 years) in India<br><br>████ is familiar with all the team members. | **Milestones**<br><br>As the business matures, Goedecke will improve its on-time-shipment performance, will get invited to more RFQ opportunities due to its diversified status and will on-board new clients.<br><br>Once ████ becomes eligible for SSDI and/or in case his ownership is no longer beneficial as been decided by Peter, his shares and title should fall back to Peter. |

 Gmail

**Megan M <megan42@gmail.com>**

---

## Truing up parenting plan for parenting time

**peter@goedecke.com** <peter@goedecke.com>
To: Megan Matt <megan42@gmail.com>
Cc: John Palen <jpalen@johnpalenphd.com>

Tue, May 11, 2021 at 11:26 AM

Hi Megan,
I talked with John on the below last week. He believes it is not necessary since he is already advising us on the scheduling and we don't have any conflict on this. If one of us would violate the schedule he would step in. In this regard the parenting plan is trued up and in place for about 5 years, I believe. I understand that you are upset about May 2nd, when dropped the kids late. Can we talk about this in our next meeting with John, which should be in about 2 weeks?

Further, I talked to ████' Orthodontist. They refunded us $500 of the $1,000 deposit. They are saying they cannot refund us the other $500 as it has paid for the panorex xray, lateral cephalometric and Dr's diagnostic treatment planning. This is understandable and ok from my side.

I also did a business plan, as suggested by John, for ████ becoming the main shareholder of Goedecke so the company would get a Disability Supplier Diversity Certification. Please see attach and comment. To address your specific concerns how it would impact ████' entitlements, I should guarantee that you or ████ would not have any financial disadvantages and most likely once ████ would turn 18 and eligible for SSDI, we would reverse ████' ownership and control.

Regards,
Peter

[Quoted text hidden]

---

📄 **Goedecke Business Plan with ████.pdf**
69K

 Gmail

**Megan M <megan42@gmail.com>**

---

## Blechman

---

**Megan Mason** <megan42@gmail.com>                                      Tue, Jul 27, 2021 at 7:07 AM
To: Alexandra Brinkmeier <ABrinkmeier@merelfamilylaw.com>

Hi Alex,

I wanted to update you on Blechman to make sure I'm not doing something that could damage my custody situation. I feel more comfortable with Blechman but I know this process can be dangerous for me so I want to be clear eyed.

So basically when I saw Blechman and the boys a couple weeks ago, Teddy kind of got worked up. Saying things like "I can't do anything". As Blechman said, he appears really disregulated. Blechman said he's worried about Teddy's state of mind and asked me to bring him back two more times.

I think, but don't know, that he wants me as opposed to Peter at the sessions to build rapport and help Teddy open up. Yesterday we went and he had me stay in the room the whole time. Teddy said a bit more, got quite emotional and even said he wants to kill himself. His main expressed issue to me is this Northwestern grammar class Peter is forcing on him, but he didn't bring it up to Blechman.

In the session Teddy kept saying he couldn't do anything, he thought that everyone was lying when we say he's doing well at school. Blechman specifically said, "I know for 100% fact that your mom is not saying that. Is someone else saying something that makes you think you're not good at anything?".

I was obviously a bit emotional hearing Teddy say that he wants to harm himself (I've never heard him say this) and asked Blechman if I should take Teddy to someone. He said for now just keep doing this, as in talking to Teddy about his feelings, sharing my experience getting him to express himself. I think this is another good sign. We talked about getting some books about feelings for kids. And I did order a deck of feelings conversation cards for us.

I had told Blechman in my last one on one meeting that the boys have been not wanting to go to Peter's. I admitted this was new and, in the past, when asked, both boys would say they like to the current schedule.

Now Teddy says he hates going to his dad's. Teddy said to me "my dad doesn't understand the word no", forces him to do these classes (by the way the PC told Peter NOT to put Teddy in summer school). I said to Blechman I would be happy to have them more or even full time.

Please let me know if I should or can be doing anything to protect myself. I don't want to have this blow back on me. I've disclosed more than I would like to Blechman about my own history of trauma (which would be used against me as the crazy/damaged parent) but it's very hard to participate in these sessions with Teddy without opening up (which could also be used against me as the cold mother!).

Thanks,
Megan

Name: Teddy Matt | DOB: 2/12/2012 | MRN: 2305322 | PCP: Patricia Brunner, MD

Exhibit Z

# Progress Notes

## Patricia Brunner, MD at 07/28/21 1700
Here with Mom and Dad for evaluation of potential self harm.

Teddy was in the car with his Mom two days ago and said "I want to kill myself" and then proceeded to hold his breath for a very short time.

He is here to evaluate that statement and action

Teddy has never seen how long he can hold his breath and has never tried to hold his breath for long.

When I asked him how he would hurt himself he said "I would get shot, or drowned". I asked how he would do that - he said " a bad guy would do it to me".

Teddy has no access to guns and no unmonitored access to water.

On further questioning I asked Teddy if he meant something else when he said he wanted to kill himself. He said he does not want to go to the Northwestern class ( "it's too hard". ) And he does not want to go to his Dad's house.

I asked Teddy if he was going to hurt himself in any way and he said no

I then spoke with Teddy's parents alone. My assessment is that Teddy does not want to hurt himself, is not even really aware what that would mean. He is clearly voicing frustration at 2 situations in his life. He does not want to do the Northwestern class and does not want to go to his Dad's house. I do think he is safe.

**Allergies**

| Allergen | Reactions |
|---|---|
| • Amoxicillin | Hives |

No current outpatient medications on file prior to visit.

No current facility-administered medications on file prior to visit.

PE: .NAD, no resp distress
Wt 66 lb (29.9 kg)

PE deferred d

A/P: assessment for safety - Teddy is safe. He does not want to go the the Northwestern class or his Dad's house.
Follow up if needed

**Medical Decision Making**

**Problems Addressed:**  1 undiagnosed new problem with uncertain prognosis (Moderate LOS 4)

**Amount and/or Complexity of Data Reviewed and Analyzed:** Assessment requiring an independent historian

**Risk of Complications and/or Morbidity or Mortality of Patient Management:**
Plan for scheduled follow-up

**Total Time Spent with Patient:**
Established Patient: 20-29 minutes

Due to the declared public health emergency during the COVID-19 pandemic, additional supplies, materials, and preparation time have been required and provided by the physician or APN and/or clinical staff over and above those usually included in an office visit.

# Patient Instructions

Patricia Brunner, MD at 07/29/21 1226
assessment for safety - Teddy is safe. He does not want to go the the Northwestern class or his Dad's house.
Follow up if needed

MyChart® licensed from Epic Systems Corporation © 1999 - 2022

**GERALD A. BLECHMAN, Ph.D.**
**CLINICAL PSYCHOLOGIST**
**1751 SOUTH NAPERVILLE ROAD, SUITE 206**
**WHEATON, ILLINOIS 60189**
**(630) 664-0525**


February 7, 2022


Michael Ian Bender, Esq.
150 North Michigan Avenue, Suite 2130
Chicago, Illinois 60601

Re: Former Marriage of Matt and Mason

Dear Mr. Bender:

I am the 604.10 (c) Evaluator in the above named case. On January 11, 2022. I received an emailed letter from Megan Mason which I believe also copied you. That email made it clear that Ms. Mason was refusing to cooperate further with the evaluation until "the Appeal on the substitution of judge for cause is ruled upon…" She made clear her notion that there were no parentage issues to deal with. She noted various resources we could utilize if we had concerns about parenting of either Angus or Teddy Matt. I do have concerns about parenting issues with both children which I express here in letter form rather than a 604.10(c) Report.

I had occasion to observe Angus and Teddy on Saturday, February 5, 2022. Before that observation, Mr. Matt emailed the following:

"Megan's motion to substitute the judge was denied and she is now appealing that. To do this she needs to file a bystander report. She wants to do this with the help of a recording she did or one of her fellow church members, who observed the hearing, did. I feel this can backfire on her, since it is illegal to record a court hearing. During the hearing I was a little frightened to hear how her mind works these days. She was saying things like: "…you know, first of all, I love democracy. And January 6, 2020 (sic), I saw people storming the Capital (sic). So, I feel spiritually and emotionally called to protect democracy, And my understanding of a judge's role in an American courtroom is that it is a sacred duty to uphold the judicial process in that court And so, Mr. Trowbridge's (her former lawyer) malfeasance only matters here because Judge Johnson, Mr. Wehrman, and Mr. Bender observed it over the course of four months, and did nothing to intervene. "[…]"I think the appointment of Michael Bender without any legal proceeding (sic) was an illegal appointment. And I believe it was related to Judge Johnson's bias against women, perhaps, against divorced women? I don't know. I don't really have to prove

that.  I just know, I am an American citizen, and a mother with a divorce agreement and guardian ad litem was appointed. And I see it as bias."

Due to the completion of her motion we now have a judge (the former one) again for our case. Now my lawyer can file something because Angus still doesn't have ABA. Megan doesn't allow ABA because she doesn't like that the therapist is unvaccinated and she doesn't like the therapist's work in general.  Megan is held in contempt for not allowing ABA so I am wondering what happens next.  Fact is finding a new ABA will take time.  Onboarding in regular circumstances can already take 3 months.  I know this because we have been bouncing around between therapists many years now. By now we have gone through around a dozen evaluation and onboarding processes.

Teddy is not allowed to go to soccer practice during her time, because Megan thinks he does enough soccer with me.  The back and forth between Megan's opinion about soccer is frustrating to Teddy I can imagine. He is a great player and he has the dream to become pro and certainly has the opportunity.  He is willing to put in the work, but he needs to be allowed to do so. Last week Teddy scored a 91% in the national MAP test for reading and 77% for math. i.e. is doing great academically.  He is very proud of this but doesn't agree with me that it might be due to his work with the Northwestern Gifted Program. He likes to work hard, but sometimes his initial reaction is "I rather watch TV"

Agnus has no ABA and I believe he is a bit regressing due to that.  He moved from regular PE to adaptive PE, and he regularly spitting, hitting, kicking smashing windows, disrobing and toileting issues i.e. stool on clothes. I think this is worse than last year.  The school says he needs to sleep more, but the medicine (Strattera) makes him anxious, etc., which also impacts his sleep. I will request a meeting with the school and with the psychiatrist to discuss.  When only Megan and me are discussing with the psychiatrist she will get opposing views (maybe out of principle). The meds also have some impact on his overall participation in Special Olympics, which he is doing with me.  He has been swimming 3 times per week, but one team doesn't allow his participation anymore, because he has gotten too weak and doesn't swim the whole pool length consistently.  I guess this is mainly due to the increased anxiety and drowsiness, which probably is the medicine side effect.

Regards,
Peter

 When I saw Teddy on February 5th, he was under good control as opposed to the time I saw him with his mother.  He was not anxious and not running around the room saying bizarre things about how unable he thought himself to be.  He was proud of doing well in school, but, as many children, resented that he had to spend extra time going to school.  In general, I saw a very bright boy who appeared perfectly normal.

Angus was obviously anxious, intolerant of being in my office and had a number of tics and peculiar behaviors.  He only related to his father and not to me.

This is an interim report with interim recommendations.

Megan apparently sees no problem with her parenting but I think keeping her autistic child out of the appropriate therapy is a form of child abuse. Therefore, I recommend that her decision making about Angus' treatment be modified so that Peter Matt is the sole decision-maker for the present and foreseeable future.

Similarly, Teddy is doing well and even though he dislikes the extra education at the Northwestern Program is thriving. Importantly, I did not see the obviously disturbed kid I saw last summer with his mother. Therefore, I think father should have sole decision making for Teddy as well. If Megan attempts to interfere with either Angus or Teddy's treatment, her parenting time should be curtailed.

If you have further questions, don't hesitate to call.

Respectfully,


Gerald A. Blechman, Ph.D.
Licensed Clinical Psychologist
Nationally Certified Custody Evaluator

All Domestic Relations cases will be heard by phone or video.
Go to http://www.cookcountycourt.org/LinkClick.aspx?fileticket=G7A8KAcSi8E%3d&portalid=0
  to get more information and Zoom Meeting IDs.
Remote Court Date: No hearing scheduled

**Exhibit HH**

FILED
4/28/2022 3:33 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2016D009534
Calendar, 23
17693377

*FILED DATE: 4/28/2022 3:33 PM   2016D009534*

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

| | |
|---|---|
| IN RE THE MARRIAGE OF: | ) |
| PETER MATT, | ) |
|     Petitioner, | ) |
| | )    No. 2016 D 9534 |
| And | ) |
| | ) |
| MEGAN MATT, | ) |
|     Respondent. | ) |

## MOTION TO MODIFY PARENTING TIME
## AND ALLOCATION OF PARENTAL RESPONSIBILITY

NOW COMES the Petitioner, PETER MATT, individually and by and through his counsel

from the law firm of KATZ, GOLDSTEIN & WARREN, and pursuant to Sections 610.5, 602.5,

602.7 and other provisions of the Illinois Marriage and Dissolution of Marriage Act, respectfully

requests that the Court adjust and modify parenting time and allocation of parental responsibilities.

In support of his motion, PETER MATT states as follows:

1.    The parties were married on January 24, 2007 in New York.

2.    As a result of their marriage, two children were born to parties, namely: Angus,

born August of 2008; and Theodore, born February of 2012.

3.    On September 27, 2017 a Judgment for Dissolution of Marriage (Judgment),

incorporating a Marital Settlement Agreement, was entered in this matter, thereby

dissolving the bonds of matrimony between the parties. A copy of the Judgment

is attached hereto and incorporated herein *by reference only* as **Exhibit "A."**

4.    On September 27, 2017, an Allocation Judgment and Joint Parenting Agreement

(JPA) was also entered in this matter allocating parenting time and joint decision-

making authority amongst the parties. A copy of the JPA is attached hereto and

incorporated herein *by reference only* as **Exhibit "B."**

FILED DATE: 4/28/2022 3:33 PM    2016D009534

5.   The parties' eldest child, Angus, has been diagnosed with mental health disabilities requiring medical care and court ordered ABA Therapy.

6.   The parties long standing post-decree litigation has caused the appointment of a GAL, parenting coordinator, and Section 604.10(b) evaluator.

7.   Megan Matt has alleged that Peter Matt has committed child abuse (which has not been supported by the GAL or the 604.10(b)), has been held in contempt of court for failure to participate in ABA Therapy for Angus (on multiple occasions), and refuses to co-parent with Peter Matt (as to Angus's ABA Therapy and Theodore's extra-curricular activities).

8.   In an attempt to manipulate the Court, Megan Matt has gone so far as to allege that Theodore is suicidal (which was unfounded by Theodore's medical provider and the 604.10(b) evaluator).

9.   Paragraph 1 of the Allocation of Parental Responsibilities Judgment section titled ALLOCATION OF DECISION-MAKING RESPONSIBILITES provides the parties with joint decision making over the children.

10.  Paragraph 1 of the Allocation of Parental Responsibilities Judgment section titled PARENTING TIME provides the parties with a parenting schedule, which was updated by agreement in a court order on May 25, 2021.

11.  Pursuant to Section 610.5 of the IMDMA, an allocation of parental responsibilities may be modified upon a showing that a substantial change in circumstances has occurred since the entry of the plan and modification is necessary to serve the children's best interests. 750 ILCS 5/610.5.

12.  Section 602.5 of the IMDMA governs the allocation of decision-making

responsibilities amongst the parents, including those significant decisions related to the child's health, education, religion, and extracurricular activities. Section 602.5 provides that decision-making responsibilities shall be allocated in accordance with the children's best interests and sets forth specific factors for the court's consideration, including a "catch-all" provision encouraging consideration of any other factor the court finds to be relevant. See 750 ILCS 5/602.5(a),(b),(c)(1)-(15).

13. Section 602.7 of the IMDMA governs the allocation of parenting time amongst parents and similarly states that parenting time shall be allocated in accordance with the child's best interests. Section 602.7 also delineates specific factors for the court's consideration, including a "catch-all" provisions of any relevant factor. See 750 ILCS 5/602.7.

14. Since the entry of the Allocation of Parental Responsibilities Judgment, a substantial change in circumstances has occurred which would warrant a modification of the current parenting schedule as well as a modification of legal custody/allocation of parental responsibility, including but not limited to the following:

    a. MEGAN MATT does not communicate with PETER MATT except for when she wants something related to the children reducing the efficacy of the parties' ability to co-parent.

    b. MEGAN MATT has engaged in a pattern of abuse towards PETER MATT preventing the parties' from co-parenting.

    c. MEGAN MATT undermines the ABA Therapy and will not allow it to occur during her parenting time at a time that the therapists are available.

    d. MEGAN MATT has caused multiple ABA therapists to be unable to work

- 3 -

FILED DATE: 4/28/2022 3:33 PM    2016D009534

FILED DATE: 4/28/2022 3:33 PM    2016D009534

with Angus.

e.  MEGAN MATT has caused multiple changes in medical providers unminding the efficacy of medical care for Angus.

f.  MEGAN MATT undermines PETER MATT in the selection and participation of extra-curricular activities for Theodore, including convincing Theodore to claim extra educational activities was causing him to be suicidal.

g.  MEGAN MATT caused the court appointed parenting coordinator, Dr. John Palen, to cease working with the parties.

h.  MEGAN MATT has refused to complete working with the Section 604.10(b) evaluator to allow the final report and recommendations to be tendered to the court.

i.  Dr. Blechman (the Section 604.10(b) evaluator) prepared a preliminary report on February 7, 2022 recommending that PETER MATT be the sole decision maker for Angus's treatment for the foreseeable future. A copy of the Dr. Blechman's February 7, 2022 recommendations are attached hereto and incorporated herein as **Exhibit "C."**

j.  Dr. Blechman further believes that PETER MATT should have sole decision making for Theodore.

15.  PETER MATT is a fit and proper parent to have additional parenting time with the children.

16.  PETER MATT is a fit and proper parent to have sole allocation of parental responsibilities over the children.

- 4 -

FILED DATE: 4/28/2022 3:33 PM    2016D009534

17.  It would be in the best interests of the children to adjust the existing parenting schedule to provide for additional parenting time with PETER MATT.

18.  It would be in the best interests of the children to provide PETER MATT with sole allocation of parental responsibilities.

19.  It would protect the emotional health of the children to adjust parenting time, and have the children's primary residence be with PETER MATT.

20.  It would protect the physical and emotional health of the children to give PETER MATT sole allocation of parental responsibilities.

WHEREFORE, the Petitioner, PETER MATT, respectfully prays as follows:

A.  That the Court grant to PETER MATT sole allocation of parental responsibilities over the children;

B.  That the Court grant to PETER MATT permanent residential possession, and parenting time with an adjustment to parenting time schedule for the children; and,

C.  For such other relief as this Court deems equitable and just.

Respectfully submitted,

PETER MATT

Christopher D. Wehrman (cwehrman@kgwlaw.com)
Katz, Goldstein & Warren
410 N. Michigan Ave., Ste. 400
Chicago, Illinois 60611
(847) 317-9500
#35921

- 5 -

## ATTORNEY'S STATEMENT

I, the undersigned, state that I am one of the attorneys employed by the firm of KATZ, GOLDSTEIN & WARREN and representing the party who has signed the foregoing pleading. I certify that I have read the foregoing pleading and that to the best of my knowledge, information and belief, formed after reasonable inquiry of my client, said pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, and that said pleading is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

KATZ, GOLDSTEIN & WARREN

By: _____

One of the attorneys for PETER MATT

## CLIENT'S VERIFICATION

UPON PENALTY OF PERJURY, I, the undersigned, state that I have read the foregoing pleading. I further state that this pleading is being filed with my consent and as part of my attorney's required duties in representing me. I further state that my attorney has explained to me that by signing this pleading and this verification, I am acknowledging that my attorney is acting with my consent and at my direction and that my attorney has based his statement on the factual information provided to him by me, as well as upon his investigation thereof.

_____

PETER MATT

Christopher D. Wehrman (cwehrman@kgwlaw.com)
Katz, Goldstein & Warren
410 N. Michigan Ave., Ste. 400
Chicago, Illinois 60611
(847) 317-9500
#35921

- 6 -

All Domestic Relations cases will be heard by phone or video.
Go to http://www.cookcountycourt.org/LinkClick.aspx?fileticket=G7A8KAcSi8E%3d&portalid=0
    to get more information and Zoom Meeting IDs.
Remote Court Date: No hearing scheduled

Exhibit LL

FILED
4/28/2022 3:33 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2016D009534
Calendar, 23
17693377

FILED DATE: 4/28/2022 3:33 PM    2016D009534

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

| | |
|---|---|
| IN RE THE MARRIAGE OF: | ) |
| PETER MATT, | ) |
|     Petitioner, | ) |
| | )    No. 2016 D 9534 |
| And | ) |
| | ) |
| MEGAN MATT, | ) |
|     Respondent. | ) |

### PETER MATT'S RULE 137 PETITION FOR SANCTIONS

NOW COMES the Petitioner, PETER MATT, by and through his attorneys from the law firm of KATZ, GOLDSTEIN & WARREN, and pursuant to Illinois Supreme Court Rule 137 and Section 508(b) of the Illinois Dissolution of Marriage Act, moves this honorable Court to issue sanctions against MEGAN MATT. In support thereof, PETER MATT states as follows:

1.    The parties were married on January 24, 2007 in New York.

2.    As a result of their marriage, two children were born to parties, namely: Angus, born August of 2008; and Theodore, born February of 2012.

3.    On September 27, 2017 a Judgment for Dissolution of Marriage (Judgment), incorporating a Marital Settlement Agreement, was entered in this matter, thereby dissolving the bonds of matrimony between the parties. **See Exhibit A, Judgment and Marital Settlement Agreement, incorporated by reference.**

4.    On September 27, 2017, an Allocation Judgment and Joint Parenting Agreement (JPA) was also entered in this matter allocating parenting time and

Exhibit LL Continued

FILED DATE: 4/28/2022 3:33 PM   2016D009534

joint decision-making authority amongst the parties. **See Exhibit B, Allocation Judgment, incorporated by reference.**

5. There has been significant post-decree litigation related to the minor children including multiple petitions for rule to show cause filed by Peter Matt (which have been granted or granted in part), petitions for rule to show cause filed by Megan Matt (leading to the appointment of a Section 604.10(b) evaluator), a recent serious of motions filed by Megan Matt to increase the costs of litigation and otherwise seek to embarrass and defame Peter Matt along with his counsel, the GAL, the Court, and the court staff.

6. Megan Matt is representing herself pro se.

7. Peter Matt caused a Petition for Rule to Show Cause to be filed on February 9, 2022 whereby he alleged that Megan Matt failed to comply with the Court's orders related to ABA Therapy for the parties' eldest child.  Following an evidentiary hearing on April 4, 2022, Megan Matt was held in contempt of Court for her failure to comply with the Court's November 19, 2019 Court Order. **See Exhibit C, April 4, 2022 Court Order.**

8. Megan Matt filed a Motion to Dismiss Peter Matt's February 9, 2022 Petition for Rule to Show Cause (which was denied on April 4, 2022). **See Exhibit D, Megan Matt's Motion to Dismiss, incorporated by reference.** Among her allegations in the motion were:

2

FILED DATE: 4/28/2022 3:33 PM   2016D009534

a. "There is a long well documented history of fraud, deceit and abuse of power by officers of the court and court appointees involved in this case which makes all actions by court appointees subject to extra scrutiny." **Ex. D, p. 4.**

b. "...Mr. Matt is so obviously and objectively impaired in his abilities to parent, to make decisions and to act ethically that it is impossible that Dr. Blechman could prepare a report based on facts such as documentary evidence, psychological assessments and visit notes that suggests Mr. Matt is capable of decent parental decision making or care." **Ex. D, p. 4.**

c. "Should Dr. Blechman purjor himself or exercise ethical misconduct, for example by conducting psychological assessments of the parties and then hiding these assessments from the Court, he would jeopardize his license as a psychologist in the state of illinois (sic)." **Ex. D, p. 4.**

d. "...I allege that Dr. Blechman is seeking to avoid disclosing reports of child abuse by Mr. Matt raised by the children's doctors on repeated occasions." **Ex. D, p. 4.**

e. "Should it be revealed that Dr. Blechman, along with Mr. Michael Bender, hid credible reports of abuse and child endangerment, both parties' reputations would suffer." **Ex. D, p. 4.**

9. Megan Matt further alleges in her Motion to Dismiss the following:

a. "Mr. Bender, as Guardian Ad Litem, and Mr. Wherman (sic), as opposing counsel, are also witness to a documented solicitation of a bribe by a public official during the course of his appointed duties on December 5th, 2020 by Dr.

3

John Palen, a court appointed parenting coordinator and close colleague of Mr. Bender who Mr. Bender personally asked to be appointed. **Ex. D, p. 5.**

b. "Mr. Bender has hidden allegations of domestic violence by Mr. Matt including reports by credible third parties such as doctors, police and clergy." **Ex. D, p. 5.**

c. "Mr. Bender and Mr. Wehrman have both hidden criminal tax fraud and money laundering by Mr. Matt." **Ex. D, p. 5.**

10. This was not the first time Megan Matt has filed a pleading with baseless and defamatory allegations. On November 30, 2021, Megan Matt filed her Petition To Substitute Judge For Cause. **See Exhibit E, Megan Matt's Motion for Substitution of Judge, incorporated by reference.** In her Petition, Megan Matt alleges:

a. "On December 5, 2020, Dr. John Palen, parenting coordinator, accidentally copied me on an email including Mr. Bender; Mr. Christopher Wehrman, opposing counsel; and Ms. Kaye Mason, Judge Johnson's clerk…" **Ex. E, p. 3.**

"b. This email is evidence of inappropriate ex parte communication wherein all parties in this case, except me, are given access to communicate with each other and with Judge Johnson via his clerk, on an ongoing, secretive basis." **Ex. E, p. 3.**

"c. This private email thread almost certainly gives the opposing parties in this matter a tactical advantage. This is on the face of it evidence of profound bias and prejudice toward me." **Ex. E, p. 3.**

b. "The second instance of ex parte communication observed by me occurred on

4

FILED DATE: 4/28/2022 3:33 PM   2016D009534

FILED DATE: 4/28/2022 3:33 PM   2016D009534

May 27, 2021…" **Ex. E, p. 4.**

"k. As a basis for his special treatment Mr. Wehrman suggests that because Judge Johnson appointed a custody evaluator no matters should be heard. This is simply unimaginable." **Ex. E, p. 5.**

"n. Ms. Mason agreed to follow Mr. Wehrman's instructions and set aside Cook County Domestic Relations Division policies in order to see if Judge Johnson would grant Mr. Wehrman his favor of blocking the hearing." **Ex. E, p. 5.**

"o. According to an email from Ms. Mason, without any reference to a legal basis, Judge Johnson verbally approved this favor to Mr. Wehrman and ordered her to cancel my duly scheduled hearing date." **Ex. E, p.5.**

"q. On the face of it these events demonstrate an unequal relationship wherein Petitioner's counsel is allowed to seek and receive favors outside of open court to my detriment." **Ex. E, p. 6.**

"s. Because Petitioner is given the ongoing opportunity to discuss any number of matters with Judge Johnson via his clerk on an ex parte basis and I have been strictly rebuked for any communication to Ms. Kaye Mason that is not routine scheduling, which is to say legally allowable, there is an inherent imbalance." **Ex. E, p. 6.**

c. "One factor that has contributed to rulings not based in fact and the denial of due process by Judge Johnson is the appointment of Michael Bender as Guardian Ad Litem." **Ex. E, p.13.**

5

Exhibit LL Continued

d.   "During discussions to which I was not privy, Mr. Bender proffered to Mr. Wehrman a custody evaluation, with a custody evaluator hand selected by Mr. Bender, in exchange for denying me due process." **Ex. E., p. 15.**

e.   "Mr. Wehrman said, "Your honor, she just wants to show I'm laundering money for my client". **Ex. E, p. 16.**

f.   "Mr. Wehrman makes generalized, untrue, disparaging statements not related to the proceedings such as "That woman lies", "This woman doesn't care about her children", "That woman can't be trusted", "That woman doesn't want to take care of her kids". **Ex. E, p. 16.**

11.   Megan Matt further filed a Petition to Transfer Venue in the Interest of Justice on February 16, 2022. **See Exhibit F, Megan Matt's Petition to Transfer Venue in the Interest of Justice, incorporated by reference.**   In her petition, Megan Matt alleges:

a.   "The staff, appointees and employees who collectively determine legal outcomes in the Domestic Relations Division of the Circuit Court of Chicago are so biased against me and the undue influence in favor of my former husband, Peter Matt, is so great, that an immediate transfer of venue is necessary." **Ex. F, p. 3.**

b.   "…I have also been forced to participate in criminal activity by court order on two occasions." **Ex. F, p. 10.**

c.   "Mr. Matt does not believe in the traditional taxation system and therefore keeps his considerable family wealth and assets hidden abroad." **Ex. F, p. 10.**

6

FILED DATE: 4/28/2022 3:33 PM   2016D009534

d.  "...Mr. Matt enjoys displaying a facade of poverty and on two occasions he has engaged in welfare fraud." **Ex. F, p. 11.**

e.  "...Mr. Matt was supported by Dr. John Palen, the court ordered parenting coordinator, in attempting to force me to engage in a criminal scheme." **Ex. F, p. 11.**

f.  "I fear Angus's identity may be used to launder money, by disguising funds from businesses not disclosed to the IRS as gifts or loans from Angus's wealthy German grandfather to Angus for his care;" **Ex. F, p. 13.**

g.  "I fear Angus's disability and minor child status may be exploited in order to create trusts, businesses and other structures wholly intended to launder money, remit payment to other parties and to evade taxation;" **Ex. F, p. 13.**

h.  "I fear Angus's disability and minor child status may be used as a basis to appoint individuals as executors, guardians, trustees or other paid roles for as a means to receive kickbacks or bribes;" **Ex. F, p. 13.**

i.  "I fear Angus's identity may be used as a means for further fraudulent activity of the type already proposed by Mr. Matt." **Ex. F, p. 13.**

j.  "Given that Angus has already been the target of an open scheme to defraud him, supported by appointees of this court..." **Ex. F, p. 13.**

k.  "One bank account is held at Wintrust. Mr. Matt shares this account with his father, Leo Matt, who resides in Germany. This account has been used to wire funds from Mr. Matt's unreported businesses: Goedecke Germany, Goedecke Poland and Goedecke India as well as cash from the over $1 million I know Mr.

FILED DATE: 4/28/2022 3:33 PM   2016D009534

Matt to hold in personal investments and accounts held abroad." **Ex. F, p. 14.**

l.  "It is my belief that Judge Johnson did not wish to embarrass Mr. Bender and Mr. Wehrman by letting the Motion for Financial Allocation and subpoenaed documents be revealed in open court." **Ex. F, p. 15.**

m.  "I have also observed and documented child abuse and neglect by Mr. Matt which court appointees have aggressively hidden." **Ex. F, p. 15.**

n.  "Mr. Bender in his role as Guardian Ad Litem has sought to hide reports of Mr. Matt's abusive behaviors or parental unfitness on repeated occasions." **Ex. F, p. 16.**

o.  "Mr. Bender agreed not to allow any of the disturbing matters presented in the above Petitions to be heard as part of the deal with Mr. Wehrman to initiate a Custody Evaluation." **Ex. F, p. 16.**

p.  "Subsequent to these filings, reports of domestic violence have been raised by myself and credible third parties but Mr. Bender has sought to mischaracterize or hide these reports in order to protect his own and Mr. Matt's reputation." **Ex. F, p. 17.**

q.  "I asked Teddy if his father ever hit him (Teddy). He nodded his head. I asked him where his dad hit him, he put his hand on his right cheek." **Ex. F, p. 18.**

r.  "... the Custody Evaluation was proffered as a means to hide money laundering, tax fraud, and reports of abuse by credible third parties such as police and clergy." **Ex. F, p. 22.**

s.  "Mr. Wehrman further used his private influence with Judge Johnson to hide

8

evidence of Mr. Matt's parental misconduct." **Ex. F, p. 22.**

    t.   "I am subject to ongoing interference and fraudulent behaviors using the court's technology." **Ex. F, p. 23.**

12.    Peter Matt has been forced to pay substantial funds to not only respond to the allegations in these pleadings, but also to litigate them. Megan Matt's Motion to Dismiss was denied she was found in contempt of court following an evidentiary hearing on Peter Matt's Petition for Rule to Show Cause, her Motion for Substitution of Judge for Cause was denied, and she chose not to prosecute her Motion to Transfer Venue following the hearing on the Petition for Rule to Show Cause.

13.    Trial courts may grant sanctions under 137 at their discretion. *William J. Templeman Co. v. W.E. O'Neil Constr. Co.*, 1998 Ill. App. LEXIS 587 (1st Dist. 1998).

14.    Rule 137 provides for the imposition of sanctions if any "pleading, motion, or other document is signed in violation of this rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred because of the filing of the pleading, motion or other document, including a reasonable attorney fee."

15.    Deliberately lying, obstructing justice, and misrepresenting facts are sanctionable under Rule 137.

FILED DATE: 4/28/2022 3:33 PM   2016D009534

Exhibit LL Continued

FILED DATE: 4/28/2022 3:33 PM    2016D009534

16.     Rule 137 requires that litigants who sign a pleading, motion, or other paper certify that he has read the document, has made a reasonable inquiry into its basis, and believes that the statements contained therein are "well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." *Cretton v. Protestant Mem'l Med. Ctr., Inc.*, 371 Ill. App. 841, 864 (5th Dist. 2007).

17.     Rule 137 serves to prevent parties in a legal action from asserting allegations unfounded in fact or law.

18.     Rule 137 provides for the imposition of sanctions against those who make improper pleadings.

19.     Pursuant to Illinois Supreme Court Rule 137(a), a party's signature on a pleading certifies that to the best of the attorney's knowledge, information, and belief formed after reasonable inquiry the pleading is well-grounded in fact and is warranted by existing law. Ill. Sup. Ct., R 137(a).

20.     A party's signature on a pleading also verifies that the pleading is not interposed for any improper purpose. *Id.* Rule 137 further permits the court to sanction the signor if a pleading is signed in violation of Rule 137. *Id.* The sanction may include an order to pay to the other parties the amount of reasonable expenses incurred because of the filing of the pleading, including a reasonable attorney fee. *Id.*

FILED DATE: 4/28/2022 3:33 PM    2016D009534

21. Sanctions "prevent abuse of the judicial process by penalizing claimants who bring vexatious and harassing actions based upon unsupported allegations of fact or law." *Fremarek v. John Hancock Mutual Life Insurance Co.*, 272 Ill. App. 3d 1067, 1074 (1995).

22. A party seeking Rule 137 sanctions must show that the opposing party made false allegations without reasonable cause. *Cretton v. Protestant Mem'l Med. Ctr., Inc.*, 371 Ill. App. 841, 864 (5th Dist. 2007) (upholding imposition of Rule 137 sanctions). The trial court must employ an objective standard to determine whether a party made reasonable inquiry. *Id.* A party's subjective good faith in signing the pleadings is insufficient to avoid Rule 137 sanctions. *Id.* Courts determine reasonableness by looking to the facts and circumstances that existed at the time a pleading was filed. *Id.*

23. Megan Matt's pleadings identified above were submitted and argued in bad faith.

24. Rule 137 sanctions against Megan Matt are appropriate.

25. This Court should impose sanctions against Megan Matt.

WHEREFORE, Petitioner PETER MATT respectfully requests that this Court:

A. Impose sanctions against Megan Matt;

B. Grant Attorney's Fees and costs in favor of Peter Matt; and,

11

FILED DATE: 4/28/2022 3:33 PM   2016D009534

C.   Grant any further relief this Court deems just.

Respectfully submitted,

PETER MATT

Christopher D. Wehrman (cwehrman@kgwlaw.com)
Katz, Goldstein & Warren
410 N. Michigan Ave., Ste. 400
Chicago, Illinois 60611
(847) 317-9500
#35921

FILED DATE: 4/28/2022 3:33 PM   2016D009534

Exhibit LL Continued

### ATTORNEY'S STATEMENT

I, the undersigned, state that I am one of the attorneys employed by the firm of KATZ, GOLDSTEIN & WARREN and representing the party who has signed the foregoing pleading. I certify that I have read the foregoing pleading and that to the best of my knowledge, information and belief, formed after reasonable inquiry of my client, said pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, and that said pleading is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

KATZ, GOLDSTEIN & WARREN

By: _____
One of the attorneys for PETER MATT

### CLIENT'S VERIFICATION

UPON PENALTY OF PERJURY, I, the undersigned, state that I have read the foregoing pleading. I further state that this pleading is being filed with my consent and as part of my attorney's required duties in representing me. I further state that my attorney has explained to me that by signing this pleading and this verification, I am acknowledging that my attorney is acting with my consent and at my direction and that my attorney has based his statement on the factual information provided to him by me, as well as upon his investigation thereof.

_____
PETER MATT

Christopher D. Wehrman (cwehrman@kgwlaw.com)
Katz, Goldstein & Warren
410 Michigan Ave., Ste. 400
Chicago, Illinois 60611
(847) 317-9500
#35921

13

DocuSign Envelope ID: 30DE3796-1845-43AF-B7DF-C02CB04195F7
All Domestic Relations cases will be heard by phone or video.
Go to http://www.cookcountycourt.org/LinkClick.aspx?fileticket=G7A8KAcSi8E%3d&portalid=0
to get more information and Zoom Meeting IDs.
Remote Court Date: No hearing scheduled

FILED
6/3/2022 1:31 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2016D009534
Calendar, 23
18153868

**EXHIBIT MM**

ATTORNEY NO. 35924

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

|  |  |  |
|---|---|---|
| IN RE THE MARRIAGE OF: | ) | |
| PETER MATT, | ) | |
| Petitioner, | ) | |
|  | ) | No. 2016 D 9534 |
| And | ) | |
|  | ) | |
| MEGAN MATT, | ) | |
| Respondent. | ) | |

**PETITION FOR PROSPECTIVE ATTORNEYS' FEES,**
**AND FOR ALLOCATION OF EXPERT AND GAL FEES**

NOW COMES the Petitioner, PETER MATT, individually and by and through his attorneys,

KATZ, GOLDSTEIN & WARREN, who hereby presents his Petition for Prospective Attorney Fees,

and For Allocation of Expert and GAL Fees, pursuant to 750 ILCS 508(a), 750 ILCS 5/506, and 750

ILCS 5/604.10(b), and in support thereof, hereby states as follows:

1.  The parties were married on January 24, 2007 in New York.

2.  As a result of their marriage, two children were born to parties, namely:
    Angus, born August of 2008; and Theodore, born February of 2012.

3.  On September 27, 2017 a Judgment for Dissolution of Marriage (Judgment),
    incorporating a Marital Settlement Agreement, was entered in this matter,
    thereby dissolving the bonds of matrimony between the parties. **See Exhibit**
    **A, Judgment and Marital Settlement Agreement, incorporated by**
    **reference.**

4.  On September 27, 2017, an Allocation Judgment and Joint Parenting Agreement
    (JPA) was also entered in this matter allocating parenting time and joint decision-
    making authority amongst the parties. **See Exhibit B, Allocation Judgment,**
    **incorporated by reference.**

1

DocuSign Envelope ID: 30DE2796-1845-43AF-97DF-C02CB04195F7

5.    There has been significant post-decree litigation related to the minor children including multiple petitions for rule to show cause filed by Peter Matt (which have been granted or granted in part), petitions for rule to show cause filed by Megan Matt (leading to the appointment of a Section 604.10(b) evaluator), a recent serious of motions filed by Megan Matt to increase the costs of litigation and otherwise seek to embarrass and defame Peter Matt along with his counsel, the GAL, the Court, and the court staff.

6.    On June 6, 2019, on this Court appointed Michael Bender as the Guardian Ad Litem.    **See Exhibit C, Court Order dated June 6, 2019, incorporated by reference.**

7.    The GAL order required each party to pay one-half of the GAL retainer, and the GAL fees have been allocated 50/50 from that date forward.

8.    Through April 30, 2022, PETER MATT has paid 50% of all of the GAL fees and is current on her obligation to same, totaling $11,233.96 paid.

9.    Although the GAL fees have been related to the GAL's investigation on pending issues and concerns raised by MEGAN MATT, they have also been increased by repeated returns to Court for MEGAN MATT's failure to comply with court orders and failure to continue with ABA Therapy for Angus.

10.   Although PETER MATT has continued to pay one-half of the GAL fees, he should be reimbursed under Section 508(b) for all fees and costs associated with MEGAN MATT's contempt findings, as well as the costs incurred for MEGAN MATT's new filing in the Northern District of Illinois.

FILED DATE: 6/3/2022 1:31 PM   2016D009534

DocuSign Envelope ID: 30DE2796-1845-43AE-97DF-C02CB04195F7

FILED DATE: 6/3/2022 1:31 PM   2016D009534

### EXHIBIT MM CONTINUED

11.  This Honorable Court also appointed a Section 604.10(b) evaluator, Dr. Gerald Blechman, **See Exhibit D, Court Order dated September May 25, 2021, incorporated by reference.**

12.  Pursuant to the order appointing Dr. Blechman, each party was to pay 50% towards the retainer.

13.  Through April 11, 2022, PETER MATT has paid $8,900.00 to Dr. Blechman for Dr. Blechman's investigation and appearances in this matter. MEGAN MATT has not paid her 50%, and instead PETER MATT has been paying her portion.

14.  Upon information and belief, MEGAN MATT has not made any payments beyond her retainer payment.

15.  PETER MATT retained the counsel of Steven H. Klein and Christopher D. Wehrman to represent him in the above cause while they were located at Swanson, Martin & Bell, LLP. He is now represented by both attorneys at their new firm of Katz, Goldstein & Warren.

16.  Christopher D. Wehrman, who is a partner at Katz, Goldstein & Warren and an experienced practitioner in matrimonial law. He received his law degree from the Michigan State University Detroit College of Law in 2002, his Master's Degree in Public Administration from Michigan State University in 2002, and his undergraduate degree from Michigan State University in 1998. He received his certification for family law mediation through the Northwestern University and is a member of the Chicago Collaborative Law

DocuSign Envelope ID: 30DE2796-1845-43AE-B7DF-C02CB04195F7

FILED DATE: 6/3/2022 1:31 PM   2016D009534

### EXHIBIT MM CONTINUED

Group and member of the American Academy for Certified Financial Litigators. His rate is $375.00 per hour

17. There is currently a pending a motion by Peter Matt for Rule 137 Sanctions, a Motion for to Modify Parenting Time and Allocation of Parental Responsibilities based in part on MEGAN MATT's continued non-compliance with court orders as well as Dr. Blechman's preliminary recommendations, and Motion for Entry of QMCSO.

18. MEGAN MATT has further filed a $20,000,000 federal lawsuit to further intimidate PETER MATT and the court system.

19. PETER MATT's counsel estimates that her prospective attorneys' and costs in preparing this matter for the ongoing litigation of $25,000.00.

20. PETER MATT lacks the financial resources to pay for his attorneys' fees and costs in these proceedings and will be greatly prejudiced in his ability to assert his rights in this matter unless MEGAN MATT is ordered to advance such funds on his behalf.

16. Section 5/508(a) of the IMDMA provides, in relevant part, as follows:

The court from time to time, after due notice and hearing, and after considering the financial resources of the parties, may order any party to pay a reasonable amount for his own or the other party's costs and attorney's fees. Interim attorney's fees and costs may be awarded from the opposing party, in a pre-judgment dissolution proceeding in accordance with subsection (c-1) of Section 501 and in any other proceeding under this subsection. At the conclusion of any pre-judgment dissolution proceeding under this subsection, contribution to attorney's fees and costs may be awarded from the opposing party in accordance with subsection (j) of Section 503 and in any other proceeding under this subsection. Fees and costs may be awarded in any proceeding to counsel from a former client in accordance with subsection (c) of this Section. Awards may be made in connection with the following:
(1) The maintenance or defense of any proceeding under this Act.

4

DocuSign Envelope ID: 30DE2796-1845-43AF-B7DF-C02CB04195F7

FILED DATE: 6/3/2022 1:31 PM   2016D009534

EXHIBIT MM CONTINUED

(2) The enforcement or modification of any order or judgment under this Act.

(3) The defense of an appeal of any order or judgment under this Act, including the defense of appeals of post-judgment orders.

(3.1) The prosecution of any claim on appeal (if the prosecuting party has substantially prevailed).

(4) The maintenance or defense of a petition brought under Section 2-1401 of the Code of Civil Procedure seeking relief from a final order or judgment under this Act. Fees incurred with respect to motions under Section 2-1401 of the Code of Civil Procedure may be granted only to the party who substantially prevails.

(5) The costs and legal services of an attorney rendered in preparation of the commencement of the proceeding brought under this Act.

(6) Ancillary litigation incident to, or reasonably connected with, a proceeding under this Act.

(7) Costs and attorney's fees incurred in an action under the Hague Convention on the Civil Aspects of International Child Abduction.

All petitions for or relating to interim fees and costs under this subsection shall be accompanied by an affidavit as to the factual basis for the relief requested and all hearings relative to any such petition shall be scheduled expeditiously by the court. All provisions for contribution under this subsection shall also be subject to paragraphs (3), (4), and (5) of subsection (j) of Section 503.

The court may order that the award of attorney's fees and costs (including an interim or contribution award) shall be paid directly to the attorney, who may enforce the order in his or her name, or that it shall be paid to the appropriate party. Judgment may be entered and enforcement had accordingly. Except as otherwise provided in subdivision (e)(1) of this Section, subsection (c) of this Section is exclusive as to the right of any counsel (or former counsel) of record to petition a court for an award and judgment for final fees and costs during the pendency of a proceeding under this Act.

21.   The Affidavits of PETER MATT and Christopher D. Wehrman are attached hereto and made a part hereof as Exhibits "A" and "B".

22.   PETER MATT has met the criteria set forth in 750 ILCS 5/508 for the payment of prospective attorneys' fees and costs and is requesting that this Court require MEGAN MATT to make such payments on his behalf in this matter so he can be properly and fairly represented concerning the matters presently pending before the Court.

5

DocuSign Envelope ID: 30DE2796-1845-43AF-97DF-C02CB04195F7

FILED DATE: 6/3/2022 1:31 PM   2016D009534

## EXHIBIT MM CONTINUED

WHEREFORE, the PETITIONER, PETER MATT, respectfully requests the following relief:

A.      For the entry of an Order pursuant to 750 ILCS 5/508 providing that MEGAN MATT pay the sum of $25,000.00 to the law firm of Katz, Goldstein & Warren as and for PETER MATT's prospective attorney's fees in this matter;

B.      MEGAN MATT pay 100% of the GAL fees going forward, and reimburse PETER MATT the amount of $11,233.96 for the GAL fees he paid to date;

C.      MEGAN MATT pay 100% of the 604.10(b) fees going forward, and reimburse PETER MATT the amount of $8,900.00 for the 604.10(b) fees he has paid to date;

D.      For such other and further relief as this Honorable Court deems just.

_____

PETER MATT

KATZ, GOLDSTEIN & WARREN
Christopher D. Wehrman, Esq.
Firm No: 35921
2345 Waukegan Road, Suite 150
Bannockburn, Illinois 60015
(847) 317-9500

6

DocuSign Envelope ID: 30DE2796-1845-43AF-97DF-C02CB04195F7

FILED DATE: 6/3/2022 1:31 PM   2016D009534

## EXHIBIT MM CONTINUED

ATTORNEY NO. 35921

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

| | | |
|---|---|---|
| IN RE THE MARRIAGE OF: | ) | |
| PETER MATT, | ) | |
| Petitioner, | ) | |
| | ) | No. 2016 D 9534 |
| And | ) | |
| | ) | |
| MEGAN MATT, | ) | |
| Respondent. | ) | |

### EXHIBIT "A"
### AFFIDAVIT OF PETER MATT IN SUPPORT OF
### PETITION FOR PROSPECTIVE ATTORNEYS' FEES,
### AND FOR ALLOCATION OF EXPERT AND GAL FEES

I, PETER MATT herein certify under penalty of perjury pursuant to Section 5/1-109 of the Code of Civil Procedure as to the following:

1. I am the Petitioner in the above-captioned matter.

2. I have personal knowledge of the matters stated in my Petition for Prospective Attorney Fees and For Allocation of Expert and GAL Fees and verify that they are true and correct, and if called upon to testify would do so consistently with the allegations contained therein.

**FURTHER AFFIANT SAYETH NOT.**

Under penalties as provided by law pursuant to Section 5/1-109 of the Code of Civil Procedure I certify that the statements set forth in this instrument are true and correct except as to matter therein states to on information and belief and as to I certify that I verify believe the same to be true.

DATED: ____6/ 2/ 2022____          _____

PETER MATT

7

DocuSign Envelope ID: 30DE2796-1845-43AE-97DF-C02CB04195F7

ATTORNEY NO. 35921

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

IN RE THE MARRIAGE OF:         )
PETER MATT,                   )
       Petitioner,         )
                         )    No. 2016 D 9534
And                     )
                         )
MEGAN MATT,           )
       Respondent.     )

### EXHIBIT "B"
### AFFIDAVIT OF CHRISTOPHER D. WEHRMAN IN SUPPORT OF
### PETITION FOR PROSPECTIVE ATTORNEYS' FEES,
### AND ALLOCATION OF EXPERT AND GAL FEES

I, Christopher D. Wehrman, herein certify under penalty of perjury pursuant to Section 5/1-109 of the Code of Civil Procedure as to the following:

1.     I am the partner primarily responsible for representing PETER MATT in the above captioned matter.

2.     The information stated in the attached Petition for Prospective Attorney Fees and Allocation of Expert and GAL Fees the status of the proceedings in this cause and the estimates of fees and costs PETER MATT is likely to incur to participate adequately in the litigation of this cause are matters within my personal knowledge and expertise which are true and correct to the best of my knowledge, and if called upon to testify in this cause, I would do so consistently with the allegations contained hereinabove.

**FURTHER AFFIANT SAYETH NOT.**

DATED: 6/3/2022 _____

DocuSigned by:

*Christopher D. Wehrman*

F09FF188ECSF4AA...

CHRISTOPHER D. WEHRMAN

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, I certify that the statements set forth in this instrument are true and correct except as to matters therein stated to be on information and belief and as to such matters I certify that I verily believe the same to be true.

DocuSigned by:

*Christopher D. Wehrman*

F09FF188ECSF4AA...

CHRISTOPHER D. WEHRMAN

8

FILED DATE: 6/3/2022 1:31 PM   2016D009534

## ATTORNEY'S STATEMENT

I, the undersigned, state that I am one of the attorneys employed by the firm of KATZ, GOLDSTEIN & WARREN and representing the party who has signed the foregoing pleading. I certify that I have read the foregoing pleading and that to the best of my knowledge, information and belief, formed after reasonable inquiry of my client, said pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, and that said pleading is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

KATZ, GOLDSTEIN & WARREN

By: _Christopher D. Wehrman_
One of the attorneys for PETER MATT

## CLIENT'S VERIFICATION

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, I certify that the statements set forth in this instrument are true and correct except as to matters therein stated to be on information and belief and as to such matters I certify that I verily believe the same to be true.

PETER MATT

Christopher D. Wehrman (cwehrman@kgwlaw.com)
Katz, Goldstein & Warren
410 N. Michigan Ave., Ste. 400
Chicago, Illinois 60611
(847) 317-9500
#35921

9

THE LAW OFFICES OF
# BRADLEY R. TROWBRIDGE
3257 NORTH SHEFFIELD AVENUE, SUITE 104
CHICAGO, ILLINOIS 60657

April 13, 2022

Ms. Megan Mason
419 Greenleaf Ave.
Wilmette, IL 60091

**Re: Subpoena**

Ms. Mason,

We are in receipt of your subpoena. By law, you must pay a fee when you request documents via subpoena. You failed to do that. Nonetheless, we have enclosed the PRTSC you are seeking. We do not keep emails from cases we are no longer involved in.

I did not fail to disclose communications and notifications to you. Courts shut down on March 17, 2020, for several months due to the pandemic. You provided me information to file a Response to the PRTSC in question. You attended and testified at the hearing on that PRTSC. Clearly, you were aware of the existence of that PRTSC. To say you were not aware of it is not only inaccurate, but also bizarre.

Finally, nothing I did or did not do while representing you in 2020 has any bearing on your current litigation. I reviewed your file online and discovered you've employed the services of multiple attorneys since I represented you. Multiple PRTSC motions have been filed against you. You were recently, again, found in contempt of court.

Our office will have no further communication with you.

Regards,

*Bradley Trowbridge*

Brad Trowbridge

Enc.

Telephone: (773) 784-9900 • E-mail: Brad@BradTrowbridge.com

 Gmail

Megan M <megan42@gmail.com>

---

## your subpoena

8 messages

---

**gablechman@aol.com** <gablechman@aol.com>                                    Fri, Apr 8, 2022 at 4:08 PM
Reply-To: gablechman@aol.com
To: "megan42@gmail.com" <megan42@gmail.com>, "pleadings@kgwlaw.com" <pleadings@kgwlaw.com>,
"bender@caesarbenderlawcomcast.com" <bender@caesarbenderlawcomcast.com>

Dear Ms. Mason
I am in receipt of your Subpoena for Documents in case number 2016 D 9534. Please be advised that I cannot honor
your subpoena for the following reasons:
1. I do not release information in my file before the report is written
2. It appears your Subpoena is ex parte. No notice was given to the other attorneys in this case.
3. Raw psychological data cannot by law be released to a client. It must be released to a licensed mental health
professional
4. And, apart from the initial retainer of $2000 that you tendered at the beginning of the evaluation, you have not paid
the remaining $2000
5. I would appreciate also a statement from you indicating you are still actively involved in the evaluation as your prior
email makes it appear you are no longer involved


Gerald A. Blechman, Ph.D..

---

**Megan Mason** <megan42@gmail.com>                                             Sat, Apr 9, 2022 at 7:03 AM
To: gablechman@aol.com
Cc: "bender@caesarbenderlawcomcast.com" <bender@caesarbenderlawcomcast.com>, "pleadings@kgwlaw.com"
<pleadings@kgwlaw.com>

Hi Dr. Blechman,

I find this email confusing. Are you indicating that you believe I owe you funds? I paid the amount required. Any unpaid
invoices are news to me. Please use US Postal service to present to me any invoices you feel are owed. My address is:
419 Greenleaf Ave.
Wilmette, IL 60091

I will not pay them but I will pass them to the bankruptcy trustees.

If you have specific requests for outstanding issues related to the activities referred to as. Custody evaluation please let
me know. I was ordered by court to participate. I did and do.

I never indicated I wished to end the activities referred to as a custody evaluation, Dr. Blechman. I simply must make
efforts to protect myself and my children. To that end I will not meet/speak alone with individuals where I fear there may be
further instances of witness intimidation and whistleblower retaliation regarding litigation in federal and appellate court.

To that end I simply require a civil rights observer, attorney or my own therapist in attendance should you have a need to
speak or meet with me privately. Alternately we can both give consent to record future interactions. The same applies to
the honorable Mr. Bender.

Thanks,

Megan
[Quoted text hidden]

---

**Mail Delivery Subsystem** <mailer-daemon@googlemail.com>                       Sat, Apr 9, 2022 at 7:03 AM
To: megan42@gmail.com

EXHIBIT OO CONTINUED

 ## Address not found

Your message wasn't delivered to
**bender@caesarbenderlawcomcast.com** because the domain
caesarbenderlawcomcast.com couldn't be found. Check for
typos or unnecessary spaces and try again.

The response was:

```
DNS Error: DNS type 'mx' lookup of caesarbenderlawcomcast.com responded with code NXDOMAIN
Domain name not found: caesarbenderlawcomcast.com
```

Final-Recipient: rfc822; bender@caesarbenderlawcomcast.com
Action: failed
Status: 4.0.0
Diagnostic-Code: smtp; DNS Error: DNS type 'mx' lookup of caesarbenderlawcomcast.com responded with code
NXDOMAIN
 Domain name not found: caesarbenderlawcomcast.com
Last-Attempt-Date: Sat, 09 Apr 2022 05:03:46 -0700 (PDT)


---------- Forwarded message ----------
From: Megan Mason <megan42@gmail.com>
To: gablechman@aol.com
Cc: "bender@caesarbenderlawcomcast.com" <bender@caesarbenderlawcomcast.com>, "pleadings@kgwlaw.com"
<pleadings@kgwlaw.com>
Bcc:
Date: Sat, 9 Apr 2022 07:03:35 -0500
Subject: Re: your subpoena
----- Message truncated -----

---

**Megan Mason** <megan42@gmail.com>                                  Fri, Apr 15, 2022 at 7:36 AM
To: gablechman <gablechman@aol.com>

Hi Dr. Blechman,

I would kindly appreciate a response.
1. What is the basis for your request for money? Did you mail an invoice?
2. Do you need to speak to me, if so, are you able to accommodate my request to not meet alone?

Thanks,
Megan
[Quoted text hidden]

---

**Megan Mason** <megan42@gmail.com>                                  Tue, Apr 19, 2022 at 11:34 AM
To: gablechman <gablechman@aol.com>

Why were you soliciting a payment of $2,000?
[Quoted text hidden]

**gablechman** <gablechman@aol.com>                          Tue, Apr 19, 2022 at 11:53 AM
To: Megan Mason <megan42@gmail.com>

Megan:
I apologize for payment request.  I forgot your evaluation was a604.10(b) and therefore you would be responsible for half the fee. I believe Mr Matt has paid, so therefore, reimbursement is between you and him.
I would like to meet with you but it is not my practice to include a 3rd party or record the session. If you accept these terms, let me know so we can schedule an appointment.

Gerald A. Blechman, Ph.D.

Sent from my Verizon, Samsung Galaxy smartphone
[Quoted text hidden]

---

**Megan Mason** <megan42@gmail.com>                          Tue, Apr 19, 2022 at 12:02 PM
To: gablechman <gablechman@aol.com>

Hi Dr. Blechman,

What would you like to meet about? We have had several meetings together. I would like to understand the basis. Your office is more than an hour away and I work full time. I don't understand why your report wasn't submitted months ago and any clarification would be appreciated, including a demand for further contact.

Why are you opposed to having a third party present? I believe it's a pretty simple accommodation to facilitate my comfort and feeling of security. This accommodation requires no expense or inconvenience to you. I fail to see why you would be opposed. Please explain.

Thanks,
Megan
[Quoted text hidden]

---

**Megan Mason** <megan42@gmail.com>                          Fri, Jun 17, 2022 at 5:56 PM
To: gablechman <gablechman@aol.com>

Hi Dr. Blechman,

I am a bit confused about the below conversation. I was told at the time of your appointment that your fee is $4,000 for which I was responsible for half. I received an invoice at your office and paid your $2,000 in May or June of last year. On April 8 you wrote to me, "apart from the initial retainer of $2000 that you tendered at the beginning of the evaluation, you have not paid the remaining $2000".

I then wrote to indicate I was not aware of an outstanding invoice. I indicated that I wished for you to mail any outstanding invoices to my address and provided my address for your reference.

You then wrote back,"I apologize for payment request.  I forgot your evaluation was a604.10(b) and therefore you would be responsible for half the fee." You have not since this time provided an invoice.

In a motion for fees filed by Christopher Wehrman he wrote, "Through April 11, 2022, Peter Matt has paid $8,900 to Dr. Blechman for Dr. Blechman's investigation and appearances in this matter."

Again, do you believe funds are owed to you? Have you invoiced me?  Why do you not want to put your own name on the motion for fees if you believe the claim is truthful?

Megan

[Quoted text hidden]

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, DOMESTIC RELATIONS**
**DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **PETER MATT,** | ) | Case No: 2016 D 9534 |
| | ) | |
| Petitioner, | ) | |
| and | ) | |
| | ) | |
| **MEGAN MASON,** | ) | Calendar: 23 |
| | ) | |
| Respondent. | ) | |

**PETITION FOR RULE TO SHOW CAUSE AND FOR A FINDING OF INDIRECT**
**CIVIL CONTEMPT**

NOW COMES the Guardian *ad litem*, MICHAEL IAN BENDER, of CAESAR &

BENDER, LLP, and pursuant to 750 ILCS 5/506, asks this Honorable Court to issue a Rule to

Show Cause against Respondent, MEGAN MASON ("MEGAN"), to show cause why she should

not be held in indirect civil contempt for her contumacious disregard of this Court's November 16,

2021 Order, and in support thereof states as follows:

1. On June 6, 2019, this Honorable Court appointed MICHAEL IAN BENDER as

Guardian *ad litem* in this matter. A true and correct copy of the June 6, 2019 Order is attached

hereto as **Exhibit A.**

2. On November 16, 2021, this Honorable Court entered an order that states in pertinent

part as follows:

> "4. Respondent, Megan Mason, owes Michael Bender $4,629.75 for fees
> incurred through October 7, 2021. Megan Mason shall pay Michael Bender
> $500 per month until the $4,629.75 is paid in full. Said payments shall begin
> on December 15, 2021 and shall continue on the 15th of each month
> thereafter."

1

A true and correct copy of the November 16, 2021 Order is attached hereto as **Exhibit B.**

3. MEGAN has paid $50.00 towards the November 16, 2021 Order and is in violation in the amount of $2,950.00.

4. A finding of indirect civil contempt requires proof of a valid court order and a willful violation of that order. *Cetera v. DiFilippo*, 404 Ill.App.3d 20, 41 (2010). The burden initially falls on the opposing party to show a violation of a court order by a preponderance of the evidence. *Id.* The burden then shifts to the alleged contemnor to show that the violation was not willful or contumacious and that he had a valid reason for noncompliance. *Id.*

5. A Rule should issue against MEGAN, and she show cause, if any, as to why she should not be held in indirect civil contempt of court for her failure to comply with this Honorable Court's Order. Said Rule should be returnable *instanter*.

WHEREFORE, the Guardian *ad litem*, MICHAEL IAN BENDER, asks this Honorable Court for the following relief:

A. Enter an Order *instanter* issuing a Rule to Show Cause for MEGAN MASON to show cause, if any, why she should not be held in indirect civil contempt of court for her violation of the November 16, 2021 Order;

B. Cause MEGAN MASON to demonstrate as to why she should not be held in indirect civil contempt of court;

C. Find MEGAN MASON in willful indirect civil contempt and set a $2,950.00 purge;

D. Remand MEGAN MASON to custody of the Sheriff of Cook County; and

E.   For any and all other relief this Honorable Court deems just and equitable.

Respectfully submitted,

/s/ Michael Ian Bender
Guardian ad litem

Michael Ian Bender CAESAR & BENDER, LLP
*Guardian ad litem*
150 N Michigan Ave., Suite 2130
Chicago, Il 60601
(312) 236-1500
Attorney No.: 63030
service@caesarbenderlaw.com

Exhibit PP

<u>VERIFICATION</u>

Under the penalties as provided by law pursuant to 735 ILCS 5/1-109 of the Illinois Code of Civil Procedure, the undersigned verifies that the statements set forth in this pleading are true and correct, except to matters therein stated to be on information and belief, and as to such matters, the undersigned certifies as aforesaid that he verily believes the same to be true.

<u>/s/ Michael Ian Bender</u>
Guardian ad litem

Michael Ian Bender CAESAR & BENDER, LLP
*Guardian ad litem*
150 N Michigan Ave., Suite 2130
Chicago, Il 60601
(312) 236-1500
Attorney No.: 63030
service@caesarbenderlaw.com